# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# NORFOLK DIVISION

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., § § § § Plaintiff, § § v. § § PALO ALTO NETWORKS, INC., § § Defendant. § § § | Civil Action No. 2:21-CV-00137-RCY-RJK |

**DEFENDANT PALO ALTO NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO COMPEL PLAINTIFF CENTRIPETAL NETWORKS, INC. TO PRODUCE RELATED PATENT DOCUMENTS**

Pursuant to Federal Rules of Civil Procedure 34 and 37(a), Defendant Palo Alto Networks Inc. ("PAN") moves to compel Plaintiff Centripetal Networks, Inc. ("Centripetal") to produce documents concerning the patents Centripetal asserted in the *Cisco Systems, Inc.*, 2:18-cv-94 and *Keysight Technologies Inc.*, 2:17-cv-00383 actions, which are from the same patent families as—and thus share a technological and financial nexus with—the patents Centripetal asserts here.[1] Such documents include prior inventor testimony, known or alleged prior art, prosecution documents, comparisons between patented claims and products, and valuation materials.

The factual overlap between the requested documents and the claims and defenses in this litigation is significant and undeniable. Specifically, twelve of the thirteen patents Centripetal asserts in this case ("Asserted Patents") are part of the same patent families—and thus arose from common patent applications—as nearly all the patents Centripetal asserted in *Cisco* and *Keysight* ("Related Patents"). The Asserted and Related Patents share common inventors, patent specifications, figures, claim terms, and priority dates, as well as substantially overlapping prosecution histories and valuation arguments. Indeed, the overlap is so pronounced that the U.S. Patent & Trademark Office initially rejected many of the Asserted Patents during examination because it found they were not patentably distinct from the Related Patents.

Centripetal erroneously contends that because the Related Patents are not asserted in this litigation, the documents concerning those patents, including the documents Centripetal produced in the prior litigations, are not relevant to the claims and defenses in this case. To the contrary, given the substantial commonality between the Asserted and Related Patents, the positions

---

[1] The Court postponed setting this case for trial and establishing a discovery schedule "pending ruling on Defendant's Motion to Stay" (Dkt. 67). *See* Minute Entry, Jul. 21, 2021. PAN believes discovery should not proceed now for the reasons set forth in its Motion to Stay and its Motion to Dismiss (Dkt. 95), but is filing this motion because—notwithstanding the Minute Entry referenced above—Centripetal continues to demand discovery, and Centripetal's withheld information is highly relevant to PAN's defense and discovery responses.

Centripetal took in the prior actions regarding the meaning, scope, and application of the claim terms common to both groups of patents not only have direct bearing in this litigation, but give rise to estoppel. Likewise, prior inventor testimony and discovery responses regarding the conception, reduction to practice, scope and content of the prior art, secondary considerations of non-obviousness, and the value of those claims are plainly relevant and discoverable in this litigation. Indeed, Centripetal's contrary contention is belied by its own repeated assertions that the *Cisco* and *Keysight* actions **are** relevant to this litigation, including in its amended complaint, opposition to PAN's motion to dismiss, discovery requests seeking information regarding PAN's knowledge of those actions, and Centripetal's own discovery responses and privilege log.

PAN therefore requests that the Court order Centripetal to produce documents concerning the Related Patents that are responsive to PAN's RFPs 3, 7, 13-31, 33-34, 36, 39-42, 51-53, 55-57, 60-62, 65, 70, 77-89, 91, and 96.

## I.     FACTUAL BACKGROUND

In this litigation, Centripetal alleges that PAN infringes the Asserted Patents by making/using/selling products from one or more of seven different product lines (collectively the "Accused Products"). *See generally* Dkt. 65 (Centripetal's Amended Complaint) (hereinafter "Am. Compl."). The allegations center on network security products, application of security policies, and filtering of network traffic. *See id*, at ¶¶ 83, 113. Centripetal made very similar allegations in the prior *Cisco* and *Keysight* cases, where Centripetal asserted that similar functionality in Cisco's and Keysight's products infringed the Related Patents. *See* Ex. 2, Cisco Compl. at ¶¶ 41, 44; Ex. 3, Keysight Compl, at ¶¶ 53, 66.

