IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CENTRIPETAL NETWORKS, INC.,          )
      Plaintiff,          )
                       )
           v.          )          Civil Action No. 2:21cv137 (RCY)
                       )
PALO ALTO NETWORKS, INC.,          )
      Defendant.          )
                       )

## MEMORANDUM OPINION

This matter comes before the Court on three motions: (1) Defendant's Motion to Stay Pending Resolution of *Inter Partes* Review Proceedings ("Motion to Stay") (ECF No. 67), (2) Plaintiff's Motion to Disqualify Counsel (ECF No. 73), and (3) Defendant's Motion to Dismiss (ECF No. 95). The motions have been fully briefed, and the Court dispenses with oral argument because the facts and legal contentions are adequately presented in the materials before the Court, and oral argument would not aid in the decisional process. E.D. Va. Loc. Civ. R. 7(J).

For the reasons stated herein, the Court will: (1) grant Defendant's Motion to Stay (ECF No. 67), (2) deny Plaintiff's Motion to Disqualify Counsel (ECF No. 73), and (3) deny without prejudice Defendant's Motion to Dismiss (ECF No. 95).

## I. BACKGROUND AND FACTUAL ALLEGATIONS

### A. Patent Infringement Allegations

Centripetal Networks, Inc. ("Plaintiff") was founded in 2009 as a network security company. (Am. Compl. ¶ 9, ECF No. 65.) Palo Alto Networks, Inc. ("Defendant") is also a cyber security company that focuses on computer network security. (*Id.* ¶ 55.) From January 21,

2020 to February 23, 2021, the United States Patent and Trademark Office issued thirteen patents[1] to Plaintiff. (*Id.* ¶¶ 13-39.)

Plaintiff alleges that several of Defendant's products have infringed on the thirteen patents owned by Plaintiff. (*Id.* ¶ 64.)  Plaintiff alleges that the infringing activity constitutes direct infringement, indirect infringement, and induced infringement. (*Id.* ¶¶ 64-65.)  As a result of this alleged infringing activity, Plaintiff brings twenty-six claims of patent infringement. (*Id.* ¶¶ 78-468.)  Plaintiff seeks relief in the form of monetary damages, treble monetary damages for willful infringement, and permanent injunctive relief to protect against future infringement. (*Id.* at 165-166.)  For the purposes of this opinion, it is not necessary to detail the factual allegations of the individual claims.

### B. *Inter Partes* Review Proceedings

The United States Code provides for a process of challenging patents and patent claims through the Patent Trial and Appeal Board ("PTAB").  A person who is not the owner of a patent may submit a petition for *Inter Partes* Review ("IPR") to PTAB, requesting that the patent or patent claim be canceled as unpatentable. 35 U.S.C. §§ 311, 318.  Once an IPR petition is submitted, the patent owner may file a preliminary response setting forth the reason why IPR should not be instituted. 35 U.S.C. § 313.  The PTAB cannot authorize review unless the petition and response shows "that there is a reasonable likelihood that the petitioner would prevail with respect to at least [one] of the claims challenged in the petition." 35 U.S.C. § 314.  If an IPR is instituted, the PTAB will issue a final written decision regarding the patentability of any patent claim challenged by the petitioner. 35 U.S.C. § 318.  Any party dissatisfied with the final written decision may appeal the decision. 35 U.S.C. § 319.  Similarly, any person who is not the owner

---

[1] The patents at issue in this action are U.S. Patent Nos. 10,542,028; 10,757,126; 10,530,903; 10,659,573; 10,567,437; 10,785,266; 10,567,343; 10,735,380; 10,503,899; 10,749,906; 10,091,246; 10,567,413; and 10,931,797. (Am. Compl. ¶¶ 13-39.)

of a patent may petition for Post-Grant Review ("PGR"). 35 U.S.C. § 321.  PGR is also a request

to determine that certain patent claims are unpatentable. *Id.*  PGR petitions are based on claims

that 35 U.S.C. § 282(b) renders the patent claim unpatentable, while IPR petitions are only based

on claims that 35 U.S.C. §§ 102 and 103 render the patent claim unpatentable. *See* 35 U.S.C. §§

311, 321.

From July to August 2021, Defendant filed thirteen IPR petitions and one PGR petition

with the PTAB, related to all thirteen patents at issue in this action. (August 4, 2021 Notice, ECF

No. 100.)  These petitions challenged all claims of all thirteen patents. (*Id.*)  As of the date of this

opinion, the PTAB has instituted review on five of the IPR petitions, declined to institute review

on six IPR petitions and the PGR petition, and has yet to reach a determination on two of the IPR

petitions. (February 23, 2022 Notice, ECF No. 274.)

### C. Silver Point Finance Transaction

The parties agree on the basic facts surrounding the Silver Point Finance Transaction

("SPF Transaction").  In December 2020, Plaintiff and Silver Point Finance ("SPF") engaged in

negotiations about a potential financing transaction between the two entities. (Mem. Supp. Mot.

Disqualify at 6, ECF Nos. 74, 77.)[2]  The parties differ on the exact nature of the potential

transaction.  Plaintiff describes it broadly as specialized financing based on Plaintiff's patents.

(*Id.*; Rogers Decl. ¶ 3, ECF Nos. 75, 78.)  Defendant describes it in more specific terms, claiming

the transaction was to provide Plaintiff with general purpose funds and funds to pay an insurance

premium on a policy covering a $2.6 to $3.5 billion judgment from a separate action ("the prior

litigation"). (Mem. Opp'n Mot. Disqualify at 7, ECF No. 108.)  Defendant claims that the policy

would pay out a certain amount if the judgment was reduced on appeal and claims that the

collateral on the loan was the insurance policy and proceeds from the judgment. (*Id.*)

---

[2] The Court employs the pagination assigned to all documents referenced herein by the CM/ECF docketing system.

