**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2:21-cv-00137 (RCY-RJK) |
| | ) | |
| v. | ) | |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFF CENTRIPETAL NETWORKS, INC.'S
REPLY IN SUPPORT OF ITS MOTION TO LIFT
THE STAY OF THE CASE AS TO SIX ASSERTED PATENTS
<u>THAT ARE NOT THE SUBJECT OF IPR PROCEEDINGS</u>**

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   ALL THREE FACTORS WEIGH IN FAVOR OF LIFTING THE STAY ...................... 1

    A.    The IPRs Will Not Simplify Issues Related to PAN's Willful Infringement
        of Non-Instituted Patents ........................................................................3

        1.    There Is No Evidence That the Pending IPRs Will Streamline the
            Issues Regarding the Non-Instituted Patents ................................. 4

        2.    PAN's Cited Cases Do Not Support Maintaining the Stay........................ 6

    B.    A Continued Stay Results in Significant Prejudice to Centripetal ...........................9

        1.    Evidence in this Case and Publicly Available Information
            Demonstrate that Centripetal and PAN Are Competitors......................... 10

        2.    Centripetal Diligently Filed This Case to Expeditiously Resolve Its
            Infringement Claims Against PAN .......................................................... 13

    C.    The Parties Engaged In Significant Discovery in Preparation for Trial ...............13

III.  CONCLUSION................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACQUIS, LLC v. EMC Corp.*,
　109 F. Supp. 3d 352 (D. Mass. 2015) ......................................................................7

*Audio MPEG, Inc. v. Hewlett-Packard Corp.*,
　No. 2:15-cv-73, 2015 WL 5567085 (E.D. Va. Sept. 15, 2015) ...........................6, 13

*Centripetal Networks, Inc. v. Cisco Sys, Inc.*,
　No. 2:18-cv-94, 2020 WL 863976 (E.D. Va. Feb. 20, 2020) ...................................4

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
　492 F. Supp. 3d 495 (E.D. Va. 2020) ...................................................................12

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
　No. 2:18cv94, 2019 WL 8888195 (E.D. Va. Sept. 18, 2019)...............................1, 3

*Core Optical Techs., LLC v. Fujitsu Network Commc'ns, Inc.*,
　No. 16-00437, 2016 WL 7507760 (C.D. Cal. Sept. 12, 2016) .................................6

*CyWee Grp. Ltd. v. Samsung Elecs. Co.*,
　No. 2:17-cv-00140-WCB-RSP, 2019 WL 11023976 (E.D. Tex. Feb. 14, 2019).....................6

*Depuy Orthopaedics, Inc. v. Orthopaedic Hosp.*,
　No. 3:12-cv-299-CAN, 2016 WL 96164 (N.D. Ind. Jan. 8, 2016)............................5

*Evans v. Trinity Indus., Inc.*,
　148 F. Supp. 3d 542 (E.D. Va. 2015) .....................................................................2

*Evolutionary Intelligence, LLC v. Millenial Media, Inc.*,
　No. 5:13-cv-04206-EJD, 2014 WL 2738501 (N.D. Cal. June 11, 2014) .............7, 8

*Finjan, Inc. v. ESET, LLC*,
　No. 17-cv-00183-CAB-BGS, 2018 WL 2095734 (S.D. Cal. May 7, 2018)............................3

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
　No. 18-cv-452-WCB, 2019 WL 3943058 (D. Del. Aug. 21, 2019) ..........................6

*Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*,
　989 F.3d 1375 (Fed. Cir. 2021).............................................................................2

*Nasdaq, Inc. v. Miami Int'l Holdings,Inc.*,
　No. 3:17-cv-6664-BRM-DEA, 2020 WL 8920588 (D.N.J. Mar. 10, 2020) ............................8

*Neodron, Ltd. v. Lenovo Group, Ltd.*,
No. 19-CV-05644-SI, 2020 WL 6585797 (N.D. Cal. Nov. 10, 2020) ....................................8

*Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*,
868 F.3d 1013 (Fed. Cir. 2017).................................................................................................5

*Personalized Media Commc'ns, LLC v. Apple, Inc.*,
No. 2:15-cv-01366-JRG-RSP, Dkt. No. 373 (E.D. Tex. June 18, 2020).................................8

