**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**



| | |
|---|---|
| CENTRIPETAL NETWORKS, LLC, | § § § § |
| Plaintiff, | § § |
| v. | § § Civil Action No. 2:21-cv-00137-EWH-RJK |
| PALO ALTO NETWORKS, INC., | § § § |
| Defendant. | § § |

**DEFENDANT PALO ALTO NETWORKS, INC.'S OPPOSITION TO PLAINTIFF**
**CENTRIPETAL NETWORKS, LLC.'S SECOND MOTION TO LIFT THE STAY OF**
**THE CASE**

I.      **Introduction**

Yet again, Centripetal attempts to lift the stay of this litigation and, as with its first attempt, offers neither new nor valid justifications to lift the stay.  First, in arguing that the basis for the stay no longer exists, Centripetal incorrectly posits that the PTAB proceedings were resolved when the PTAB issued its decisions.  To the contrary, because the parties have appealed the PTAB's decisions, the proceedings remain ongoing until the conclusion of the appeals and any remand proceedings.  Indeed, Centripetal recognized this fact in its first motion to lift the stay, expressly asserting that the PTAB proceedings would not be "finally resolved" until the conclusion of any resulting appeals.  As this Court previously recognized, the stay should not be lifted until those proceedings are fully resolved.

Second, Centripetal's myopic focus on whether there are issues "*currently* before the PTAB" that would simplify the litigation is improper.  Rather, the focus should remain on the overall proceedings, in which the potential for simplification remains unchanged since the Court denied Centripetal's first request to lift the stay.  As explained below, regardless of the Federal Circuit's determination as to the ultimate issue of patentability, its decisions will impact the Court's consideration of claim construction and other merits issues, including as to patents that are not the subject of the appeals.

Third, Centripetal ignores the Court rationale for denying Centripetal's first request to lift the stay, namely that lifting the stay would complicate the proceedings and unduly burden the Court and the parties by requiring that any surviving claims be addressed later in this litigation or in a separate proceeding.  Those circumstances have not changed since the Court denied Centripetal's first request to lift the stay.

Finally, Centripetal cannot demonstrate that it would be unduly prejudiced by maintaining the stay during the appeals because there has been no change in circumstances that would undercut

Centripetal's ability to recover damages (provided it can prove infringement).  For these reasons, Centripetal's motion should be denied.

## II.    Background

This is a complex patent case involving thirteen (13) asserted patents and over two-hundred and fifty (250) asserted claims.[1]  PAN filed petitions with the Patent Trial and Appeal Board ("PTAB") seeking review of all claims—both asserted and unasserted—from all asserted patents and moved to stay the litigation in view of the significant likelihood that the PTAB proceedings would simplify the litigation.  *See* Dkt. 68 at 4-5.  The PTAB ultimately granted review on seven (7) of the asserted patents.  Dkt. 317 at 2-3.

The Court granted PAN's motion to stay "pending resolution" of the PTAB proceedings even though, at that time, the PTAB had declined to institute review on some petitions and not yet decided whether it would for others.  *See* Dkt. 285 at 1, 3.  The Court concluded that, "[g]iven the complexity of this action and the number of claims . . . at issue, PTAB review has the potential to greatly streamline this action by eliminating claims and reduce the expense of this litigation" by eliminating claims from the litigation.  *Id.* at 9.  The Court also recognized, however, that "[s]implification would still be achieved" even if the claims are not eliminated from the litigation, because "the record created during the proceedings [will] assist the Court in the claim construction phase of this action."  *Id.* at 8-9.

Centripetal sought reconsideration of the Court's Order, arguing that the potential for simplification could be obviated through dismissal of the patents subject to PTAB review.  *See* Dkt. 302.  The Court rejected that argument for two reasons.  First, even if the patents subject to

---

[1] The number of asserted claims is based on Centripetal's infringement contentions served on January 10, 2022.

PTAB review were voluntarily dismissed from this proceeding, "a stay would still simplify the issues before the Court" because the record developed in those proceedings would "assist the Court" with claim construction for the remaining patents.  Dkt. 317 at 3.  Second, because Centripetal's proposed dismissal was without prejudice, lifting the stay could complicate (rather than simplify) the litigation, as Centripetal could refile infringement claims on any patents (or claims) that survived.  *Id.*  "This outcome would reduce judicial efficiency and burden the court," whereas "maintaining the stay until resolution of the [PTAB] proceedings [would] allow the Court to address the patent claims as a convenient unit."  *Id.*

