**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| CENTRIPETAL NETWORKS, INC., § § § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 2:21-CV-00137-EWH-RJK |
| § | |
| PALO ALTO NETWORKS, INC., § | **FILED UNDER SEAL** |
| § | |
| Defendant. § | |
| § | |

**JOINT BRIEF ADDRESSING DEFENDANT PALO ALTO NETWORKS, INC.'S**
**<u>MOTION TO COMPEL FINANCIAL INFORMATION AND DOCUMENTS</u>**

Pursuant to Federal Rules of Civil Procedure 34 and 37(a), Defendant Palo Alto Networks Inc. ("PAN") moves the Court to compel Plaintiff Centripetal Networks, Inc. ("Centripetal") to perform the following:

1. Produce documents and provide testimony regarding investments in and litigation funding for Centripetal from 2018 to the present;

2. Produce documents and provide testimony related to Centripetal's engagement of Houlihan Lokey for a valuation of Centripetal and/or its intellectual property;

3. Produce an unredacted copy of the document titled "Insurance-Backed Lending Opportunity: Preliminary Assessment;" and

4. Reimburse PAN its costs and attorneys' fees incurred in the filing and prosecution of this motion, pursuant to Fed. R. Civ. P. 37.

The parties submit this joint brief containing both parties' respective positions on the above issues pursuant to Paragraph 15 of the Joint Proposed Scheduling Order (Dkt. 339-1).

PAN's POSITION

## I.   BACKGROUND

### A.   Centripetal's Funding

In an action in which Centripetal seeks substantial monetary damages, PAN needs to fully understand and analyze Centripetal's financial position and the bases for its damages claims. Accordingly, to comprehend Centripetal's financial position, PAN seeks information related to investments in Centripetal, including litigation funding.  On July 6, 2021, PAN served several document requests related to Centripetal's financial position and funding.  Specifically, PAN's Request for Production Nos. 2, 3, and 85 requested:

2: Documents sufficient to show Centripetal's corporate structure, investors, ownership, management, and affiliated entities for the past five years to the present.

3: All Documents related to Centripetal's efforts to raise capital or obtain investors, including any prospectus, business plan(s), or description of any patent(s), product(s) or technology owned, sold, licensed, or marketed by Centripetal.

85: All documents related to any effort, whether successful or not, to obtain any funding or investment in Centripetal, including presentations, financial statements, asset valuations, or other documents presented to or provided to investors or potential investors, and documents relied upon in preparing such materials.

Ex. 1, Centripetal's Response to PAN's First Set of Requests for Production, RFP Nos. 2, 3, and 85.

On November 2, 2021, PAN served further document requests related to Centripetal's

funding:

101: Documents sufficient to identify each investor, debtor, or other person who has held or currently holds a financial interest in Centripetal.

102: Separately for each investor, debtor, or other person who has held or currently holds a financial interest in Centripetal, documents sufficient to show each person's knowledge and involvement with respect to development or sales of any one or more of the Centripetal Products, and the prosecution, licensing or enforcement (including litigation) of any one or more of the Centripetal Patents-in-Suit or any one or more of the Centripetal Patents-in-Suit Family.

Ex. 2, PAN's Second Set of Requests for Production, RFP Nos. 101-02.  Requests Nos. 101 and

102 seek documents which will inform PAN on investments pertaining to Centripetal's products

and its IP monetization efforts.

Centripetal's response to RFP No. 101 is representative of its position on this issue:

Centripetal incorporates by reference its General Objections and Objections to Definitions and Instructions. Centripetal objects to this Request as harassment. Centripetal objects to this Request as not relevant to the claims or defenses in this case. Centripetal objects to this Request as overbroad, unduly burdensome, and not proportional to the needs of this case. Centripetal objects to this Request as vague and ambiguous, including for example, in its use of the phrases "investor," "debtor," "or other person," "sufficient to identify," "has held or currently holds," and "financial interest." Centripetal further objects to this Request to the extent that it calls for the production of documents and things that are publicly available or already known to Defendant. Centripetal objects to this Request as overbroad to the extent that it is not limited in temporal scope. Centripetal objects to this Request to the extent it seeks information that is covered by confidentiality agreements with

2

third parties and/or protective orders of this Court or any other courts. **Such information shall not be provided absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality.**

Ex. 3, Centripetal's Responses to PAN's Second Set of Requests for Production, RFP No. 101 (emphasis added).

In the July 18, 2023, deposition of Centripetal's CFO, Jon Howard, PAN asked questions regarding Centripetal's funding arrangements but Centripetal's counsel refused to let Mr. Howard answer, citing not only vague third party confidentiality concerns, but also unspecified attorney-client and "common interest" privilege grounds. Ex. 4, Howard Dep. 97:16-105:13; 110:7-111:4.

The parties have met and conferred on these issues multiple times, most recently on July 19 and July 24, 2023, but have not reached any agreement.

