**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| CENTRIPETAL NETWORKS, LLC, | §<br>§<br>§ |
| Plaintiff, | §<br>§ |
| v. | §<br>§ |
| PALO ALTO NETWORKS, INC., | §<br>§   Civil Action No. 2:21-cv-00137-EWH-RJK |
| Defendant. | §<br>§<br>§<br>§<br>§<br>§ |

## <u>JOINT BRIEF REGARDING DEFENDANT PALO ALTO NETWORKS, INC.'S MOTION TO COMPEL FULL RESPONSES TO REQUESTS FOR ADMISSION</u>

Pursuant to Federal Rule of Civil Procedure 26, Defendant Palo Alto Networks, Inc. ("Palo Alto") respectfully requests that the Court order Plaintiff Centripetal Networks, LLC ("Centripetal") to fully respond to Requests for Admission Nos. 9–11, 23–24, 27–29, 31, 38–39, and 49 (the "RFAs") that Palo Alto Networks served July 14, 2023.  It is PAN's position that Centripetal's responses to these RFAs are non-responsive and/or fail to comply with the requirements of FED. R. CIV. P. 36.  Pursuant to Paragraph 15 of the Court's Scheduling and Pretrial Order (Dkt. 353), the parties submit this joint brief containing both parties' positions.  Should the Court wish to hold a hearing on any aspect of the motion, the parties are available at the Court's earliest convenience.

## PALO ALTO'S POSITION

### I.   Background

On July 14, 2023, Palo Alto served 50 requests for admission to Centripetal with responses due Friday, August 4, 2023, pursuant to the Parties' Joint Rule 26(f) Report and Proposed Discovery Plan.  Dkt. 342 at 2.  On August 2, counsel for Centripetal requested "a one business day extension" to provide Centripetal with three additional days to respond to the RFAs.  *See* Ex. 1 (Email from C. Finn to Palo Alto's Counsel).  Palo Alto agreed to the extension and Centripetal served its RFA responses on August 7, 2023.  *See id.*; Ex. 2 (Centripetal's Objections and Responses to the RFAs).  On August 9, 2023, counsel for Palo Alto identified deficiencies and non-responsive answers and requested supplemental responses or a meet and confer on Friday, August 11, 2023.  *See* Ex. 3 (Letter from T. Hansum dated Aug. 9, 2023).  Despite requesting a meet and confer on the RFAs on August 11, Centripetal's counsel was still not prepared to discuss

the RFAs during a meet and confer on a different topic on August 16, 2023.[1]  The parties met and conferred again on August 17, 2023, at which time Centripetal's counsel indicated that Centripetal would not supplement its responses and confirmed that the parties were at an impasse. *Id.*

Given the parties' impasse, Palo Alto drafted its portion of a joint brief on a motion to compel and provided it to Centripetal on August 21, 2023.  Centripetal provided its portion of the joint brief on August 24.  On August 27, Centripetal requested a further conference on the brief. Counsel conferred again on August 29.  Later that day, Centripetal served amended RFA answers, in an effort to address Palo Alto's concerns.  Ex. 4 (Centripetal's Amended Objections and Responses to the RFAs).  Several of the amended responses satisfactorily addressed PAN's concerns, and PAN withdrew its objections to eight RFA answers.  Centripetal provided further supplemental answers to RFAs 23 and 29 on September 8, 2023, but those amendments still do not answer the actual requests.  The parties agree they are at an impasse regarding the remaining twelve RFA answers.

The RFAs at issue (Nos. 9–11, 23–24, 27–29, 31, 38–39, and 49) concern ***Centripetal's*** allegations that Palo Alto knew about Centripetal and its patents based on interactions in 2016 and 2017.  These RFAs seek to confirm the limited interactions between these parties in that 2016-2017 timeframe.  Proving the extent of PAN's knowledge of Centripetal's patents and its allegedly

---

[1] Without wanting to devolve into a "he said, she said" scenario, the statement in footnote 4 on page 14 of Centripetal's portion is incomplete.  PAN understood the RFA issue would be discussed on August 16, 2023.  The attorney on the August 16, 2023 meet and confer call for Centripetal, Ms. Lisa Kobialka, specifically advised Mr. Robert McFarland that she was not in a position to discuss RFA answers that day.  Because PAN was anxious for this issue to proceed, it was agreed counsel would discuss the RFA dispute the next day.  That conference was held with Ms. Christina Finn participating for Centripetal, and Mr.  Talbot Hansum and Mr. McFarland for PAN.  In that conference, Centripetal's counsel advised they would not further supplement their answers.

proprietary information are essential elements of Centripetal's claim for willful infringement. The pertinent allegations from the Amended Complaint are reproduced below.

69. In late May 2016, Shea & Company, an investment bank, introduced Centripetal to PAN's Sr. Director of Business and Corporate Development, to discuss a potential partnership between the two companies. In early and mid-June 2016, several Centripetal employees, including Centripetal's CEO and Founder, had several telephone conversations with members of PAN's Business and Corporate Development team to explore the possibility of PAN being a threat intelligence partner. In e-mail correspondence exchanged with PAN in June 2016, Centripetal provided an overview of its technology and provided industry publications on the importance of threat intelligence gateways and Centripetal's patented technology.

70. After these initial communications, PAN requested additional information regarding Centripetal's product offerings and technology. On June 21, 2016, Centripetal and PAN executed a mutual Non-Disclosure Agreement ("NDA") to protect disclosure of exchanged confidential information. Upon executing the NDA, Centripetal disclosed details to about its proprietary patented technology and confidential details about, inter alia, how Centripetal's technical solution works, why it works, why it is effective and its strategic business strategies in the marketplace for its technical solution. Despite showing interest in order to get access to Centripetal's confidential and proprietary information, PAN thereafter indicated that it was not interested in doing business with Centripetal, and did not follow up any further regarding a potential partnership with Centripetal.

