UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CENTRIPETAL NETWORKS, LLC,

    Plaintiff,

v.                                                                                  Case No.: 2:21cv137

PALO ALTO NETWORKS, INC.,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This case arises out of Plaintiff Centripetal Networks, LLC's ("Centripetal") suit against Defendant Palo Alto Networks, Inc. ("PAN") alleging infringement of certain cybersecurity patents (the "Asserted Patents").[1] PAN hired Christopher Bakewell to serve as its damages expert, and he submitted a rebuttal report and commercial success report opining on, among other things, the reasonable royalty rate appropriate for this case. On October 31, 2023, Centripetal filed a Motion to Exclude Certain Opinions and Testimony of Christopher Bakewell and accompanying memorandum, arguing that Bakewell's opinions are unsupported. ECF Nos. 486, 487.[2] On November 14, 2023, PAN filed its opposition, ECF No. 547, and on November 21, 2023, Centripetal filed a reply, ECF No. 604. The Court conducted a hearing on December 7, 2023. ECF No. 643. Accordingly, the motion is ripe for disposition.

---

[1] The Asserted Patents now consist of U.S. Patent No. 10,567,437 (the "'437 Patent"), U.S. Patent No. 10,735,380 (the "'380 Patent"), U.S. Patent No. 10,659,573 (the "'573 Patent"), U.S. Patent No. 10,530,903 (the "'903 Patent"), and U.S. Patent No. 10,931,797 (the "'797 Patent").

[2] All ECF citations are to the CM/ECF docket identification appearing at the top of each page. All page numbers are to the document itself, appearing at the bottom of each page.

## I. LEGAL STANDARD

Federal Rule of Evidence 702 permits admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue," as well as determine whether "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 ("Rule 702"). The Supreme Court has explained that expert testimony may be admitted pursuant to Rule 702 if the testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 589 (1993). To establish reliability, courts consider several factors including whether the theory or technique "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has been "generally accept[ed]" in the "relevant scientific community," and "the known or potential rate of error." *Id.* at 589, 593–94 (internal citations omitted). To establish relevancy, courts ask if the evidence will assist the tier of fact in understanding or determining a fact at issue. *Id.* Although the admissibility of an expert opinion is "flexible," the district court must function as a gatekeeper, permitting only expert testimony that comports with Rule 702's guidelines as explained in *Daubert*. *Id.* at 594. Importantly, "shaky but admissible evidence" is appropriately handled by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"– not by excluding it wholesale. *Id.* at 596.

## II. DISCUSSION

Centripetal seeks to exclude four of Bakewell's opinions: (1) "alternative adjustments" made to Centripetal's proposed royalty rate; (2) the cost of developing and implementing

2

commercially non-infringing alternatives; (3) PAN's licensing practices between 2017 and 2020; and (4) PAN's sales to the United States government. ECF No. 490 at 1.

A. Bakewell's Alternative Adjustments to Centripetal's Proposed Royalty Rate

Centripetal first argues that Bakewell failed to assume infringement of the relevant patents when conducting his calculations for a reasonable royalty rate. *Id.* at 1–2. Centripetal alleges that Bakewell improperly excluded several products from his royalty calculations, including: (1) the PA-3400 and PA-3500 series Next Generation Firewalls; (2) Threat Prevention; (3) Cortex XSIAM; (4) Prisma Access; and (5) accused products made in the United States but sold elsewhere. *Id.* at 2–4; ECF No. 662 at 110:17–19 ("[Bakewell] was basically opining on a different patent infringement case than the one that's actually going to be put before the jury.").

In response, PAN argues that Bakewell began with Centripetal's proposed royalty rate and conducted several "waterfall" calculations designed to give the jury alternative royalty rates, should they find that infringement did not occur with certain combinations of accused products. ECF No. 549 at 3–6; ECF No. 662 at 128:7–9 ("[H]e provides a waterfall, saying this would be the reduction in the total royalty if you were to exclude X, you know, accused product category which is in dispute.").

