**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**CENTRIPETAL NETWORKS, LLC,**

**Plaintiff,**

**v.** **Case No.: 2:21cv137**

**PALO ALTO NETWORKS, INC.,**

**Defendant.**

**MEMORANDUM OPINION AND ORDER**

This case arises out of Plaintiff Centripetal Networks, LLC's ("Centripetal") suit against Defendant Palo Alto Networks, Inc. ("PAN") alleging infringement of certain cybersecurity patents (the "Asserted Patents").[1] Centripetal hired Dr. Michael Goodrich to serve as one of its technical experts, and he submitted an opening report, rebuttal report, and reply report. Goodrich's reports cover a range of subjects, providing a general background of cybersecurity, a technology tutorial regarding the Asserted Patents, and an overview of PAN's accused products. Before the Court is PAN's Motion to Strike Portions of Dr. Michael Goodrich's Reports and Proposed Testimony and accompanying memorandum. ECF Nos. 470, 471. Centripetal filed its opposition, ECF No. 556, and PAN replied, ECF No. 582. The Court conducted a hearing on December 7, 2023. ECF No. 643. Accordingly, PAN's Motion is ripe for disposition.

[1] The Asserted Patents now consist of U.S. Patent No. 10,567,437 (the "'437 Patent"), U.S. Patent No. 10,735,380 (the "'380 Patent"), U.S. Patent No. 10,659,573 (the "'573 Patent"), U.S. Patent No. 10,530,903 (the "'903 Patent"), and U.S. Patent No. 10,931,797 (the "'797 Patent").

## I. LEGAL STANDARD

Federal Rule of Evidence 702 permits admission of "scientific, technical, or other specialized knowledge" by a qualified expert if it will "help the trier of fact to understand the evidence or to determine a fact in issue," as well as determine whether "the testimony is based on sufficient facts or data," "is the product of reliable principles and methods," and "reflects a reliable application of the principles and methods to the facts of the case." Fed. R. Evid. 702 ("Rule 702"). The Supreme Court has explained that expert testimony may be admitted pursuant to Rule 702 if the testimony is both reliable and relevant. *Daubert v. Merrell Dow Pharm., Inc.* 509 U.S. 579, 589 (1993). To establish reliability, courts consider several factors including whether the theory or technique "can be (and has been) tested," whether it "has been subjected to peer review and publication," whether it has been "generally accept[ed]" in the "relevant scientific community," and "the known or potential rate of error." *Id.* at 589, 593–94 (internal citations omitted). To establish relevancy, courts ask if the evidence will assist the trier of fact in understanding or determining a fact at issue. *Id.* Although the admissibility of an expert opinion is "flexible," the district court must function as a gatekeeper, permitting only expert testimony that comports with Rule 702's guidelines as explained in *Daubert*. *Id.* at 594. Importantly, "shaky but admissible evidence" is appropriately handled by "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof"– not by excluding it wholesale. *Id.* at 596.

## II. DISCUSSION

PAN seeks to exclude certain of Goodrich's opinions from his initial and/or rebuttal reports. Those opinions involve the following subjects: 1) a technology tutorial regarding the Asserted Patents and the accused products; 2) secondary considerations of nonobviousness of the

Asserted Patents; 3) prior art testimony rebutting PAN's invalidity contentions; 4) prior art testimony based on information obtained from a Centripetal employee who was not timely disclosed in discovery; and 5) machine learning. ECF No. 471 at 1.[2] The Court will address each subject in turn.

A. Technology Tutorial

The patents involved in this litigation concern cybersecurity applications that can fairly be said to involve scientific, technical, or other specialized knowledge that is not within the purview of a lay jury. Accordingly, Goodrich proposes to offer testimony providing the jury with "a general tutorial of the technology involved in this case, including terms and concepts involved with the technology discussed in each of the Asserted Patents," as well as offering an overview of "the relevant technology of the Asserted Patents and Defendant's Accused Products, including the features and capabilities therein, and the technical advantages and benefits they provide to potential customers." Goodrich Opening Report ¶¶ 14–15, ECF No. 472.

