**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | |
|---|---|
| CENTRIPETAL NETWORKS, LLC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>PALO ALTO NETWORKS, INC., )<br>)<br>Defendant. )<br>) | No. 2:21-cv-00137-EWH-LRL |

**PLAINTIFF CENTRIPETAL NETWORKS, LLC'S SUBMISSION REGARDING
PAN'S EXHIBIT AND DEMONSTRATIVE DISCLOSURES FOR VILLASENOR**

## I. CENTRIPETAL'S OBJECTIONS TO VILLASENOR EXHIBITS

PX-180.139 is outside the scope of his report. Dr. Villasenor does not address this screenshot. Dr. Cole identified this screenshot of the traffic log and its contents in paragraph 34 of his Opening Report. Dr. Villasenor's response was that the Panorama product was not accused by Dr. Cole, failing to address the traffic log. Villasenor Reb. Rpt. at ¶362. Further, PAN also identified paragraph 337 of Dr. Villasenor's report, but that paragraph relates to Dr. Mitzenmacher, who did not cite the screenshot at PX-180.139. PAN's agreement to only use it as a demonstrative does not cure the lack of disclosure.

DX-13 is the '437 Patent file history, which is not relevant to infringement or any other issue on which Dr. Villasenor will testify. PAN has identified DX-13 is being used to interpret the claim, which is improper outside of claim construction and will mislead the jury into comparing the Accused Products to the file history, rather than the Asserted Claims. *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F. 2d 1107, 1121 (Fed. Cir. 1985) (overturning a finding of non-infringement based on comparing the accused products to the specification, holding that "claims are infringed, not specifications"). Moreover, Dr. Villasenor does not identify in his report how the file history purportedly informed his understanding of the meaning of the claim elements.

DX 018 & 040 is misleading and confusing to the jury, as PAN and Dr. Villasenor have documents with dates that do not pre-date the priority date of the patents to explain the single-pass architecture. This document, dated 2008, is not relevant to the current functionality of the accused products and likely to be used for improper invalidity purposes.

DX 030 is inadmissible hearsay.

DX 035 is outside the scope of his report. Dr. Villasenor does not address this whitepaper for the un-accused PA-5000 product, and thus it is not relevant. Paragraph 91 of Dr. Villasenor's Rebuttal Report does not support its admissibility because it discuses DX-18. Dr. Villasenor's use of this document would only confuse the jury regarding accused products. FRE 401-403.

DX 115 is a PAN product administrator's guide for version 4.0, which PAN previously asserted as §102/103 prior art during fact discovery only. PAN has other versions of the same guide that are later in time that can be used to show the functionality of the Accused Products. Using an older version would confuse the jury regarding infringement and validity because Dr. Villasenor is not testifying regarding prior art or validity.

DX 165 is a Keysight whitepaper and is inadmissible as unauthenticated and as hearsay.

DX 204 is an email with a Gartner report attached, for which Dr. Villasenor lacks foundation to testify.

DX-210 is a third-party market analysis, for which Dr. Villasenor lacks foundation to testify.

DX-277 is hearsay within hearsay, describing a meeting with Forrester.

DX-278 is Centripetal presentation, for which Dr. Villasenor lacks foundation to testify.

## II.     CENTRIPETAL'S OBJECTIONS TO VILLASENOR DEMONSTRATIVES

DDX3.10 is misleading and confusing because it raises a validity issue which is no longer in this case.  This slide shows a PAN product administrator's guide for version 4.0, which PAN previously asserted as §102/103 prior art during fact discovery.  There is no reason for PAN to be showing old versions of its product manuals to the jury during its non-infringement presentation, particularly since PAN cites to numerous manuals of the versions of the products that are actually accused, and Dr. Villasenor is not testifying regarding prior art or validity.  The slide, therefore, is prejudicial, will confuse the jury, and has no probative value.  Further, this document is not relevant to understanding the meaning of the claim terms, as PAN suggests.

DDX3.14-16 are confusing and misleading because they improperly exclude language from within the claim element purportedly being depicted in the slide.

DDX3.19 is outside the scope of Dr. Villasenor's report because he does not discuss **IPv4 multicast packets**, which are the subject of this slide, in his report.

DDX3.34-40 are improper claim construction arguments.  Claim construction is the province of the Court, not the jury.  Dr. Villasenor did not disclose any purported plain and ordinary meanings of claim terms and cannot now attempt to do so by purportedly providing an explanation of the what the claims require.  The claims require what the claims say and any attempt to import limitations from the specification or restrict claim terms to particular embodiments would be legally erroneous during claim construction and are not allowed before the jury either.  *Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 805 F.2d 1558, 1563 (Fed. Cir. 1986) ("This court has cautioned against limiting the claimed invention to preferred embodiments or specific examples in the specification.").

    **Slides 34, 35 and 38** appear to relate to the claim term "network device," which has been construed by the Court as "a device that can be connected to a network," per the parties' agreement.  These slides appear to argue that a network device must meet additional requirements in order to infringe.  This is contrary to the Court's claim construction and to Federal Circuit precedent.  These slides will confuse and mislead the jury into comparing the Accused Products to the specification/figure, rather than the Asserted Claims as required.  *SRI Intern. v. Matsushita Elec. Corp. of America*, 775 F. 2d 1107, 1121 (Fed. Cir. 1985) (overturning a finding of non-infringement based on comparing the accused products to the specification, holding that "claims are infringed, not specifications").

    **Slides 36 and 37** appear to relate to the claim term "host" and propose requirements of the claim term for purposes of infringement, but infringement is determined by comparing the Accused Products to the claims, not the specification.  *SRI Intern.*, 775 F. 2d at 1121.

    **Slide 39** appears to relate to the meaning of the claim term "correlate," for which Dr. Villasenor does not provide a plain and ordinary meaning in his report or that any such meaning is based on or informed by Figure 1 or the specification.

    **Slide 40** appears to suggest an improper claim construction of network device with respect to the packet correlator depicted in Figure 1.  This is contrary to the Court's construction and infringement is based on the claims, not the specification or figures therein.  Claim construction is for the Court and the claims are not limited by embodiments in the specification.

DDX3.72-74 refer to hearsay exhibits for which Dr. Villasenor lacks foundation to testify.