The commonality between the Asserted and Related Patents is substantial—they arose from the same original patent applications and thus share common inventors, priority claims, patent specifications, figures, and numerous claim elements. *See* Ex. 4. Indeed, there is such

substantial overlap in the claims of the Asserted and Related Patents that the Patent Office initially rejected many of the claims of the Asserted Patents because it found they were not patentably distinct from those of the Related Patents.[2] *See e.g.*, Ex. 5A (rejecting claims of Asserted Patent No. 10,091,246 for impermissible double patenting over Related Patent No. 9,137,205); *see also* Exs. 5B-5G. To overcome this rejection, Centripetal disclaimed any term of the Asserted Patents that would extend beyond that of the earlier-expiring Related Patents, and thereby acquiesced to the Patent Office's determination that the Asserted Patents are not patentably distinct from the Related Patents. Exs. 6A-6H. The chart below identifies which Asserted Patents have terminal disclaimers (shown in bold),[3] as well as the commonly claimed concepts appearing in both the Asserted and Related Patents.

| Commonly Claimed Concepts | Term in Asserted Patents | Term in Related Patents |
|---|---|---|
| Using rules to filter/process packets (i.e. "packet filtering rules," "packet-filtering device with the one or more rules,") | **10,091,246**; **10,530,903**; **10,542,028**; 10,567,343; 10,567,413; **10,567,437**; **10,659,573**; 10,735,380; **10,749,906**; **10,757,126**; 10,785,266; **10,931,797** | 9,686,193; 9,560,176, 9,560,077; 9,413,722 9,203,806; 9,160,713; 9,124,552, 9,137,205; 9,674,148 |
| Use of a "switching matrix" | **10,567,437** | 9,560,077 |
| "Correlate" packets based on "log entries" | **10,530,903**, **10,659,573**, **10,931,797** | 9,560,176 |
| Use of a "security policy management server" | 10,735,380; **10,749,906**; 10,785,266 | 9,565,213; 9,137,205 |
| Use of a "dynamic security policy" | 10,735,380; **10,749,906**; 10,785,266 | 9,565,213; 9,137,205 |
| Implementation of "packet transformation functions" | **10,091,246**; 10,567,343; **10,567,437** | 9,565,213; 9,137,205 |

---

[2] The doctrine of double patenting—under which the Patent Office rejected the claims—prohibits a party from unjustly extending its rights in an earlier patent by obtaining claims in a later-expiring patent "that are not patentably distinct." *Eli Lilly & Co. v. Barr Labs., Inc.*, 251 F.3d 955, 967 (Fed. Cir. 2001). To overcome such rejections, a patentee may—as Centripetal did—choose to disclaim any term of the later-expiring patent that would extend beyond that of the earlier-expiring patent, which is referred to as a "terminal disclaimer."
[3] *See* Ex. 4 (listing the Asserted Patents in which terminal disclaimers were filed over Related Patents); Exs. 6A-6H (including annotated copies of terminal disclaimers filed to overcome double-patenting rejections in light of one or more Related Patents).

| Performing operations on a "packet by packet basis" | 10,091,246; **10,749,906**; 10,785,266 | 9,565,213; 9,137,205 |
| --- | --- | --- |
| Logging events related to threats/use of a "digest logging function" | 10,503,899; **10,530,903**; **10,542,028**; 10,567,413; **10,659,573**; **10,749,906**; **10,757,126** | 9,565,213 |

In light of the substantial similarities between the Asserted and Related Patents, PAN served discovery requests seeking several categories of documents concerning the Related Patents, including documents from the *Cisco* and *Keysight* actions (*i.e.*, PAN's RFPs 3, 7, 13-19, 20-31, 33-34, 36, 39-42, 51-53, 55-57, 60-62, 65, 70, 77-87, 88, 89, 91, and 96). *See* Ex. 7. Centripetal objected to the requests as seeking documents not reasonably calculated to lead to the discovery of admissible evidence. *See, e.g., id* (Response to RFPs 13-14). And when PAN raised the issue in a letter regarding deficiencies in Centripetal's responses, *see* Ex. 8, Centripetal's counsel confirmed Centripetal would not produce documents concerning "Related Patents" because they are "not subject to an infringement claim or invalidity defense in this case," *see* Ex. 9. In addition, despite already having produced or exchanged many of the requested documents in the prior cases, Centripetal characterized the requests as unduly burdensome. *Id.*[4] The parties met and conferred, but were unable to resolve the dispute.[5]

## II.  ARGUMENT

### A.  The Requested Documents Are Relevant.

In light of the substantial commonality between the Asserted and Related Patents, documents concerning the Related Patents (including documents from *Cisco* and *Keysight*) are