The two entities executed a mutual non-disclosure agreement (the "NDA"), in which the parties agreed that they had a "common-interest with respect to the transaction contemplated [herein]." (NDA ¶ 16, ECF Nos. 76-1, 79-1.)  SPF agreed that any confidential information Plaintiff disclosed would be used solely for the evaluation of the potential transaction. (NDA ¶¶ 1,2,7; Mem. Supp. Mot. Disqualify at 6.)

The NDA was signed on December 24, 2020. (NDA at 7.)  On the same date, SPF retained the law firm of Ropes & Gray LLP ("Ropes & Gray") to represent it in negotiating the protentional transaction. (Mem. Opp'n Mot. Disqualify at 7.)  Ropes & Gray assembled a team of attorneys, which included James Batchelder ("Batchelder") and Andrew Radsch ("Radsch"), to evaluate the potential transaction. (Mem. Opp'n Mot. Disqualify at 7-8; Batchelder Decl. ¶ 11, ECF Nos. 106, 110.)

On December 28, 2020, Plaintiff, SPF, and several attorneys from Ropes & Gray participated in a teleconference related to the potential transaction. (Mem. Supp. Mot. Disqualify at 7; Rogers Decl. ¶ 5; Mem. Opp'n Mot. Disqualify at 9-10.)  The parties differ on what exactly was discussed on the teleconference.  Plaintiff claims that the parties discussed Plaintiff's patents, prospective litigation, and other highly confidential, privileged, and work product information. (Mem. Supp. Mot. Disqualify at 7.)  Defendant contends the Ropes & Gray attorneys sought confirmation that their understanding of the public record was correct given that their team had only been allotted one day to review the material and their understanding was based largely on oral summaries from associates. (Mem. Opp'n Mot. Disqualify at 10.)  Batchelder asked one question about whether he properly understood an argument made by the defendant in the prior litigation, but he was told by Plaintiff's transactional attorneys that they could not answer the question. (*Id.* at 10-11.)  The Ropes & Gray attorneys do not recall future litigation being discussed. (*Id.* at 11.)

Plaintiff set up a "data room" to store confidential information and provided Ropes & Gray with access to it. (Mem. Supp. Mot. Disqualify at 7.)  Defendant contends while two attorneys tested their access to the data room on December 30, 2020, they never accessed any documents in the data room, as SPF instructed Ropes & Gray to stop working on the transaction that exact same day. (Mem. Opp'n Mot. Disqualify at 12-13.)  Ropes & Gray never resumed working on the SPF Transaction. (*Id.* at 13.)

On May 5, 2021, Batchelder and Radsch each filed a Motion to Appear *Pro Hac Vice* on behalf of Defendant in this action. (ECF Nos. 44-45.)  Batchelder, and other Ropes & Gray attorneys, made appearances for Defendant in the IPR proceedings in July 2021. (Mem. Supp. Mot. Disqualify at 7.)  On July 14, 2021, Plaintiff contacted Ropes & Gray and requested that it withdraw from this action and the IPR proceedings. (*Id.* at 8.)  Ropes & Gray replied that it would not withdraw, that it had none of Plaintiff's confidential information, and that it would not use any documents containing Plaintiff's confidential information in the current action. (Lee Decl. Ex. 3, ECF Nos. 76-3, 79-3.)

On July 21, 2021, Plaintiff filed a Motion to Disqualify Counsel. (ECF No. 73.)  Plaintiff alleges that, in retaliation, Ropes & Gray filed two IPR petitions challenging two of the patents involved in the prior litigation on September 15, 2021. (Suppl. Br. at 3, ECF Nos. 161-2, 165-1.) The two patents are not at issue in the current action.

## II. PROCEDURAL HISTORY

On March 12, 2021, Plaintiff filed a Complaint. (ECF No. 1.)  On March 15, 2021, the action was transferred from the Alexandria Division to the Norfolk Division and was assigned to District Judge Arenda L. Wright Allen.  Defendant filed a Motion to Dismiss on April 30, 2021. (ECF No. 42.)  On June 9, 2021, the case was reassigned to the undersigned.  Plaintiff filed an Amended Complaint on July 9, 2021, and the Motion to Dismiss was terminated. (ECF No. 65.)

On July 9, 2021, Defendant filed a Motion to Stay Pending Resolution of *Inter Partes* Review Proceedings and Memorandum in Support. (ECF Nos. 67-68.)  On July 23, 2022, Plaintiff filed a Memorandum in Opposition. (ECF No. 84.)  Defendant filed a Reply on July 29, 2021. (ECF No. 90.)

On July 21, 2021, Plaintiff filed a Motion to Disqualify Counsel and a Memorandum in Support. (ECF Nos. 73-74.)  Defendant filed a Memorandum in Opposition on August 4, 2021. (ECF No. 101.)  Also, on August 4, 2021, Ropes & Gray filed an Opposition to Plaintiff's Motion to Disqualify Counsel. (ECF Nos. 108, 119.)  Plaintiff filed its Reply on August 10, 2021. (ECF No. 134.) On September 27, 2021, Plaintiff filed a Motion for Leave to File Supplemental Brief, Motion to Expedite Briefing and Hearing, and accompanying Memoranda in Support of each motion.[3] (ECF Nos. 161-164.)

On July 30, 2022, Defendant filed a Motion to Dismiss and a Memorandum of Support. (ECF Nos. 95-96.)  Plaintiff filed a Memorandum in Opposition on August 13, 2021. (ECF No. 141.)  Defendant filed its Reply on August 19, 2021. (ECF No. 147.)