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
No. 15-cv-04854-MMC, 2019 U.S. Dist. LEXIS 25375 (N.D. Cal. Feb. 14,
2019) ........................................................................................................................................9

*Pragmatus AV, LLC v. Yahoo! Inc.*,
No. C-13-1176 EMC, 2014 WL 1922081 (N.D. Cal. May 13, 2014) .....................................5

*Pulse Elecs. v. UD Elec. Corp.*,
No. 3:18-cv-00373-BEN-MSB, Dkt. No. 52 (S.D. Cal. Nov. 18, 2019)..................................8

*Segin Sys., Inc. v. Stewart Title Guar. Co.*,
30 F. Supp. 3d 476 (E.D. Va. 2014) ......................................................................................13

*Symantec Corp. v. Zscaler, Inc.*,
No. 17-cv-04426-JST, 2018 WL 3539267 (N.D. Cal. July 23, 2018)..................................3, 6

*Versata Software, Inc. v. Callidus Software, Inc.*,
771 F.3d 1368 (Fed. Cir. 2014)................................................................................................6

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307, 1318 (Fed. Cir. 2014)...............................................................................12, 13

*Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*,
200 F.3d 795 (Fed. Cir. 1999)..................................................................................................5

**Statutes**

35 U.S.C. 314(d) ...............................................................................................................................2

## I.      INTRODUCTION

The Patent Trial and Appeal Board's ("PTAB") recent denial of Defendant Palo Alto Networks, Inc.'s ("PAN") requests for *inter partes* review of six asserted patents ("Non-Instituted Patents") and Plaintiff Centripetal Networks, Inc.'s ("Centripetal") offer to dismiss the remaining seven patents asserted in the case justify lifting the stay.  Centripetal faces significant prejudice while PAN continues to willfully infringe Centripetal's patents and there is no reason to wait for at least another ten months (potentially years, pending any appeals) for resolution on the seven patents pending in IPR that Centripetal will dismiss if the stay is lifted.  Witnesses' testimony will become more difficult to secure, and evidence of PAN's willful infringement will grow stale over that time.  Further, the pending IPRs will not simplify the issues in this litigation because the instituted patents will be dismissed if the stay is lifted.  For these reasons, Centripetal respectfully requests that the Court lift the stay as to the six Non-Instituted Patents: U.S. Patent Nos. 10,567,343 ("the '343 Patent"), 10,567,437 ("the '437 Patent"), 10,785,266 ("the '266 Patent"), 10,735,380 ("the '380 Patent"), 10,659,573 ("the '573 Patent"), and 10,931,797 ("the '797 Patent").

## II.     ALL THREE FACTORS WEIGH IN FAVOR OF LIFTING THE STAY

As set forth in Centripetal's opening brief (Dkt. No. 302, "Motion"), all three factors in deciding whether to lift a stay weigh in favor of granting Centripetal's Motion: (1) the pending IPRs of seven asserted patents will not simplify the issues in the case as to the Non-Instituted Patents, (2) there is significant prejudice to Centripetal by a stay, and (3) a stay, given the significant discovery to date, unreasonably impedes the efficient adjudication of Centripetal's claims.  *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18cv94, 2019 WL 8888195, at *2-4 (E.D. Va. Sept. 18, 2019) (granting in part motion to lift stay and reopen the case as to "the

patents and claims not currently subject to IPR" because pending IPRs would "not simplify the issues . . . to such a degree that a stay, which could last years, is appropriate").

PAN's attempt to mischaracterize Centripetal's Motion to lift the stay as a "motion for reconsideration" does not impact the analysis here because there are material changed circumstances.  Since PAN filed its original motion to stay in July 2021, the parties engaged in extensive written discovery efforts, and the PTAB issued decisions declining to institute IPR proceedings on six of the asserted patents.  Motion at 10-11; *Evans v. Trinity Indus., Inc.*, 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (evaluating new facts since the movant's "***original submission***" in deciding a motion for reconsideration) (emphasis added).  Now that the PTAB issued its remaining determinations whether to institute an IPR for the all the asserted patents on March 15, 2022, which was after the Court entered a stay on March 1, 2022, Centripetal is willing to dismiss without prejudice the patents for which the PTAB instituted IPRs if a stay is lifted.  Motion at 5, 8.  Even more recently, on May 5, 2022, the PTAB denied PAN's requests for rehearing of several Non-Instituted Patents.[1]  Declaration of Christina M. Finn In Support of Centripetal's Reply in Support of Its Motion to Lift the Stay of the Case as to Six Asserted Patents That Are Not the Subject of IPR Proceedings ("Finn Decl."), Exs. 1-2.  PAN has no right to appeal the decisions to deny institution.  35 U.S.C. 314(d).