Since that Order (Dkt. 317), the PTAB has issued decisions finding all claims of six (6) asserted patents invalid.  Those asserted patents include:  U.S. Patent No. 10,542,028 ("'028 Patent"), U.S. Patent No. 10,757,126 ("'126 Patent"), U.S. Patent No. 10,567,413 ("'413 Patent"), U.S. Patent No. 10,091,246 ("'246 Patent"), U.S. Patent No. 10,749,906 ("'906 Patent"), U.S. Patent No. 10,503,899 ("'899 Patent").  As Centripetal indicated in its Motion, those patents "are currently or will be on appeal to the Federal Circuit." Dkt. 326 at 1.[2]  In addition, the PTAB has issued a decision finding that the claims of U.S. Patent No. 10,530,903 (the "'903 Patent") were not shown unpatentable in light of the prior art relied upon in the petition.  PAN has filed an appeal of the PTAB's decision concerning the '903 Patent.[3]

There are six (6) asserted patents that are not the subject of appeal:  U.S. Patent No. 10,567,343 (the "'343 Patent"), U.S. Patent No. 10,567,437 (the "'437 Patent"), U.S. Patent No. 10,785,266 (the "'266 Patent"), U.S. Patent No. 10,735,380 (the "'380 Patent"), U.S. Patent No. 10,659,573 (the "'573 Patent"), and U.S. Patent No. 10,931,797 (the "'797 Patent").  Centripetal

---

[2] As of the filing of this response, Centripetal had filed appeals for the '246, '028, and '126 Patents. *See* Exs. C-E (Centripetal's notices of appeal).

[3] *See* Dkt. 328 (PAN's notice of the filing and docketing of appeals from the PTAB proceedings).

seeks to lift the stay as to these six (6) patents, as well as the '903 Patent, which (as stated above) is the subject of PAN's appeal.[4]

### III.    Argument

### A.    The Grounds On Which The Court Stayed The Case Remain Unchanged.

Centripetal's contention that the basis for a stay "no longer exists" is based on the erroneous assertion that the PTAB proceedings are "complete[ ]."  Dkt. 326 at 3-4.  Those proceedings are plainly not complete, though, given the pending and promised appeals.  Indeed, Centripetal recognized this fact in its first motion to lift the stay, expressly asserting that the PTAB proceedings would not be "***finally resolved***" until the conclusion of "potential appeals to the Federal Circuit." *See* Dkt. 302 at 10 (emphasis added).

The statutes governing *inter partes* review ("IPR") and post-grant review ("PGR") proceedings expressly recognize that PTAB proceedings are ***not complete*** until the time for appeal has expired, or any appeal has terminated.  In particular, 35 U.S.C. §§ 318(b) and 328(b) state that the PTAB shall not issue a certificate either cancelling a claim determined to be unpatentable or confirming a claim found to be patentable ***until*** the time for appeal of the PTAB's decision "has expired or any appeal has terminated."  The basis for this is clear:  the PTAB's invalidity determinations cannot be given full effect in light of the potential for the Federal Circuit to reverse or alter the PTAB's patentability determinations or claim constructions, and/or vacate and remand for further proceedings before the PTAB.  Accordingly, the PTAB proceedings here will not be complete until the conclusion of the appeals and any further proceedings on remand.  *See Fairfield*

---

[4] Centripetal refers to the patents for which it seeks to lift the stay as the "Confirmed Patents," and thus erroneously implies that the PTAB confirmed their validity.  That is not accurate.  The '903 Patent is the only patent in this group for which the PTAB actually conducted a review.  For the others, the PTAB declined to institute review and thus did not render a decision as to the validity of the claims.

*Industries, Inc. v. Seabed Geosolutions (US) Inc.*, No. 4:17-cv-01458, Dkt. 120 (S.D. Tex. Jan. 23, 2020) (denying plaintiff's request to reinstate a case that was stayed "pending the completion of IPR proceedings" involving a subset of the asserted patents because the IPR proceedings were not "fully completed" given pending appeals).

As explained below, given the incomplete nature of the PTAB proceedings, lifting the stay as to the remaining patents would likely complicate (rather than simplify) the issues in this litigation. If Centripetal succeeds on appeal, the surviving claims would need to be addressed at a later stage of this litigation or, more likely, in a new, duplicative proceeding. "This outcome would reduce judicial efficiency," and unnecessarily increase the burden and expenses of the parties. *See* Dkt. 317 at 3.

**B.     The PTAB Proceedings—Now Before The Federal Circuit—Will Influence The Issues Considered By The Court In This Action.**

Centripetal erroneously contends that "maintaining the stay in this case will no longer simplify the issues for trial." Dkt. 326 at 4. In making that argument, Centripetal ignores both the impact the appeals will have on this litigation and the Court's rationales for imposing and maintaining the stay. The Federal Circuit's decisions on the seven (7) patents that are being appealed will impact the Court's consideration of claim construction and other merits issues, even as to patents that are not the subject of the appeals.