### B. Houlihan Lokey and Option3 Valuations

PAN also seeks documents and testimony related to (1) Centripetal's engagement of a third-party investment bank, Houlihan Lokey, and (2) an unredacted copy of a valuation of Centripetal's intellectual property/litigation attached to the Verified Complaint of Option3 Cyber Investments, LLC and Option3 Ventures, LLC, in a lawsuit filed in 2023 in the Delaware Court of Chancery. *See Option3 Cyber Investments, LLC and Option3 Ventures, LLC v. Steven Rogers and Jonathan Rogers*, Case No. 2023-0031. *See* Ex. 5, "Insurance-Backed Lending Opportunity: Preliminary Assessment."

On June 2, 2023, PAN requested "[a]ll appraisals or documents concerning valuation or appraisal by [Centripetal] or any third party of Centripetal, Centripetal's entire patent portfolio, the Centripetal Patents-in-Suit, or the Centripetal Patents-in-Suit Family, including but not limited to documents concerning a market or economic valuation or appraisal." Ex. 6, Centripetal's Resp.

to PAN's Third Set of Requests for Production, RFP No. 122.  Centripetal responded that "there are no relevant, non-privileged documents responsive to this request."  *Id.*

PAN also seeks an unredacted copy of an Exhibit attached to a lawsuit filed against Centripetal's majority owners in Delaware Chancery Court.  The Exhibit references valuations of Centripetal's patents and litigation, and refers to funding Centripetal obtained for and/or as a result of its litigation.  *See* Ex. 5, "Insurance-Backed Lending Opportunity: Preliminary Assessment".  Centripetal has acknowledged it has an unredacted copy of the Exhibit.  *See* Ex. 7, email from C. Finn to R. McFarland dated July 25, 2023.

The parties met and conferred on these issues on July 19 and 24, 2023, but have not reached an agreement.

## II.  PAN's Argument

### A.  Documents and Testimony Regarding Centripetal's Funding

The limited financial statements and related documents Centripetal has produced to date indicate the company has operated at a deficit for nearly all years since inception.  Indeed, although Centripetal seeks substantial damages, Centripetal's most recent unaudited financial statements indicate that ███████████████████████████████████████████████████████████.  *See* Ex. 8, Howard Dep., Ex. 9.  Those financial statements further indicate ████████████████ ████████████████████.  *Id.*

Despite PAN's repeated requests for further information explaining Centripetal's investors and litigation funding, Centripetal has adamantly refused to produce documents and provide testimony on this topic.  *See, e.g.*, Ex. 1, Centripetal's Resp. to PAN's First Set of RFPs, RFP Nos. 2, 3, and 85; Ex. 3, Centripetal's Resp. to PAN's Second Set of RFPs, RFP Nos. 101-02.

Centripetal initially objected to producing funding information in response to PAN's various Requests for Production on the basis that, *inter alia*, the requests seek confidential

information.  For example, Centripetal's response to RFP No. 101, which is representative of its position on this issue, states: "Such information shall not be provided absent an express order to the contrary from a court of competent jurisdiction, or an authorization from the third party having the interest in the information's confidentiality." *See* Ex. 3.

Centripetal raised similar confidentiality concerns about disclosing funding information in the deposition of its CFO, Jon Howard.  When PAN questioned Mr. Howard about Centripetal's litigation and investor funding arrangements, Centripetal's counsel instructed Mr. Howard "not to answer any questions regarding that line item on the basis of privilege – common interest privilege and attorney-client privilege."  *See* Ex. 4, Howard Dep. at 97:16-105:13; 110:7-111:4.  As expressed below, there cannot be an attorney-client privilege between Centripetal and its funders. Therefore, the "common interest" privilege asserted here is, at best, derived from any confidentiality requirements in Centripetal's agreements with third parties.  Confidentiality issues are controlled by the Protective Order entered over two (2) years ago, which governs the production of confidential documents and information, including that involving third parties.  Dkt. No. 93, ¶¶ 64-66.  Based on the information Centripetal has provided PAN, including in the meet and confer conferences, as of July 24, 2023, Centripetal had taken no actions to comply with the provisions of the Protective Order for providing notice to and obtaining approval for production of documents from third parties.

In written communications and at Mr. Howard's deposition, PAN's counsel challenged the validity of Centripetal's privilege assertions.  Centripetal's counsel refused to explain how questions regarding Centripetal's funding were covered by attorney-client privilege or a "common interest" privilege with a non-party.  *Id.*  No attorney-client privilege exists for Centripetal's communications and documents involving third party financiers.  And there can be no true

"common interest" privilege because the third parties are not in this litigation and their interests are, at least in large part, adverse to Centripetal.  Notably, in an email after the July 19 meet and confer following Mr. Howard's deposition, Centripetal did not specify privilege as a basis for withholding the requested information, but instead stated that it will "look into" providing certain funding information requested during Mr. Howard's deposition, and seek consent from third parties to disclose that information.  *See* Ex. 9, July 20, 2023 Email from Hannah Lee to Robert McFarland. Specifically, Centripetal stated:

> [W]e do not agree that litigation financing, corporate financing, or loans are relevant to any issue in the case.  Notwithstanding our disagreement, to avoid motion practice, Centripetal will look into the sources of funding corresponding to certain line items in Exhibits 9 and 10 from Jonathan Howard's deposition and seek consent from third parties to disclose such information.  Jonathan Rogers can be asked about this information when his deposition resumes, including whether there is litigation financing.  By way of this email, we do not intend to give PAN free reign into every aspect of the company's finances.  As you are well aware, such discovery is a fishing expedition beyond the reasonable scope of the claims and defenses in this case.