71. Since 2016, Centripetal has met with PAN employees at several industry conferences including the RSA conference, Gartner Security Conference, and International Quality and Productivity Center (IQPC) conference. Centripetal provided demonstrations of its products at these industry conferences.

72. In July 2017, Oppenheimer, an investment banker, reached out to PAN to introduce Centripetal as an investment opportunity. PAN's Senior Vice-President of Business and Corporate Development expressed interest in talking to Centripetal and suggested the two companies schedule a more detailed technical discussion with PAN's creator and lead developer of Minemeld, Mr. Mori. As the parties had already signed an NDA, on August 7, 2017, Centripetal's founder and CEO, Steven Rogers, discussed with Mr. Mori how to integrate Centripetal's technology with PAN's existing products. Mr. Mori requested access to technical documentation regarding Centripetal's products. During the call, Mr. Mori stated that PAN did not have any technology that could scale like Centripetal's

technology, and was interested in how Centripetal's technology could interface with PAN's.

Through the course of fact discovery, Palo Alto ascertained that these allegations are without foundation or drastically overstated.  Accordingly, Palo Alto served multiple RFAs, including 9–11, 23–24, 27–29, 31, 38–39, and 49 related to **Centripetal's** allegations in ¶¶69-72 in the Amended Complaint.[2]  *See* Ex. 4.

Yet, even in its amended answers to the remaining RFAs at issue regarding **Centripetal's actions** and **Centripetal's evidence**, Centripetal has provided non-responsive answers:

| No. | Request | Amended Response | Issue(s) |
|-----|---------|------------------|----------|
| 9 | Admit that Palo Alto never expressed an interest to Centripetal in acquiring Centripetal. | Centripetal admits the Request in part to the extent "expressed an interest" means explicitly sent a documented request regarding an "acquisition" of Centripetal, but denies the Request otherwise, as PAN entered into a nondisclosure agreement with Centripetal, to engage in discussions for a potential business transaction. | Non-responsive. Palo Alto did not ask whether it "sent a documented request regarding an "acquisition" of Centripetal," it asked whether Palo Alto ever "expressed an interest to Centripetal in acquiring Centripetal."  The denial portion is wholly non-responsive as an NDA and unspecified "discussions" do not address the specific issue of an acquisition by PAN. |
| 10 | Admit that Palo Alto never expressed an interest to Centripetal in acquiring an equity position in Centripetal. | Centripetal admits the Request in part to the extent "expressed an interest" means explicitly sent a documented request regarding acquiring an "equity position" in Centripetal, but denies the Request otherwise, as PAN entered into a nondisclosure agreement with Centripetal, to | Non-responsive. Palo Alto did not ask whether it "explicitly sent a documented request regarding acquiring an 'equity position' in Centripetal," it asked whether Palo Alto ever "expressed an interest to Centripetal in acquiring an equity position in Centripetal." This denial is also non-responsive as an NDA and unspecified discussions do not |

---

[2] Palo Alto notes that as Centripetal's Amended Complaint does not plead "on information and belief" for the allegations contained at ¶¶ 69-72, Centripetal must know whether this information does or does not exist, and thus Centripetal should have directly answered these RFAs.

|  |  | engage in discussions for a potential business transaction. | address whether PAN specifically expressed an interest in an equity position. |
|---|---|---|---|
| 11 | Admit that Palo Alto never expressed an interest to Centripetal in loaning money to Centripetal. | Centripetal admits the Request in part to the extent "expressed an interest" means explicitly sent a documented request regarding a loan of money to Centripetal, but denies the Request otherwise, as PAN entered into a nondisclosure agreement with Centripetal, to engage in discussions for a potential business transaction. | Non-responsive. Palo Alto did not ask whether it "sent a documented request regarding a loan of money to Centripetal," it asked whether Palo Alto ever "expressed an interest to Centripetal in loaning money to Centripetal." Again, the request is about a specific type of transaction – a loan.  The second part of Centripetal's answer is obfuscation and non-responsive. |
| 23 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Centripetal never provided Palo Alto any non-public document regarding any Centripetal product. | Subject to and without waiving the foregoing General and Specific objections, in good faith after several meet and confers, Centripetal denies the Request as Centripetal did receive a request from PAN for technical documentation about its patented technology after a nondisclosure agreement was signed, and Centripetal provided non-public documents to Oppenheimer and Shea who communicated with PAN.  (Amended Response of 9/8/2023). | Non-responsive. Palo Alto did not ask whether Centripetal "receive[d] a request from PAN for technical documentation," it asked whether Centripetal "provided Palo Alto any non-public document regarding any Centripetal product" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint.  Centripetal's personnel should know and its records should reference what it and/or its stated agents provided PAN.  If Centripetal truly does not have sufficient information to admit or deny the request with respect to those actions, the answer should state that and only that. |
| 24 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Palo Alto never requested | Centripetal denies the Request as Centripetal did receive a request from PAN for technical documentation about its patented technology after | Non-responsive. Palo Alto did not ask whether Centripetal "receive[d] a request from PAN for technical documentation," it asked whether Palo Alto "requested Centripetal to provide Palo |