At the December 7 hearing, the Court sought clarification on the specifics of Bakewell's methodology. ECF No. 662 at 126:1–32:25. Even after the Court's questioning, it remained unclear which accused products Bakewell eliminated from consideration, so the Court requested supplemental briefing from the parties, directing each side to provide a summary of their argument along with record citations to Bakewell's report.[3] *Id.* at 131:4–18.

---

[3] Because neither party submitted Bakewell's complete report, the Court also ordered that it be filed under seal along with their supplemental memoranda.

On December 11, 2023, the parties filed a joint letter which explained that following the hearing, the parties met and conferred and subsequently agreed that Centripetal would withdraw four of its arguments regarding Bakewell's alternative royalty rates. ECF No. 646. Centripetal's fifth argument, Bakewell's exclusion of accused products made in the United States but sold elsewhere, was included in PAN's summary judgment motion, which the Court ruled on in its January 2, 2024, memorandum opinion. *Id.*; ECF No. 702. Therein, the Court found "Centripetal's evidence of domestic manufacturing of the Accused Products is sufficient to create a genuine dispute of material fact" and denied summary judgment of non-infringement based on such sales. ECF No. 702 at 23–24.

Accordingly, Centripetal's motion to exclude Bakewell's opinions regarding alternative adjustments to Centripetal's royalty rate is **DENIED** as **MOOT**.

B. Bakewell's Opinions Regarding Non-Infringing Alternatives

Next, Centripetal argues that Bakewell's opinions regarding the cost of developing and implementing non-infringing alternatives should be excluded because: (1) he does not rely on sufficient facts or data; (2) he does not apply his own independent analysis and almost exclusively relies on Dr. John Villasenor, PAN's technical expert; (3) he opines that the cost of non-infringing alternatives is an acceptable baseline for a reasonable royalty; and (4) the disclosure of the non-infringing alternatives was untimely.[4] ECF No. 490 at 6–13.

PAN responded by arguing that Bakewell's consideration of non-infringing alternatives was only one of many data points in his reasonable royalty analysis. ECF No. 549 at 10–11, 13.

---

[4] Villasenor, PAN's technical expert on infringement, opined on hypothetical non-infringing alternatives for the first time in his rebuttal report. Villasenor Rebuttal Report ¶¶ 982–89, ECF No. 555, attach. 1. In analyzing these alternatives, Villasenor relied almost exclusively on discussions with two PAN employees. *E.g., id.* ¶ 989. PAN failed to identify either employee as having knowledge regarding non-infringing alternatives during fact discovery.

PAN further notes that Bakewell properly relied on the testimony of Villasenor. *Id.* Finally, PAN argues that its disclosure of non-infringing alternatives was timely because it identified non-infringing alternatives as a potential defense in its expert disclosures – which is "normal practice" in patent cases. *Id.*

In a memorandum opinion filed on December 22, this Court excluded Villasenor's testimony regarding non-infringing alternatives. ECF No. 692 at 6. In excluding Villasenor, the Court held that "Centripetal never had the opportunity to depose [the employees] to explore the feasibility, functionality, acceptability, and potential cost of the hypothetical non-infringing alternatives. Allowing such an untimely disclosure would prejudice Centripetal. With trial one month away, it is not feasible to reopen fact discovery to cure the lack of disclosure . . . . As a result, exclusion of the evidence is appropriate. *Id.*

Bakewell relied almost entirely upon Villasenor's analysis of non-infringing alternatives when discussing them in his own report. Bakewell Rebuttal Report ¶¶ 282–308, ECF No. 493, attach. 6; ECF No. 493, attach. 7 at 165:19-24 ("Q. Outside of Dr. Villasenor's report, have you seen any evidence yourself of any noninfringing alternatives that was produced during fact discovery in this case? A. I mean, this is something I would defer to Dr. Villasenor for."). Because Bakewell relies exclusively on Villasenor's analysis, which this Court found untimely, exclusion of Bakewell's analysis is appropriate as well.