PAN seeks the exclusion of the overview testimony on four separate grounds: 1) it is duplicative of Centripetal's other experts, Michael Mitzenmacher and Eric Cole; 2) it is unduly prejudicial because it suggests infringement without actually opining that the accused products infringe; 3) it is neither relevant nor reliable because Goodrich explains how the Asserted Patents relate to the accused products, but whether they "relate to" one another is not the relevant legal standard; and 4) it will not assist the jury in understanding the issues, because Goodrich fails to cite adequate evidentiary support. ECF No. 471 at 5–9.

Centripetal contends that given the complexity of the case and the technological issues involved in these patents, a tutorial is both appropriate and necessary to aid the jury in their

[2] All ECF citations are to the CM/ECF docket identification appearing at the top of each page. All citations to page numbers correspond to the document itself, appearing at the bottom of each page.

understanding. ECF No. 556 at 2–3, 7–8. Centripetal also disputes that Goodrich's testimony is duplicative because Goodrich provides an overview, rather than the specific analysis that Mitzenmacher and Cole conduct. *Id.* at 3–5. Finally, Centripetal argues that Goodrich did cite adequate support for his opinions, and moreover, PAN's experts did not dispute his explanation of PAN's products. *Id.* at 5–6.

PAN reiterated its arguments in its reply, ECF No. 582 at 1–4, but added that, should the Court permit Goodrich to offer a tutorial on the involved technology, he only be permitted to do so when he testifies in rebuttal, and not as part of Centripetal's case-in-chief. *Id.* at 5–8.

Rule 702 guides the Court in determining the proper scope of proposed expert testimony. Expert opinion testimony is specifically allowed when:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702. Understanding the complex field of computer technology and cybersecurity is essential for a lay jury to resolve the technical issues surrounding the Asserted Patents and the accused products. Providing the jury with an overview of general principles is well within an expert's role. The Advisory Committee notes to Rule 702 recognize the appropriateness of permitting experts to address general principles to help a jury understand complex scientific subjects:

> [I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case. For example, experts might instruct the factfinder on the principles of thermodynamics, or bloodclotting, or on how financial markets respond to corporate reports, without ever knowing about or trying to tie their

> testimony into the facts of the case. . . . For this kind of generalized testimony, Rule 702 simply requires that:
>
> (1) the expert be qualified;
> (2) the testimony address a subject matter on which the factfinder can be assisted by an expert;
> (3) the testimony be reliable; and
> (4) the testimony "fit" the facts of the case.

Fed R. Evid. 702 advisory committee's note to 2000 amendment.

As a result, Goodrich's tutorial explaining the relevant technology is not duplicative of Mitzenmacher's and Cole's fact-specific analysis. *See, e.g.*, Cole Opening Report ¶ 33, ECF No. 542, attach. 19. For example, in his opinion, Cole states: "I reviewed the interfaces of the products and tested different options available on the products. I intend to discuss the results of my testing, including showing the screenshots of my testing, to demonstrate the operation of the products at trial. The testing confirmed various functionality that are described in the documents and evidence discussed below. As a result of my testing, I confirmed my opinion that the Accused Products infringe the Asserted Patents." *Id.* Similarly, Mitzenmacher explained in his report that: "I reviewed the interface for the products, tested different options available on the products, and tested the performance of the products. I intend to discuss the results of my testing, including showing the screenshots of my testing, to demonstrate the operation of the products at trial. The testing confirmed various functionality that are described in the documents and evidence discussed below. As a result of my testing, I confirmed my opinion that the Accused Products infringe the Asserted Patents." Mitzenmacher Opening Report ¶ 37, ECF No. 542, attach 1. Consequently, rather than disqualifying Goodrich from providing a tutorial on the grounds that it is duplicative, it is more appropriate to address any objection as it may arise in the context of each expert's testimony.