---

[4] Centripetal also raised third-party confidentiality as a barrier to producing the requested documents, but as explained below, that is not a legitimate basis for withholding these documents.
[5] The one exception to Centripetal's blanket refusal is an agreement to produce select inventor deposition testimony from *Cisco* and *Keysight* that relates to the interpretation of claim language identical in the Asserted and Related Patents. DeBrow Decl. at ¶ 11. Permitting Centripetal to cherry-pick only the portions of testimony it narrowly deems relevant is problematic, improper, and more burdensome than production of the full deposition transcripts.

unquestionably relevant to this case. For example, documents concerning conception and reduction to practice of the purported inventions claimed in the Related Patents are relevant to the same issues for the Asserted Patents, which share common inventors and priority claims. Information about prior art to the Related Patents, and positions and testimony about whether the prior art discloses the same or similar claim limitations appearing in the Asserted Patents, is also highly relevant to PAN's invalidity defenses here. Similarly, Centripetal's infringement contentions and the reports and testimony of its technical experts in *Cisco* and *Keysight* are not only relevant, but give rise to estoppel on issues regarding the meaning, scope, and application of the claim terms common to both groups.[6]

Additionally, because the patents share a technological nexus, documents concerning valuation of the Related Patents (including reports and testimony of Centripetal's damages expert in the prior actions) are relevant to the damages analysis in this case. Indeed, in response to PAN's Interrogatory No. 12, Centripetal affirmatively asserted that royalty rates applied in *Keysight* and *Cisco* are relevant to the damages issues **in this case**. Ex. 10. As such, PAN is entitled to discovery into the damages positions Centripetal took in the prior actions. Likewise, the documents and testimony Centripetal relied on to support its claims that the Related Patents were not obvious in light of secondary considerations evidence—*i.e.*, evidence of purported commercial success, long-felt need, praise or awards—are relevant to the same issues in this litigation.

Centripetal's own pleadings, discovery requests, and privilege log further demonstrate the

---

[6] In addition, whether Centripetal took positions on claim construction in *Cisco* and *Keysight* that are inconsistent with its positions in this case bears directly on Centripetal's credibility. *See Transclean Corp. v. Jiffy Lube Int'l, Inc.*, 474 F.3d 1298, 1307 (Fed. Cir. 2007). This is true even if Centripetal employs different experts in this case. *See e.g., U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, 244 F.R.D. 638, 646 (D. Kan. 2007) (entitled to discovery that could evince prior inconsistency on same subject matter); *Commonwealth Edison Co. v. Allied Chemical Nuclear Prods., Inc.*, No. 79 C 2866, 1990 WL 36687, at *1 (N.D. Ill. Feb. 28, 1990) (entitled to discovery on opponent's "diametrically opposed" litigation positions on same subject matter).

relevance of documents concerning the Related Patents, including those from *Cisco* and *Keysight*. In its Amended Complaint, Centripetal alleges that PAN had pre-suit knowledge of the Asserted Patents because PAN was aware of the *Cisco* and *Keysight* actions involving patents that "are in the same families" as the Asserted Patents (*i.e.*, the Related Patents). *See* Dkt. 65 at ¶ 68, 73; *see also* Dkt. 141 (Opp. to MTD) at 1- 3, 9-11. Centripetal's discovery requests to PAN seek information regarding PAN's knowledge of the *Cisco* and *Keysight* actions. Exs. 1A-1B. And Centripetal's privilege log in this case—which includes over 1,000 entries—mostly identifies documents concerning the Related Patents. Ex. 11. Centripetal's position that certain documents concerning the Related Patents are relevant but privileged, cannot be squared with its outright refusal to produce non-privileged documents concerning the Related Patents.

    Courts in similar circumstances have ordered the production of documents as sought here. For example, in *Casual Living Worldwide, Inc. v. Lane Furniture Indus., Inc.*, 3:07CV-167-H, 2008 WL 11363242, at *1–2 (W.D. Ky. Sept. 9, 2008), the asserted patents were linked by terminal disclaimers to several related patents—as are the Asserted Patents here. *Id*. at *6; *see supra* Section I. Accordingly, the Court concluded that prosecution documents, enforcement and valuation materials, and business information sought by the defendant regarding the related patents were relevant and discoverable.[7] *Id*. at *6, *2. Similarly, in *Apple, Inc. v. Samsung Elecs. Co.*, No. C 11-1846 LHK, 2012 WL 1232267, at *6 (N.D. Cal. Apr. 12, 2012), the Court ordered plaintiff to produce documents from prior cases involving patents bearing a "technological nexus" to the patent case at hand.[8] Because the documents PAN seeks regarding the Related Patents directly

---

[7] *See also High Point SARL v. Sprint Nextel Corp.*, CIV.A. 09-2269-CM, 2011 WL 3241432, at *5-6 (D. Kan. July 29, 2011) (granting motion to compel production of patent license and settlement agreements concerning related patents).