Defendant filed its Answer on August 2, 2021. (ECF No. 98.)

### III. MOTION TO STAY PENDING RESOLUTION OF *INTER PARTES* REVIEW PROCEEDINGS

Courts typically consider three factors when determining whether to stay a case pending the outcome of administrative review of patents: (1) the stage of litigation, (2) whether the stay would simplify the issues before the court, and (3) whether the stay would unduly prejudice the non-moving party. *See, e.g., In re TLI Commc'n*, No. 1:14md2534, 2014 WL 12615711, at *1 (E.D. Va. Aug. 11, 2014); *NTP, Inc. v. T-Mobile USA, Inc.*, No. 3:07cv549, 2007 WL 3254796, at *1 (E.D. Va. Nov. 2, 2007); *NTP, Inc. v. Palm, Inc.*, No 3:06cv836, 2007 U.S. Dist. LEXIS

---

[3] *See infra* note 5.

97141, at *7 (E.D. Va. Mar. 22, 2007).  The Court finds that all three factors support issuing a stay in this action.

### A. The Stage of Litigation

Defendant argues that the stage of litigation weighs in favor of granting the stay. (Mem. Supp. Mot. Stay at 6, ECF No. 68.)  Defendant points to the motion being filed before a Rule 16(b) Conference, before a trial was scheduled, and when discovery was in its infancy. (*Id.* at 7.) It contends that the complexity of the case – over two-hundred claims and thirteen patents are at issue – supports a stay, as discovery would be resource intensive and duplicative of the IPR proceedings. (*Id.* at 9.)

Plaintiff's position is that the stage of the litigation weighs against granting a stay. (Mem. Opp'n Mot. Stay at 20, ECF No. 84.)  Plaintiff argues that it is premature to stay the case when the PTAB has not finished deciding whether to institute review of the challenged patents.[4] Further, it contends that a stay would be inappropriate as the parties have already begun engaging in discovery. (*Id.* at 20-21.)

District courts consider several factors when determining whether the stage of litigation favors a stay.  Courts often look at whether a trial date or *Markman* hearing has been set. *See Audio MPEG, Inc. v. Hewlett-Packard Co.*, No. 2:15cv73, 2015 WL 5567085, at *4 (E.D. Va. Sept. 21, 2015) (finding that a case was in its infancy when the court had not set dates for the trial, *Markman* hearing, or scheduling conference); *Centripetal Networks, Inc. v. Cisco Systems, Inc.*, No. 2:18cv94, 2019 WL 8888193, at *2-3 (E.D. Va. Feb. 25, 2019) (finding that the stage of litigation favored a stay despite the action being filed over a year prior, as no scheduling order had been entered, a *Markman* hearing had not been set, and a trial date had not been set).  Courts

---

[4] At the time Plaintiff's Memorandum in Opposition was filed, all the patent challenges were pending before the PTAB and no institution decisions had been rendered. (*See* Mem. Opp'n Mot. Stay at 20.)

also look to see how far the parties are into discovery. *See, e.g., VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1317 (Fed. Cir. 2014) (noting that whether the court viewed discovery when the motion was filed or when PTAB granted, the case was still in its infancy); *Segin Systems, Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 482 (E.D. Va. 2014) (denying a motion to stay when discovery was under way, a trial date had been set, and a scheduling order had already been issued).

The Court finds that the stage of the case favors issuing a stay.  At the initial pretrial conference, the parties agreed that the Court would review the Motion to Stay before issuing a scheduling order or a trial date. (ECF No. 192 at 4:11-25, 5:1-14.)  As such, the Court has not issued a scheduling order nor set a trial date.  While some discovery is underway, the Court has not set a deadline for Rule 26 disclosures or a deadline for the completion of discovery.

### B. Simplification of Matters at Issue

Defendant argues that the simplification factor weighs in favor of a stay, as its IPR petitions challenge all thirteen patents at issue and challenges every claim in each patent. (Mem. Supp. Mot. Stay at 9.)  Defendant contends that there is a high probability that the instituted reviews will result in a significant number of asserted claims being found invalid and thus would be removed from this action. (*Id.* at 10.)  Simplification would still be achieved even if the claims are not held to be unpatentable, as the record created during the proceedings would assist the Court in the claim construction phase of this action. (*Id.* at 12.)

Plaintiff contends that the stay would not result in simplification of the issue before the Court. (Mem. Opp'n Mot. Stay at 12-13.)  Plaintiff notes that it is still uncertain which patents will be instituted for review by the PTAB. (*Id.* at 13.)  Further, Plaintiff argues that since Defendant has not stipulated that the PTAB can decide all invalidity issues, Defendant will be able to raise defenses in litigation that will not be considered in the PTAB review. (*Id.* at 14.)  At

8

the time of filing, Plaintiff's position was that the PTAB was unlikely to institute review on any of Defendant's IPR petitions. (*Id.* at 15.)

Simplification of issues relates to the potential for the PTAB's review to remove claims from litigation.  This factor weighs strongest in favor of a stay when the petitioner challenges all of the patent claims brought by the plaintiff. *Audio MPEG, Inc.*, 2015 WL 5567085 at *3. However, there can still be simplification when some claims are not challenged or when the proceedings do not address every invalidity defense. *Id.* at *4 (finding that a stay would simplify issues even if it did not dispose of the entire case); *see Versata Software, Inc. v. Callidus Software, Inc.,* 771 F.3d 1368, 1371 (Fed. Cir. 2014) (opinion vacated as moot).  Courts often stay cases before the PTAB has decided whether to institute review. *See In re TLI Commc'n*, 2014 WL 12615711 at *1.