---

[1] On May 5, 2022, the PTAB denied PAN's three requests for rehearing as to two Non-Instituted Patents (the '343 and '380 Patents).  The mandamus relief PAN is seeking regarding two additional Non-Instituted Patents (the '573 and '797 patents) is an extreme remedy and rarely granted.  *See, e.g.*, *Mylan Labs. Ltd. v. Janssen Pharmaceutica, N.V.*, 989 F.3d 1375, 1381 (Fed. Cir. 2021) (denying requested mandamus relief requiring the PTO to reverse its denial of an IPR petition), *cert. denied*, 142 S. Ct. 874 (2022).  PAN has not established any reason why it is likely to be granted here.  Moreover, the requested mandamus relief does not require that the PTAB reverse its decision to decline to institute the IPR.  Finn Decl., Ex. 3.

**A.      The IPRs Will Not Simplify Issues Related to PAN's Willful Infringement of Non-Instituted Patents**

The pending IPRs will not simplify issues for the Non-Instituted Patents.  PAN's argument that the records from the IPR proceedings are relevant to the Non-Instituted Patents does not square with the way patents are regularly prosecuted and enforced.  If such an argument were accepted, that would mean that all patent litigations could be stayed until the completion of any ongoing prosecution of any related patent application before the Patent Office or any PTAB review of a related issued patent.  That is simply not the law nor how patent litigation is conducted.  Asserted patents are often litigated while there is ongoing patent prosecution of related patent applications, where the intrinsic record for the related patents may grow.  Patents asserted in litigation are also often related to patents, or under common ownership of patents, that are being challenged before the PTAB at the same time that they are being litigated.  *See Cisco Sys.*, 2019 WL 8888195, at *4 (stay was lifted and litigation proceeded on patents that were not subject to IPRs despite commonly owned patents undergoing IPR proceedings); *Finjan, Inc. v. ESET, LLC*, No. 17-cv-00183-CAB-BGS, 2018 WL 2095734, at *2 (S.D. Cal. May 7, 2018) (granting stay of litigation as to single asserted patent in IPR but denying stay as to five asserted patents because "holding up litigation on five other patents while [the Court] awaits a determination from PTAB on the only other remaining patent at issue in the case" not "a judicious use of [the Court's] or the parties' time and resources.").  Indeed, in one of the cases PAN relies on, a litigation proceeded as to six asserted patents, while a seventh was stayed pending an instituted IPR.  *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 3539267, at *1, *3 (N.D. Cal. July 23, 2018).  If these patent litigations were forced to be delayed until the completion of all ongoing prosecution of related patents or PTAB challenges, patent litigation would take place years after the infringing activity––or possibly even after it ended—particularly in cases involving technology that changes rapidly.

Such a notion is contrary to many of the principles of patent law, including the right to obtain a permanent injunction of an issued patent, putting a party on actual notice of infringement by filing a complaint, and the limitation on collecting damages more than six year prior to the lawsuit.

### 1. There Is No Evidence That the Pending IPRs Will Streamline the Issues Regarding the Non-Instituted Patents

The pending IPRs will have little to no impact on the Non-Instituted Patents. Indeed, PAN tacitly admits that three of the Non-Instituted Patents, the '573, '797 and '343 Patents, will not be impacted by the pending IPRs, as its opposition is silent as to how the IPRs will allegedly simplify the litigation for these three patents. Further, it is undisputed that two of the Non-Instituted Patents, the '343 and '380 Patents, are not from the same patent families as the patents pending IPR, and thus *do not* share common specifications with any of the patents in IPR proceedings.

Thus, PAN is left with its conclusory argument that the PTAB's construction of three claim terms from one instituted patent, U.S. Patent No. 10,749,906 ("the '906 Patent") (Dkt. No. 312, ¶ 5),[2] will somehow be relevant to a few of the Non-Instituted Patents. This claim is a red herring because two of these terms, "packet security gateway" and "security policy management server" have already been construed, as explained below.[3] Dkt. No. 311 ("Opp.") at 4-5.