First, Centripetal's contention that the appeals will not impact this litigation is based on the faulty premise that the issues to be considered on appeal are mutually exclusive of the issues this Court faces with respect to the patents for which Centripetal seeks to lift the stay. Centripetal fails to acknowledge, however, that one of the patents for which it seeks to lift the stay—the '903 Patent—is the subject of an appeal filed by PAN. That appeal will unquestionably impact the Court's consideration of issues relating to the '903 Patent. In addition, as the Court recognized

both when initially imposing the stay and denying Centripetal's first request to lift it, the issues considered in the PTAB proceedings (and now the appeals) are also relevant to the related patents that are not the subject of those proceedings.  Several of the patents being appealed are part of the same patent family as those for which Centripetal seeks to lift the stay, and these related patents share common inventors, patent specifications, figures, and claim terms.  *See* Dkt. 311 at 3-4. Moreover, all of the asserted patents concern similar subject matter.  *Id.*

As an example of the substantial overlap between issues expected to be addressed in the appeals and by this Court, issues central to the PTAB's decision concerning the '906 Patent were the construction of "malicious traffic information received from a malicious host tracker services" and whether the asserted prior art taught that limitation.  *See,* Ex. A at 9-11, 16, 24-34, 36-37 (PTAB decision concerning the '906 Patent).  A nearly identical limitation is found in the claims of a related patent for which Centripetal seeks to lift the stay—the '266 Patent—and Centripetal previously identified that term as needing to be construed by this Court.  Ex. B (email from Centripetal's counsel identifying terms requiring claim construction—including "packet security gateway," "security policy management server," and "malicious traffic information"—that appear in both the Appeal Patents and those for which Centripetal seeks to lift the stay).

As this example illustrates, the record developed on appeal will be highly probative to issues considered by this Court, particularly with respect to the meaning and scope of claim terms and the scope and content of prior art.  In addition, the Federal Circuit's decisions concerning claim construction, as well as the scope and content of the prior art, may give rise to collateral estoppel in this litigation.  *See*, *e.g.*, *eDigital Corp. v. Futurewei Techs., Inc.*, 772 F.3d 723 (Fed. Cir. 2014) (affirming the application of collateral estoppel to bar re-litigation of the same claim construction issue across related patents); *Ohio Willow Wood Co. v. Alps South, LLC*, 735 F.3d

1333, 1342 (Fed. Cir. 2013) ("Collateral estoppel protects a party from having to litigate issues that have been fully and fairly tried in a previous action and adversely resolved against a party-opponent."); *Nestle USA, Inc. v. Steuben Foods, Inc.*, 884 F.3d 1350, 1352 (Fed. Cir. 2008) ("Importantly, our precedent makes clear that collateral estoppel is not limited to patent claims that are identical. Rather it is the identity of the issues that were litigated that determines whether collateral estoppel should apply.").  Maintaining the stay pending appeal "will avoid the potential for inconsistent rulings and the wasting of resources that would result if the Court were to proceed with the litigation now and construe disputed claim terms differently than the Federal Circuit eventually does."[5]  *DivX, LLC v. Netflix, Inc.*, No. CV 19-1602, 2022 WL 1208167, at * 4-5 (C.D. Cal. Mar. 29, 2022) (denying motion to lift stay after final written decisions but before completion of appeals).

    Centripetal fails to address this issue in its Motion, instead implying that the appeals will not affect claim construction or invalidity issues in this litigation.  *See* Dkt. 326 at 4 (referencing only whether there are issues "currently before the PTAB" that will affect this litigation).  This alleged non-affect strains credibility, as Centripetal affirmatively stated in its notices of appeal that it plans to seek reversal of at least some of the PTAB's claim construction decisions.  *See* Ex. C-E (Centripetal's notices of appeal concerning the '246, '028, and '126 Patents).[6]  PAN is also seeking review of the PTAB's claim constructions in its appeal concerning the '903 Patent.  *See* Ex. F (PAN's notice of appeal concerning the '903 Patent).  Thus, as this Court correctly concluded

---

[5] In addition to the potential for inconsistent rulings, proceeding in parallel may also unnecessarily burden the Court and the parties by requiring the reopening of fact or expert discovery to address and account for the Federal Circuit's decisions.

[6] Although Centripetal has not yet filed its notices of appeal for the three remaining patents with claims held unpatentable by the PTAB, Centripetal represented in its Motion that they will be appealed to the Federal Circuit, and there is no reason to expect Centripetal will take a different approach with appeals and forgo appellate review of the PTAB's claim constructions.

when denying Centripetal's first request to lift the stay, even if the Appeal Patents "are voluntarily dismissed from this proceeding, a stay would still simplify the issues before the Court" because the record will "assist the Court when construing claims in a Markman hearing on related . . .patents."  Dkt. 317 at 3; *see Baxter Healthcare Corp. v. Becton, Dickinson & Co.*, No. 3:17-cv-2186, 2021 WL 22553, at *3 (S.D. Cal. Jan. 4, 2021) ("[T]he Federal Circuit's de novo review of the PTAB's claim constructions of the patents-in-suit may also provide guidance that will further simplify the issues before this Court.").[7]