*Id.*

That vague communication does not address PAN's immediate needs.  It provides no indication when Centripetal will provide the referenced "information," and does not confirm that any responsive documents will be produced.  The email further does not indicate a production will occur before resumption of Jonathan Rogers' deposition on August 16, 2023.  Centripetal also provides no explanation why it did not begin requesting consent from third parties before July 20, 2023, particularly as some requests were propounded as early as July 2021, and Centripetal certainly was aware of the existence of these documents.  Of further concern, Centripetal's oral statements on this issue in a follow-up meet and confer on July 24, 2023, were even more vague, and appeared to back track from an actual production of documents.

As Centripetal's present position does not confirm PAN will timely receive the financial

information it needs, PAN moves to compel for several reasons.   ***First***, although Centripetal vaguely agreed to provide unspecified "information" as sought in Mr. Howard's deposition, it has not agreed to produce responsive documents or fulsome testimony regarding Centripetal's investors and litigation funding.   That information is, at minimum, directly relevant to damages issues and the value of the Patents-in-Suit.   As noted, the limited financial documents which Centripetal has provided establish that Centripetal earns minimal revenues and is not profitable.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████.   Given the questions still remaining, PAN is entitled to information and explanations of Centripetal's financial position and what factually informs its damages claims.

As Centripetal's revenues ████████████████████████████████, investors and/or litigation funders are providing Centripetal millions of dollars for something other than its actual products and performance.   For its defense of Centripetal's damages claims and analysis of the Patents-in-Suit and their families, PAN is entitled to testimony and documents showing whether Centripetal's capital stems from the value of its patents or, relatedly, the value of Centripetal's patent litigation.   Accordingly, information regarding the identities of Centripetal's investors/lenders, the amounts and circumstances of their investments and funding, the documents and valuations Centripetal provided to the investors and funders, and their communications are all directly relevant to Centripetal's claimed damages and the value of the Patents-in-Suit.   This information may also bear on Centripetal's statements in this lawsuit and trial themes.

Federal district courts have routinely found that litigation funding agreements are relevant in granting similar motions to compel. "[C]ourts have generally ruled that litigation funding agreements and related documents are relevant and discoverable in patent litigation." *Impact Engine, Inc. v. Google LLC*, No. 19-cv-1301-CAB-DEB, 2020 U.S. Dist. LEXIS 145636, at *4-6 (S.D. Cal. Aug. 12, 2020). These documents are relevant to "(1) establish the value of the patents at issue; (2) obtain statements made by [the plaintiff] regarding the patents at issue; and (3) refute potential trial themes." *Id.  See also Odyssey Wireless, Inc. v. Samsung Elecs. Co., Ltd.*, No. 15-cv-01735-H (RBB), 2016 WL 7665898, at *7 (S.D. Cal. Sept. 20, 2016) (granting motion to compel regarding "communications and agreements with investors and potential investors" because the defendants "seek these documents to learn about valuations placed on the [plaintiff's] patents prior to the present litigation.  Because Odyssey seeks damages from the alleged infringement of its patents . . . valuations of Odyssey's patents are directly relevant to these claims").[1]

Centripetal's attempt to limit relevance to litigation funding agreements for the instant case is unavailing.  Prior litigation funding documents, including any litigation funding agreements for the Cisco and Keysight litigations, are relevant the extent they contain any statement or analysis concerning value of the patent families at issue in this case.  And, these litigation funding documents shed light on Centripetal's financial condition at the time of the hypothetical negotiations and are therefore directly relevant to the reasonable royalty Centripetal would have been willing to accept. *See, e.g.*, *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (identifying as pertinent to the reasonably royalty analysis the "amount that

---

[1] Plaintiffs seeking to withhold documents related to funding occasionally rely on the work-product doctrine. *See Odyssey*, 2016 WL 7665898, at *4-7.  Centripetal has not asserted the work-product doctrine as a basis for its withholdings.

a licensor (such as a patentee) . . . would have agreed upon (at the time the infringement began).").

**Second**, production of this information is required now.  As fact discovery closes on August 17, 2023, Centripetal should not be permitted to "run out the clock" and stonewall production of relevant financial information, including copies of Centripetal's **own** documents it provided potential investors and litigation funders.  To the extent there are confidentiality provisions in agreements with third parties, Centripetal needs to (and should have already) advise the third parties of its obligation to produce these documents pursuant to the Protective Order.  As the documents are readily available, the Court should require Centripetal to produce them before the completion of Mr. Rogers' deposition on August 16, 2023.  Particularly given his evasiveness in the initial portion of his deposition, PAN will not obtain complete financial information from just Jonathan Rogers' testimony on unspecified "information."