| | | | |
|---|---|---|---|
| | Centripetal to provide Palo Alto any non-public document regarding any Centripetal product. | a nondisclosure agreement was signed. | Alto any non-public document regarding any Centripetal product" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint. |
| 27 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Centripetal never provided Palo Alto any Centripetal algorithms. | Centripetal admits the Request to the extent "provided Palo Alto any Centripetal algorithms" means giving Palo Alto a document with Centripetal's software algorithms, but otherwise denies the Request, as PAN sought technical information regarding Centripetal's patented technology after signing a nondisclosure agreement with Centripetal, and presentations provided to Shea & Co. and Oppenheimer include discussions about Centripetal's algorithms. | The denial portion of the request is non-responsive. Palo Alto did not ask whether "PAN sought technical information regarding Centripetal's patented technology," it asked whether Centripetal "provided Palo Alto any Centripetal algorithms" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint. Centripetal should know what it did or did not provide PAN. Furthermore, the reference to Shea & Co. and Oppenheimer is non-responsive.  What Centripetal provided to them is immaterial; what matters is whether they provided algorithms to PAN. Centripetal should certainly know if entities that it states are its agents provided PAN its algorithms. |
| 28 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Centripetal never provided Palo Alto any Centripetal non-public test documentation. | Centripetal admits the Request to the extent "provided Palo Alto any Centripetal non-public test documentation" means giving Palo Alto a copy in a document of Centripetal's test documentation, but otherwise Centripetal denies the Request, as PAN sought technical information regarding Centripetal's patented | The denial portion of the request is non-responsive. Palo Alto did not ask whether "PAN sought technical information regarding Centripetal's patented technology," it asks whether Centripetal "provided Palo Alto any Centripetal non-public test documentation" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint. |

| | | technology after signing a nondisclosure agreement with Centripetal. | |
|---|---|---|---|
| 29 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Centripetal never provided Palo Alto any Centripetal non-public specifications. | Subject to and without waiving the foregoing General and Specific objections, in good faith after several meet and confers, Centripetal responds as follows:  after conducting a reasonable investigation and based on Centripetal's understanding of the scope of this Request, Centripetal denies the Request as the Request is vague and PAN sought technical information regarding Centripetal's patented technology after signing a nondisclosure agreement with Centripetal, and Centripetal provided non-public specifications about its products to Oppenheimer and Shea who communicated with PAN.  (Amended Response of 9/8/2023). | Non-responsive. Palo Alto did not ask whether "PAN sought technical information regarding Centripetal's patented technology," it asked whether Centripetal "provided Palo Alto any Centripetal non-public specifications" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint.  As stated before, Centripetal should well know what it provided PAN if it made this allegation.  If Centripetal truly does not have sufficient information to admit or deny the request with respect to its own actions, its answer should state that and only that. |
| 31 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Centripetal never provided Palo Alto any Centripetal patents or patent applications. | Centripetal denies the Request, as PAN employees visited Centripetal's website where Centripetal's patents are identified, and presentations provided to Shea & Co. and Oppenheimer include discussions about Centripetal's patents and patent applications. | Non-responsive. Palo Alto did not ask whether "PAN employees visited Centripetal's website," it asked whether Centripetal "provided Palo Alto any Centripetal patents or patent applications" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint.  Visiting a website is an alleged action by PAN; the request asks whether Centripetal provided PAN its patents or patent |

| | | | application.  Furthermore, although the request does not ask about Shea & Co.'s or Oppenheimer's actions, as Centripetal specifically avers that Shea & Co. and Oppenheimer were acting as its agents, not PAN's.  Accordingly, Centripetal should know if its stated agents provided PAN copies of its patent applications, or certainly can find that out.  That Centripetal <u>may</u> have provided those applications to its purported agents is immaterial; the request focuses on what Centripetal and/or its stated agents provided PAN. |
|---|---|---|---|
| 38 | Admit that during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Palo Alto never requested Centripetal to provide Palo Alto any Centripetal patents or patent applications. | Centripetal denies the Request, as PAN employees visited Centripetal's website where Centripetal's patents are identified. | Non-responsive. Palo Alto did not ask whether "PAN employees visited Centripetal's website," it asked whether Palo Alto ever "requested Centripetal to provide Palo Alto any Centripetal patents or patent applications" during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint. |
| 39 | Admit that Centripetal never provided Palo Alto any non-public information during the course of any of the alleged interactions referred to in paragraph 71 of the Amended Complaint. | Centripetal denies the Request, as the Request is vague and PAN sought technical information regarding Centripetal's patented technology after signing a nondisclosure agreement with Centripetal. | Non-responsive. Palo Alto did not ask whether "PAN sought technical information regarding Centripetal's patented technology," it asked whether Centripetal ever "<u>provided</u> Palo Alto any non-public information during the course of any of the alleged interactions referred to in paragraph 71 of the Amended Complaint."  (emphasis added) |
| 49 | Admit that Centripetal's first notice directly to Palo Alto Networks | Centripetal denies this Request, as Centripetal had conferences with | Non-responsive. The request specifically addresses Centripetal's first providing |

| identifying the Patents-In-Suit was March 12, 2021, when the Complaint was filed. | PAN's counsel and Centripetal marks its website with its patents. | direct notice to Palo Alto of the Patents-In-Suit. How Centripetal marks its website and whether Centripetal had conferences with PAN's counsel in a wholly different context does not answer whether the lawsuit was PAN's first notice of the Patents-In-Suit. |

## II.    Argument

Palo Alto is entitled to move to determine the sufficiency of an answer or objection to its RFAs pursuant to FED. R. CIV. P. 36(a)(6).  "Unless the court finds an objection justified, it must order that an answer be served."  *Id*.  And if an answer does not comply with Rule 36, "the court may order either that the matter is admitted or that an amended answer be served."  *Id*.  Centripetal's RFA responses do not comply with Rule 36.  The responses are—at best—non-responsive and—at worst—intentionally evasive.

Pursuant to FED. R. CIV. P. 36(a)(4), Centripetal's RFA responses must either admit the matter of the request or:

> "[i]f a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny."