Accordingly, Centripetal's motion to exclude Mr. Bakewell's testimony regarding non-infringing alternatives is **GRANTED**.

C. PAN's Licensing Practices Between 2017 and 2020

Centripetal also argues that Bakewell's testimony as to PAN's licensing practices is unsupported. ECF No. 490 at 13–14. Centripetal alleges that Bakewell based his opinions on a

conversation with Michael Ritter, PAN's former general counsel who was employed at the company from 2012 to 2017. *Id.* Because the hypothetical negotiation takes place in 2020, Centripetal argues that Ritter's information is outdated, and that Bakewell cannot reasonably rely on PAN's licensing preferences from 2017 to opine on the company's practices in 2020. *Id.* In response, PAN notes that Bakewell's conversation with Ritter served as only one of many data points, and that Bakewell also based his opinion on PAN's agreements with third parties that are contemporaneous with the 2020 hypothetical negotiation. ECF No. 549 at 14–15. In its reply, Centripetal disputes the effective dates of the third-party agreements and licenses. ECF No. 606 at 14–15.

The Court finds there is sufficient evidence upon which Bakewell bases his analysis. At the December 7 hearing, PAN argued that Bakewell relied on evidence of twenty-one patent agreements. ECF No. 662 at 143:18–144:13; Bakewell Rebuttal Report ¶¶ 186–98, ECF No. 647. Of the twenty-one agreements, eight contained effective dates between 2018 and 2020, encompassing the time between Mr. Ritter's departure from PAN and the date of the hypothetical license negotiation. ECF No. 647, Ex. 12.1. None of the agreements contained a running royalty provision; each one consisted of a lump-sum payment. *Id.*; ECF No. 662 at 143:18–144:13; Bakewell Rebuttal Report ¶¶ 186–98, ECF No. 647. Because PAN has provided information regarding its licensing polices encompassing the time beyond Ritter's tenure at the company, there is sufficient evidence upon which Bakewell can base his analysis.

Accordingly, Centripetal's motion to exclude opinions regarding PAN's licensing practices is **DENIED**.

### D. Sales to the United States Government

Finally, Centripetal argues that Bakewell improperly removed government sales pursuant to the affirmative defense available under 28 U.S.C. § 1498[5] because he failed to conduct the proper analysis. ECF No. 490 at 14. In its opposition, PAN explained that Bakewell was merely providing an alternative calculation, should the jury find that § 1498 applies. ECF No. 549 at 16.

However, at the December 7 hearing, PAN conceded that it has no evidence to support a § 1498 defense, nor does it plan to raise a § 1498 defense at trial. ECF No. 662 at 140:12–24 ("Your Honor, in terms of the evidence that we presently have with respect to whether or not these things meet a 1498 exception for governmental sales, the answer is no . . . Your Honor is correct, at present, given the state of the record, we would not have Mr. Blakewell [sic] talk about a reduction attributable to federal governmental sales.)".

Accordingly, Centripetal's motion to exclude testimony regarding sales to the United States government is **GRANTED**.

### III.   CONCLUSION

In summary, for the reasons stated herein, Plaintiff's Motion to Exclude Certain Opinions and Testimony of Christopher Bakewell, ECF No. 486, is **GRANTED** in part and **DENIED** in part. The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to all counsel of record.

It is so **ORDERED**.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 8, 2024

---

[5] Known as the "government sales defense," 28 U.S.C. § 1498 "presents an affirmative defense to infringement liability where 1) the infringing device was manufactured for the government; and 2) the government authorized or consented to the manufacture of the device." *TecSec, Inc. v. Adobe Sys.*, 326 F. Supp. 3d 105, 111 (E.D. Va. 2018) (citing *Sevemon Envt'l Inc. v. Shaw Envt'l, Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007)).