Next, PAN argues that Goodrich's overview testimony is unduly prejudicial because (1) it "suggests" infringement, and (2) it is irrelevant and unreliable because it fails to apply the correct legal standard. ECF No. 471 at 6–8. The Court finds that Goodrich's testimony is sufficiently reliable, and PAN's challenges are more appropriately addressed on cross-examination. *See e.g.*, *Cavallo v. Star Enter.*, 100 F.3d 1150, 1158 (4th Cir. 1996) (citing *Daubert*, 509 U.S. at 595–97) ("[E]xclusion is the least favored means of rendering questionable scientific evidence ineffective."); *SAS Inst., Inc. v. World Programming Ltd.*, 125 F. Supp. 3d 579, 584 (E.D.N.C. 2015), *aff'd,* 874 F.3d 370 (4th Cir. 2017) (citing Fed. R. Evid. 702 advisory committee's note to the 2000 amendment) ("Review by the advisory committee shows that the rejection of expert testimony is the exception rather than the rule."). PAN can establish on cross-examination that Goodrich is not offering any opinion on infringement nor any relevant legal standard pertaining thereto. Should Goodrich offer direct testimony that suggests infringement or otherwise venture into improper opinion testimony, that can be addressed through appropriate objections. Moreover, jury instructions will make clear the appropriate legal standard the jury must apply.

Finally, PAN's argument that Goodrich's tutorial regarding the accused products lacks adequate evidentiary support is also better addressed on cross-examination. By relying on PAN's own information, Goodrich has articulated a sufficient foundation for his testimony. *See* Goodrich Opening Report ¶¶ 75-90, ECF No. 472. To the extent PAN's materials on which Goodrich relied were incomplete, inaccurate, or inadequate, that goes to the weight of the evidence rather than to its admissibility. It does not warrant complete exclusion.

Consequently, PAN's motion to exclude Goodrich's overview testimony is **DENIED.**

B. Secondary Considerations of Nonobviousness

In his rebuttal report, Goodrich provided opinions contending that, at the time of their invention, Centripetal's patents were not obvious. *See, e.g.*, Goodrich Rebuttal Report ¶¶ 141–213, ECF No. 472, attach. 1 (disagreeing with Seth Nielson, PAN's validity expert, on the obviousness of the '437 patent). In support of his opinions that the patents were not obvious, Goodrich identified secondary considerations, which are generally considered objective evidence of nonobviousness. *Id.* ¶¶ 1412–32. According to Goodrich, those considerations included recognition of a problem, a long felt but unsolved need, industry praise or recognition, and commercial success. *Id.* Goodrich then analyzed those considerations in connection with CleanINTERNET, one of Centripetal's products.[3] *Id.*

PAN challenges each of Goodrich's secondary considerations on the following grounds: 1) recognition of a problem is not a legally valid secondary consideration and Goodrich failed to establish a nexus between CleanINTERNET and any asserted claim; 2) Goodrich's opinion regarding a long felt but unsolved need is insufficient because he failed to address when the need arose and the unsuccessful efforts of others that kept it unsolved; 3) Goodrich did not link industry praise or recognition to the Asserted Patents, and he offered no support for the proposition that the Asserted Patents drive customer demand for the products; and 4) Goodrich's commercial success opinion is merely a recitation of Centripetal's damages expert's conclusion,[4] not an opinion Goodrich arrived at by doing any of his own analysis. ECF No. 471 at 9–16.

In opposition, Centripetal argues that each of PAN's objections go to the weight, not the admissibility of Goodrich's opinions. ECF No. 556 at 9. Next, Centripetal contends that

[3] CleanINTERNET is Centripetal's threat intelligence gateway system. Goodrich Rebuttal Report ¶ 1419, ECF No. 472, attach. 1.

[4] Centripetal's damages expert is James Malackowski. His reports are located at ECF No. 485, attachs. 1, 2, and 23.