[8] *See Infernal Tech., LLC v. Microsoft Corp.*, 2:18-CV-00144-JRG, 2019 WL 5388442, at *2 (E.D. Tex. May 3, 2019) (ordering production of infringement materials from previous litigation because

6

relate to central issues in this case, they are relevant and should be produced.

### B. Centripetal Has No Legitimate Basis To Withhold the Requested Materials.

Centripetal's contention that production of documents concerning the Related Patents is unduly burdensome falls flat given that Centripetal has already collected and produced those materials in *Cisco* and *Keysight* and they may be readily produced here. Further, although Centripetal has asserted that some of the requested materials are subject to confidentiality obligations (including as imposed by the protective orders in *Cisco* and *Keysight*), that is not true for the majority of the requested materials, including Centripetal's own business information about products embodying the Related Patents, offers for sale, demonstratives presented in open court, and known or alleged prior art to the Related Patents.

Moreover, the Court entered a protective order in this case that stringently restricts the disclosure of confidential information, *see* Dkt. 93, and there is no indication that these protections are insufficient to protect the requested materials. Finally, as to any confidentiality obligations created by the *Cisco* and *Keysight* protective orders, both orders contain provisions allowing for the subsequent disclosure of confidential information produced in those actions. *See* Ex. 12 (*Cisco* PO) at ¶¶ 62-63; Ex. 13 (*Keysight* PO) at ¶¶ 52-53. Notably, however, Centripetal has not availed itself of those provisions or even approached the relevant third-parties.

### III. CONCLUSION

PAN respectfully requests that the Court order Centripetal to produce documents concerning the Related Patents that are responsive to PAN's RFPs 3, 7, 13-31, 33-34, 36, 39-42, 51-53, 55-57, 60-62, 65, 70, 77-89, 91, and 96.

---

"Plaintiffs' prior litigation positions regarding the same claims asserted in this case are relevant to the claims and defenses in this case.").

Respectfully submitted,

PALO ALTO NETWORKS, INC.
By Counsel

By: */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
MCGUIREWOODS LLP
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
rmcfarland@mcguirewoods.com

David E. Finkelson (VSB No. 44059)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
finkelson@mcguirewoods.com

Brett C. Govett (Admitted *Pro Hac Vice*)
Jacqueline Baker (Admitted *Pro Hac Vice*)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com

Richard Zembek (Admitted *Pro Hac Vice*)
Eric Hall (Admitted *Pro Hac Vice*)
Daniel Leventhal (Admitted *Pro Hac Vice*)
Daniel Prati (Admitted *Pro Hac Vice*)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
richard.zembek@nortonrosefulbright.com
eric.hall@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
daniel.prati@nortonrosefulbright.com

Stephanie DeBrow (Admitted *Pro Hac Vice*)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
stephanie.debrow@nortonrosefulbright.com

James R. Batchelder (Admitted *Pro Hac Vice*)
Andrew T. Radsch (Admitted *Pro Hac Vice*)
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com

Josef Bryks Schenker (Admitted *Pro Hac Vice*)
ROPES & GRAY LLP
1211 Avenue of the Americas
New York, NY 10036
Telephone: (212) 596-9000
josef.schenker@ropesgray.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing to the following counsel of record:

Stephen Edward Noona
Kaufman & Canoles, P.C.
150 W Main St
Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
Email: senoona@kaufcan.com

Hannah Yunkyung Lee
James Russell Hannah
Kristopher Benjamin Kastens
Lisa Kobialka
Paul Joseph Andre
Christina Finn
Kramer Levin Naftalis & Frankel LLP (CA-NA)
990 Marsh Rd
Menlo Park, CA 94025
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
Email: hlee@kramerlevin.com
Email: jhannah@kramerlevin.com
Email: kkastens@kramerlevin.com
Email: lkobialka@kramerlevin.com
Email: pandre@kramerlevin.com
Email: cfinn@kramerlevin.com

*Attorneys for Centripetal Networks, Inc.*

By: */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
MCGUIREWOODS LLP
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com