The Court finds that the simplification factor weighs in favor of a stay.  Defendant has petitioned for review of all claims in all thirteen patents at issue in this action. (August 4, 2021 Notice; ECF No. 157.)  As of the date of this opinion, the PTAB has instituted review of five petitions, denied review of seven petitions, and has yet to decide on two petitions. (February 23, 2022 Notice.)  Given the complexity of this action and the number of claims – over two hundred – at issue, PTAB review has the potential to greatly streamline this action and reduce the expense of this litigation.  Even if the PTAB were to only review the five petitions currently instituted, it would still simplify the issues in this action.

### C. Undue Prejudice to Non-Moving Party

Defendant argues that there is no undue prejudice for three primary reasons.  First, it contends that the "delay associated with the IPRs is statutorily limited and cannot itself constitute a basis for undue prejudice." (Mem. Supp. Mot. Stay at 14.)  Second, it diligently filed both the IPR petitions and the Motion to Stay after the initiation of this action. (*Id.* at 14-15.)  Third,

Plaintiff's lack of diligence in filing this action undetermined any claim that it would be unduly prejudiced by a stay. (*Id.* at 15.)

Plaintiff alleges that a stay will be highly prejudicial.  It argues that the Plaintiff and the Defendant are direct competitors, and the stay will give Defendant additional time to sell infringing products and increase its market share. (Mem. Opp'n Mot. Stay at 9-10.)  Given the difference in the size of the two parties, Plaintiff argues that it is at a distinct disadvantage if it has to compete against its own patents. (*Id.* at 10-12.)  Plaintiff contends that it was diligent in filing this action and that Defendant is simply trying to prolong this litigation. (*Id.* at 11-12.)

In determining whether a stay would be unduly prejudicial, courts often look at the timing of the stay request, the timing of the patent review request, the status of the PTAB process, and the relationship in the marketplace between the parties. *See BuySafe, Inc. v. Google, Inc.*, No. 3:13cv781, 2014 WL 2714137, at *6 (E.D. Va. June 16, 2014) (citing *Market-Alerts Pty. Ltd. v. Bloomberg Finance L.P.*, 922 F. Supp. 2d 486, 494 (D. Del. 2013)).  While competition between parties can weigh in favor of finding undue prejudice, such a claim is still likely to be stayed if the stay would not diminish money damages. *Centripetal Networks, Inc.*, 2019 WL 8888193, at *3.  Further, IPR proceedings are on a strict schedule for expeditious review, which limits prejudice. *Id.*

The Federal Circuit has addressed the issue of prejudice in cases where the non-moving party is a smaller company in direct competition with a larger company.  In *VirtualAgility Inc. v. Salesforce.com, Inc.*, the Federal Circuit reversed a district court order denying a motion for a stay, finding that the undue prejudice factor "at best, weigh[ed] slightly in favor of denying a stay" but was not sufficient to outweigh the other factors. 759 F.3d at 1320.  The court reasoned that the stay would not diminish monetary damages that the plaintiff would receive if its suit was successful. *Id.* at 1318.  The court noted that the plaintiff waited over a year after the issuance of

the patent at issue before it filed suit against the defendants. *Id.* at 1319.  Whereas, the

defendants sought patent review less than four months after the suit was initiated and moved for

a stay almost immediately after filing the petitions.  *Id.*

The Court finds that prejudice to Plaintiff is not substantial enough to overcome the two

prior factors. While the parties may be direct competitors and market share may be affected,

those reasons are not sufficient to outweigh the benefits of a stay.  As in *VirtualAgility*, a stay

would not diminish monetary damages. *See* 759 F.3d at 1318.  Further, Defendant filed all its

IPR Petitions within five months of the Complaint being filed. (*See* Compl; February 23, 2022

Notice.)  The Motion for Stay was filed within four months of the Complaint being filed. (*See*

ECF No. 1; ECF No. 67.)  This constitutes diligent action.  At most, this factor weighs slightly

against a stay; however, it does not outweigh other factors.  Therefore, the Court will grant the

Motion to Stay.

## IV. MOTION TO DISQUALIFY COUNSEL[5]

### A. Legal Standard

"It is the nondelegable duty of the Court to ensure high standards of professional conduct

in the management of cases before it and to prevent even the appearance of impropriety."

*Advanced Training Grp. Worldwide, Inc. v. ProActive Techs. Inc.*, 436 F. Supp. 3d 870, 874

(E.D. Va. 2020).  The Court must balance "the client's free choice of counsel against the

maintenance of the highest ethical and professional standards in the legal community." *Id.*  The

moving party bears a high standard of proof, as a motion to disqualify counsel can be used

---

[5] On September 27, 2021, Plaintiff filed a Motion for Leave to File Supplemental Brief (ECF No. 161) and a Motion
to Expedite Briefing and Hearing on Plaintiff's Motion to Disqualify (ECF No. 162).  Plaintiff attached its
Supplemental Brief to the Motion for Leave to File Supplemental Brief and filed a sealed version of the brief as
well. (ECF Nos. 161-1, 165-1.)  In ruling on the Motion to Disqualify Counsel (ECF No. 73), the Court has
considered the Supplemental Brief, and this opinion addresses its arguments and allegations. The Court will grant
the Motion for Leave to File Supplemental Brief (ECF No. 161).  However, the Court finds that additional briefing
and oral argument would not aid in the decisional process, so the Court will deny the Motion to Expedite Briefing
and Hearing on Plaintiff's Motion to Disqualify (ECF No. 162).

improperly for tactical advantage. *Rd. King Dev. v. JTH Tax LLC*, 540 F. Supp. 3d 554, 560 (E.D. Va. 2021) (citing *Tessier v. Plastic Surgery Specialists, Inc.*, 731 F. Supp. 724, 729 (E.D. Va. 1990)).  Disqualification of counsel is reserved for instances where a conflict of interest is actual or likely, not merely possible. *Advanced Training*, 436 F. Supp. 3d. at 874.  However, all doubts should be resolved in favor of disqualification. *United States v. Clarkson*, 567 F.2d 270, 273 n.3 (4th Cir. 1977).