In *Centripetal Networks, Inc. v. Cisco Sys, Inc.*, this Court previously construed "packet security gateway" and "security policy management server." No. 2:18-cv-94, 2020 WL 863976, at *5 (E.D. Va. Feb. 20, 2020) (adopting constructions of "packet security gateway" and "security policy management server" agreed to by the parties). In the pending '906 Patent IPR proceedings, PAN proposed that the PTAB adopt the same constructions from the *Cisco* case, and the PTAB

---

[2] The instituted '906 Patent is related to two Non-Instituted Patents, the '266 and '437 Patents.
[3] "Packet security gateway" is recited in some of the claims of three of the six Non-Instituted Patents, the '266, '380 and '437 Patents. "Security policy management server" and "malicious traffic information" only appear in one Non-Instituted Patent, the '266 Patent.

agreed to do so in its institution decision.  Finn Decl., Ex. 4.  Thus, the parties, this Court, and the PTAB have all agreed on constructions for those terms such that the IPR proceedings will be unlikely to provide any additional guidance to the construction of the terms here, and PAN would likely be precluded from arguing a different construction than the one it proposed and the PTAB adopted.

While the PTAB has not construed the third term, "malicious traffic information," from the claims of one Non-Instituted Patent (the '266 Patent), there are no guarantees that the PTAB will construe such a term and, on balance, hoping that the PTAB will construe a single claim term in an IPR of a different patent does not justify a stay.  Even if the PTAB provides a construction at the time of its Final Written Decision (and it is not obligated to do so unless that term is in dispute in the IPR), this Court is not required to give deference.  Motion at 7; *Nidec Motor Corp. v. Zhongshan Broad Ocean Motor Co.*, 868 F.3d 1013, 1017 (Fed. Cir. 2017) (citing *Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 803 (Fed. Cir. 1999) ("[W]e need only construe terms 'that are in controversy, and only to the extent necessary to resolve the controversy.'")); *Pragmatus AV, LLC v. Yahoo! Inc.*, No. C-13-1176 EMC, 2014 WL 1922081, at *4 (N.D. Cal. May 13, 2014) ("[T]his Court owes no deference to the PTAB's claim construction done as part of an inter partes review.") (citations omitted); *see also Depuy Orthopaedics, Inc. v. Orthopaedic Hosp.*, No. 3:12-cv-299-CAN, 2016 WL 96164, at *5 (N.D. Ind. Jan. 8, 2016) (same).  Thus, there is nothing requiring this Court to use the PTAB's construction, if there is one, or from handling construction of the term based on its own review of the intrinsic record.

PAN also makes a conclusory argument that "prior art" and "secondary considerations" from the IPRs will be relevant to issues in the litigation.  Opp. at 4.  However, PAN does not provide *any* explanation about how prior art and secondary considerations for different patents

pending in the IPRs have any relationship or impact on the Non-Instituted Patents, particularly those that are unrelated and involve different inventions. Thus, PAN's argument that these factors necessarily simplify issues for Non-Instituted Patents is unsupported.

### 2. PAN's Cited Cases Do Not Support Maintaining the Stay

PAN's hotchpotch string citations to cases that are not factually similar also do not support maintaining a stay. *See id.* at 4. PAN's cases fall into three categories: (1) the Court entered a stay before the PTAB issued any institution decisions for the asserted patents, (2) the PTAB instituted IPRs for all asserted patents, but not all of the asserted claims of each patent, and (3) the PTAB instituted IPR on some but not all of the asserted patents. The first two categories are irrelevant to the analysis here. In the first category of cases that PAN cites (where the PTAB had not yet issued decisions as to whether to institute IPR review), there remained the possibility in those cases that the PTAB would institute on all asserted patents and that the IPR proceedings could thus streamline the litigation for all asserted patents. *See id.* at 3-4 (citing *Core Optical Techs., LLC v. Fujitsu Network Commc'ns, Inc.*, No. 16-00437, 2016 WL 7507760, at *1 (C.D. Cal. Sept. 12, 2016); *Audio MPEG, Inc. v. Hewlett-Packard Corp.*, No. 2:15-cv-73, 2015 WL 5567085, at *4 (E.D. Va. Sept. 15, 2015); *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-cv-452-WCB, 2019 WL 3943058, at *9 (D. Del. Aug. 21, 2019)). That is not the case here, where the PTAB has declined to institute IPR of nearly half of the asserted patents, such that there is nothing in the litigation that could be streamlined given Centripetal's offer to dismiss the IPR-pending patents.