Second, Centripetal improperly focuses on the potential simplification resulting from the elimination of accused products from the case, while ignoring the relevance of the appellate record to numerous issues concerning the remaining asserted patents (as discussed above).  This unduly narrow view of the simplification factor is inconsistent with the numerous decisions cited above, including this Court's decisions staying the case and denying Centripetal's first request to lift the stay.  Dkt. 285 at 8-9 (explaining that "[s]implification would still be achieved even if [claims are

---

[7] *See also see Centripetal Networks, LLC v. Keysight Techs., Inc.*, No. 2:22-DV-00002, Dkt. 57 at 8-9 (E.D. Va. Mar. 20, 2023) (concluding that, [e]ven if the administrative proceeding is unlikely to dispose of claims, a stay may simplify matters" because the record will "assist[ ] the Court's claim construction analysis"); *Boston Sci. Corp. v. Cook Grp. Inc.*, No. 1:17-cv-03448, 2019 WL 2511162, at *3 (S.D. Ind. June 17, 2019) (finding that the potential for simplification weighed in favor of continuing the stay pending appeal, as doing so would help "avoid[ ] inconsistent legal rulings, simplify[ ] terms, and provid[e] clarity on the scope of the issues to be litigated," while conserving judicial resources); *Realtime Data LLC v. Silver Peak Sys., Inc.*, No. 17-cv-02373, 2018 WL 3744223, at *1-2 (N.D. Cal. Aug. 7, 2018) (finding that the potential for simplification supported continuing the stay pending appeal where only a subset of the asserted claims were the subject of PTAB review and subsequent appeal); *Puget BioVentures, LLC v. Med. Device Bus. Servs., Inc.*, No. 3:17-CV-503, 2017 WL 6947786, at *4 (N.D. Ind. Sept. 22, 2017) (finding that a stay pending appeal could prevent wasting of resources and "would help ... avoid highly undesirable inconsistent legal rulings," as "any decisions—particularly related to claim construction—this Court might reach during the pendency of [the] appeal ... could end up in variance with the Federal Circuit's ruling").

not removed from litigation], [because] the record created during the proceedings [will] assist the Court [with] claim construction"); *see also* Dkt. 317 at 2-3 (recognizing the same).

Third, Centripetal's contention that dismissal of the Appeal Patents *without prejudice* obviates any future simplification has been squarely rejected by this Court and others. As the Court explained in denying Centripetal's first request to lift the stay, Centripetal's proposed dismissal *without prejudice* potentially complicates (rather than simplifies) the issues. *See* Dkt. 317 at 3.[8] For example, if Centripetal succeeds on appeal, it could refile an infringement suit on any surviving claims after the appeals conclude, which would result in duplicative discovery and trials. That "outcome would reduce judicial efficiency" and unnecessarily burden both the Court and PAN, whereas "maintaining the stay [would] allow the court to address the patent claims as a convenient unit" once the appeals (and any further PTAB proceedings resulting therefrom) are complete.[9] *Id.*

In *Neodron, Ltd. v. Lenovo Group, Ltd.*, the court denied the plaintiff's request to lift a stay under similar circumstances. No. 19-CV-5644, 2020 WL 6585797, at *2 (N.D. Cal. Nov. 10, 2020). There, as here, the plaintiff proposed dismissing without prejudice the patents that were

---

[8] *See also Keysight*, No. 2:22-CV-00002, Dkt. 57 at 9 (explaining that "a stay simplifies matters when it allows the Court to avoid the need to have the case proceed on two different schedules— *i.e.*, holding two different trials and conducting pretrial proceedings in separate sequence").

[9] Although Centripetal has not proffered it, even a dismissal *with prejudice* would not warrant lifting the stay. As explained in *Nasdaq, Inc. v. Miami Int'l Holdings, Inc.*, dismissal with prejudice of patents subject to parallel proceedings warrants lifting the stay *only when* the proceedings on those patents "will 'have virtually no effect on' the remaining claims." No. 3:17-CV-6664, 2020 WL 8920588, at *3 (D. N.J. Mar. 10, 2020). Here, as explained above, the record developed during the appeals will be highly probative to numerous issues before this Court that are common to both the appealed and un-appealed patents. Accordingly, the appeals (and any subsequent PTAB proceedings) will have an effect on the issues considered by this Court even if the patents involved in those proceedings are dismissed with prejudice. As the Court correctly concluded when granting PAN's Motion to Stay, even though only a subset of the asserted patents is involved, the record created in those proceedings and the resulting determinations "[will] still simplify the issues in this action." Dkt. 285 at 9.