For these reasons, PAN requests that the Court order Centripetal to produce the documents pertaining to its investments and litigation funding since 2018 by August 14, 2023, and require Jonathan Rogers, its designated financial representative, to fully and completely answer questions regarding Centripetal's investments and funding at his deposition on August 16, 2023.

### B.    Documents and Testimony Related to Centripetal's Engagement of Houlihan Lokey

Centripetal also refuses to produce documents and provide testimony related to Centripetal's engagement of an investment bank, Houlihan Lokey ("HL"), to provide a valuation of Centripetal, claiming that such information is "privileged."  Centripetal's assertion of privilege as to a third party's non-litigation valuation is not only legally erroneous, but, as discussed *infra*, inconsistent with the recent deposition testimony of Centripetal's corporate representative, Jonathan Rogers.

The HL valuation is specifically encompassed in PAN's discovery requests.  On June 2,

2023, PAN requested "[a]ll appraisals or documents concerning valuation or appraisal by [Centripetal] or any third party of Centripetal, Centripetal's entire patent portfolio, the Centripetal Patents-in-Suit, or the Centripetal Patents-in-Suit Family, including but not limited to documents concerning a market or economic valuation or appraisal." Ex. 6, Centripetal's Resp. to PAN's Third Set of Requests for Production, RFP No. 122. Centripetal responded that "there are no relevant, non-privileged documents responsive to this request." *Id.*

That response is inaccurate. The HL valuation unquestionably exists, and it is not privileged. Documents pertaining to Centripetal's engagement of HL, including internal Centripetal communications, are also not privileged. Indeed, Centripetal's answer herein is at odds with its verified answer to a similar interrogatory propounded in the suit filed against it in Delaware Chancery Court by certain investors, *Option3 Cyber Investments, LLC and Option3 Ventures, LLC v. Centripetal Networks, Inc.*, CL-2021-15490 (the "Option3 Lawsuit"). There, Centripetal confirmed valuations of it were conducted by HL, Ocean Tomo, and Cabrillo Advisors. *See* Ex. 11, Ex. D to Option3 Cyber Investments LLC's Motion to Compel dated May 26, 2022.

On July 19, 2023, the parties met and conferred on Centripetal's failure to produce documents involving the valuations of it conducted by HL, Ocean Tomo, and Cabrillo Advisors. After the meeting, Centripetal produced materials related to Cabrillo Advisors' valuation, but it withheld materials related to HL and Ocean Tomo, asserting that they were privileged.

Earlier that same week, on July 17, PAN questioned Centripetal's corporate representative, Jonathan Rogers, about HL's and Ocean Tomo's respective valuations. Mr. Rogers testified that HL was engaged in 2018 and acknowledged that the engagement was ***not in anticipation of litigation***. *See* Ex. 12, J. Rogers Dep. at 180:15-181:25; 183:2-13; 184:25-186:3. Mr. Rogers

nonetheless refused to answer questions about the scope of Centripetal's engagement of HL on the basis that the answers constituted attorney-client privileged material. *Id*. In comparison, Mr. Rogers testified that Centripetal engaged Ocean Tomo **for the reason** that it was anticipating litigation. *Id*. at 189:17-20. Accepting that representation at this juncture, PAN is not seeking the Ocean Tomo documents and information.

However, given Centripetal's unequivocal testimony that the company did not engage third-party HL in anticipation of litigation, Centripetal has no basis for asserting that HL's valuation of Centripetal, and related documents, agreements and communications between Centripetal and HL, are attorney-client privileged. To the extent Centripetal trots out confidentiality concerns, those are quickly erased by compliance with the Protective Order, particularly as Centripetal's counsel also represents HL with respect to the subpoenas it received.[2] Centripetal has thus improperly withheld documents and refused to let its designated representative testify about its involvement with HL. This Court should compel Centripetal to produce all documents related to and stemming from Centripetal's engagement of HL, including any valuations, by August 14, 2023, and compel Centripetal's 30(b)(6) representative, Jonathan Rogers, to testify regarding the same.

### C.   Production of the Unredacted Version of the "Insurance-Backed Lending Opportunity: Preliminary Assessment."

Attached as an exhibit to the Verified Complaint filed by Option3 Cyber Investments, LLC

---

[2] On July 5, 2023, HL responded to the subpoena *duces tecum* PAN issued and served its objections and response, and produced certain documents. HL's production does not, however, obviate Centripetal's need to produce its responsive documents, including its internal communications. *See Eagle v. Innovative Blast Techs.*, No. 3:19-cv-00095-RLY-MPB, 2020 U.S. Dist. LEXIS 259800, at *36 (S.D. Ind. May 22, 2020) ("[T]he court is unpersuaded by Eagle's objection that this request would be duplicative of the already-obtained non-party discovery from Eagle's architect because the architect would not have internal Eagle communicates related to the building's progress (or lack thereof) or communications that Eagle had with other contractors or vendors relating to the same.")