Even after its amendments, Centripetal has denied or partially denied every single one of RFAs 9–11, 23–24, 27–29, 31, 38–39, and 49 by: (1) substantially changing the nature of the request, including focusing on the conduct of others, but not itself, so that Centripetal can still deny or partially deny the requests; (2) asserting, without any explanation or support, that the request is vague; and/or (3) claiming that "Centripetal does not have sufficient information . . . and on those

10

grounds, den[ying]" the request, notwithstanding that the request was directed at Centripetal's own conduct and/or matters in which it was directly involved—thereby precluding the possibility of any lack of knowledge or information. *See* Section I, *supra*. On their face, those responses are improper and warrant an order compelling Centripetal to provide amended responses in accordance with the requirements of Rule 36.

First, Centripetal may not redefine an RFA to avoid a response or facilitate a denial of a different factual proposition. Rather, it must in good faith "qualify an answer or deny only a part of a matter" while specifying "the part admitted and qualify[ing] or deny[ing] the rest." *See* FED. R. CIV. P. 36(a)(4). Centripetal failed to comply with those requirements here. For example, in RFA's 9-11, asking whether Palo Alto ever expressed interest in specific types of financial transactions with Centripetal: acquisition, investment, or loans, Centripetal redefines the request to partially admit PAN expressed no such interests in writing, but then denies the requests by utilizing the unresponsive *non sequitur* that Palo Alto entered into "a nondisclosure agreement with Centripetal" to discuss unspecified patent business transactions. *See* Ex. 4. Centripetal well knows whether PAN ever specifically expressed interest in loaning it money or acquiring all or part of it. The execution of an NDA is neither probative of nor relevant to whether Palo Alto expressed such interests. Indeed, the record establishes that Centripetal signed and returned the NDA after PAN indicated it had no interest in pursuing a technology product relationship in 2016. *See* Ex. 5, attached hereto. Moreover, as Centripetal is now well aware, deposition testimony of both former PAN and Centripetal employees confirms the parties' limited discussions in 2016 involved a potential product partnership, which PAN quickly determined was not worth pursuing. *See* Exs. 6 (Horwitz Dep. at 78:21–81:19), 7 (Colter Dep. at 79:15–82:6). PAN likewise politely rejected Centripetal's overtures in 2017.

Centripetal's focus on what it gave Shea & Co. and Oppenheimer and what those purported agents <u>may</u> have provided to PAN misses the mark.  If Centripetal doesn't know what its agents provided PAN, it should ask them.  If it can't or won't ask, then it must state it lacks knowledge or information to respond to the request.  But it can't properly deny the request by speculating that its agents "may" have sent PAN something.

In that respect, in another series of RFAs, Palo Alto sought admissions that Palo Alto did not ask for or receive "non-public" information.  *See, e.g.*, RFAs 23–24, 28–29, 39.  Instead of responding to the substance of those requests, Centripetal circumvented them by rewriting the RFAs and then alleging only that Palo Alto "sought" or "request[ed]" "technical documentation" and "technical information."  *Id.*  Of course, not all "technical" information is "non-public" and, even assuming, arguendo, that "technical information" was requested does not mean that "non-public" information was provided.  Centripetal's responses are again evasive in multiple respects. It is immaterial what Centripetal might have provided to its investment bankers; these RFAs focus on what was actually provided to PAN.  In that respect, both Jonathan Rogers' and Steven Rogers' testimony about what Centripetal gave Shea & Co. and Oppenheimer are irrelevant, as are their speculations about what those investment bankers may have done with that information.  *See* Memorandum pp.13-14.  *See also*, Ex. 8, Jonathan Rogers' Deposition, p. 425.  These requests ask Centripetal to admit or deny what it provided to PAN.  If, after the required reasonable inquiry, Centripetal truly does not know what it and its deemed agents, Shea & Co. and Oppenheimer, provided PAN (notwithstanding their respective responses to subpoenae *duces tecum*), then Centripetal must state that lack of knowledge.  But Centripetal has no factual or legal basis to deny these requests.

Second, Centripetal's objection to certain of the RFAs as "vague" is without merit.  For example, RFA 29 requests an admission that "during the course of the communications alleged in paragraphs 69-70 and 72 of the Amended Complaint, Centripetal never provided Palo Alto any Centripetal non-public specifications."  Centripetal responded by calling the term "specifications" vague, notwithstanding that the vast majority of Centripetal's business involves developing and selling software-based subscriptions and services that have certain specifications.  Further avoiding the request as worded, Centripetal then introduced its own indefinite term, "technical information," in order to deny the request.  Centripetal's other objection to vagueness—including to the term "non-public information,"—is equally meritless.  *See, e.g.*, RFA 39.

Finally, each of the RFAs at issue concerns Centripetal's own actions or alleged events and occurrences in which it was directly involved.  Thus, any contention that the facts are not sufficiently known by Centripetal is nonsensical.  *See* RFAs 23, 29.  Indeed, the *only* reason these RFAs were propounded is because of ***Centripetal's*** allegations in its Amended Complaint.  If Centripetal has no evidence regarding the facts underlying those allegations, then pursuant to Rule 36 it should (1) specifically state that it lacks sufficient knowledge and is unable to answer, but not deny the request, (2) withdraw or amend ¶¶ 69-72 of its Amended Complaint, and (3) explain to the Court why it made allegations of fact for which it still possesses no evidence.  Instead, in violation of its Rule 36 obligations, Centripetal chose to feign ignorance, redefine the RFAs, and proffer non-responsive answers.[3]