Goodrich established the required nexus between each objective indicia of nonobviousness and the Asserted Patent, including by permissibly relying on Centripetal's interrogatory answers establishing such a link. *Id.* at 10–11. Third, Centripetal argues PAN's objections are factual determinations that are within a jury's purview. *Id.* at 10. Fourth, Centripetal contends that industry praise generally is for products, not specific patents, as is the case here. *Id.* at 11. Finally, Centripetal argues that Goodrich was entitled to rely on Malackowski's opinions regarding consumer demand. *Id.* at 11–12.

In its reply, PAN claims that Goodrich merely adopted Centripetal's attorney-prepared chart in its interrogatory answers to conclude that CleanINTERNET practices the asserted claims without doing any of his own analysis, thereby failing to establish the required nexus between the asserted claims and CleanINTERNET. ECF No. 582 at 7. PAN also contends that Centripetal failed to rebut the notion that Goodrich lacked a sufficient basis to conclude that the Asserted Patents drive customer demand. *Id.* at 9. Finally, PAN argues that Goodrich may not exclusively rely on Malackowski's opinion that the technologies provided by the Asserted Patents drive consumer demand because Malackowski is relying on Goodrich for that same conclusion, and circular analysis is unreliable. *Id.* at 9–10.

Goodrich's opinions on nonobviousness largely appear to be superficial and conclusory, lacking in sufficient analysis to render them reliable. For example, his discussion of the recognition of a problem assumes without analysis that Centripetal's CleanINTERNET practices the Asserted Patents. *See, e.g.*, *id.* ¶ 1419 ("As set forth in the charts in Appendix 1 to Centripetal's Response to Interrogatory No. 21, Centripetal's threat intelligence gateway system (known as CleanINTERNET) incorporates the technology of the '437 Patent, '380 Patent, '797 Patent, '573 Patent and '903 Patent. CleanINTERNET incorporates the technology of the

Asserted Patents to solve the described worsening problems."). While Goodrich's reliance on Centripetal's interrogatory answer in making this assertion may provide a starting point for analysis, he goes no further to describe why this is so. In other words, Goodrich assumes Centripetal's chart accurately portrays CleanINTERNET as practicing the Asserted Patents, but he fails to explain to how it does so. As such, his opinion is merely a conclusory statement and unreliable.

In articulating the long felt need for a "proactive, real-time cyber security defense solution" and the failure of others to solve that need, Goodrich again merely states in conclusory fashion that there has been such a need. *Id.* ¶ 1423 ("There has been an industry need for providing a proactive, real-time cyber security defense solution for protected networks."); *id.* ¶ 1425 ("There has been an industry need for providing proactive, real-time cyber security defense solution that can provide decision management data fusion and correlation."). Apart from these conclusory statements, Goodrich offers no further explanation. He does not discuss the degree of the need, the importance of the need, how long such a need has been recognized, or what failed efforts have been undertaken to meet the need. Notably, Centripetal did not specifically address this issue in its opposition to PAN's motion. ECF No. 556 at 8–12. Goodrich's lack of analysis renders this opinion superficial and unreliable.

Goodrich's opinion regarding industry praise for Centripetal's products relies on the principle that the products practice the Asserted Patents. By failing to analyze that this is, in fact, the case, Goodrich has failed to establish the required nexus between the praise for the products and the patents. *See, e.g.*, Goodrich Rebuttal Report ¶ 1427, ECF No. 472, attach. 1 ("The features covered by the asserted claims of the Asserted Patents are incorporated into Centripetal's CleanINTERNET solution, as explained above, and are recognized by customers

and the industry as innovative, important, and unique."). Goodrich's lack of analysis renders this opinion unreliable.