### B. Discussion

Plaintiff requests that the Court disqualify the law firm of Ropes & Gray, alleging that their representation creates a conflict of interest that violates the ethical standards of the legal profession. (Mem. Supp. Mot. Disqualify at 5.)  Specifically, Plaintiff argues that Defendant's counsel has violated Virginia Rules of Professional Conduct 1.7 and 1.9(a) ("Rule 1.7" and "Rule 1.9(a)"), which create conflicts that are then imputed to Ropes & Gray by Virginia Rules of Professional Conduct 1.9(c) and 1.10 ("Rule 1.9(c)" and "Rule 1.10"). (*Id.* at 9.)

#### 1. Rule 1.7

Rule 1.7 pertains to concurrent conflicts of interests and delineates when an attorney should decline representation. It states:

> (a) . . . a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
> > (1) the representation of one client will be directly adverse to another client; or
> > (2) there is significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

Va. R. Prof'l Conduct Rule 1.7(a).

Plaintiff alleges that Batchelder, and potentially some of his colleagues, have concurrent conflicts of interest that prevent their representation of Defendant in this matter. (Mem. Supp. Mot. Disqualify at 5-6.)  Its argument rests on an "implied attorney-client relationship" theory

that renders Plaintiff a former client of Ropes & Gray under the rule. (*Id.* at 10.)[6]  Plaintiff

contends that the conduct, communications, and NDA created a fiduciary relationship that makes

them a former client of Ropes & Gray. (*Id.*)  This theory rests heavily on the two parties having a

"shared common legal interest." (*Id.* at 11-12.)

In the alternative, Plaintiff claims that it should at least be considered a "third person"

under Rule 1.7 to whom the Ropes & Gray attorneys would owe responsibilities. (*Id.* at 13.)  It

claims that these responsibilities arise from the NDA and materially limit Ropes & Gray's ability

to represent Defendant. (*Id.*)

Defendant argues that the NDA did not "transform[] a client's adversary in a

transactional negotiation into a client." (Mem. Opp'n Mot. Disqualify at 18.)  It contends that

Plaintiff did not have a reasonable belief that Ropes & Gray was acting as its attorney, given that

Plaintiff was represented by its own counsel during the SPF Transaction. (*Id.* at 19.)  Further,

Defendant contends that no information gained during the SPF Transaction is relevant to the

current action and that it does not possess any information from the SPF Transaction that could

disadvantage Plaintiff. (*Id.* at 20-21.)

### a. Former Client

Under Virginia law, an attorney-client relationship may be express or implied. *Atlas

Partners II, Limited Partnership v. Brumberg, Mackey & Wall, PLC*, No. 4:05cv1, 2006 WL

42332, at *5 (W.D. Va. Jan. 6, 2006) (citing *Nicholson v. Shockey*, 64 S.E.2d 813, 817 (Va.

1951)).  The relationship can exist without formalities and can be implied from the actions of the

parties. *Id.* (citing *Glenn v. Haynes*, 66 S.E.2d 509, 512 (Va. 1951)); *see Nicholson*, 64 S.E.2d at

817.  There must be an "indication that the advice and assistance of the attorney was sought and

---

[6] Plaintiff was never a client of Ropes & Gray under the usual sense of the word.  Neither party claims that Plaintiff ever paid Ropes & Gray for services or signed any agreement hiring Ropes & Gray to represent its interests.

received." *Id.* (quoting *Carstensen v. Chrisland Corp.*, 442 S.E.2d 660, 668 (Va. 1994)). The "client" must reasonably believe that there was an attorney-client relationship. *Advanced Training*, 436 F. Supp. 3d at 877. "[T]here must be more than the subjective beliefs and conclusory allegations by the client to prove the existence of an attorney-client relationship." *Atlas Partners II*, 2006 WL 42332, at *5.

In *Advanced Training Groups Worldwide, Inc. v. ProActive Technologies, Inc.*, the plaintiff moved to disqualify Miles & Stockbridge ("M&S") as defendant's counsel based on the firm's involvement in a joint venture between the plaintiff and the defendant. 436 F. Supp. 3d at 872. The two parties had formed a joint venture to bid on a government contract. *Id.* The memorandum of understanding ("MOU") for the joint venture specified that each party would be represented by separate counsel in connection to the MOU. *Id.* at 872-73. M&S acted as the defendant's separate counsel in that matter and took the lead in drafting the final version of the MOU. *Id.* at 873. The MOU did not lead to an operating agreement, and the joint venture broke apart under allegations of breaches of contract. *Id.* M&S then represented the defendant in the subsequent legal action over the alleged breaches of contract. *Id.* at 873-74. Plaintiff argued that by drafting the MOU for the joint venture, and drafting an unexecuted operating agreement, M&S had an attorney-client relationship with the plaintiff. *Id.* at 877-78. Plaintiff argued that disqualification of M&S in the breach of contract action was needed to avoid a substantial risk that its confidential information would be used materially advance the defendant's position in that action. *Id.* at 877. The court determined that the evidence that plaintiff and M&S had an attorney client-relationship was "ambiguous at best" and that plaintiff had failed to satisfy its burden to prove that an attorney-client relationship existed. *Id.* In denying the motion to disqualify counsel, the court relied on the MOU's statement that each party would be represented

by separate counsel and that M&S was explicitly hired to represent defendant in that matter. *Id.* at 877-78.