In the second category of cases that PAN cites, claims of every asserted patent were subject to IPR proceedings, such that the intrinsic record for each asserted patent itself remained open. *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1370 (Fed. Cir. 2014), *vacated as moot*, 780 F.3d 1134 (Fed. Cir. 2015); *CyWee Grp. Ltd. v. Samsung Elecs. Co.*, No. 2:17-cv-

00140-WCB-RSP, 2019 WL 11023976, at *1 (E.D. Tex. Feb. 14, 2019) (Bryson, J.).  Again, that is not the case here because all six Non-Instituted Patents survived PTAB scrutiny in their entirety and the intrinsic record for each of them is set.

The third category of cases that PAN cites consists of one case (*Symantec*) which supports lifting the stay in this case, and two cases (*ACQUIS* and *Evolutionary Intelligence*) which are distinguishable on their facts.  In *Symantec*, the defendant sought and the court granted a stay as to the only asserted patent that was the subject of an IPR proceeding, not the remaining six asserted patents.  *Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 WL 3539267, at *1, *3 (N.D. Cal. July 23, 2018).  Similarly, in this litigation, the Court should lift the stay as to asserted patents that are not the subject of IPR proceedings.

PAN's citations to *ACQUIS* and *Evolutionary Intelligence* are inapposite because in those cases, the patentee had not offered to dismiss the instituted patents if the stay was lifted.  *See ACQUIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352 (D. Mass. 2015); *Evolutionary Intelligence, LLC v. Millenial Media, Inc.*, No. 5:13-cv-04206-EJD, 2014 WL 2738501 (N.D. Cal. June 11, 2014).  Further, in *ACQUIS*, claim terms of the instituted patents overlapped with *all* non-instituted patent claims.  109 F. Supp. 3d at 357-58.  Thus, in *ACQUIS*, the pending IPRs had the potential to impact all of the asserted patents.  Here, as discussed above, PAN points to only three claim terms which do not overlap with *all* Non-Instituted Patents and will not simplify the issues—this alone is sufficient to lift the stay.

And the *Evolutionary Intelligence* case had starkly different circumstances because the plaintiff filed lawsuits asserting the same two patents against nine different defendants.  2014 WL 2738501, at *1.  By the time Millenial filed its motion to stay, eight other cases were already stayed during the very early discovery phase of those cases pending the outcome of requested IPRs of

both patents.  *Id.*  In granting the motion, the court noted that Millenial had not yet produced its source code and discovery was in its infancy, and the other eight cases were already stayed in the early stages of those litigations pending the outcome of requested IPRs for the same two patents. *Id.* at *3.  Here, not all the asserted patents are subject of IPRs, the parties have both produced source code, among hundreds of thousands of other documents, and there are no other litigations that have been stayed pending resolution of IPR for the same patents.

Further, PAN argues that dismissal of instituted patents does not warrant lifting a stay, but it cites to cases where the competitive relationship of the parties was not at issue.  *See* Opp. at 5-6 (citing *Neodron, Ltd. v. Lenovo Group, Ltd.*, No. 19-CV-05644-SI, 2020 WL 6585797 (N.D. Cal. Nov. 10, 2020) and *Nasdaq, Inc. v. Miami Int'l Holdings,Inc.*, No. 3:17-cv-6664-BRM-DEA, 2020 WL 8920588 (D.N.J. Mar. 10, 2020)).  Where the parties *are* competitors (as is the case here), courts have found an agreement to dismiss patents subject to PTAB proceedings, even without prejudice, as a change in circumstances that warrants lifting a stay.  *See* Motion at 9-10 (citing Dkt. No. 303-3, *Pulse Elecs. v. UD Elec. Corp.,* No. 3:18-cv-00373-BEN-MSB, Dkt. No. 52, at *6 (S.D. Cal. Nov. 18, 2019)) (lifting stay between competitor parties as to non-instituted patents because "[f]urther simplification is unlikely given the PTAB's decision not to review the [non-instituted patents] in addition to the Plaintiffs decision to seek dismissal of its [instituted patent] 'without prejudice'" in order to prevent significant prejudice to plaintiff from a continued stay against its direct competitor).