involved in PTAB proceedings and lifting the stay to proceed on the patents that were not. *Id.* The *Neodron* court explained that lifting a stay under such circumstances would only complicate matters because the plaintiff could (and likely would) re-assert any surviving claims "at a later stage of litigation or in a new proceeding." *Id.*; *see also Realtime Data,* 2018 WL 3744223, at *2 (denying a motion to lift a stay during appeal of PTAB decisions because "the court would have to duplicate its efforts and potentially conduct multiple trials if claims deemed non-patentable today are later found to be patentable—a loss of efficiency compounded when the patents are related and involve overlapping witnesses, experts, or evidence").[10]  The same is true here, and thus the potential to simplify the issues in this complex case remains unchanged since the Court denied Centripetal's first request to lift the stay.[11]

---

[10] *See also DivX,* 2022 WL 1208167, at * 4-5 (maintaining stay of all patents pending the resolution of appeals concerning PTAB proceedings on some patents because "maintaining the stays pending appeal is likely to simplify the issues in these [related] cases and avoid unnecessary expenditures of resources"); *Sleep Number Corp. v. Sizewise Rentals, LLC,* 5:18-CV-356, Dkt. 192 (slip op.), at *1 (C.D. Cal. Nov. 2, 2020) (maintaining a stay pending appeals from PTAB decisions because "it is in the interests of judicial economy and the orderly litigation of the case" to allow "all claims [to] proceed together"); *Uniloc USA, Inc. v. Apple, Inc.*, No. 5:18-CV-00357, Dkt. 156 (N.D. Cal. Mar. 11, 2019) (denying motion to sever and lift the stay as to one asserted patent while an appeal from PTAB proceedings was pending as to the other because doing so "risks wasting Court and party resources with two separate claim constructions and two separate trials on the two patents-in-suit"); *Gamon Plus, Inc. v. Campbell Soup Co.*, No. 15-CV-8940, 2018 WL 11471814, at *2 (N.D. Ill. No. 29, 2018) (denying motion to lift stay because the appeals "may lessen the burden of litigation" by "limit[ing] the scope of [the] litigation or provid[ing] further guidance on claim construction"); *Koss Corp. v. Peag, LLC*, No. 21-CV-1177, Dkt. 52 (S.D. Cal. Nov. 22, 2022) (denying motion to lift stay as to patents not subject to appeals from PTAB proceedings because "resolution of [the] appeals is likely to simplify the issues before the Court, and continuing the stay will avoid the possibility of piecemeal litigation and [thus] serve judicial efficiency").

[11] In addition, Keysight Technologies, Inc. ("Keysight") has filed petitions for PTAB review that are likely to impact the asserted patents for which Centripetal seeks to lift the stay of this litigation (*i.e.*, those that have not already been held unpatentable by the PTAB).  The table attached as Exhibit G identifies the patents for which Keysight has filed petitions for PTAB review and the patents asserted in this litigation that are likely to be impacted.  As with the PTAB proceedings that are being appealed, the PTAB proceedings initiated by Keysight are likely to further simplify this litigation, and thus further support maintaining the stay.  *See* Dkt. 285 at 8-9 (concluding that the potential for PTAB proceedings to simplify the issues in litigation weighs in favor of a stay).

### C.    Maintaining The Stay Does Not Unduly Prejudice Centripetal.

Centripetal's contention that it will be unduly prejudiced if the stay is not lifted is based on the inaccurate and unsubstantiated premise that PAN and Centripetal are direct competitors.  In fact, by Centripetal's admission in prior litigation, Centripetal and PAN are not now competitors, nor have they been at any time since the asserted patents issued.  Centripetal cites no independent source, such as industry analysis, to corroborate its assertion here, nor has it provided factual support for its competitor contention at any point in this litigation.[12]  Indeed, the only purported support Centripetal has ever provided is a declaration from its current Vice President of Operations & Chief Operating Officer, Jonathan Rogers, in which he asserts—without providing supporting facts—that the parties are "direct competitors."  *See* Dkt. 85; Dkt. 304.

This unsupported "competitor" assertion is particularly troubling because, as PAN previously explained, it is directly contradicted by Mr. Rogers' prior sworn trial testimony from May 2020.  *See* Dkt. 311 at 7-8.  Specifically, Mr. Rogers testified that, although Centripetal "initially entered the market and started selling to very large enterprise[s]"—the market in which PAN competes[13]—in 2017, before any of the asserted patents existed, it "saw that large enterprise market flatline," and therefore decided to "move[] further down markets, ***out of the large enterprise space and into the middle market***."  Ex. H (*Centripetal Networks, Inc. v. Cisco Systems, Inc.*, No. 2:18-CV-94, Dkt. 514, May 18, 2020, Videoconference Bench Trial Proceedings Tr., at 1209:21-1210:20 (Direct Examination of Jonathan Rogers) (emphasis added)).  Thus, as confirmed

---

[12] The paragraphs from the Amended Complaint that Centripetal cites in its Motion are devoid of any factual allegations on this issue; instead, they are merely general, conclusory allegations that Centripetal has been irreparably harmed by PAN's conduct.  *See* Dkt. 326 at 5.