and Option3 Ventures, LLC alleging that Centripetal's majority owners, Steven Rogers and Jonathan Rogers,  carried out a sham merger, is a redacted document, entitled "Insurance-Backed Lending Opportunity: Preliminary Assessment" ("the Exhibit").  *Option3 Cyber Investments, LLC and Option3 Ventures, LLC v. Steven Rogers and Jonathan Roger*s, Case No. 2023-0031.  *See* Ex. 5, "Insurance-Backed Lending Opportunity: Preliminary Assessment".  ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████.  *Id.*

As stated above, on June 2, 2023, PAN requested "[a]ll appraisals or documents concerning valuation or appraisal by [Centripetal] or any third party of Centripetal, Centripetal's entire patent portfolio, the Centripetal Patents-in-Suit, or the Centripetal Patents-in-Suit Family, including but not limited to documents concerning a market or economic valuation or appraisal."  Ex. 6 Centripetal's Resp. to PAN's Third Set of Requests for Production, RFP No. 122.  The Exhibit plainly falls within the scope of RFP No. 122 (and other requests), but Centripetal refuses to produce an unredacted copy of it.  After initially stating it did not possess an unredacted copy, Centripetal now argues the Exhibit is not relevant.  *See* Ex. 7.

The Exhibit specifically identifies Palo Alto Networks and contains information related to Centripetal's damages claims and the value of the Patents-in-Suit.  It is relevant to issues in this lawsuit, in Centripetal's possession, and the redactions were apparently made for Centripetal's benefit, not Option 3's. As Centripetal can readily produce an unredacted copy of the Exhibit, this Court should compel production by August 14, 2023.

**D.    Requested Relief**

For the foregoing reasons, PAN respectfully requests that the Court order Centripetal to:

1.    Produce documents and provide testimony regarding Centripetal's investments and litigation funding from 2018 to the present;

2. Produce documents and provide testimony related to Centripetal's engagement of Houlihan Lokey for a valuation of the Company and/or its intellectual property;

3. Produce an unredacted copy of the "Insurance-Backed Lending Opportunity: Preliminary Assessment;"[3]

4. Award PAN its costs and attorneys' fees incurred in the filing and prosecution of this motion, pursuant to Fed. R. Civ. P. 37.

## CENTRIPETAL'S POSITION

PAN's purported basis for its Motion, namely the amount of damages at issue, does not entitle PAN to intrude into every aspect of Centripetal's finances, including irrelevant issues, such as what investments were made into Centripetal by third parties, privileged communications tied to the personal estate tax planning advice that Centripetal's CEO and COO received from their tax lawyers, and any assessments of other litigation matters that *do not involve PAN, PAN's accused products, and the Asserted Patents in this case*.[4]  The discovery that PAN seeks fails to meet the three criteria for discoverable information: (1) nonprivileged, (2) relevant to a claim or defense, *and* (3) proportional to the needs to the case.  *See* FRCP 26(b) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.").  The irrelevance of the discovery PAN seeks is supported by this Court's previous ruling in this case and PAN's own statements in briefing to this

---

[3] To the extent Centripetal maintains its claims of privilege, the Court should conduct an *in camera* review of any allegedly privileged documents in Nos. 1-3.
[4] Centripetal's background and facts are contained within its argument below.

Court i.e. any of Centripetal's financing based on other litigations is irrelevant. *See* D.I. 108 (Ropes & Gray's LLP's Opp. to Plaintiff Centripetal Networks, Inc.'s Motion to Disqualify) at 1-2, 8, 9, 13, 18-19, 27: D.I. 285 at 13, 19 (judgment from prior litigation would not be impacted by litigation against Defendant PAN).

PAN's very first requested relief seeks discovery into litigation funding from 2018 to the present. This litigation, however, was not filed until March 12, 2021, and Centripetal informed PAN that there is no litigation funding for this action. Thus, PAN is really seeking information about whether Centripetal obtained litigation funding for its prior litigation against Cisco and possibly, Keysight. Such broad discovery is not relevant to damages nor Centripetal's "financial condition" which is equally not relevant.[5]

## A. Documents Relating to Centripetal's Financial Position and Efforts to Raise Funds are Irrelevant to this Litigation

PAN's Requests for Production ("RFP") Nos. 2, 3, 85 and 101-102 are overbroad and not tailored to the claims and defenses in this case. They are not limited in scope to the Asserted Patents and/or Accused Products, and seek to unduly harass Centripetal by seeking discovery into Centripetal's company-wide financial position and funding. Notwithstanding the relevance of all documents, Centripetal has produced numerous documents regarding its company financials to PAN, including company-wide financial statements that contain its balance sheet, statement of operations and statement of cash flows (*see e.g.*, CENTRIPETAL-PAN 256057-60), its Year End Investor Reports that contain Centripetal's financial statements (*see e.g.*, Centripetal's 2017 Year End Investor Report at CENTRIPETAL-PAN 23269-275), its statements of operations (*see e.g.,* CENTRIPETAL-PAN 256056), documents regarding its 409A valuation of its company shares

---

[5] PAN's discovery efforts in this case are not limited to 2018 to present, highlighting the harassing nature of its discovery requests.