---

[3] Rule 36 provides that "The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made a reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny." This does not mean a party can simply deny a request just because it claims a lack of knowledge or information.  And, critically, although its answers recite the required verbiage that it has made a reasonable inquiry to ascertain the information, Centripetal's insert provides no specifics on this,

Courts, including this Court, routinely require full and proper answers to RFAs or deem RFAs admitted when the original answers feign ignorance, include non-responsive information, or otherwise fail to comply with Rule 36. *See, e.g.*, *Bullock v. Kraft Foods, Inc.*, Civil Action No. 3:11cv36, 2011 U.S. Dist. LEXIS 123885, at *4–9 (E.D. Va. Oct. 26, 2011) (deeming several requests admitted and requiring amended answers to several additional requests because of unclear qualifications to the admissions and the inclusion of "extraneous information or denials that do not fairly respond to the request"); *In re Skanska USA Civil Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 U.S. Dist. LEXIS 207884, at *36–44 (N.D. Fla. July 30, 2021) (finding numerous answers to requests for admission insufficient because "Skanska created ambiguities where there were none or rewrote a request so that it could provide a more favorable answer"). Centripetal's responses suffer from the same defects as the inadequate answers in *Bullock* and *Skanska*. Accordingly, this Court should require full and proper responses to the RFAs at issue or deem them admitted pursuant to Rule 36.

Centripetal did not respond to the requests in good faith as Rule 36 requires, and it continues to obfuscate matters in its opposition. This is particularly evident in its misleading citation to the supposed pre-filing access of PAN's counsel to its patents and data room before suit was filed. *See* Memorandum pp. 18-19. This argument references Centripetal's unsuccessful disqualification motion against one of PAN's counsel, Ropes & Gray. Dkt. No. 285. Notably, Ropes & Gray was not representing PAN in that prior matter, but rather an investment banker, Silver Point Finance, who ultimately declined to fund Centripetal. That Ropes & Gray had access to Centripetal's website is meaningless and non-responsive – the website is publicly available.

---

including whether it even contacted its purported agents, Shea & Co. and Oppenheimer, about the requests before or since responding.

And, critically, as Ropes & Gray signed an NDA, it certainly did not share whatever it learned in the data room later with PAN. Indeed, Ropes & Gray specifically represented that to this Court. *Id*. at 20. Centripetal's disqualification motion was denied without a hearing. *Id*. Centripetal's efforts to use a wholly unrelated funding transaction (*Id*. at 15) as a basis for denying requests regarding PAN's lack of pre-suit knowledge is improper and disingenuous.

For these reasons, the Court should grant Palo Alto's motion and award Palo Alto its costs and attorneys' fees incurred in the filing and prosecution of this motion.

## CENTRIPETAL'S POSITION

In compliance with Fed. R. Civ. P. 36, Centripetal has fully responded to PAN's RFAs Nos. 9–11, 23–24, 27–29, 31, 38-39, and 49 based on a reasonable investigation and the best recollection of Centripetal as to events that occurred approximately five to six years ago.[4] *See* Ex. 2 at 24, 27-28, 40-41 (Centripetal's August 7, 2023 Responses to RFA Nos. 24, 29, and 49); Ex. 4 at 3-10, 14-15 (Centripetal's Amended Responses to RFA Nos. 9-11, 23, 27-28, 31, 38-39); Ex. 15 at 3-4 (Centripetal's Amended Responses to RFAs 23 and 29). As Centripetal set forth in Paragraphs 69-72 of the Amended Complaint, the parties had multiple interactions during the 2016-2017 timeframe. Dkt. No. 65 (Amend. Compl.) ¶¶ 69-72. On June 21, 2016, Centripetal signed a non-disclosure agreement with PAN to engage in discussions for potential partnership,

---

[4] The parties have met and conferred regarding Centripetal's RFA responses numerous times over the past month. During the week of August 14th, the parties met and conferred multiple times on a variety of topics, including on August 15th, at which time PAN did not raise Centripetal's RFA responses, though Centripetal was prepared to meet and confer regarding them. During the parties' August 16th meet and confer on a separate topic, the parties agreed that they would discuss this matter in a separate meet and confer, and then proceeded to meet and confer the following day August 17th. In order to resolve the dispute without motion practice, Centripetal requested the parties meet and confer again, and subsequent to the meet and confer, Centripetal provided amended responses to certain RFAs on August 29th. PAN informed Centripetal on August 31st that it would still be pursuing its motion with respect to certain RFAs. In an effort to further resolve the dispute, Centripetal provided further amended responses to certain RFAs on September 8th.

and in the 2016-2017 timeframe, engaged investment banks Shea & Co. and Oppenheimer, to act as agents for Centripetal, and provide PAN with Centripetal's confidential and proprietary information to assess and pursue the investment opportunity. *See id*.  Centripetal's Chief Operating Officer, Mr. Jonathan Rogers, testified to these interactions at his deposition.  Ex. 8 (J. Rogers Depo. Tr.) at 418:18-22 (some of PAN's requests for information were handled by Oppenheimer and Shea, as representatives of Centripetal); *id*.at 419:20 – 420:10 (Oppenheimer would have responded to Luigi Mori's request for additional technical information because it was Oppenheimer's role to deliver that piece of collateral that they had and managed in to the strategic partner investor"); *id*. at 424:14 – 425:4 (Oppenheimer directly sent PAN Centripetal's technical information); *id.* at 442:7-18 (transmissions between Oppenheimer and PAN regarding Centripetal's technical information "were typically direct"); *id.* at 422:21- 423:5 ("I believe Steven [Centripetal's CEO] gave [PAN] technical information in the conduct of the meetings that he held telephonically as well as hosting at the security conferences, and I believe he also tasked our team, including me, with doing so in the follow-up by and through Oppenheimer."); Ex. 16 (J .Rogers Depo. Ex. 17) (confidential presentation provided to Oppenheimer regarding Centripetal).