Finally, Goodrich concludes that PAN's products' commercial success is evidence of nonobviousness. *See id.* ¶ 1432 ("I understand that Mr. Malackowski has analyzed the commercial success of Palo Alto Networks' products that are practicing the Asserted Patents, which futher [sic] demonstrates the non-obviousness of the Asserted Patents."). PAN attempts to argue that Goodrich's analysis is circular, because Malackowski exclusively relies on Goodrich and Goodrich exclusively relies on Malackowski. ECF No. 582 at 9–10. Instead, Malackowski also relies on Mitzenmacher's opinion that the Asserted Patents provide benefits to the Accused Products. *See, e.g.*, Mitzenmacher Reply Report ¶¶ 6, 11, 14, ECF No. 542, attach. 2; Malackowski Commercial Success Report at 8–10, ECF No. 542, attach. 4 ("Based upon Drs. Mitzenmacher, Goodrich, and Cole's opinions and other record evidence discussed herein, I have concluded that the technologies provided for by the Patents-in-Suit enable certain benefits and advantages of the Accused Products that, at least in part, drive consumer demand."). As such, Goodrich's reliance on Malackowski is not necessarily circular. However, Goodrich's opinion regarding consumer demand was bereft of any analysis whatsoever, and as such, should be excluded.

Accordingly, PAN's motion to strike Goodrich's opinions regarding secondary considerations of nonobviousness is **GRANTED**.

C. <u>Collateral Estoppel and Prior Art Determinations</u>

In his rebuttal report, Goodrich referenced two examples of ostensible prior art ("Jungck" and "Sourcefire") asserted against the '437 and '380 patents, opining that the prior art and the patents are distinguishable. *See e.g.*, Goodrich Rebuttal Report, ¶¶ 163, 1190, ECF No. 472,

attach. 1. In a prior proceeding before the Patent Trial and Appeal Board ("PTAB"), certain factual findings were made regarding this prior art involving Centripetal and invalidity claims. *Cisco Sys., Inc. v. Centripetal Networks, LLC*, IPR2018-01513 (Mar. 31, 2020). Those findings were affirmed by the Federal Circuit. *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 847 F. App'x 929 (Fed. Cir. 2021). PAN contends that Goodrich's assertions now, which contradict some of the PTAB's factual findings, are barred by collateral estoppel. ECF No. 471 at 16–18.

Centripetal makes several arguments in opposition. First, it contends that PAN's argument really constitutes another bite at the summary judgment apple, as it seeks to assert issue preclusion on the issue of invalidity. ECF No. 556 at 13. Second, it contends that Centripetal's arguments are merely conclusory assertions that the factual findings are the same, and that Goodrich failed to provide an analysis demonstrating the identicality of the issues. *Id.* at 13–14. Third, Centripetal argues that because the burden of proof to establish invalidity is lower in a PTAB proceeding than here, such findings cannot be preclusive. *Id.* at 15–16. Fourth, Centripetal asserts that the PTAB previously rejected PAN's argument because of the differences between the claim limitations at issue then and the claims limitation issues originally. *Id.* at 14–15.

In its reply, PAN notes that it is not seeking issue preclusion on the question of invalidity—which might very well be a summary judgment issue—but rather preclusion of the specific teachings that Goodrich cites, which contradict factual findings made in the PTAB proceeding. ECF No. 582 at 10–12. Moreover, PAN argues that because the factual findings at issue were affirmed on appeal, the different burdens of proof on invalidity are irrelevant. *Id.*

The Court notes in the first instance that PAN is not arguing that invalidity based on the prior art represented by Jungck and Sourcefire was established in the prior PTAB proceeding

such that Centripetal is collaterally estopped from challenging PAN's invalidity claim. *See* ECF No. 582 at 10–12. Instead, PAN contends that the PTAB's specific, adverse factual findings prevent Goodrich from now challenging those findings as incorrect. *Id.* For instance, Goodrich in his rebuttal report declared that "There is no teaching in Jungck, for instance, of edge servers and caches protecting ***all*** servers," but instead he contended that Jungck only taught that the edge serves and caches "only . . . protect[ed] ***subscribing*** servers." Goodrich Rebuttal Report ¶ 163, ECF No. 472, attach. 1. Additionally, Goodrich opines "Jungck does not teach placing the edge servers and edge caches across the entire interface across a boundary of a network protected by the packet security gateway and one or more networks other than the network protected by the packet security gateway." *Id.* ¶ 164. Instead, he argues that "Jungck teaches only placing edge servers and caches at the network boundaries for clients and it does not teach placing edge servers and caches at the interface of [other] network[s] . . ." *Id.* These statements are factual contentions, not invalidity opinions. As such, they are neither properly the basis for a summary judgment motion nor determinative of invalidity based on prior art, as Centripetal contends.