In this action, the wording of the NDA also makes it clear that no attorney-client relationship existed between Plaintiff and Ropes & Gray, despite Plaintiff's claim that this agreement renders it a client of Ropes & Gray. Just as in *Advanced Training*, Plaintiff had its own counsel when drafting the NDA and during negotiations in the SPF Transaction. (Mem. Opp'n Mot. Disqualify at 9.) In the disclosure section of the NDA, the agreement specifically references SPF's attorneys as "its attorneys" and not the transaction's attorneys, the joint venture's attorneys, or any other term or syntax denoting collective representation. (NDA ¶ 4.)

Moreover, in the *Advanced Training* case, the MOU was clearly substantially related to the litigation, while the NDA is not substantially related to the present action. In *Advanced Training*, the action arose out of alleges breaches of the MOU itself. 436 F. Supp. 3d at 873-74. This action for patent infringement is wholly unrelated to the financial transaction described in the NDA. If the MOU did not render the plaintiff in *Advanced Training* a client of M&S, the NDA surely does not render Plaintiff a client of Ropes & Gray.

Plaintiff misconstrues the nature of the NDA in an attempt to make that matter substantially related and to stretch the bounds of "common interest." Plaintiff contends that the common interest involved in the NDA was the patents and the belief that "[Defendant] would challenge them." (Mem. Supp. Mot. Disqualify at 6.) The common interest was not the defense of the patents, the common interest was reaching a financing agreement. In fact, the NDA specifically mentions that no licensing rights or intellectual property rights would be shared between Plaintiff and SPF. (NDA ¶ 1.)

Plaintiff also misconstrues the purpose of the SPF Transaction as a whole. It describes the goal of the SPF Transaction as "obtain[ing] a 'mutually agreeable' set of financing terms

15

where SPF and R&G would 'protect' [Plaintiff's] interest." (Suppl. Br. at 8.)  Plaintiff points to

proposed terms in which SPF would obtain an interest in the "monetization" of Plaintiff's patents

and would control the selection of Plaintiff's counsel in the litigation over the prior judgment.

(*Id.* at 10.)  This argument relies on out of context statements by SPF and mischaracterizations.

In an email to SPF, Jonathan Rogers, Plaintiff's Chief Operating Officer, expressed concern

about the term sheet provided by SPF. (Suppl. Decl. Rogers at 19, ECF Nos. 161-3, 165-2.)

Rogers' concern was that the terms sheet shifted the risk of lender non-performance to Plaintiff,

instead of it being borne by SPF, by having Plaintiff cover SPF's legal costs in pursuing the

transaction up until Plaintiff would agree to an exclusivity provision. (*Id.*)  In response, SPF

explained why it believed that provision was necessary and explained its position on other

provisions of the term sheet. (*Id.* at 16.)  One such provision was that in the event of a *major*

*default,* SPF would select counsel for the litigation over the judgment that was serving as

collateral to the deal. (*Id.* at 18) (emphasis added).  When SPF stated "[w]e have offered up some

compromises and structural ideas that we and Ropes & Gray believe appropriately *protects your*

*interests*," SPF clearly meant Plaintiff's financial and legal interests in the financing agreement.

(*Id.* at 16.)  It is not an agreement imposing an obligation on SPF and Ropes & Gray to protect

Plaintiff's interests, and it certainly is not an agreement to protect the validity of the patents.

Relatedly, the provision granting SPF an interest in Plaintiff's "monetization" of its patents does

not pertain to being involved in the monetization; it means that monetization of the patents

would serve as further collateral. (*Id.* at 24.)

　　　The purpose of the proposed agreement was to provide liquidity and security to Plaintiff

in the face of uncertainty, as its judgment from the prior litigation was under appeal. (*See*

Batchelder Decl. ¶ 3; Radsch Decl. ¶ 2, ECF Nos. 106, 115; Baard Decl. ¶ 3, ECF Nos. 106,

109.)  The SPF Transaction would provide Plaintiff with capital for general corporate purposes

and to pay premiums on an insurance policy that would cover the judgment, with said insurance policy serving as collateral for SPF's loan to Plaintiff. (*See* Radsch Decl. ¶ 2, Batchelder Decl. ¶ 3.)  Essentially, Plaintiff wanted safer and quicker access to capital instead of relying on the inherently uncertain nature of a large judgment undergoing an appeal.  This is very different than an agreement for patent protection.

Plaintiff stretches the common interest doctrine beyond its limits.  Under this interpretation, any negotiation in a business transaction, however brief, between two businesses would give the two entities a "common interest," as the very purpose of negotiation is to reach an agreement.  To find that an attorney representing party one in a business transaction with party two renders party two a client of that attorney is simply untenable.  The cases cited by Plaintiff are inapposite to the present situation and do not lend support to this contention.

*GTE North, Inc. v. Apache Products Co.* involved the cost allocation of a superfund site. 914 F. Supp. 1575, 1577 (N.D. Ill. 1996).  The firm that the plaintiff sought to disqualify had been involved in an investigation that sought to determine who were responsible parties, the legal merits of pursuing an action against the responsible parties, and the legal strategy for pursuing those actions. *Id.* at 1578.  A lawsuit was then filed against the companies that the investigation determined to be the responsible parties, and the firm defended one of those companies in the litigation. *Id.*  Unsurprisingly, the court found that the sharing of confidential information about whether that defendant was liable, whether a suit against that defendant had merit, and the strategies to be used in a suit against that defendant was a conflict of interest preventing the firm from then representing that defendant.