Indeed, even when the patentee has not explicitly offered to dismiss the instituted patents, courts have found the existence of asserted patents that are no longer subject to PTAB proceedings to constitute changed circumstances that warrant lifting a stay.  *Centripetal Networks*, 2019 WL 8888195, at *4 (lifting stay as to patents no longer subject to IPR proceedings without offer or

requirement of dismissal of instituted patents); Dkt. No. 303-4 (*Personalized Media Commc'ns, LLC v. Apple, Inc.,* No. 2:15-cv-01366-JRG-RSP, Dkt. No. 373, at \*2 (E.D. Tex. June 18, 2020)) (lifting stay as to one of two asserted patents that has exhausted all available appeals after PTAB proceedings, because other patent remained in administrative abeyance at the PTAB and could take years to resolve); *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. 15-cv-04854-MMC, 2019 U.S. Dist. LEXIS 25375, \*8-9 (N.D. Cal. Feb. 14, 2019) (lifting stay as to one third of the asserted patents that were not subject to IPR proceedings because maintaining the stay "on a patent claim as to which there remains no challenge pending elsewhere could potentially result in protracted competitive harm to the patentee" since the parties were competitors).

### B.  A Continued Stay Results in Significant Prejudice to Centripetal

Centripetal and PAN are competitors in the network security marketplace.  *See, e.g.*, https://www.g2.com/products/centripetal-ai/competitors/alternatives ("Palo Alto Networks Next-Generation Firewall" is #5 out of the "Top 10 Alternatives & Competitors to Centripetal.ai."). PAN's unabated infringement without fair compensation and an opportunity to pursue injunctive relief continues to significantly harm Centripetal's position in the market as a much smaller company competing against its own technology.  PAN's fails to rebut the fact that Centripetal faces significant prejudice from a stay due to the loss of witness memories, evidence going stale, and the impact of COVID on employee mass resignations during the pendency of the stay, which could potentially continue for years.  This case is not just about monetary damages, but is about preserving Centripetal's business reputation and enforcement of its patent rights against a willful infringer such as PAN, who has essentially unlimited resources to try to bury Centripetal in the ground by tying it up in administrative patent proceedings for years.

### 1.     Evidence in this Case and Publicly Available Information Demonstrate that Centripetal and PAN Are Competitors

PAN's argument that there is no evidence of competition is specious.  *See* Opp. at 8-9.

There is substantial evidence in the public domain to the contrary that both Centripetal and PAN

are competing for customers with small and medium sized businesses.  For example, PAN markets

accused Next Generation Firewalls as solutions for small and medium businesses, not just large

enterprises—a     fact     that     it     omits     from     its     brief.     *See*

https://www.paloaltonetworks.com/resources/datasheets/pa400-solutions-brief-sme     ("PA-400

Series Solution Brief for SMEs: Delivering Enterprise-Grade Security to Small and Medium

Enterprises");     https://www.paloaltonetworks.com/network-security/next-generation-firewalls-

for-small-offices ("The PA-400 Series offers the same world-class security we provide to the

Fortune     500,     tailored     to     small     and     medium     businesses.");

https://www.paloaltonetworks.com/blog/network-security/pa-410-security-for-small-offices/

("Extend Zero Trust Security to Small Offices and Branches with the PA-410").  PAN also

includes a guide for small and medium-sized businesses to use in selecting the right PAN Next

Generation Firewall.  *See, e.g.*, https://www.paloaltonetworks.com/resources/guides/small-

business-firewall-guide ("This guide highlights the cybersecurity functions, management and

performance requirements specific to small- and medium-sized (SME) businesses[.]")  In fact,

even third party websites identify PAN's Next-Generation Firewall as an alternative to and

competitor of Centripetal's technology.  *See, e.g.*, https://www.g2.com/products/centripetal-

ai/competitors/alternatives ("Palo Alto Networks Next-Generation Firewall" is #5 out of the "Top