[13] PAN "serve[s] the enterprise network security market."  Palo Alto Networks, Inc.'s Form S-1 Registration Statement Under The Securities Act of 1933, as filed with the SEC on April 6, 2012, available at https://www.sec.gov/Archives/edgar/data/1327567/000119312512153764/d318373ds1.htm (last accessed March 28, 2023).

by the prior testimony of Centripetal's own declarant, Centripetal ceased competing in the large enterprise market—the market in which PAN operates—four (4) years before filing this suit, and well before any of the asserted patents existed.  Centripetal is therefore not a "direct competitor" to PAN, who has been successfully operating in the large enterprise market for years.

As noted above, Mr. Rogers' declaration is also devoid of any factual details that would permit the Court, or PAN's counsel, to assess the truth of the allegations.  For example, Mr. Rogers provides no information about (a) Centripetal's purported past sales, (b) whether Centripetal actually sells (or makes) any products today or did so in the recent past, or (c) whether its past alleged sales or manufacturing capacity demonstrated any ability to serve the enterprise market or any other market.  The absence of such information is particularly troubling because in the same trial in which Mr. Rogers testified contrary to his declaration here, he also acknowledged that Centripetal had realized only a very small amount of revenue from product sales and had *no* product sales in 2017.  *See* Ex. I (*Centripetal Networks, Inc. v. Cisco Systems, Inc.*, No. 2:18-CV-94, Dkt. 516, May 19, 2020, Videoconference Bench Trial Proceedings Tr., at 1262:25-1263:6; 1267:1-1269-21 (Cross Examination of Jonathan Rogers)).  At this juncture, "[t]here is no evidence in this record that the two companies ever competed for the same customer or contract." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014).  Indeed, the declaration wholly fails to establish that the parties "sell similar products to similar customers or in similar markets."  *Segin Sys., Inc. v. Stewart Title Guar. Co.*, 30 F. Supp. 3d 476, 483 (E.D. Va. 2014).

Regardless, as the Court correctly concluded in evaluating whether to stay the case in the first instance, even *if* the parties were "direct competitors and market share may be affected, those reasons are not sufficient to outweigh the benefits of a stay" because the stay will not undercut

Centripetal's ability to recover damages, provided it can prove infringement. Dkt. 285 at 10-11 (citing *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318-19 (Fed. Cir. 2014) (holding that, to show undue prejudice, a patentee must demonstrate that monetary damages will be insufficient to remedy its losses)).[14]   Centripetal has not demonstrated ***any*** change of circumstances relevant to this factor, much less a change that would warrant lifting the stay.

Centripetal's remaining contentions concerning purported prejudice are similarly unavailing. First, Centripetal's allegation that PAN had improper motives in seeking to stay the litigation is completely unfounded. Centripetal argues that PAN acted to "unduly delay this case" by (a) "filing serial IPR Petitions," and (b) purportedly "refus[ing] to participate in [the] litigation." Dkt. 326 at 5. With respect to (a), the Court found the opposite when initially imposing the stay, noting specifically that PAN acted diligently in filing petitions for PTAB review on all thirteen (13) asserted patents within five (5) months of the Complaint being filed, and seeking a stay within four (4) months of the Complaint being filed. Dkt. 285 at 11. With respect to (b), Centripetal provides no support for this assertion, and indeed contradicts it by later stating that the parties engaged in "a substantial amount of discovery" before the case was stayed. *See* Dkt. 326 at 6.

Second, its contention that expeditious resolution is necessary because there is a "risk of losing relevant discovery" is similarly unavailing given Centripetal's above assertion that the parties engaged in "a substantial amount of discovery" before the stay, including written discovery, document production, and source code production. Dkt. 326 at 6. Once again, Centripetal is long on vague, conclusory harms, but short on the specific evidence or testimony at risk. *See Keysight*,

---

[14] *See also Keysight*, No. 2:22-CV-00002, Dkt. 57 at 10-11 (accepting, for purposes of the motion to stay, "Centripetal's assertion that the parties are competitors," but finding no undue prejudice because "Centripetal [did] not demonstrate[ ] that monetary damages are insufficient to compensate it for Keysight's alleged infringement").

No. 2:22-CV-00002, Dkt. 57 at 11 (explaining that "general assertions of loss of evidence due to memories fading and witness unavailability are insufficient to justify a conclusion of undue prejudice").