(*see e.g.*, CENTRIPETAL-PAN 258353-422, 264493-519), numerous documents regarding investor presentations/discussion materials (*see e.g.*, CENTRIPETAL-PAN 264340-66, ███████ ████████████████ PowerPoint Presentation), communications between Centripetal and investment firms regarding potential investors (*see e.g.*, CENTRIPETAL-PAN 258729-40, email between ███████████████████████████████; CENTRIPETAL-PAN 314795, email between ████████████████████████████), and contact logs (*see e.g.*, CENTRIPETAL-PAN 263560-621, ██████████████████████████). PAN insists that Centripetal's "financial position" is relevant because it has accused PAN of significant damages. However, simply because a patentee has asserted there are significant patent infringement damages does not entitle PAN to obtain discovery into every aspect of Centripetal's finances. PAN's argument has no legal basis and amounts to nothing more than harassment and retaliation.

In meet and confers, PAN only generally averred that it was entitled to know the sources of Centripetal's funding, including a loan reflected in certain line items in Exhibits 9 and 10 from Jonathan Howard's deposition on July 18, 2023, even if it was not related to the Asserted Patents, because it is entitled to know every detail of a patentee's "financial position." Whether Centripetal, a startup company who is investing heavily into growing its customer base and the continued development of its patented technology, is operating at a deficit or has a long term debt is entirely irrelevant to the amount of damages that PAN should pay for its infringement. *See* PAN's Position at 4. For example, a reasonable royalty for patent infringement is calculated on the basis of the *Georgia-Pacific* factors, not the details of every aspect of a patentee's financial condition at different periods of time. Indeed, PAN has failed to provide any support for its assertions that it is entitled to such broad discovery and there is no basis to seek "testimony and documents showing

whether Centripetal's capital stems from the value of the patents or relatedly, the value of Centripetal's patent litigation." *See* PAN's Position at 7.  PAN already has information regarding the value of Centripetal.  As for the Asserted Patents, Centripetal has unequivocally testified that it has not done "a valuation" of its patent portfolio, i.e., assessed the total value of Centripetal's patents in the marketplace.  July 17, 2023 J. Rogers Dep. at 181: 8-10.

PAN further insists that documents responsive to these requests include any agreements for litigation funding, i.e. a nonrecourse loan contingent on the outcome of the case, despite that 1) Centripetal has never sought litigation financing or funding for the instant litigation and the Asserted Patents and 2) any litigation funding agreements for matters beyond this case are irrelevant and shielded by the work product protection. *See Mondis Tech., Ltd. v. LG Elecs., Inc.*, No. 2:07-CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (Court found that the work product protection was preserved and applicable to documents shared with potential litigation funders on the basis that the documents were prepared "with the intention of coordinating potential investors to aid in future possible litigation.").  The two cases that PAN cites to in support of the relevance of litigation funding agreements in patent infringement cases involved agreements that contained or reflected the valuation of the asserted patents, but that is not the case here where no such litigation agreements exist.  *See* PAN's position at 8; see also *Taction Tech., Inc. v. Apple Inc.,* No. 21-CV-00812-TWR-JLB, 2022 WL 18781396, at *5 (S.D. Cal. Mar. 16, 2022) (In recognizing the relevance of litigation agreements and citing to *Odyssey* and *Impact Engine*, the Court found "Defendant's RFP Nos. 48, 50, and 51 relevant, but only to the extent that they seek litigation funding agreements and related documents that contain or reflect valuations of the Asserted Patents.").  Given that no litigation funding has even been sought for this litigation, PAN is really seeking information regarding the Cisco and Keysight litigation matters that do not

involve the Asserted Patents.  The Asserted Patents issued in 2020, well after the Cisco and Keysight cases went to trial.

PAN is simply seeking to harass Centripetal, by this motion when it previously admitted that financing related to other litigations is irrelevant.  *See* D.I. 108 (Ropes & Gray's LLP's Opp. to Plaintiff Centripetal Networks, Inc.'s Motion to Disqualify) at 1-2, 8, 9, 13, 18-19. 27: D.I. 285 at 13, 19 (judgment from prior litigation would not be impacted by litigation against Defendant PAN).  And, notwithstanding the fact that Centripetal never sought or even entered into discussions regarding litigation funding for the present litigation, litigation funding agreements and related documents have no bearing on the actual value of the Asserted Patents. *See Ashghari-Kamrani v. United Servs. Auto. Ass'n*, No. 2:15-CV-478, 2016 WL 11642670, at *4 (E.D. Va. May 31, 2016) ("Litigation funding is merely a relevancy issue: Information about a party's litigation funding is only relevant (and ultimately discoverable) if the requesting party has an actual basis for the relevancy of the information other than mere speculation or fishing.") (internal citations omitted); *see Kove IO, Inc. v. Amazon Web Servs., Inc.*, No. 18-cv-08175, Dkt. No. 497 (N.D. Ill. Jan. 26, 2022) (in finding discussions with litigation funders were irrelevant to the calculation of damages and that such negotiations were shielded by work product privilege, the Court stated that a litigation funding agreement is a "step of abstraction removed from any 'real world' indicators" of the asserted patents' value, and that negotiations with third-party litigation funders do not provide an appropriate means of determining the actual value of the patents at issue.).  As such, PAN's attempts to obtain discovery regarding Centripetal's financial position beyond what has already been produced and litigation funding (which does not exist) amount to nothing more than a fishing expedition for irrelevant information to intrude upon every aspect of Centripetal's finances.