Mr. Steven Rogers, Centripetal's CEO, was also asked at his deposition about the meetings with PAN and could not recall what was specifically exchanged, but understood that Centripetal's technical information would have been provided to PAN under NDA after a meeting with PAN's engineer, and Centripetal's investment bankers may have also sent confidential information of Centripetal.  Ex. 9 (S. Rogers Depo. Tr.) at 74:8-75:15 (Shea & Company contacted Palo Alto on behalf of Centripetal as a potential strategic partner); *id*. at 76:3-96:14, 97:8-101:22 (sharing Centripetal's confidential and proprietary information to Shea & Company to share with potential partners); Ex. 10 (PAN-CENT_0001801297-310, Steven Rogers Depo. Ex. 4) (Centripetal

confidential presentation dated May 19, 2016 regarding Centripetal's patents, technology, and business shared with Shea & Company for discussions with potential partners); Ex. 11 (PAN-CENT_0001801314, Steven Rogers Depo Ex. 5) (e-mail from Shea & Company dated May 25, 2016 recommending "mutual education" discussion between Centripetal and PAN); Ex. 12 (CENTRIPETAL-PAN 222088-89, Steven Rogers Depo Ex. 9) (e-mail between S. Rogers and PAN's Sr. Director of Business and Corporate Development, attaching an industry publication following up on a telephone conversation and inquiring about meeting at an upcoming Gartner conference); Ex. 9 (S. Rogers Depo) at 126:10-24 (testifying that he cannot recall what specific written materials were provided but other documents may have been provided through banking relationship), 153:25-154:21 (confidential summary of Centripetal's technology and business was provided to companies that Oppenheimer reached out to); Ex. 13 (OPCO_38, Steven Rogers Depo. Ex. 19); Ex. 14 (CENTRIPETAL-PAN 335161-62) (email from Centripetal to Oppenheimer to follow-up with PAN after Centripetal's meeting with Mr. Mori, PAN's engineer).

Consistent with its Amended Complaint and deposition testimony, Centripetal's denials to certain RFAs regarding providing confidential information to PAN have been made in good faith based on a reasonable inquiry. Specifically, in response to each of PAN's RFAs 9–11, 23–24, 27–29, 31, 38-39, and 49, Centripetal stated that it responded "after conducting a reasonable investigation" or "after a reasonable investigation." Ex. 2 (Centripetal's August 7, 2023 Responses to RFA Nos. 24, 29, and 49) at 24, 27-28, 40-41; Ex. 4 (Centripetal's Amended Responses to RFA Nos. 9-11, 23, 27-28, 31, 38-39) at 3-5, 7-8, 10, 14-15; Ex. 15 (Centripetal's Amended Responses to RFA Nos. 23 and 29 at 3-4). Simply because PAN does not like the answers is not grounds for Centripetal to have to change its answers. "

Contrary to PAN's assertion that Centripetal "redefined" RFAs including PAN's RFA Nos. 9-11 (requesting admissions that PAN never expressed an interest to Centripetal to acquire Centripetal, acquire an equity position in Centripetal or loan money to Centripetal), Centripetal responded based on its understanding that "expressed an interest" meant provided documentation to Centripetal regarding an acquisition, loan, or equity position, and stated that PAN entered into an NDA during discussions about a potential business transaction. *See Runway TV, LLC v. De Gray*, Case No. 2:18-cv-02503-FMO-JC, 2020 WL 6712253, *3 (C.D. Cal. Sept. 15, 2020) ("Where the meaning of a particular term in a request is inexact, the responding party should supply its own definition and admit or deny, or qualify its admission or denial to make it accurate and responsive.") (citing S.*A. Healy Co./Lodigiani USA, Ltd. v. United States*, 37 Fed. Cl. 204, 205-07 (Fed. Cl. 1997)); *see* Ex. 8 (J. Rogers Depo. Tr.) at 416:3-14 ███████████████ ████████████████████████████████████████████████████████ ████████████████████████████████; Ex. 9 (S. Rogers Depo. Tr.) at 99:11-21 ██████████████████████████; 197:21-198:14 ███████████ ███████████████████████████████████████████. Based on the premise under which these discussions took place, Centripetal appropriately denied RFA Nos. 9-11 with the understanding that an expression of interest was made through the signing of the NDA pursuant to which PAN sought technical information about Centripetal's patented technology to engage in discussions for a potential business transaction.

Further, while RFAs Nos. 29 and 39 use vague, overbroad terms such as "non-public specifications" and "any non-public information," Centripetal denied these RFAs as the record supports that Centripetal did provide Palo Alto with non-public information about its technology.

Centripetal's Chief Operating Officer testified that PAN consumed and requested a number of things that describe Centripetal's patented technology. *See* Ex. 8 (J. Rogers Depo. Tr.) at 122:6-15 (conversations at trade shows with PAN employees), 129:5-131:7, 144:14-145:20 (discussing interactions between Centripetal and PAN, including Oppenheimer on behalf of Centripetal), 417:10-24 (including "various things from the downloading and consuming of our ESG white paper that describes the patented technology and - and the test results to the materials provided by Oppenheimer that does the same but in substantially greater detail to the meetings that occurred between our team and Palo Alto representatives and their requests for further technical information there, as well as the demos that were performed at our trade shows."), 419:20 – 420:10 (in response to its request for additional technical information and in addition to the general management presentation, Oppenheimer was equipped to provide PAN with "a deeper technical presentation that described the system architecture, the component technologies, and how it all worked."); Ex. 9 (S. Rogers Depo. Tr.) at 202:3-23, 206:21-208:3, 209:12-211:4 (Centripetal would have provided additional technical information to PAN following discussion with Mr. Mori, PAN's engineer); *id.* at 216:10-13 (testifying that Centripetal provided information to PAN under NDA).