Moreover, the fact that the burden of proof to establish invalidity differs during PTAB proceedings is not pertinent to whether the factual findings may be relitigated now. *See Papst Licensing GMBH & Co. KG v. Samsung Elecs. Am., Inc.*, 924 F.3d 1243, 1250–52 (Fed. Cir. 2019). The Supreme Court has held that issue-preclusion applies even if "the first 'action' was before an agency if the agency proceeding meets certain standards" and the Federal Circuit has confirmed that Inter Partes Review proceedings in front of the PTAB, such as the one at issue here, satisfy those standards. *Id.* (citing *B & B Hardware, Inc. v. Hargis Indus., Inc.*, 135 S. Ct. 1293, 1303 (2015).

Finally, whether the claims of the Asserted Patents here are different from the claims of the Asserted Patents in the previous proceeding does not affect the specific factual findings made about the operation of the prior art. *Id.* at 1248 ("The sole issue on which this appeal turns concerns what Aytac teaches . . .").

Centripetal, having participated in the prior action before the PTAB, is now collaterally estopped from challenging the factual findings made there. While Goodrich can certainly opine that the prior art is not applicable to the claim limitations here, he may not opine that the prior art operates in a way that contradicts the PTAB's findings.

Accordingly, PAN's motion to strike Goodrich's opinions regarding prior art that contradict appellate-affirmed findings of fact is **GRANTED**, and Goodrich will be precluded in his testimony from interpreting the Jungck and Sourcefire prior art in a way that contradicts the factual findings arrived at in the prior PTAB proceeding.

D. Goodrich's Reliance on an Undisclosed Witness

In his rebuttal report, Goodrich challenged PAN's technical expert, James Nielson, regarding Nielson's opinion that "Emerging Threats" is an example of prior art for the '380 patent. Goodrich Rebuttal Report ¶ 1149, ECF No. 472, attach. 1. In his report, Nielson contends that Emerging Threats relies on code that operates in a specific manner, qualifying it as prior art. *See, e.g.*, Nielson Expert Report ¶¶ 1332–33, ECF No. 525. Goodrich disagreed, basing his opinion on a conversation with Pedro Marinho, a Centripetal employee who previously worked as an engineer at Emerging Threats and is familiar with Emerging Threats' operating code. Goodrich Rebuttal Report ¶ 1150, ECF No. 472, attach. 1. Goodrich opined that Emerging Threats does not qualify as prior art and Nielson misunderstands how the code operates. *Id.*

PAN seeks to exclude Goodrich's opinion on Emerging Threats, claiming those opinions are untimely and unsupported. ECF No. 471 at 19. PAN argues that Marinho was never disclosed as a witness with knowledge regarding Emerging Threats, and as such, it would be unfairly prejudicial to allow Goodrich to testify on that subject. *Id.*

In opposition, Centripetal contends that experts are permitted to rely on interviews such as Marinho's, and that Goodrich's testimony is necessary to explain how the purported prior art operates. ECF No. 556 at 17. Centripetal further argues that any prejudice to PAN was obviated when Centripetal offered to make Marinho available for a deposition after the close of discovery. *Id.* at 18.