*Westinghouse Electric Corp. v. Kerr-McGee Corp.* involved the issue of whether a law firm representing a trade association had an attorney-client relationship with the association's members. 580 F.2d 1311, 1312 (7th Cir. 1978).  The court stated that the "professional

relationship for purposes of the privilege for attorney-client communication 'hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice.'" *Id.* at 1319 (citation omitted).  The court found that an attorney-client relationship had arisen because the trade association's letter to members stated that the law firm was "acting as an independent special counsel for [the trade association]," and the letter employing the firm stated "your firm will, of course, act as an independent expert counsel" for the trade association. *Id.* at 1314, 1320.  Therefore, it was reasonable for the members to believe that, when submitting confidential information to the law firm, they were submitting information to *their* attorney. *See id.* at 1321.  Conversely, in the SPF Transaction, Plaintiff had its own attorneys and was aware that Ropes & Gray was representing SPF.

The interactions between Plaintiff and Ropes & Gray are not sufficient to constitute an implied attorney-client relationship.  Therefore, Plaintiff is not a "former client" of Ropes & Gray for purposes of the Virginia Rules of Professional Conduct.

### b. Third Person

Plaintiff alleges that if it is not considered a former client of Ropes & Gray, it should be considered a third person to whom the firm "had obligations pursuant to the NDA, such that their representation of [Defendant] is now materially limited by their obligations to [Plaintiff]." (Mem. Supp. Mot. Disqualify at 13.)  Plaintiff argues that Ropes & Gray is obligated to not use any confidential information gained from the SPF Transaction for purposes outside of the SPF Transaction. (*Id.* at 11-12.)  Further, the confidential information must "remain confidential and retain any applicable privileges and immunities." (*Id.* at 12.)

Ropes & Gray responds that it never received any confidential information, so any limitations from the NDA would not materially affect its ability to represent Defendant. (Mem. Opp'n Mot. Disqualify at 21.)  Ropes & Gray claims that none of its attorneys had seen the NDA

when it agreed to represent SPF, and it is clear that none of its attorneys ever signed it. (*Id.* at 13-14; *see* NDA at 7.)  Further, Ropes & Gray argues that since the NDA's "Term of Confidentiality" expired two years after the signing of the NDA, it is unlikely that Plaintiff would share confidential information about future patent litigation. (*Id.* ¶ 9.)

The moving party bears the burden of proving that disqualification is warranted. *Carlisle v. Allianz Life Ins. Co. of N. Am.*, No. 2:19cv565, 2021 WL 5104703, at *2 (E.D. Va. Sept. 13, 2021).  Conclusory allegations are not a sufficient basis to grant a motion to disqualify. *See In re Johns-Manville Corp.*, 43 B.R. 765, 769 (S.D.N.Y. 1984).

The declarations from Rogers contain conclusory allegations that are unsupported by relevant details.  His first claim is that he verbally briefed Ropes & Gray on the "confidential, privileged and work product information about [Plaintiff's] patents" and discussed prospective litigation against Defendant. (Rogers Decl. ¶ 5.)[7]  He claims Batchelder "asked [him] specific questions about [Plaintiff's] patents and patent claims." (*Id.*)  However, he provides no details on which patents, what the questions were, or the nature of his responses.  Furthermore, he does not explain why prospective litigation would be relevant to the SPF Transaction, as the transaction dealt with a judgment from prior litigation that would not be impacted by litigation against Defendant.  His second claim is that Ropes & Gray attorneys had access to a "data room [with] highly sensitive confidential, privileged and work product documents." (*Id.*)  However, Plaintiff provides no evidence that the attorneys ever accessed such documents.  There is no server log, audit trial, login records, or download records to suggest that such information was accessed.[8]

---

[7] In its Supplemental Brief, Plaintiff alleged that the two patents challenged in the September 15, 2021 IPR petitions were discussed at this meeting. (Suppl. Br. at 3; Suppl. Decl. Rogers ¶ 2.)  However, neither Plaintiff nor Rogers ever discussed what information was shared or how that information was used in the IPR petitions.

[8] In Rogers' Supplemental Declaration, he reiterated that he uploaded privileged documents into the data room, such as a brief that explained the challenges to the patents in the prior litigation. (Suppl. Decl. Rogers ¶ 6.)  However, once again, Plaintiff provided no allegations or evidence to dispute Ropes & Gray's claim that they never accessed or used documents in the data room.

In comparison, the declarations of the Ropes & Gray attorneys are detailed and provide specific information related to the allegations.  For example, Batchelder describes the specific task the firm was assigned: "provide [an] assessment . . . regarding the likely outcome of the appeal of the [prior litigation], and to advise on how possible appellate outcomes in the [prior litigation] would affect coverage under the insurance policy and Silver Point's recovery of its investment." (Batchelder Decl. ¶ 4.)  Further, Batchelder explains the steps the attorneys took to carry out that task, which almost entirely dealt with analyzing publicly available information. (*Id.* ¶ 5.)  A significant fact, which Plaintiff does not address, is that the appeal of the prior litigation did not contest the validity of any of Plaintiff's patents. (*Id.* ¶ 9.)  So, there would be no reason to analyze their validity as part of the SPF Transaction.  The Ropes & Gray attorneys claim that there was no discussion of Defendant or any future litigation. (Baard Decl. ¶ 5.)  In contrast to Rogers' claim that Batchelder asked several specific claims about the patents, Batchelder claims that he only asked one question in that meeting and it related to whether he properly understood an argument made by opposing counsel in the prior litigation and that the attorneys representing the Plaintiff were unable to answer the question as they were transactional attorneys not litigation attorneys. (*Id.* ¶ 12; *see* Rogers Decl. ¶ 5; Radsch Decl. ¶ 11; Walsh Decl. ¶ 4, ECF Nos. 106, 116.)  As for the data room, two attorneys stated that they tested their login information and did not access any information. (Chow Decl. ¶ 6, ECF Nos. 106, 111; McLaughlin Decl. ¶ 6, ECF Nos. 106, 114).  The other Ropes & Gray attorneys have stated that they never even attempted to access the data room. (Batchelder Decl. ¶ 18; Katz Decl. ¶ 4, ECF Nos. 106, 112; Klingbaum Decl. ¶ 5, ECF Nos. 106, 113; Baard Decl. ¶ 6; Welsh Decl. ¶ 6; Radsch Decl. ¶ 12; Yin Decl. ¶ 5, ECF Nos. 106, 117.)  Further, Ropes & Gray has asserted that it has none of Plaintiff's confidential information and will not use any documentation referenced in the NDA in the current litigation. (Lee Decl. Ex. 3.)