10 Alternatives & Competitors to Centripetal.ai.").

PAN's unsupported and offensive speculation that Centripetal is not a company selling

products rings hollow.  *See* Opp. at 8-9.  PAN is well aware of from Centripetal's document

production in this case, as well as the prior testimony from the recent *Cisco* case (that Centripetal produced to PAN), that Centripetal is actively developing, marketing and selling products. *See, e.g.*, https://www.centripetal.ai/resources/#datasheets (Centripetal's website containing links to datasheets for its CleanINTERNET product). In addition to Centripetal's website showing data sheets and white papers on its technology that is being offered for sale, Centripetal's public filings identify Centripetal's present-day manufacturing operations. *See* Finn Decl., Ex. 5 (*Centripetal v. Keysight*, Investigation No. 3614, Declaration of Jonathan Rogers in Support of Centripetal's Complaint, at ¶¶ 10, 13 (USITC Apr. 19, 2022) (identifying CleanINTERNET and "RuleGATE®" systems as products being sold by Centripetal and explaining that "Centripetal's technology protects over a hundred customer computer networks representing millions of end users")); https://www.centripetal.ai/resources; https://www.centripetal.ai/cleaninternet. Simply because PAN wishes that Centripetal was not a competitor, or because Centripetal is a much smaller company in the market, does not mean that they are not competitors.

PAN offers no sworn testimony or contradictory evidence of its own in attempting to rebut Mr. Rogers's statement in his sworn declaration ("Centripetal's sales personnel regularly encounters PAN in bids competing for customers," Dkt. No. 304, ¶ 3), relying instead on what it misleadingly characterizes as Mr. Rogers' "contrary testimony" from a prior trial. Opp. at 8-9. Mr. Rogers' declaration here is not contrary to his prior testimony – if anything, his prior trial testimony bolsters the existence of a competitive relationship between PAN and Centripetal. He did not testify that Centripetal stopped competing in the large enterprise network space; rather, his testimony shows that Centripetal saw year-over-year growth for three years, which was then negatively impacted in 2017 due to competitors like PAN, Cisco and Keysight entering that space

(Dkt. No. 312-2 at 1209-1210);[4] thus, Centripetal was forced to shift and create products that appealed to the mid-enterprise market in addition to the large enterprise market.  PAN's SEC filing makes clear that PAN's customer base for the accused products is not only large enterprise customers, but also mid-enterprise customers, showing the parties do compete for the same customers in the same market.  Finn Decl., Ex. 6 at 19 (Palo Alto Networks, Inc.'s Form S-1 Registration Statement Under The Securities Act of 1933, as filed with the SEC on April 6, 2012, available                                                                                                      at https://www.sec.gov/Archives/edgar/data/1327567/000119312512153764/d318373ds1.htm  (last accessed May 9, 2022)) (stating that PAN has "*existing medium* and large enterprise end-customers . . .") (partial emphasis and italics omitted).  Thus, PAN is directly competing with Centripetal for mid-enterprise customers with at least its Next-Generation Firewall products that Centripetal accused of infringement in its Complaint.  Dkt. No. 65, ¶¶ 56, 64.

Moreover, this Court found that PAN's competitor, Cisco, is a competitor of Centripetal in the network security marketplace.  *See, e.g.*, *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 495, 585 (E.D. Va. 2020); Finn Decl, Ex. 6 at 17 (PAN's SEC filing identifying Cisco as a competitor).  Centripetal has been forced to compete against these large publicly traded companies who have been willfully infringing its patents.

Further, PAN's cited cases do not support its arguments that there is no harm to Centripetal.  In *VirtualAgility Inc. v. Salesforce.com, Inc.*, the Federal Circuit explicitly stated that "direct

---

[4] PAN seems to suggest that because the asserted patents did not "exist" in 2017 that indicates that Centripetal and PAN were not competing at that point.  *See* Opp. at 8.  PAN's argument does not add up.  Although the PTO had not yet *issued* the asserted patents in 2017, Centripetal filed the initial parent applications that led to these patents between 2012 and 2015.  Centripetal invented the patented technology of the asserted patents years prior to 2017 and continues to improve upon it to this day.

evidence [that the two companies competed for the same customer or contract was] not required to establish that [the two companies] are competitors in evaluating a motion to stay.  759 F.3d 1307, 1318 (Fed. Cir. 2014) (citations omitted).  And in *Segin Sys., Inc. v. Stewart Title Guar. Co.*, similar to the circumstances here, the parties were found to be competitors where the defendant did not dispute the similar nature of the parties' products and the plaintiff pointed to the public record to show the parties were competitors.  30 F. Supp. 3d 476, 483-84 (E.D. Va. 2014) (denying motion to stay pending institution of IPR where patentee sufficiently established competition).