Third, Centripetal erroneously contends that "waiting for any appeals to the Federal Circuit" is unduly prejudicial because it "subjects Centripetal . . . to continued legal expense." Dkt. 326 at 5. But lifting the stay would hardly alleviate legal expenses, as Centripetal implies. Rather, it would certainly increase near-term legal expenses by requiring the parties to proceed in parallel in this Court and with the appeals. It also would likely increase overall expenses by requiring (a) reopening of claim construction and/or discovery to address and account for the Federal Circuit's decisions, and (b) subsequent proceedings to litigate any surviving infringement claims for the patents being appealed.[15]

Finally, Centripetal argues that the "[t]he case law concerning motions to extend stays pending Federal Circuit review . . . substantially favors lifting a stay" because "the prejudice to the patent owner is increased by a stay pending appeal." Dkt. 326 at 5-6. But Centripetal provides no support for this broad assertion. Although Centripetal cites a handful of decisions in which courts have declined to maintain a stay during the pendency of an appeal, the circumstances were different than here.[16] Specifically, in *Oyster Optics, LLC v. Ciena Corp.*, No. 17-cv-5920, 2019

---

[15] Although the Court recognized in its recent stay decision in *Keysight* that there may come a time when it is necessary lift a stay "to proceed with [the plaintiff's] claims on two different tracks," that is not the case here. *See Keysight*, No. 2:22-CV-00002, Dkt. 57 at 9-10. For the reasons explained herein, lifting the stay at this juncture would unnecessarily complicate the proceedings and increase the burden on the Court.

[16] Centripetal also cites *IOENGINE, LLC v. PayPal Holdings, Inc.*, No. 18-452, 2019 WL 3943058 (D. Del. Aug. 21, 2019). *See* Dkt. 326 at 7. But that decision does not address whether to maintain a stay pending appellate review of PTAB decisions; rather, it addresses whether to impose a stay in the first instance in view of PTAB proceedings. *IOENGINE*, 2019 WL 3943058 at *2. Notably, in *IOENGINE*, the court stayed the action given the high likelihood that the PTAB proceedings

WL 4729468, at *3 (N.D. Cal. Sept. 23, 2019), only one of three asserted patents was the subject of a pending appeal, and the appeal was already well underway, with a decision expected "within a few months."  In light of those facts, and the schedule expected in the district court case, the court concluded it could easily "adjust the scope of the litigation" to account for any additional guidance from the Federal Circuit.  *Id.* at *3.  Here, in contrast, seven (7) of the thirteen (13) asserted patents are or will be the subject of appeals, and (as stated above) the decisions in those appeals may necessitate reopening claim construction or discovery, and/or subsequent proceedings to litigate any surviving infringement claims.

In *Acquis, LLC v. EMC Corp.*, No. 14-cv-13560, 2016 WL 4250245, at *2 (D. Mass. Aug. 10, 2016), the circumstances were also markedly different, as claim construction had already been conducted and the PTAB had upheld the validity of the asserted patents.  Given the low reversal rate on appeal, the court declined to extend the stay and allowed the plaintiff to proceed.  *Id.*  The court explained, however, that "[i]f the PTAB had invalidated the underlying patents"—as it did here—"then a stay pending appeal would likely be warranted, since an affirmance of the PTAB's decision would moot [at least] some of the case."  *Id.*

Similarly, the circumstances in *LG Electronics, Inc. v. Toshiba Samsung Storage Tech. Korea Corp.*, No. 12-1063, 2015 WL 8674901 (D. Del. Dec. 11, 2015) were much different than here.  In *LG*, the court had to deal with the four asserted patents on two separate tracks regardless of whether the stay was lifted.  Only two of the asserted patents were subject to PTAB proceedings and appeals therefrom, and the parties had agreed to keep the stay in place for one of the appealed patents.  *Id.* at *1-2.  Although the court found that the potential for simplification weighed in

---

would simplify the issues in the litigation, particularly with respect to claim construction.  *Id.* at*8-10.

favor of a stay—"regardless of whether the appellate court affirms or reverses the PTAB's decision, its analysis could provide greater clarity as to claim construction-related or invalidity-related issues"—the court ultimately lifted the stay. *Id.* at *3-4. The court reasoned that, under the projected schedule, the PTAB appeal was "likely to conclude before deposition discovery goes forward and well before fact discovery closes, expert discovery begins and case dispositive motions are filed;" thus, "the appellate decision could be absorbed by the parties with minimal disruption, even while the case moves forward." *Id.* at *6. In other words, the district court determined that lifting the stay would not negate the potential for the appeal to simplify the issues before it. Those circumstances are not present here.[17]

In contrast to the cases cited by Centripetal, courts confronted with circumstances more aligned with this case consistently choose to maintain stays during pending appeals. *See supra* at footnotes 6-7 (citing numerous cases finding that benefits of maintaining a stay pending appeal outweigh potential prejudice). For example, in *DivX*, the case had been stayed "for close to two years," and only some of the asserted patents were the subject of PTAB proceedings. 2022 WL 1208167 at *4-6. Nonetheless, the Court declined to lift the stay because (a) "maintaining the stays pending appeal is likely to simplify the issues in these cases and could avoid unnecessarily