**B.**     **PAN is Not Entitled to Discovery of Documents and Testimony Related to Houlihan's Lokey's Company-Wide Valuation of Centripetal**

Houlihan Lokey ("Houlihan") is a global investment bank. ███████████████

████████████████████████████████████████████████████████████████████

█████████████████████████████████████. July 17, 2023 J. Rogers

Dep. at p. 185, lines 1-10.  As part of that privileged engagement, Houlihan did not separately

value Centripetal's patents.[6]  Because the valuation is (1) privileged, and (2) does not concern the

Asserted Patents, it should not be subject to discovery to PAN in this patent infringement case.

PAN challenges Centripetal's assertion of privilege over the Houlihan valuation and related

communications on the basis that it was not performed in anticipation of litigation, which is not

the basis of Centripetal's objection to PAN's discovery requests.   These documents and

communications (including Centripetal's internal communications with respect to this

engagement) are unquestionably privileged because the valuation was done at the request of

counsel and the documents shared between Centripetal and its agent, Houlihan, █████████

█████████████████████████████████. *See, e.g.*, *In re Copper Mkt. Antitrust*

*Litig.*, 200 F.R.D. 213, 217-219 (S.D.N.Y. 2001) (internal citations omitted) (confidential

communications made with a client's agent – including a hired consultant - for the purpose of

facilitating legal services were privileged); *U.S. v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)

(inclusion of a third party, e.g. accountant, in attorney-client communications does not destroy the

privilege if the purpose of the third party's participation is to improve the comprehension of the

communications between attorney and client).

---

[6] Jonathan Rogers specifically stated in his deposition that Centripetal has never engaged a third party to conduct an evaluation of Centripetal's patent portfolio.  July 17, 2023 J. Rogers Dep. at 180:8-10.

Furthermore, given that the report is a company-wide valuation (as opposed to the Asserted Patents), the report and all related documents are irrelevant to any claim or defense in this case. Notwithstanding the lack of relevance, PAN subpoenaed Houlihan, who produced over 1200 documents in response to the subpoena. Houlihan's production included documents provided by Centripetal for Houlihan Lokey's 409A valuation of Centripetal's common stock, internal Houlihan Lokey emails regarding the 409A valuation and drafts of the 409A valuation report along with the final report. Thus, PAN's attempt to obtain additional discovery is solely an improper attempt to obtain discovery into privileged and irrelevant documents outside of the reasonable bounds of discovery.

**C.      The Unredacted Version of the Lending Opportunity Document ("the AON Document") is Work Product and Irrelevant to this Litigation**

The AON document █████████████████████████████████████████ ████████████████████████████████████████████████. A third party, who is an investor in Centripetal, Option3, that is currently disputing the value of Centripetal's stock, commissioned the document and improperly attached it to a complaint in an unrelated matter that Option3 filed against two of Centripetal executives. More than 95% of the document is unredacted and apart from referring to PAN as a potential target with the date of the lawsuit "TBD," there is nothing in the unredacted content regarding PAN or the Asserted Patents. Importantly, as is apparent from the face of the document, the redacted content includes ████ ████████████████████████████████████████████████ █████████████████████████

The redacted information is not only irrelevant to this case and the Asserted Patents, but also is privileged and confidential work product between parties (i.e., Option 3 and Centripetal) that share a common legal interest in the Cisco and future litigations. *See Mondis Tech,* No. 2:07-

CV-565-TJW-CE, 2011 WL 1714304, at *3 (E.D. Tex. May 4, 2011) (Court found that the work product protection was preserved because all documents were created with respect to future possible litigation. Additionally, the court found that common legal interest can exist if the parties "share a common enterprise and the legal advice relates to the goal of that enterprise."); *see also Yorktowne Shopping Ctr., LLC v. Nat'l Sur. Corp.*, No. 1:10CV1333, 2011 WL 1842720, at *1 (E.D. Va. May 16, 2011) (Here, the court found that the work product protection was preserved for documents that were created based on advice that *Yorktowne* sought from its counsel and agent, Sill, to maximize its coverage under the NSC insurance policy). Thus, PAN has no basis to compel an unredacted version of this document.