Despite PAN's contention that it must be otherwise, Centripetal's understanding of the term "technical information" encompasses the confidential and proprietary information that was given to PAN in the course of the discussions in 2016-2017 under NDA, consistent with the Amended Complaint and other deposition testimony in this case[5]. *See e.g.*, Ex. 8 (J. Rogers Depo. Tr.) at 418:5-6 ("So what requests for further technical information did Palo Alto Networks make to Centripetal?"); 418:13-15 ("What specific technical information did a representative of Palo

---

[5] PAN argues that the NDA was executed after PAN indicated it had no interest in pursuing a partnership, but fails to mention that PAN re-engaged in discussions with Centripetal including its agent Oppenheimer in 2017 after the NDA was executed.

Alto Networks ask a representative of Centripetal for?"); 419:9-14 ("…that occurred between Steven Rogers and Luigi where Steven described our solutions and what they do.  They -- they had conversations about that, and then there was follow-up requesting further technical information about how they work."); Ex. 9 (S. Rogers Depo. Tr.) at 127:8-19 (it would be "normal" for Shea & Co. to directly provide written materials to PAN in 2016).  As discussed above, even under the scenario that Centripetal may not have directly sent PAN all such technical information, Shea and Oppenheimer, acting on Centripetal's behalf, may have done so in response to PAN's request and pursuant to the NDA between the parties[6].  Accordingly, Centripetal appropriately denied RFA Nos. 23-24, 28-29, and 39.

In addition, as reflected in its responses, Centripetal cannot admit RFA Nos. 27, 31, and 38 as PAN may have received directly from Shea & Co. and Oppenheimer information about Centripetal, including information about patents and algorithms that were provided to them to share with PAN.  *See* Ex. 4 at 8 (Response to RFA No. 27: "…PAN sought technical information regarding Centripetal's patented technology after signing a nondisclosure agreement with Centripetal, and presentations provided to Shea & Co. and Oppenheimer include discussions about Centripetal's algorithms"; *id*. at 10 (Response to RFA No. 31: "...presentations provided to Shea & Co. and Oppenheimer include discussion about Centripetal's patents and patent applications"); *id*. at 14 (Specific Objections to RFA No. 38: "Centripetal objects to this Request to the extent it also seeks a response relating to what PAN may or may not have done, including what it may have requested from Shea & Co. or Oppenheimer."); *see also* Ex. 8 (J. Rogers Depo. Tr.) at 135:15-

---

[6] PAN speculates that Centripetal could have "reached out" to Shea and Oppenheimer concerning their discussions from 2016-2017.  As discussed herein, both Shea and Oppenheimer, in response to subpoenas served in this case, produced materials that show they received confidential information from Centripetal regarding its technology and patents, and communicated with PAN about Centripetal.

136:17, 144:14-145:20 (materials provided to Oppenheimer discuss algorithms and patented technology and Oppenheimer had communications directly with Palo Alto); Ex. 16 (J .Rogers Depo. Ex. 17) (confidential presentation provided to Oppenheimer regarding Centripetal).

PAN's citations to *Bullock* and *Skanska* are inapposite.  Centripetal's responses "remain true to the request[s] as written, and any denial and qualification,…[is] succinct, clear, and within the Federal Rules." *Bullock v. Kraft Foods, Inc.*, Civil Action No. 3:11cv36, 2011 U.S. Dist. LEXIS 123885, at *8 (E.D. Va. Oct. 26, 2011) (responding party's admissions, served four days after the due date, were accompanied by partial denials, extraneous facts, and lengthy narratives that did not go to the substance of the request, thus warranting the sanctions of deeming certain matters as admitted and ordering that an amended answer be served with respect to others.). Similarly, in *Skanska*, the Court found that even Skanska's  supplemental responses were still as evasive and contradictory as their original responses, and did not include statements regarding a reasonable inquiry.  See *In re Skanska USA Civil Se. Inc.*, No. 3:20-CV-05980-LC/HTC, 2021 U.S. Dist. LEXIS 207884, at *36 (N.D. Fla. July 30, 2021).  Centripetal's responses, which are based on the facts and information gathered after conducting a reasonable investigation (as stated in its responses), comply with Fed. R. Civ. P. 36 and thus cannot be compared to the gravely confusing and misleading responses in those cases.

As such, PAN's suggested sanction of ordering Centripetal to withdraw or amend ¶¶ 69-72 of its Amended Complaint is not only an inappropriate sanction outside of those permitted by Fed. R. Civ. P. 36, but also unjustly harsh under the circumstances.  *See Think Prods., Inc. v. ACCO Brands Corp.*, No. 20 C 3958, 2023 U.S. Dist. LEXIS 44384, at *19 (N.D. Ill. Mar. 16, 2023) (Defendants' indefinite and contradictory Rule 36 responses did not warrant striking its affirmative defenses.  Additionally, the Court reasoned that "[w]here contention Rule 36 requests

cannot be readily admitted or denied, courts ought to be reluctant to punish the responding party too harshly for less than-strict compliance.") (internal citations omitted).