As PAN noted at the December 7 hearing, Centripetal was obligated to disclose witnesses with knowledge well before Goodrich issued his rebuttal report. ECF No. 662 at 48:19–49:3. Fact discovery closed on August 17, 2023. ECF No. 353 at 3. PAN explained that it would rely on Emerging Threats on June 30, 2023, when it submitted its Second Supplemental Objections and Responses to Plaintiff's Interrogatory No. 4. *See* ECF No. 471; ECF No. 662 at 45:13–17 ("They were on notice of our theories of why Emerging Threats is relevant and how it operates in connection with the combination of art we're making during the fact discovery period."). Within PAN's objections, it included a table of prior art references and systems it planned to use to support the notion that the '380 patent is obvious. ECF No. 471, attach. 22 at 60. In that table, PAN listed "Microsoft Forefront Threat Management Gateway" in combination with "Emerging Threats" and "Sourcefire" as examples of prior art. *Id.* PAN also included supplemental charts that purport to identify where the asserted claim is found within each item of prior art, as well as how each item of prior art renders the asserted claim obvious. *Id.* Ex. 11-4; Ex. 11-5. Emerging Threats is discussed in both exhibits. *Id.* Because PAN's contention that it

relied on Emerging Threats as prior art was an issue raised before the close of discovery, if Centripetal had a witness who was going to contest that issue, it was required to disclose him. *See Reed v. Washington Area Metro. Transit Auth.*, No. 1:14CV65, 2014 WL 2967920, at *2–4 (E.D. Va. July 1, 2014) ("A party's ability to order its discovery and select its witnesses for deposition is prejudiced by another party's failure to make sufficient Rule 26(a)(1) disclosures."). Failing to disclose Marinho in a timely fashion deprived PAN not only of the opportunity to depose Marinho, but also to issue third party discovery, including subpoenas duces tecum and a Rule 30(b)(6) deposition, to test for itself whether Emerging Threats' code operated in the manner alleged.

With trial fast approaching, it is neither feasible nor appropriate to reopen discovery to permit this additional discovery. Accordingly, PAN's motion to preclude Goodrich from offering opinions based on conversations with Pedro Marinho is **GRANTED**, and Goodrich will be precluded from providing testimony discounting Emerging Threats as prior art informed by his communications with Marinho.

E. Machine Learning

Lastly, PAN seeks to preclude Goodrich from testifying that the Asserted Patents relate to machine learning, claiming those opinions are irrelevant because machine learning is not discussed in any of the patents. ECF No. 471 at 20. PAN further contends that any opinion regarding the value of the Asserted Patents based on potential machine learning capabilities when those capabilities are not part of the asserted claims is irrelevant and prejudicial. *Id.* In its opposition, Centripetal argues that machine learning is relevant to the Asserted Patents because Goodrich discusses how the patents either use or benefit form machine learning. ECF No. 556 at

18–20. In reply, PAN contends that machine learning is an unclaimed feature irrelevant to any issue, especially damages. ECF No. 582 at 14–16.

In its memorandum opinions filed on December 22, this Court ruled that opinions regarding the relationship between the Asserted Patents and machine learning may be relevant, even if opinions that the value of the patents stems from machine learning are not. *See* ECF Nos. 690 at 7–10; 691 at 11-12. In his opening report, Goodrich discusses how machine learning techniques operate to identify threats in the cybersecurity environment. Goodrich Opening Report ¶¶ 57–74, ECF No. 472. In his reply report, Goodrich explains how the '437 patent encompasses rule-based machine learning for identifying malicious network traffic. Goodrich Reply Report ¶ 11, ECF No. 472, attach. 2. In neither report does Goodrich opine that the value of the patents stems from their disclosure of machine learning capabilities.[5] Therefore, his description of the interaction of machine learning with the patents at issue is neither totally irrelevant nor unduly prejudicial in the context of his technology tutorial. Accordingly, PAN's motion to preclude Goodrich from offering opinions that the Asserted Patents relate to machine learning is **DENIED**.

## III. CONCLUSION

In summary, for the reasons stated herein, Defendant's Motion to Strike Portions of Dr. Michael Goodrich's Reports and Proposed Testimony, ECF No. 470, is **GRANTED** in part and **DENIED** in part.

The Clerk is **DIRECTED** to forward a copy of this Memorandum Opinion and Order to all counsel of record.

[5] Of course, as the Court previously ruled on December 22, such opinions if offered would not admissible in any event.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 9, 2024