The Court finds that Plaintiff has not met its burden to prove that it is a third person to which Ropes & Gray owes an obligation that would materially affect its ability to represent Defendant in this action.

### 2. Rule 1.9(a)

Rule 1.9(a) pertains to representing a client in a matter that is substantially related to a matter in which the attorney represented a different client. It states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless both the present and former client consent after consultation.

Va. R. Prof'l Conduct Rule 1.9(a).

Once again, Plaintiff's argument rests on it being considered to have some form of attorney-client relationship with the Ropes & Gray attorneys. (Mem. Supp. Mot. Disqualify at 14.) If that is established, Plaintiff argues that its interests are clearly adverse to Defendant's interests. (*Id.*) It alleges that it shared confidential information related to the filing of the current action and that the patents at issue in this action are the same as those involved in the SPF Transaction, which renders that information substantially related to this action. (*Id.* at 14-15.) Further, Plaintiff has not consented to Ropes & Gray's representation of Defendant. (*Id.* at 15.)

As discussed above, Plaintiff cannot be considered a former client of Ropes & Gray. Since it is not a former client, there is no violation of Rule 1.9(a), and the rule does not serve as a basis to disqualify any Ropes & Gray attorneys from representing Defendant in this action.

### 3. Rules 1.9(c) and 1.10

Rules 1.9(c) and 1.10 relate to how an individual attorney's conflict of interest can impact the firm's representation of a different client. Rule 1.9(c) states:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

21

> (1) use information relating to or gained in the course of the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Va. R. Prof'l Conduct Rule 1.9(c).  The relevant part of Rule 1.10 states:

> (a) While lawyers are associated in a firm, none of them shall represent a client when the lawyer knows or reasonably should know that any one of them practicing alone would be prohibited from doing so by Rules 1.6, 1.7, 1.9, or 2.10(e).

Va. R. Prof'l Conduct Rule 1.10(a).

Plaintiff argues that the alleged conflicts of interests under Rules 1.7 and 1.9(a) make it impossible for Ropes & Gray, as a firm, to represent Defendant. Mem. Supp. Mot. Disqualify at 16-18.)  It contends that there is no way for Batchelder's colleagues to "unlearn" the protected information that he may have shared with them. (*Id*. at 16.)  Thus, no attorney at Ropes & Gray can represent Defendant.  Further, the alleged violations of Rules 1.7 and 1.9 would be imputed onto the firm by Rule 1.10, further supporting disqualification. (*Id.* at 16-17.)

As discussed above, the Court finds that there are no violations of Rules 1.7 and 1.9(a). Therefore, there are no violations of Rules 1.9(c) and 1.10, as Plaintiff is not a former client, and there are no conflicts of interest to impute onto Ropes & Gray.  As such, the Court will deny the Motion to Disqualify Counsel.[9]

### V. MOTION TO DISMISS

When staying a case pending PTAB review, courts often deny motions to dismiss without prejudice to be refiled after the stay has been lifted. *See, e.g.*, *Omnitracs, LLC v. Platform Sci., Inc.*, No. 20cv0958, 2021 WL 857005, at *8-9 (S.D. Cal. Mar. 8, 2021) (denying a

---

[9] The Court notes that the PTAB reached the same decision, on similar grounds, on Plaintiff's motion to disqualify counsel in the IPR proceeding. (ECF Nos. 267, 269-1.)

motion to dismiss without prejudice as PTAB review could simplify issues in the motion to dismiss); *Integrated Claims Sys., LLC v. Old Glory Ins. Co.*, No. 2:15cv412 & 2:15cv427, 2020 WL 1027771, at *1, 3 (E.D. Tex. Mar. 3, 2020) (denying a motion to dismiss without prejudice until stay has been lifted); *Signature Sys., LLC v. Am. Express Co.*, No. 15-20063, 2018 WL 6963904, at *2 (S.D. Fla. May 9, 2018) ("In light of the Court's stay, [the defendant's] motion to dismiss is denied without prejudice and may be renewed at a later time, if appropriate."); *454 Life Scis. Corp. v. Ion Torrent Sys.*, No. 15-595, 2016 WL 6594083, at *6 (D. Del. Nov. 7, 2016) (denying a motion to dismiss without prejudice as moot "in light of the Court's decision to stay the matter" pending PTAB review).  Given that several of the patents at issue may be invalidated by IPR process, thus simplifying the issues present in the Motion to Dismiss, the Court will deny the Motion to Dismiss without prejudice, and it may be refiled after the stay has been lifted.

## VI. CONCLUSION

For the foregoing reasons, the Court will: (1) grant Defendant's Motion to Stay Pending Resolution of *Inter Partes* Review Proceedings (ECF No. 67), (2) deny Plaintiff's Motion to Disqualify Counsel (ECF No. 73), and (3) deny without prejudice Defendant's Motion to Dismiss (ECF No. 95).

An appropriate Order shall issue.

/s/

Roderick C. Young
United States District Judge

Richmond, Virginia
Date: March 1, 2022