2.    **Centripetal Diligently Filed This Case to Expeditiously Resolve Its Infringement Claims Against PAN**

PAN's argument regarding Centripetal's diligence in filing the complaint is based on a case that is nothing like the present dispute between Centripetal and PAN.  *See* Opp. at 9.  Unlike *Audio MPEG* where the patentee waited more than six years to file its lawsuit for infringement of patents that issued 17 to 21 years *before* the lawsuit (*see* 2015 WL 5567085, at *5), Centripetal diligently filed this lawsuit within two years of the issuance of the majority of the 13 asserted patents and the release of accused version 9.0 of PAN's operating system in 2019.  Thus, the significant prejudice to Centripetal from a stay is not diminished by any alleged lack of diligence, as PAN suggests.

For these reasons, the significant prejudice to Centripetal from a stay weighs in favor of the lifting the stay as to the Non-Instituted Patents.

C.    **The Parties Engaged In Significant Discovery in Preparation for Trial**

After PAN filed its motion to stay, the parties completed a significant amount of discovery to prepare the case for trial, such that a continued stay of the case is not in the interests of judicial economy and efficient resolution of Centripetal's claims of willful patent infringement.

At the initial Scheduling Conference on July 21, 2021, the Court stated it would wait until resolving PAN's motion to stay before entering a scheduling order and setting a trial date, but the possibility remained that the Court would deny PAN's motion to stay and subsequently enter a scheduling order consistent with the one the parties had submitted in anticipation of an agreed August 2022 trial date.[5]  With that understanding, both parties expended significant time and resources to prepare its case for trial and served hundreds of discovery requests and responses and hundreds of thousands of pages of documents over seven months, between August 2021 and February 2022.  Dkt. No. 303, ¶¶ 3-4.  The parties also served initial Rule 26(a) disclosures and PAN amended its initial disclosures in December 2021.  *See* Dkt. No. 253, ¶¶ 2-3.

PAN willingly participated in discovery for seven months after filing its motion to stay despite the absence of a scheduling order, demanding that Centripetal provide discovery that PAN thought it would benefit from, while wielding its pending motion to stay to delay Centripetal's adjudication of its infringement claims.  *See, e.g.*, Dkt. No. 303, ¶¶ 3-4.  PAN even filed two motions to compel while waiting for the Court to decide its motion to stay, signaling the purported need for urgent discovery responses that would not have been required had PAN believed there was no impending trial.  *See* Dkt. Nos. 193-194, 217-218.

Although a trial date is not currently set, if the Court were to lift the stay and set a trial date, such an order will help the expeditious resolution of Centripetal's claims and remove the current risk that the parties' substantial discovery efforts to date are unnecessarily halted, resulting in unjustified prejudice of Centripetal as discussed above.

---

[5] Centripetal's statements in the IPRs regarding the anticipated August 2022 trial date are consistent with facts here, where the parties submitted a joint schedule containing an agreed August 2022 trial date.

**III.     CONCLUSION**

      For the foregoing reasons, Centripetal respectfully requests the Court lift the stay of the case as to the six Non-Instituted Patents.

Respectfully submitted,

Dated:  May 9, 2022

*/s/ Stephen E. Noona* _____
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

Paul J. Andre (*pro hac vice*)
Lisa Kobialka (*pro hac vice*)
James R. Hannah (*pro hac vice*)
Hannah Y. Lee (*pro hac vice*)
Christina M. Finn (*pro hac vice*)
**KRAMER LEVIN NAFTALIS**
  **& FRANKEL LLP**
990 Marsh Road
Menlo Park, CA  94025
Telephone:  (650) 752-1700
Facsimile:  (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
hlee@kramerlevin.com
cfinn@kramerlevin.com

*Attorneys for Plaintiff,*
Centripetal Networks, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 9, 2022, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF system, which will automatically send notification of filing

electronic to all counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
**KAUFMAN & CANOLES, P.C.**
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

17