---

[17] The circumstances in the remaining cases cited by Centripetal were also fundamentally different than here. In *DermaFocus LLC v. Ulthera, Inc.*, No. 15-654 (MN), 2018 WL 5113960, at *2-3 (D. Del. Oct. 19, 2018), all claims of the single asserted patent had been found patentable by the PTAB; thus, there was virtually no risk of duplicative proceedings because the patent would need to be litigated at the district court unless the Federal Circuit reversed the PTAB decision "on all eighteen claims." In *Zipit Wireless Inc. v. Blackberry Ltd.*, No. 6:13-cv-02959, 2016 WL 3452735, at *2-3 (D.S.C. June 24, 2016), claim construction had already been conducted, and claims from all four asserted patents were deemed patentable by the PTAB decisions; thus, there was very little risk of duplicative proceedings. And in *Contour IP Holding, LLC v. GoPro, Inc.*, No. 1:15-cv-1108, Oral Order (D. Del. Nov. 7, 2016), the initial motion had requested a stay only though "the PTAB's written decisions," and the parties briefing did "not sufficiently explain" why a continued stay was warranted.

wasting party and judicial resources, particularly as to claim construction," and (b) further delaying litigation "does not establish undue prejudice," particularly where the plaintiff can be fully compensated through monetary damages. *Id.*

Similarly, in *Boston Sci. Corp.*, the court denied the plaintiff's motion to lift the stay and proceed on the claims that survived PTAB review, instead concluding the stay should remain in place during the pending appeals of the PTAB decisions. 2019 WL 2511162, at *1. The court explained that even though those parties were direct competitors, the additional delay associated with the appeals did not constitute undue prejudice because the plaintiff could be "adequately compensated by money damages." *Id.* at * 2. Further, with respect to the potential for simplification, the court found that maintaining the stay would "avoid[ ] inconsistent legal rulings, simplify[ ] terms, and provid[e] clarity on the scope of the issues to be litigated," while conserving judicial resources. *Id.* at *3. Indeed, the Court concluded that "the benefits to the Court from any opinion of the Federal Circuit might offer cannot be overstated in light of the Federal Circuit's unique expertise in the patent realm." *Id.* at *2.

Here, as the Court explained when initially imposing the stay, any prejudice to Centripetal resulting from a continued stay is "not substantial enough to overcome" the benefits of maintaining the stay because it does not diminish Centripetal's ability to recover monetary damages if it proves infringement. Dkt. 285 at 9-11.

### D. The Litigation Posture Remains Unchanged Since The Court First Considered The Merits Of A Stay.

Centripetal's contention that the stay should be lifted because "a substantial amount of discovery has already been completed" is meritless. That the parties engaged in discovery prior to the stay refutes Centripetal's allegation that PAN's motivations were improper but provides no basis to now lift the stay. Indeed, when the stay was imposed, the Court was well aware that some

17

discovery had occurred during the pendency of PAN's Motion to Stay. *See* Dkt. 285 at 8. As the Court correctly recognized, the stage of the case weighed in favor of a stay because, although some discovery was being conducted, "the Court ha[d] not issued a scheduling order, . . . set a trial date," nor had a deadline been set for "Rule 26 disclosures or . . . the completion of discovery." *Id.* Those circumstances remain unchanged.

## IV.   Conclusion

For the foregoing reasons, PAN respectfully requests that the Court deny Centripetal's Motion to Lift the Stay.

Respectfully submitted,

PALO ALTO NETWORKS, INC.
By Counsel

By: */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
MCGUIREWOODS LLP
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com

David E. Finkelson (VSB No. 44059)
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
E-mail: dfinkelson@mcguirewoods.com

Brett C. Govett (Admitted *Pro Hac Vice*)
Jacqueline Baker (Admitted *Pro Hac Vice*)
NORTON ROSE FULBRIGHT US LLP
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
jackie.baker@nortonrosefulbright.com

Richard Zembek (Admitted *Pro Hac Vice*)
Eric Hall (Admitted *Pro Hac Vice*)
Daniel Leventhal (Admitted *Pro Hac Vice*)
Daniel Prati (Admitted *Pro Hac Vice*)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
richard.zembek@nortonrosefulbright.com
eric.hall@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
daniel.prati@nortonrosefulbright.com

Stephanie DeBrow (Admitted *Pro Hac Vice*)
98 San Jacinto Boulevard, Suite 1100

19

Austin, Texas 78701
Telephone: (512) 474-5201
stephanie.debrow@nortonrosefulbright.com

James R. Batchelder (Admitted *Pro Hac Vice*)
Andrew T. Radsch (Admitted *Pro Hac Vice*)
ROPES & GRAY LLP
1900 University Avenue, 6th Floor
East Palo Alto, CA 94303
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 29, 2023, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which will send a notification of such filing to all counsel of

record.

By:  /s/ *Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
MCGUIREWOODS LLP
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com