### D.    PAN's Motion Should Be Rejected Outright

Centripetal has consistently informed PAN of the privileged nature and the irrelevance of the aforementioned documents on several meet and confers over the last month. Nonetheless, PAN improperly insists on pursuing discovery into Centripetal's financial position, without a substantial basis to unduly harass Centripetal. Notably, PAN has subpoenaed other investors in Centripetal and various companies who have provided financial support and different business services to Centripetal or ever had a discussion with Centripetal regarding a potential investment. To date in this case, PAN has issued approximately eleven (11) subpoenas on such third parties. Because PAN has no law or basis for its Motion, it likewise has no basis for seeking costs and fees for this Motion. Indeed, PAN has not provided any discovery with respect to its company-wide valuations and efforts to obtain any financing or loans, even though PAN is the party from whom damages is sought. For these reasons, the Court should deny PAN's motion to compel the production of the aforementioned documents as well as its request for costs and attorneys' fees incurred in the filing of this motion.

### III.    CERTIFICATION

Pursuant to Local Rule 37(E), counsel for the parties certify they met and conferred on the topics herein more than once, but were unable to reach a resolution prior to the filing of this Motion.

### IV.    ORAL ARGUMENT

PAN believes a telephonic hearing on the issues raised in this Motion would be helpful to the Court, if the hearing can be held during the week of August 7, 2023.

Dated:  August 8, 2023                        Respectfully Submitted,

| | |
|---|---|
| */s/ Stephen Edward Noona* | */s/ Robert W. McFarland* |
| Stephen Edward Noona (VSB No. 25367) | Robert W. McFarland (VSB No. 24021) |
| **KAUFMAN & CANOLES, P.C.** | **MCGUIREWOODS LLP** |
| 150 W Main St., Suite 2100 | 101 W. Main Street, Suite 9000 |
| Norfolk, VA 23510 | Norfolk, Virginia 23510 |
| Telephone: (757) 624-3239 | Telephone: (757) 640-3716 |
| Facsimile: (888) 360-9092 | Facsimile: (757) 640-3966 |
| senoona@kaufcan.com | E-mail: rmcfarland@mcguirewoods.com |
| | |
| Paul J. Andre (*pro hac vice*) | Jonathan P. Harmon (VSB No. 39081) |
| Lisa Kobialka (*pro hac vice*) | David E. Finkelson (VSB No. 44059) |
| James Hannah (*pro hac vice*) | **MCGUIREWOODS LLP** |
| Hannah Lee (*pro hac vice*) | Gateway Plaza |
| Kris Kastens (*pro hac vice*) | 800 East Canal Street |
| Christina M. Finn (*pro hac vice*) | Richmond, VA 23219-3916 |
| **KRAMER LEVIN NAFTALIS &** | Telephone: (804) 775-1000 |
| **FRANKEL LLP** | Facsimile: (804) 775-1061 |
| 333 Twin Dolphin Drive, Suite 700 | E-mail: jharmon@mcguirewoods.com |
| Redwood Shores, CA 94065 | E-mail: dfinkelson@mcguirewoods.com |
| Telephone: (650) 752-1700 | |
| Facsimile: (650) 752-1800 | Brett C. Govett (Admitted *Pro Hac Vice*) |
| pandre@kramerlevin.com | James S. Renard (Admitted *Pro Hac Vice*) |
| lkobialka@kramerlevin.com | Jacqueline Baker (Admitted *Pro Hac Vice*) |
| jhannah@kramerlevin.com | **NORTON ROSE FULBRIGHT US LLP** |
| hlee@kramerlevin.com | 2200 Ross Avenue, Suite 3600 |
| kkastens@kramerlevin.com | Dallas, Texas 75201 |
| cfinn@kramerlevin.com | Telephone: (214) 855-8000 |
| | brett.govett@nortonrosefulbright.com |
| *Attorneys for Plaintiff* | james.renard@nortonrosefulbright.com |
| *Centripetal Networks, LLC* | jackie.baker@nortonrosefulbright.com |
| | |
| | Richard Zembek (Admitted *Pro Hac Vice*) |
| | Daniel Leventhal (Admitted *Pro Hac Vice*) |
| | Daniel Prati (Admitted *Pro Hac Vice*) |
| | **NORTON ROSE FULBRIGHT US LLP** |
| | 1301 McKinney Street, Suite 5100 |
| | Houston, Texas 77010 |
| | Telephone: (713) 651-5151 |
| | richard.zembek@nortonrosefulbright.com |
| | daniel.leventhal@nortonrosefulbright.com |
| | daniel.prati@nortonrosefulbright.com |

Stephanie DeBrow (Admitted *Pro Hac Vice*)
Talbot Hansum (Admitted *Pro Hac Vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
stephanie.debrow@nortonrosefulbright.com
talbot.hansum@nortonrosefulbright.com

Nathan Mannebach (Admitted Pro Hac Vice)
**NORTON ROSE FULBRIGHT US LLP**
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402-1114
Telephone: (612) 321-2800
nathan.mannebach@nortonrosefulbright.com

James R. Batchelder (Admitted *Pro Hac Vice*)
Andrew T. Radsch (Admitted *Pro Hac Vice*)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor East Palo
Alto, CA 94303
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com

Josef B. Schenker (Admitted *Pro Hac Vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas New York, NY
10036-8704
Telephone: (212) 596-9000
josef.schenker@ropesgray.com

*Attorneys for Defendant*
*Palo Alto Networks, Inc.*