Finally, Centripetal appropriately responded to RFA Nos. 31, 38, and 49 regarding PAN's pre-suit knowledge of Centripetal's patents, and identified the basis for denials, i.e. that Centripetal's website had its patent numbers, and conferences with PAN's counsel occurred before this litigation where Centripetal discussed its patents.  *See* Ex. 8 (J. Rogers Depo. Tr.) at 212:13-24, 432:8-24 ███████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████

For these reasons, the Court should deny PAN's motion and deny its request for fees and costs, as PAN has no reasonable basis to seek fees and costs where there is a good faith dispute over the scope of discovery, which is the case for Centripetal here. *Marlow v. Chesterfield Cty. Sch. Bd.*, No. 3:10CV18-DWD, 2010 WL 4393909, at *1 (E.D. Va. Oct. 28, 2010) (denying attorneys' fees "because there appeared to be a good faith dispute over the scope of discovery, and both positions were reasonably grounded in existing law and fact."); *Porto Tech. Co. v. Cellco P'ship*, No. 3:13CV265-HEH, 2013 WL 12171864, at *1 (E.D. Va. Nov. 5, 2013) ("The United States Court of Appeals for the Fourth Circuit has afforded district courts substantial discretion in resolving motions to compel. This also extends to the award of fees and costs.") (internal citations omitted).

## **CERTIFICATION**

Pursuant to Local Rule 37(E), undersigned counsel certify they have met and conferred in good faith on this issue, but counsel were unable to reach a resolution prior to filing this Motion.

Dated:  September 13, 2023                         Respectfully Submitted,

| | |
|---|---|
| */s/ Stephen E. Noona* | */s/ Robert W. McFarland* |
| Stephen Edward Noona | Robert W. McFarland (VSB No. 24021) |
| Virginia State Bar No. 25367 | MCGUIREWOODS LLP |
| **Kaufman & Canoles, P.C.** | 101 W. Main Street, Suite 9000 |
| 150 W Main St., Suite 2100 | Norfolk, Virginia 23510 |
| Norfolk, VA 23510 | Telephone: (757) 640-3716 |
| Telephone: (757) 624-3239 | Facsimile: (757) 640-3966 |
| Facsimile: (888) 360-9092 | E-mail: rmcfarland@mcguirewoods.com |
| senoona@kaufcan.com | |
| | Jonathan P. Harmon (VSB No. 39081) |
| | David E. Finkelson (VSB No. 44059) |
| Paul J. Andre (*pro hac vice*) | MCGUIREWOODS LLP |
| Lisa Kobialka (*pro hac vice*) | Gateway Plaza |
| James Hannah (*pro hac vice*) | 800 East Canal Street |
| Hannah Lee (*pro hac vice*) | Richmond, VA 23219-3916 |
| Kris Kastens (*pro hac vice*) | Telephone: (804) 775-1000 |
| Christina M. Finn (*pro hac vice*) | Facsimile: (804) 775-1061 |
| **Kramer Levin Naftalis & Frankel LLP** | E-mail: jharmon@mcguirewoods.com |
| 333 Twin Dolphin Drive, Suite 700 | E-mail: dfinkelson@mcguirewoods.com |
| Redwood Shores, CA 94065 | |
| Telephone: (650) 752-1700 | Brett C. Govett (Admitted *Pro Hac Vice*) |
| Facsimile: (650) 752-1800 | James S. Renard (Admitted *Pro Hac Vice*) |
| pandre@kramerlevin.com | Jacqueline Baker (Admitted *Pro Hac Vice*) |
| lkobialka@kramerlevin.com | NORTON ROSE FULBRIGHT US LLP |
| jhannah@kramerlevin.com | 2200 Ross Avenue, Suite 3600 |
| hlee@kramerlevin.com | Dallas, Texas 75201 |
| kkastens@kramerlevin.com | Telephone: (214) 855-8000 |
| cfinn@kramerlevin.com | brett.govett@nortonrosefulbright.com |
| | james.renard@nortonrosefulbright.com |
| *Attorneys for Plaintiff* | jackie.baker@nortonrosefulbright.com |
| *Centripetal Networks, LLC* | |
| | Richard Zembek (Admitted *Pro Hac Vice*) |
| | Daniel Leventhal (Admitted *Pro Hac Vice*) |
| | Daniel Prati (Admitted *Pro Hac Vice*) |
| | 1301 McKinney Street, Suite 5100 |
| | Houston, Texas 77010 |
| | Telephone: (713) 651-5151 |
| | richard.zembek@nortonrosefulbright.com |
| | daniel.leventhal@nortonrosefulbright.com |
| | daniel.prati@nortonrosefulbright.com |
| | |
| | Stephanie DeBrow (Admitted *Pro Hac Vice*) |
| | Talbot R. Hansum (Admitted *Pro Hac Vice*) |
| | 98 San Jacinto Boulevard, Suite 1100 |

|  | Austin, Texas 78701<br>Telephone: (512) 474-5201<br>stephanie.debrow@nortonrosefulbright.com<br>talbot.hansum@nortonrosefulbright.com<br><br>Nathan Mannebach (Admitted Pro Hac Vice)<br>NORTON ROSE FULBRIGHT US LLP<br>60 South Sixth Street, Suite 3100<br>Minneapolis, MN 55402-1114<br>Telephone: (612) 321-2800<br>nathan.mannebach@nortonrosefulbright.com<br><br>James R. Batchelder (Admitted *Pro Hac Vice*)<br>Andrew T. Radsch (Admitted *Pro Hac Vice*)<br>ROPES & GRAY LLP<br>1900 University Avenue, 6th Floor<br>East Palo Alto, CA 94303<br>Telephone: (650) 617-4000<br>james.batchelder@ropesgray.com<br>andrew.radsch@ropesgray.com<br><br>Josef Bryks Schenker (Admitted *Pro Hac Vice*)<br>ROPES & GRAP LLP<br>1211 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212-596-9000<br>josef.schenkerropesgray.com<br><br>*Attorneys for Defendant*<br>*Palo Alto Networks, Inc.* |
|--|--|

24