**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-00137-EWH-LRL |
| | ) | |
| vs. | ) | **FILED UNDER SEAL** |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

<u>**DEFENDANT PALO ALTO NETWORKS, INC.'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR A NEW TRIAL PURSUANT TO FED. R. CIV. P. 59**</u>

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ii

I.     INTRODUCTION ...................................................................................... 1

II.    LEGAL STANDARD ................................................................................ 1

III.   ARGUMENT ............................................................................................ 2

    A.    A New Trial Is Required Due To The Improper Admission Of The Keysight Settlement. ........................................................................................ 2

        1.    Admission Of The Keysight Settlement Was Improper Because It Is Not Reliable Evidence Of A Reasonable Royalty ..................................... 3

        2.    The Error Of Admitting The Keysight Settlement Was Exacerbated By The Failure To Give PAN's Proposed Jury Instruction Addressing The Differences Between A Litigation Settlement And Hypothetical License ............................ 6

        3.    PAN Was Unfairly Prejudiced By The Improper Admission Of The Keysight Settlement And Exclusion Of Evidence Necessary To Put The Agreement In Context For The Jury ............................................................ 7

    B.    A New Trial Is Required Because Centripetal's Damages Expert's Testimony Should Have Been Excluded And Cannot Support The Damages Award. ............... 12

        1.    Mr. Malackowski Failed To Soundly Account For The Differences Between The Keysight Settlement And The Hypothetical Centripetal-PAN License ...13

        2.    Mr. Malackowski Failed To Apportion Out The Value Of Unpatented Features And Thereby Establish A Reasonable Royalty That Reflects The Value Of The Patented Invention ............................................................ 16

        3.    Mr. Malackowski's Reliance On "Royalty Rates" From The Duff & Phelps Reports Is Unsupportable Given His Failure To Consider The Comparability Of The Underlying Corporate Acquisitions ................................................ 18

    C.    A New Trial On The Fact Issues Relating To § 101 Patent Ineligibility Of The '903, '573, and '797 Patents Is Required. ......................................................... 20

    D.    A New Trial On Infringement Is Required Because The Verdict Is Contrary To The Clear Weight Of The Evidence. .................................................................. 23

    E.    A New Trial On Infringement Is Required For The '437 Patent For Failure To Resolve The Parties' Dispute On The Construction of "Malicious Network Traffic." ........................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Activevideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  No. 2:10-CV-248, 2011 WL 13114926 (E.D. Va. Oct. 13, 2011)...........................................2

*Advanced Display Sys. v. Kent State Univ.*,
  212 F.3d 1272 (Fed. Cir. 2000)...................................................................................................20

*Affinity Labs of Tex., LLC v. DIRECTV, LLC*,
  838 F.3d 1253 (Fed. Cir. 2016)...................................................................................................22

*Alice Corp. Pty. v. CLS Bank Int'l*,
  573 U.S. 208 (2014)...............................................................................................20, 21, 22, 23

*Apple Inc. v. Wi-LAN Inc.*,
  25 F.4th 960 (Fed. Cir. 2022) ......................................................................................................14

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*,
  No. 2:18-cv-585, 2021 WL 6034269 (E.D. Va. Dec. 10, 2021).....................................13, 16, 17

*Biscotti Inc. v. Microsoft Corp.*,
  2017 WL 2607882 (E.D. Tex. 2017) ............................................................................................14

*BSG Tech LLC v. Buyseasons, Inc.*,
  899 F.3d 1281 (Fed. Cir. 2018)....................................................................................21, 22, 23

*Centripetal Networks, Inc. v. Keysight Technologies, Inc.*,
  No. 2-17-cv-00383 (E.D. Va.) (ECF No. 602) ..............................................................................4

*In re Certain Comput. Network Sec. Equip. & Sys., Related Software,*
  *Components Thereof, & Prods. Containing Same,*
  USITC Inv. No. 337-TA-1314, 2023 WL 5744218 (Aug. 8, 2023) .................................3, 11

*Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*,
  51 F.3d 1229 (4th Cir. 1995) ..................................................................................................1, 23

*Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*,
  927 F.3d 1292 (Fed. Cir. 2019)....................................................................................................13

*Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*,
  815 F.3d 1314 (Fed. Cir. 2016)....................................................................................24, 25, 26

*Fenner Invs., Ltd. v. Hewlett-Packard Co.*,
  No. 6:08-cv-273, 2010 WL 1727916 (E.D. Tex. Apr. 28, 2010) ................................................9

*Fromson v. Western Litho Plate & Supply Co*.,
  853 F.2d 1568 (Fed. Cir. 1988) (abrogated on other grounds)....................................10, 11, 15

*Garretson v. Clark*,
    111 U.S. 120 (1884)........................................................................................16

*Gasoline Prods. Co. v. Champlin Refining Co.*,
    283 U.S. 494 (1931).............................................................................3, 12, 13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
    694 F.3d 51 (Fed. Cir. 2012)..................................................2, 4, 5, 7, 8, 9, 13

*Limelight Networks, Inc. v. XO Communications, LLC*,
    No. 3:15-cv-720, 2018 WL 678245 (E.D. Va. Feb. 2, 2018) .....................16, 18, 20

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...........................................................................4

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    566 U.S. 66 (2012)............................................................................................20

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
    870 F.3d 1298 (Fed. Cir. 2017) (Stoll, J., concurring) ........................................16

*Merck & Co. v. Teva Pharms. USA, Inc.*,
    395 F.3d 1364 (Fed. Cir. 2005)..........................................................................25

*MLC Intellectual Prop., LLC v. Micron Tech., Inc.*,
    10 F.4th 1358 (Fed. Cir. 2021) ....................................................................13, 17

*O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*,
    521 F.3d 1351 (Fed. Cir. 2008)..........................................................................24

*Omega Patents, LLC v. CalAmp Corp.*,
    13 F.4th 1361 (Fed. Cir. 2021) ..........................................................................14

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    904 F.3d 965 (Fed. Cir. 2018)............................................................................16

*Prism Techs. LLC v. Sprint Spectrum L.P.*,
    849 F.3d 1360 (Fed. Cir. 2017).......................................................................5, 6

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594. F.3d 860, 870–72 (Fed. Cir. 2010) ...............................................................2

*Rude v. Westcott*,
    130 U.S. 152 (1889)............................................................................................2

*Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*,
    758 F.2d 613 (Fed. Cir. 1985)............................................................................23

*Teva Pharma. USA, Inc. v. Sandoz, Inc.*,
    574 U.S. 318 (2015)..........................................................................................21

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..........................................................................19

*VirnetX, Inc. v. Cisco Sys., Inc.*,
   767 F.3d 1308 (Fed. Cir. 2014).........................................................................................13, 16

*Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*,
   510 F.3d 474 (4th Cir. 2007) ...................................................................................................20

## I.     INTRODUCTION

Pursuant to Fed. R. Civ. P. 59, Defendant Palo Alto Networks, Inc. ("PAN") moves for a new trial because the jury's verdict was tainted by evidentiary rulings that prejudiced PAN's ability to present its case and receive a fair trial. First, PAN respectfully submits that a new trial on both liability and damages is required because the improper admission of the Keysight Settlement and the limitations on PAN's ability to put that agreement into context for the jury were unfairly prejudicial and infected the entire trial. Second, a new trial is required because Centripetal's damages expert's unreliable testimony should have been excluded and cannot serve as the basis for the verdict. This is particularly true here, as that testimony is premised on evidence that should have been excluded under Fed. R. Evid. 402 and/or 403. Third, a new trial is required on the fact issues relating to patent-eligibility of the '903, '573, and '97 Patents under 35 U.S.C. § 101 because those issues are for the Court, not the jury to decide, and because the jury's findings were tainted by legal errors in the jury instructions and verdict form. Finally, PAN moves for a new trial on infringement as to all Asserted Patents, because the jury's infringement findings are contrary to the clear weight of the evidence, and as to the '437 Patent, because the claim construction of "malicious network traffic" was improperly left to the jury.

## II.    LEGAL STANDARD

"In considering a motion for a new trial, 'a trial judge may weigh the evidence and consider the credibility of the witnesses, and if he finds the verdict is against the clear weight of the evidence, is based on false evidence or will result in a miscarriage of justice, he must set aside the verdict, even if supported by substantial evidence, and grant a new trial.'" *Chesapeake Paper Prods. Co. v. Stone & Webster Eng'g Corp.*, 51 F.3d 1229, 1237 (4th Cir. 1995) (internal citation omitted). Additionally, a jury verdict must "be set aside, based on erroneous jury instructions, if the party seeking to set aside the verdict can establish that 'those instructions were legally

erroneous' and that 'the errors had prejudicial effect.'" *Activevideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10-CV-248, 2011 WL 13114926, at *1 (E.D. Va. Oct. 13, 2011).

## III.   ARGUMENT[1]

### A.   A New Trial Is Required Due To The Improper Admission Of The Keysight Settlement.

Centripetal's damages model is premised on a single prior agreement: a two-page term sheet reflecting the terms of Centripetal's 2018 litigation settlement with Keysight Technologies, Inc. ("Keysight Settlement"), which has expired and the parties did not renew.[2] Admission of the Keysight Settlement was improper under Fed. R. Evid. 402 and/or 403. "[L]icense fees that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable royalty." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012); *see also Rude v. Westcott*, 130 U.S. 152, 164 (1889) ("a payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a standard to measure the value of the improvements patented"). Thus, reliance on "prior settlement agreements to prove the amount of a reasonable royalty" is permissible only in "limited circumstances" where the agreement is "uniquely relevant and reliable" such that its probative value outweighs "the risk of unfair prejudice, confusion of the issues, and misleading the jury." *Id.* at 77-78. Because those circumstances are not present here, admission of the Keysight Settlement was error. *Id.* at 78 (district court abused its discretion in admitting a settlement agreement). That error was compounded by the improper exclusion of evidence and testimony necessary to put the Keysight Settlement in "proper context within the hypothetical negotiation framework," as is necessary "to ensure that the reasonable royalty rate reflects the economic demand for the claimed technology." *Id.* at 77 (citing *ResQNet.com, Inc. v.*

---

[1] All emphasis added unless otherwise stated.
[2] Trial Tr. 1167:18-21 (Malackowski agreeing damages model rests on Centripetal's 2018 settlement agreement with Keysight Technologies, Inc.).

*Lansa, Inc.*, 594. F.3d 860, 870–72 (Fed. Cir. 2010)).

These cumulative errors significantly prejudiced PAN by allowing Centripetal to present the jury with a damages claim that vastly overstated the value of any reasonable royalty for the Asserted Patents and painted a false narrative surrounding the Keysight litigation, which infected the entire trial. As a result, a new trial should be ordered on both liability and damages. *Gasoline Prods. Co. v. Champlin Refining Co.*, 283 U.S. 494, 500 (1931) ("[D]amages … is so interwoven with … liability that the former cannot be submitted to the jury independently of the latter without confusion and uncertainty, which would amount to a denial of a fair trial.").

### 1. *Admission Of The Keysight Settlement Was Improper Because It Is Not Reliable Evidence Of A Reasonable Royalty*

The fundamental differences in circumstances surrounding the Keysight Settlement and the hypothetical Centripetal-PAN license demonstrate that the Keysight Settlement is not relevant or reliable evidence of a reasonable royalty.[3] For example, as explained in PAN's *Daubert* Motion (ECF No. 485) and Motions *in Limine* (ECF No. 631), unlike the hypothetical Centripetal-PAN license, the Keysight Settlement was negotiated in the middle of trial (after Keysight's lead counsel suffered a health emergency and was admitted to the hospital), and settled infringement claims involving different patents and different products. *See* ECF No. 485 at 10-11; ECF No. 631 at 5-6; Trial Tr. 1168:5-1169:17, 1190:9-15, 1669:3-25 (Centripetal's damages expert, Mr. Malackowski, acknowledging these facts). Further, the Keysight Settlement is a two-page term

---

[3] Indeed, Mr. Malackowski conceded as much in the ITC Investigation between Keysight and Centripetal. *In re Certain Comput. Network Sec. Equip. & Sys., Related Software, Components Thereof, & Prods. Containing Same* ("*Keysight ITC*"), USITC Inv. No. 337-TA-1314, 2023 WL 5744218, at *157 (Aug. 8, 2023) ("both Centripetal's and Keysight's experts appear to agree that … the 2018 license agreement between Keysight and Centripetal, does not reflect a reasonable royalty"). Although the ALJ's consideration of the Keysight Settlement was in the context of calculating a bond, Mr. Malackowski's concession that it cannot be used to calculate a "reasonable royalty" for Centripetal's patents applies equally here.

sheet, that was never converted into a more formal agreement, *id.* 1164:20-1165:10, 1188:7-1189:14, and thus lacks much of the detail customary to litigation settlement agreements and other non-litigation license agreements. Moreover, at the time of settlement, Keysight had all but admitted to copying and, therefore, faced a likely finding of willful infringement and enhanced damages. *Centripetal Networks, Inc. v. Keysight Technologies, Inc.*, No. 2-17-cv-00383 (E.D. Va.) (ECF No. 602) at 379:19-24, 386:4-13 (Keysight witness effectively admitting he copied Centripetal's product in developing the accused Keysight product); *see also* ECF No. 631 at 5-6.

By contrast, the parties in the hypothetical negotiation are presumed to be willing to consummate a license, unencumbered by the threat of litigation. *See, e.g.*, *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009) (explaining the "willing licensor-willing licensee" approach of the hypothetical negotiation); *see also* Trial Tr. 1068:24-1069:8 (Malackowski acknowledging hypothetical negotiation assumes willing participants). Thus, the "probative value" of Keysight Settlement is "dubious in that it has very little relation to demonstrated economic demand for the patented technology." *LaserDynamics*, 694 F.3d at 78.

Similarly, Mr. Malackowski, Centripetal's damages expert, acknowledged at trial that the Keysight Settlement contained fundamentally different terms than the hypothetical Centripetal-PAN license. First, the Keysight Settlement was a portfolio license that conveyed rights to the entirety of Centripetal's then-existing patent portfolio and future patents issued during the term of the license ████████████████████████████████████████████ ██████. Trial Tr. 1173:3-1179:2, 1180:14-1182:23. Second, the Keysight Settlement included a ████████████████████████████████████████████████████████. *Id.* 1171:11-1172:13. Third, the Keysight Settlement ██████████████████████████████ ███████████████████████████████████████████████████, ████████████

██████████████████████████████████████, and ████████████████

███, all of which limited the overall royalties Keysight paid using the rates in the agreement. *Id.* 1165:11-18, 1183:9-1185:3, 1672:11-15,

In contrast, the hypothetical Centripetal-PAN license is limited to the four Asserted Patents and includes no assurance that Centripetal will not later assert infringement of other Centripetal patents. *Id.* 1198:2-1202:7. The hypothetical Centripetal-PAN license also does not include thresholds limiting the overall royalties to be paid, *id.* 1198:21-1199:6, nor does it limit royalty payments to a subset of licensed products or limit the term over which royalties accrue. In addition, the accused PAN products that are the subject of the hypothetical Centripetal-PAN license are part of a different market than the licensed Keysight products (which are not firewalls) and contain hundreds more features than Keysight's licensed products. *Id.* 1453:20-1456:14, 1508:1-5; *see also id.* 1704:25-1706:5 (Mr. Bakewell testifying same).

These fundamental differences between the Keysight Settlement and the hypothetical Centripetal-PAN license demonstrate that the Keysight Settlement ***is not*** "uniquely relevant and reliable" evidence of a reasonable royalty, and therefore should not have been admitted. *LaserDynamics*, 694 F.3d at 77-78. This is particularly true in view of the numerous comparable and more reliable non-litigation agreements PAN presented at trial, but which Centripetal rejected with respect to its proffered royalty. *See* Trial Tr. at 1602:21-1613:25 (PAN's expert, Dr. Nielson, testifying as to technical comparability of numerous PAN and Centripetal patent purchase/license agreements); *see id.* 1680:8-1693:2 (PAN's expert, Mr. Bakewell, testifying as to economic comparability of those agreements).

In response to PAN's *Daubert* Motion and Motion *in Limine*, Centripetal argued that admission of the Keysight Settlement was proper under *Prism Techs. LLC v. Sprint Spectrum L.P.*,

849 F.3d 1360 (Fed. Cir. 2017). *See* ECF No. 539 at 5-6; ECF No. 657 at 5. Centripetal asserted

that *Prism* endorses "the admission of settlement agreements where the proponent supplies

evidence that reasonably addresses what bearing the amounts in settlement have on the value of

the Asserted Patents." ECF No. 539 at 5. But *Prism* is not applicable here. Unlike PAN, the

defendant in *Prism* opened the door to reliance on litigation settlements because it affirmatively

sought admission of "a number of Prism licenses of the patents at issue that resulted from litigation

settlements." *Prism*, 849 F.3d at 1370. Further, because the prior AT&T settlement agreement

plaintiff relied on covered patents in addition to the patents asserted against Sprint, the Court held

that "evidence was needed that reasonably addressed what bearing the amounts in the [AT&T]

Agreement had on the value of the particular patents at issue here." *Id.* at 1370-71. Unlike

Centripetal, the *Prism* plaintiff presented such evidence. *Id.* at 1371. Here, as explained above,

Centripetal failed to reasonably address what bearing (if any) the Keysight Settlement has on the

Asserted Patents because Centripetal's damages expert did not reliably account for the

fundamental differences between (a) the circumstances of the Keysight Settlement and the

hypothetical Centripetal-PAN license, (b) the licensed Keysight products and the accused PAN

products, (c) the patents asserted in the Keysight litigation and those asserted here, (d) the scope

of the Keysight Settlement and the hypothetical Centripetal-PAN license (*i.e.*, a portfolio license

versus a license limited to four patents), and (e) the terms in the Keysight Settlement that limited

the amounts paid by Keysight under the royalty rates in the agreement.

### 2. *The Error Of Admitting The Keysight Settlement Was Exacerbated By The Failure To Give PAN's Proposed Jury Instruction Addressing The Differences Between A Litigation Settlement And Hypothetical License*

The error of admitting the Keysight Settlement was exacerbated by the rejection of PAN's

proposed jury instruction explaining that a hypothetical license "is deemed to be voluntary,"

whereas a litigation settlement may have been "influenced by a desire to avoid further litigation,"

and making clear that the jury "may consider whether the license agreement is between parties to a lawsuit" when assessing its comparability. *See* Trial Tr. 1811:16-1812:4; ECF No. 741 at 131. As PAN argued in its memorandum in support of PAN's proposed instruction, this instruction was necessary to provide the jury "adequate context for considering the comparability of litigation-related agreements," which, unlike the hypothetical negotiation framework, involve vastly different circumstances and negotiating positions. ECF No. 761 at 33; *see also LaserDynamics*, 694 F.3d at 77 (holding that, if litigation settlements are to be considered, they must be put in "proper context within the hypothetical negotiation framework to ensure that the reasonable royalty rate reflects the economic demand for the claimed technology"). At the very least, a new trial should be ordered where a jury is instructed on the differences between a litigation settlement and a hypothetical voluntary license.

### 3. *PAN Was Unfairly Prejudiced By The Improper Admission Of The Keysight Settlement And Exclusion Of Evidence Necessary To Put The Agreement In Context For The Jury*

PAN was unfairly prejudiced by the improper admission of the Keysight Settlement, which allowed Centripetal to paint a false narrative surrounding the Keysight litigation and resulting settlement, and present the jury with a damages claim that vastly overstated the value of any reasonable royalty for the Asserted Patents. The Keysight Settlement infected the entire trial because Centripetal made the agreement a cornerstone of its case from the beginning,[4] and continued to highlight it throughout the trial, through both its fact and expert witnesses. *See, e.g.*, *supra* n.3; Trial Tr. 374:1-379:25 (Direct examination of Centripetal witness J. Rogers); 670:24-680:1 (Direct examination of Centripetal expert Cole); 1095:5-1108:9 (Direct examination of Centripetal expert Malackowski).

---

[4] *See, e.g.*, Trial Tr. 352:20-353:5, 371:22-374:12 (Direct examination of Centripetal witness J. Rogers).

As a result, PAN was forced to engage in a "mini-trial" within the trial in an effort to put the Keysight Settlement "in its proper context within the hypothetical negotiation framework."[5] *LaserDynamics*, 694 F.3d at 77 (holding that such context is necessary "to ensure that the reasonable royalty rate reflects 'the economic demand for the claimed technology'"). In particular, PAN was forced to spend significant trial time cross-examining Centripetal's witnesses and eliciting testimony from PAN's witnesses concerning the differences between the accused PAN products and the accused Keysight products, which created an unfair distraction from PAN's liability defenses that the accused products are fundamentally different from the asserted claims of the Asserted Patents. *See* Trial Tr. 744:18-751:24 (Cross-examination of Cole); 851:23-853:25 (Cross-examination of Centripetal witness Moore); 1189:21-1192:20 (Cross-examination of Malackowski); 1453:20-1456:14 (Direct examination of PAN expert Villasenor); 1672:4-1675:19, 1705:25-1706:5 (Direct examination of PAN expert Bakewell).

Similarly, PAN was forced to devote significant trial time to establishing the differences in scope of the patent claims covered by the Keysight license and claims of the Asserted Patents, which created an unfair distraction from PAN's liability defenses, which necessarily focused on the claims of the Asserted Patents. *See* Trial Tr. 1168:5-1170:20, 1173:1-1182:23, 1189:21-1196:10 (Cross-examination of Malackowski); 1669:2-1672:3 (Direct examination of Bakewell).

PAN was also forced to devote trial time to establishing the differences in the circumstances that drove the Keysight Settlement and the circumstances assumed in the hypothetical negotiation framework used to determine a reasonable royalty here. *See*, *e.g.*, Trial

---

[5] *See* ECF No. 631 at 6-9 (PAN's Motion *in Limine* arguing that admitting the Keysight Settlement would improperly invite a "mini-trial" on the similarities and differences between the products and circumstances of the Keysight Settlement and the hypothetical Centripetal-PAN license); ECF No. 666 at 3-4 (PAN's reply arguing same).

Tr. 423:15-424:3 (Direct examination of Jonathan Rogers); 1169:4-12, 1215:4-1217:1 (Cross-examination of Malackowski); 1675:20-1677:6 (Direct examination of Bakewell). Likewise, PAN had to devote trial time to establishing the differences in the terms of the Keysight Settlement as compared to the hypothetical Centripetal-PAN license. *See*, *e.g.*, Trial Tr. 419:12-420:14, 421:13-423:5, 424:4-18 (Cross-examination of J. Rogers), 1165:11-18, 1168:5-1169:3, 1169:13-1172:24, 1182:24-1189:14, 1197:21-1202:11 (Cross-examination of Malackowski), 1666:17-1669:1, 1678-1679:25 (Direct examination of Bakewell).

Being forced to litigate these issues to establish "what, if any, light the [Keysight Settlement] sheds" on the appropriate measure of damages in this case was unfairly prejudicial to PAN. *Fenner Invs., Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 WL 1727916, at *2 (E.D. Tex. Apr. 28, 2010). That prejudice was amplified by the denial of PAN's requests to introduce evidence and elicit testimony that would properly put the Keysight Settlement in context for the jury. *See LaserDynamics*, 694 F.3d at 77. For example, the Court limited PAN's ability to cross-examine Centripetal's expert witness, Dr. Cole—on whose testimony Mr. Malackowski relied—regarding the purported comparability of the Keysight products and the accused PAN products. *See*, *e.g.*, Trial Tr. 750:9-751:11 (sustaining Centripetal's objection to cross-examination of Centripetal's technical expert, Dr. Cole, concerning Keysight-PAN product comparability); *id.* 1189:21-1190:22 (Malackowski testifying he "rel[ied] upon Dr. Cole for technical comparability" of the patents and products subject to the Keysight Settlement and the hypothetical Centripetal-PAN license).

The Court also denied PAN's requests to cross-examine Centripetal's witnesses concerning the subsequent invalidation of all asserted claims of the patents that were at issue in the Keysight litigation "and the broader story of the Keysight litigation," including that Keysight was found not

to infringe in subsequent litigation. Trial Tr. 788:24-790:1, 791:21-795:4. As PAN's counsel argued at the time, this context was necessary to "present the jury with a full picture" of the Keysight Settlement, "which is the entire basis and foundation of Centripetal's damages model." *Id.* 788:24-790:1, 791:21-795:4; 1048:5-1054:14; *see also id.* 1644:7-1645:4 (PAN's offer of proof concerning the invalidation of patents that were at issue in the Keysight litigation). A hypothetical-negotiation analysis "permits and often requires" consideration of "events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *See Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1988) (abrogated on other grounds). Here, the need to present such facts to the jury was particularly acute because subsequent events fundamentally changed the circumstances that drove the Keysight Settlement. The Court's error in limiting PAN's ability to address these issues not only undermined its cross examination of Mr. Malackowski, but also permitted Jonathan Rogers to paint a false narrative surrounding the Keysight litigation. For example, without acknowledging that the patents asserted in the Keysight litigation were subsequently invalidated, Mr. Rogers testified that without a license to those patents, Keysight would have to "find their way out of the market"—a plainly counterfactual assertion regarding the significance of the Keysight Settlement that PAN was not permitted to challenge on cross-examination.  Trial Tr. 377:16-378:4.

Similarly, the Court erred in preventing PAN from cross-examining Centripetal's damages expert, Mr. Malackowski, on key issues. First, the Court limited PAN's ability to cross-examine Mr. Malackowski on the fact that his testimony concerning the purported comparability of the Keysight Settlement improperly relied on (1) a Centripetal patent that was neither at issue in the Keysight litigation nor this trial, and (2) PAN products that were not accused of infringement at trial. Specifically, Mr. Malackowski's purported comparability analysis was based, in part, on the

-10-

'380 Patent and the PAN products accused of infringing that patent. But neither the '380 Patent nor the products accused of infringing it would be part of the hypothetical Centripetal-PAN license because the Court held the '380 Patent **not infringed** at summary judgment. *See* Trial Tr. 1645:5-1647:2 (PAN's offer of proof on this issue); ECF No. 742 (summary judgment of non-infringement as to the '380 Patent). PAN sought to cross-examine Mr. Malackowski on this issue at trial but was wrongly precluded from doing so. Trial Tr. 1192:5-1194:15.

Second, the Court limited PAN's ability to cross-examine Mr. Malackowski concerning his prior ITC testimony that the Keysight Settlement does not reflect a reasonable royalty, despite the fact that Centripetal's damages model was premised entirely on the Keysight Settlement.[6] Trial Tr. 1202:8-1203:4; 1204:4-11; *see also Keysight ITC*, 2023 WL 5744218, at *157 (explaining that "both Centripetal's and Keysight's experts appear to agree that … the 2018 license agreement between Keysight and Centripetal, does not reflect a reasonable royalty"). Restricting PAN's ability to put the Keysight Settlement into context for the jury was improper because, even in circumstances where reliance on a litigation settlement may be permissible, the Federal Circuit has explained that the patentee must take the good with the bad, including the "panoply of 'events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.'" *ResQNet*, 594 F.3d at 872–73 (quoting *Fromson v. Western Litho Plate & Supply Co.*, 853 F.2d 1568, 1575 (Fed. Cir. 1995)).

The improper admission of the Keysight Settlement and the limitations on PAN's ability to put that agreement into its proper context for the jury, as well as the denial of PAN's requested jury instruction, were errors that, individually and together, unfairly prejudiced PAN by restricting

---

[6] Trial Tr. 1167:18-21 (Malackowski agreeing damages model rests on Centripetal's 2018 settlement agreement with Keysight Technologies, Inc.).

its defense and infected the entire trial. For these reasons, PAN requests a new trial on both liability and damages where this evidence is excluded or, in the alternative, where PAN is fully able to counter it. *See Gasoline Prods.*, 283 U.S. at 500.

**B.     A New Trial Is Required Because Centripetal's Damages Expert's Testimony Should Have Been Excluded And Cannot Support The Damages Award.**

A new trial is also required because, as explained in PAN's *Daubert* Motion (ECF No. 485) and confirmed at trial, Mr. Malackowski's testimony is unreliable and thus should have been excluded under Fed. R. Evid. 402, 403, and/or 702 and *Daubert*. First, Mr. Malackowski's expert testimony concerning the purported comparability of the Keysight Settlement should have been excluded as unreliable because he failed to soundly account for the differences between the Keysight Settlement and the hypothetical Centripetal-PAN license. *See* ECF No. 485 at 8-13; ECF No. 593 at 2-8. Second, and independently, Mr. Malackowski's damages calculations should have been excluded as unreliable because he failed to apportion out the value of unpatented features of the accused PAN products, and thereby failed to establish a reasonable royalty reflecting the value of the patented inventions. *See* ECF No. 485 at 13-16; ECF No. 593 at 8-13. Third, Mr. Malackowski's expert testimony concerning the Duff & Phelps valuation reports relating to companies acquired by PAN should have been excluded as unfairly prejudicial and unreliable because the reports constitute inadmissible hearsay, and Mr. Malackowski failed to conduct any comparability analysis with respect to the acquisitions. *See* ECF No. 485 at 22-23; ECF No. 593 at 14-15; ECF No. 631 at 9-11.[7]

Admission of Mr. Malackowski's unreliable testimony was unfairly prejudicial to PAN because it allowed Centripetal to present the jury with a damages claim that vastly overstated the

---

[7] *See also* ECF No. 809-1 at 3 (lodging hearsay objections to Mr. Malackowski's demonstratives summarizing the Duff & Phelps reports)*;* ECF No. 782 at 152 (excluding the Duff & Phelps reports as evidence but permitting Centripetal's experts to discuss same).

value of any reasonable royalty for the Asserted Patents. The damages award should therefore be vacated, and a new trial on all issues granted in which Mr. Malackowksi's unreliable damages testimony is excluded. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1329 (Fed. Cir. 2014) (vacating damages award and remanding for further proceedings in which expert's unreliable testimony is excluded in light of failure to "carefully tie proof of damages to the claimed invention's footprint"); *Gasoline Prods.*, 283 U.S. at 500 (new trial warranted on liability and damages).

### 1.     *Mr. Malackowski Failed To Soundly Account For The Differences Between The Keysight Settlement And The Hypothetical Centripetal-PAN License*

Mr. Malackowski's expert testimony concerning the purported comparability of the Keysight Settlement—the single agreement on which Centripetal's damages model rests[8]—should have been excluded as unreliable because he failed to soundly account for the differences between the Keysight Settlement and the hypothetical Centripetal-PAN license. *See* ECF No. 485 at 8-13; ECF No. 593 at 2-8; *see also MLC Intellectual Prop., LLC v. Micron Tech., Inc.*, 10 F.4th 1358, 1375 (Fed. Cir. 2021) (to support a reasonable royalty, prior licenses "need to be 'sufficiently comparable' for evidentiary purposes and any differences in circumstances must be soundly accounted for") (quoting *Elbit Sys. Land and C4I Ltd. v. Hughes Network Sys., LLC*, 927 F.3d 1292, 1300 (Fed. Cir. 2019)).[9]

First, as explained above, the Keysight Settlement was executed under vastly different

---

[8] Trial Tr. 1167:18-21 (Malackowski agreeing damages model rests on Centripetal's 2018 settlement agreement with Keysight Technologies, Inc.).

[9] *See also LaserDynamics*, 694 F.3d at 79 ("[A] loose or vague comparability between different technologies or licenses does not suffice."); *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, No. 2:18-cv-585, 2021 WL 6034269, at *9 (E.D. Va. Dec. 10, 2021) ("[S]ettlement licenses may be used at trial in limited circumstances and when sufficiently comparable, [but] the window for admission narrows as the circumstances diverge from the hypothetical negotiation and an expert fails to address such differences.").

economic circumstances than the circumstances assumed in the hypothetical negotiation framework used to determine a reasonable royalty here. *See supra* Section III.A.1. Mr. Malackowski failed entirely to account for these differences, which alone warrants exclusion of his testimony. *See Biscotti Inc. v. Microsoft Corp.*, 2017 WL 2607882, at *3-*4 (E.D. Tex. 2017) (excluding damages opinion that did not account for differences in economic circumstances of allegedly comparable license).

Second, as also explained above, the Keysight Settlement contained fundamentally different terms than the hypothetical Centripetal-PAN license. *See supra* Section III.A.1. For example, unlike the hypothetical Centripetal-PAN license, the Keysight Settlement was not limited to the patents asserted in the Keysight litigation; rather, it was a portfolio license that included a covenant not to sue on all Centripetal patents ████████████████████████████████ ████████████████████████. *Id*. Mr. Malackowski failed to account for the value attributable to the numerous other patents in the Keysight Settlement beyond those that were asserted in the litigation. Trial Tr. 1173:1-1182:23, 1198:2-20 (Cross-examination of Malackowski). That alone also warrants exclusion of his testimony. *See Apple Inc. v. Wi-LAN Inc*., 25 F.4th 960, 974 (Fed. Cir. 2022) (expert's failure to address differences in the scope of the prior license "is troubling and makes his opinion unreliable"); *see also Omega Patents, LLC v. CalAmp Corp.*, 13 F.4th 1361, 1379-81 (Fed. Cir. 2021) (excluding testimony that the same royalty applied "regardless of what patents were included" because it failed to account for the technical and economic differences between the licenses).

Third, the financial terms of the Keysight Settlement were fundamentally different from the hypothetical Centripetal PAN-license. Specifically, the Keysight Settlement included floor and ceiling thresholds, required royalty payments as to only a subset of the licensed products, and was

limited to a three-year term, all of which limited the overall amounts to be paid by Keysight under the stated royalty rates. *See supra* Section III.A.1. Mr. Malackowski ignored those factors in his damages calculations, however, and applied the Keysight Settlement's royalty rate *in toto* to PAN's allegedly infringing products, without any such limitations. 1183:24-1184:19, 1198:21-1199:6 (Cross-examination of Malackowski); 1231:4-18 (Direct examination of Malackowski).

Fourth, the Keysight Settlement and the hypothetical Centripetal-PAN license involved fundamentally different products in different markets. *See supra* Section III.A.1. Mr. Malackowski failed to meaningfully address either distinction. Trial Tr. 1100:21, 1190:23-1192:4 (Malackowski's conclusory testimony that Keysight and PAN products are similar).

Fifth, Mr. Malackowski failed to consider the fact that all asserted claims of the patents asserted against Keysight were subsequently invalidated and/or not infringed, and PAN's ability to cross-examine Mr. Malackowski on this issue was improperly limited. *See supra* Section III.A.3. Though Centripetal argued that such facts need not be considered because they occurred after the hypothetical negotiation date, the Federal Circuit has rejected that argument, holding that a hypothetical-negotiation analysis "permits and often requires" consideration of "events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators." *See Fromson*, 853 F.2d at 1575. As stated above, that need was particularly acute here because subsequent events fundamentally changed the circumstances that drove the Keysight Settlement.

Because Mr. Malackowski failed to soundly account for the differences between the Keysight Settlement and the hypothetical Centripetal-PAN license, the admission of his testimony and opinions as to the Keysight Settlement was improper. *See* ECF No. 485 at 8-13; ECF No. 593 at 2-8. Further, in light of this evidentiary failing, no reasonable jury could have found the Keysight

Settlement sufficiently comparable to serve as the sole support for a reasonable royalty in this case.

*See Biedermann Techs.*, 2021 WL 6034269, at *9. On that basis alone, a new trial is warranted.

> **2.**    *Mr. Malackowski Failed To Apportion Out The Value Of Unpatented Features And Thereby Establish A Reasonable Royalty That Reflects The Value Of The Patented Invention*

Mr. Malackowski's damages calculations should also have been excluded as unreliable for the independent reason that he failed to apportion out the value of unpatented features of the accused PAN products, and thereby failed to establish a reasonable royalty reflecting the value of the claimed inventions. *See* ECF No. 485 at 13-16; ECF No. 593 at 8-13; s*ee also Limelight Networks, Inc. v. XO Communications, LLC*, No. 3:15-cv-720, 2018 WL 678245, *4 (E.D. Va. Feb. 2, 2018) (excluding expert's opinions based on "fail[ure] to determine the appropriate base of [Defendant's] revenues attributable to the [asserted] patent").

"A patentee is only entitled to a reasonable royalty attributable to the infringing features." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 904 F.3d 965, 977 (Fed. Cir. 2018). "[W]here an infringing product is a multi-component product with patented and unpatented components, apportionment is required." *Mentor Graphics Corp. v. EVE-USA, Inc.*, 870 F.3d 1298, 1299 (Fed. Cir. 2017) (Stoll, J., concurring) (citing *VirnetX*, 767 F.3d at 1326).[10] Although Centripetal conceded the Accused Products include "hundreds of features," many of which are indisputably not part of the claimed inventions, Trial Tr. 751:2-4, 1132:3-8,[11] Mr. Malackowski

---

[10] *See also Garretson v. Clark*, 111 U.S. 120, 121 (1884) ("[P]atentee … must in every case give evidence tending to separate or apportion … between the patented feature and the unpatented features[.]").

[11] Mr. Zuk, Mr. Bakewell, and Dr. Villasenor likewise testified that the accused features represent a small fraction of the total features in the Accused Products. Trial Tr. 1325:20-1327:9 ("Centripetal is accusing one or two features out of more than a thousand" in the accused NGFWs); *see also id.* at 1327:23-1328:14 (testifying that the accused features of the accused combination of Panorama and NGFW is "less than 1 percent of those features"); *see also id.* 1455:20-1456:15, 1705:19-1707:4; DX-36; DX-31; *see also* Trial Tr. 1593:21-1602:2 (Nielson testimony as to the limited incremental value of the Asserted Patents).

made no effort to identify the value of the patented features apart from the unpatented features. Instead, Mr. Malackowski conclusorily asserted that apportionment was "built-in" to the Keysight Settlement. Trial Tr. 1233:10-19.

The Federal Circuit has found reliance on purportedly "built-in" apportionment appropriate **only** in circumstances where there is (1) complete identity of parties, patents, and accused technology, or (2) a reliable analysis of the differences between the licensed technology and the accused technology. *See MLC*, 10 F.4th at 1375; *see also Biedermann*, 2021 WL 6034269, at *16-19. Those are not the circumstances here.

The evidence presented at trial, including testimony from both parties' witnesses, establishes that the Keysight Settlement involved different parties, different patents, and different accused technologies. Trial Tr. 748:21-751:21, 1196:11-13, 1190:9-15, 1345:9-21, 1453:20-1456:14, 1672:8-1677:4. But Centripetal failed to present a reliable analysis of the differences between the licensed technology and the accused technology. Instead, Mr. Malackowski testified merely that the Keysight royalty rate was already apportioned because it had been "reduced [] by 40 percent to account for the old technologies." Trial Tr. 1129:17-20. That apportionment was specific to Keysight products, and Centripetal offered no evidence that this 40 percent figure accounts for the numerous non-patented technologies in PAN's Accused Products. Indeed, Centripetal's infringement expert, Dr. Cole—on whose testimony Mr. Malackowski relied for the comparison between the accused and unaccused features in both the Keysight and PAN Accused Products—conceded he **did not** perform any technical analysis concerning the proportion of accused to unaccused features in **either** the Keysight or PAN products. Trial Tr. 750:23-751:21, 1129:2-10, 1190:16-22. Further, both Mr. Malackowski and Dr. Cole conceded that PAN's Accused Products have hundreds of features, a majority of which are not accused and not in the

Keysight products. Trial Tr. 751:2-4, 1132:3-8; *see also id.* 1455:12-19, 1508:1-5 (Dr. Villasenor testifying PAN accused products include many more features than the Keysight products),. 1704:25-1706:5 (Mr. Bakewell testifying same).

In addition, the purported apportionment of the Keysight Settlement was specific to the asserted patents in that case. The record is devoid of any attempt to tie those patents to the four Asserted Patents here. Even worse, as explained above, Mr. Malackowski's and Dr. Cole's purported comparability analysis was premised, in part, on the '380 Patent and PAN products accused of infringing that patent, neither of which would be part of the hypothetical Centripetal-PAN license given the Court's summary judgment determination that PAN does not infringe the '380 patent. *See* ECF No. 742. Thus, the "40 percent" figure impermissibly relies upon numerous un-patented features in PAN's Accused Products to suggest comparability of products subject to the hypothetical negotiation.

In light of Mr. Malackowski's failure to apportion out the value of unpatented features of the accused PAN products, his damages testimony should have been excluded as unreliable. *See* ECF No. 485 at 13-16; ECF No. 593 at 8-13; *see also Limelight*, 2018 WL 678245, *4 (excluding expert's opinions based on "fail[ure] to determine the appropriate base of [Defendant's] revenues attributable to the [asserted] patent"). And given this missing foundation, no reasonable jury could have determined a reasonable royalty that reflects the value of the patented inventions, and thus the damages award is contrary to the clear weight of the evidence.

> **3.** ***Mr. Malackowski's Reliance On "Royalty Rates" From The Duff & Phelps Reports Is Unsupportable Given His Failure To Consider The Comparability Of The Underlying Corporate Acquisitions***

As a purported "reasonableness check" on his proffered royalty rate, Mr. Malackowski relied on valuation reports prepared by third-party Duff & Phelps concerning PAN's acquisition of several other companies, which he contends establish "market royalty rates for comparable

technologies" ranging from ███████ Trial Tr. 1106:22-1108:9, 1110:25-1111:21; JM-DM01 at 27-29. Mr. Malackowski's testimony on this issue should have been excluded as unfairly prejudicial and unreliable because testimony about the reports constitutes inadmissible hearsay, and Mr. Malackowski failed to conduct any comparability analysis for the corporate acquisitions that were the subject of the Duff & Phelps reports. *See* ECF No. 485 at 22-23; ECF No. 593 at 14-15; ECF No. 631 at 9-11.[12]

In particular, Mr. Malackowski did not consider whether (or how many) patents were acquired by PAN as part of the corporate acquisitions addressed in the reports. Trial Tr. 1204:20-1206:3, 1210:16-21. He also did not compare the patents and technology that were the subject of the corporate acquisitions to the Asserted Patents or the Accused Products in this case, and he conceded that the "technology" the reports purported to value included far more than patented technology. *See id.* 1206:4-25. Nor did Mr. Malackowski compare the acquisitions' economic circumstances to the hypothetical negotiation framework used to determine a reasonable royalty here. In fact, neither Mr. Malackowksi nor any of Centripetal's other experts looked at the agreements on which Duff & Phelps relied to arrive at the purported "market royalty rates." *Id.* 1207:3-9, 1210:1-15. Notably, Mr. Malackowski expressed doubt as to whether Duff & Phelps even looked at the full agreements that were the subject of the reports. *Id.* at 1210:10-15.

With no comparability analysis concerning the acquisitions associated with the royalty rates in the Duff & Phelps reports, Mr. Malackowski's testimony concerning those royalty rates— even as a purported "reasonableness" check—is unfairly prejudicial and unreliable, and therefore should have been excluded. *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1321 (Fed. Cir.

---

[12] *See also* ECF No. 809-1 at 3 (lodging hearsay objections to Mr. Malackowski's demonstratives summarizing the Duff & Phelps reports*); ECF No. 782 at 152 (excluding the Duff & Phelps reports as evidence but permitting Centripetal's experts to discuss same).

2011) (reliance on prejudicial evidence/testimony, even if "only as a check," is improper); *see also ResQNet*, 594 F.3d at 873 ("[T]he district court erred by considering … licenses … without any factual findings that accounted for the technological and economic differences between those licenses and the [asserted] patent."); *Limelight*, 2018 WL 678245, *4 (E.D. Va. Feb. 2, 2018) (rejecting expert's analysis because "he apportions the royalty rate from the prior acquisition rather than determining the appropriate base of damages from [Defendant's] revenues").

### C.    A New Trial On The Fact Issues Relating To § 101 Patent Ineligibility Of The '903, '573, and '797 Patents Is Required.

"A party seeking to alter a judgment based on erroneous jury instructions must establish that (1) it made a proper and timely objection to the jury instructions, (2) those instructions were legally erroneous, (3) the errors had prejudicial effect, and (4) it requested alternative instructions that would have remedied the error." *Advanced Display Sys. v. Kent State Univ.*, 212 F.3d 1272, 1281 (Fed. Cir. 2000) (internal citations omitted); *see Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 485 (4th Cir. 2007) (reversible error where jury instructions do not "adequately state the controlling legal principles").

As an initial matter, over PAN's objections,[13] the Court erroneously submitted § 101 patent eligibility issues to the jury. PAN maintains its objection that the issue of patent eligibility is for the Court, not the jury to decide, and that includes any factual questions bearing on *Alice* step two. *See Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 221 (2014*)* ("At *Mayo* step two, **we** must examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application."); *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 78 (2012) (finding as a matter of law that "[t]hese additional steps [of the asserted patent claim] are not themselves natural laws but

---

[13] *See, e.g.*, Hearing Tr. (Jan. 16, 2024 ) at 25:4-28:22; Dkt. 734 (PAN Pretrial Brief) at 5-10.

neither are they sufficient to transform the nature of the claim" to make it patent eligible); *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018) ("Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law."); *see also Teva Pharma. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015) (holding that patent claim construction, also an issue of law, is for the court to determine, even when it involves resolving underlying factual disputes). Accordingly, to the extent the Court continues to believe there are genuine factual disputes to be resolved in connection with PAN's § 101 defense—though, as PAN explains in its Motion for JMOL, there are not—the Court should order a bench trial on those issues or, in the alternative, treat the existing record as the record of the bench trial, order the parties to file proposed findings of fact and conclusions of law, and then issue its own findings under Federal Rule of Civil Procedure 52(a).

Separately, however, the jury verdict regarding § 101 cannot stand, because the jury was not correctly instructed. Over PAN's objection,[14] the Court erroneously instructed the jury to determine whether the claims "taken as a whole"—*i.e.*, including **both** the abstract ideas **and** the additional elements beyond the abstract ideas—would have been well-understood, routine, and conventional. *See* Trial Tr. 1871:25-1872:3. Further, the Court instructed the jury that, "to succeed on its claim for invalidity for failure to claim patent-eligible subject matter, Palo Alto must show … that, as to each claim … **all the elements**, when taken individually and when taken as an ordered

---

[14] *See* Trial Tr. 1792:19-1796:18, 1797:25-1798:12, 1801:23-1804:19. At trial, PAN asserted that "since the court has not ruled on [*Alice* step one] to properly frame the *Alice* step-two inquiry [the jury should not be given] an instruction that invites them to consider whether the claims as a whole are well-understood, routine, and conventional because it invites them to sweep the abstract idea into that consideration." Trial Tr. 1794:14-22.  Nevertheless, this Court erroneously instructed the jury about *Alice* step two without providing the jury with any ruling on *Alice* step one.

combination, involve only technology which a person of ordinary skill in the art would have considered well-understood, routine, and conventional." *Id.* 1871:11-24; *see also id.* 1860:5-14, 1872:9-16; ECF 851 at 7 (same language in verdict form). Those instructions (and the corresponding verdict form language) are contrary to law because they fail to properly limit the inquiry to whether "claim limitations ***other than*** the invention's use of the ineligible [abstract ideas]" were well-understood, routine, and conventional. *BSG*, 899 F.3d at 1290 ("It has been clear since *Alice*, that a claimed invention's use of the ineligible concept to which it is directed ***cannot*** supply the inventive concept that renders the invention 'significantly more' than that ineligible concept.") (emphasis added).

In contrast, PAN requested jury instructions and verdict form language framing the relevant fact question as whether the asserted claims "recite implementing the claimed idea using something more than technology that a person of ordinary skill in the art would have considered well-understood, routine, and conventional." ECF No. 790 at 28; *see also id.* at 18; ECF No. 791 at 9. PAN's proposed language would have properly limited the step-two inquiry to claim elements directed to the implementation of the abstract idea, rather than including the abstract idea itself in the step-two inquiry. *See Affinity Labs of Tex., LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1262 (Fed. Cir. 2016) (holding a claim fails at *Alice* step 2 where it "simply recites the use of generic features … as well as routine functions … ***to implement*** the underlying idea").

The legal errors in the jury instructions and verdict form significantly prejudiced PAN because the jury was impermissibly invited to consider the testimony of Centripetal's expert, Dr. Goodrich, concerning the purported unconventionality of the abstract ideas recited by the Correlation Patents' asserted claims in its analysis of issues relevant only to *Alice* step two. *See* Trial Tr. 1767:6-1768:20, 1770:3-14, 1772:9-24, 1773:8-19 (Goodrich testimony concerning the

purportedly unconventional nature of the claimed correlation). As explained above, however, a claim's use of an abstract idea cannot supply an inventive concept, and thus purported nonconventionality of an abstract idea is irrelevant to the fact issues underlying *Alice* step two. *See BSG*, 899 F.3d at 1290. Thus, allowing the jury to consider the alleged novelty of the abstract idea itself in determining whether the claims "as a whole" were directed to conventional limitations was improper. To the extent the Court does not grant JMOL that the asserted claims of the '903, '573, and '797 Patents are directed to patent-ineligible subject matter under § 101, and to the extent that the Court rules (over PAN's objection) that a jury can properly consider this issue, this legally erroneous and prejudicial instruction warrants a new trial on the factual issues relating to § 101 patent-eligibility in which the jury is instructed as to the abstract idea recited in the claims, and further is instructed not to consider that abstract idea in determining whether the remaining elements of the asserted claims are routine or conventional.

**D.    A New Trial On Infringement Is Required Because The Verdict Is Contrary To The Clear Weight Of The Evidence.**

For the reasons explained in PAN's Motion for JMOL, a reasonable jury could not have found, based on the evidence presented at trial, that PAN infringes any asserted claim of any Asserted Patent. For similar reasons, the infringement verdict is contrary to the clear weight of the evidence. A new trial is therefore warranted to the extent the Court does not enter JMOL of no infringement. *Chesapeake*, 51 F.3d at 1237 (stating that a district court must "set aside the verdict … and grant a new trial" if "the verdict is against the clear weight of the evidence"); *see also Shatterproof Glass Corp. v. Libbey-Owens Ford Co.*, 758 F.2d 613, 626 (Fed. Cir. 1985) ("if the verdict is against the clear weight of the evidence, as an alternative to judgment n.o.v. a new trial may be granted").

**E.    A New Trial On Infringement Is Required For The '437 Patent For Failure To Resolve The Parties' Dispute On The Construction of "Malicious Network Traffic."**

PAN is entitled, at a minimum, to a new trial because the Court improperly left to the jury the claim construction of "malicious network traffic," which is the province of the Court. *See Eon Corp. IP Holdings LLC v. Silver Spring Networks, Inc.*, 815 F.3d 1314, 1318 (Fed. Cir. 2016) ("By determining only that the terms should be given their plain and ordinary meaning, the court left this question of claim scope unanswered, leaving it for the jury to decide. This was legal error.") (citing *O2 Micro Int'l, Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008)). At *Markman*, PAN proposed a construction of "malicious network traffic" as "network traffic intended to do harm." ECF No. 452 at 20. Centripetal objected to the word "intended" and sponsored a declaration of Dr. Goodrich asserting "malicious network traffic is network traffic that *may* be harmful." ECF No. 361 ¶ 37. The Court's analysis of the extrinsic evidence in the record was consistent with PAN's position other than (in the Court's view) the word "intended." ECF No. 452 at 21. The Court noted PAN's cited definitions stating that malicious code "can cause harm to a computer" and "focus[ing] on the harm to the system," and cited favorably to Dr. Goodrich's declaration. *Id.* But the Court "reject[ed] PAN's proposed construction" on the basis "that '*intended* to do harm'" "is narrower than how a [person of ordinary skill in the art] would understand the term," and "adopt[ed] the plain and ordinary meaning of the term." *Id.* at 21-22.

At trial, Dr. Mitzenmacher testified that the plain meaning of "malicious network traffic" did *not* match what Centripetal had sponsored or that the Court cited favorably. Instead, Dr. Mitzenmacher interpreted the term more broadly to include "traffic that a person running the system wants to deny *generally for any reason*." Trial Tr. 991:24-993:15. Despite counsel for PAN citing the Court's endorsement of the different and narrower meaning of "may cause harm" to the system/device, the Court instructed the jury only as to "plain and ordinary meaning." *Id.*

-24-

That left the jury free to accept Plaintiff's expert's definition of a key term inconsistent with the Court's analysis—and the proper meaning. Centripetal's counsel doubled down on its improper construction during closing, arguing "the administrator gets to choose what's malicious and what's not malicious. That's the beauty of it." *Id.* 1972:1-15. "Here, the court did not resolve the parties' instructing the jury that the claims should be given their plain and ordinary meaning." *Eon Corp.*, 815 F.3d at 1319. "This was legal error." *Id.*

Dr. Mitzenmacher's construction is not correct, and he should not have been permitted to present it to the jury. Dr. Mitzenmacher's assertion that he could point to matching criteria for content to be blocked "***for any reason***" does not interpret "malicious," but rather improperly reads the word "malicious" entirely out of the claim. *See Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) ("A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."). Nothing in the intrinsic record supports a plain and ordinary meaning of matching criteria associated with "malicious network traffic" to encompass blocking rules "***for any reason***." For example, the specification describes a "security policy management server" aggregating subscription information from a "malicious host tracker service" for "addresses that have been determined to be associated with malicious network traffic." JX-2 at 14:10-36. Dr. Mitzenmacher conceded that a rule blocking "Disney.com" for time wasting reasons is not the type of network address that would be provided by a "malicious host tracker service"—but it would be encompassed in his construction. Trial Tr. 996:2-25.

Further, Dr. Mitzenmacher's construction is contrary to the extrinsic evidence that the Court cited favorably in the *Markman* Order, namely definitions stating "can cause harm to a

computer" and "focus[ing] on the harm to the system." ECF No. 452 at 21.[15] Dr. Villasenor and

Mr. Zuk provided further evidence at trial as to the plain meaning of "malicious" that refuted Dr.

Mitzenmacher's "**for any reason**" formulation. Trial Tr. 1380:21-1381:5, 1305:2-9. Thus, at a

minimum, PAN is entitled to a new trial where the jury is instructed that matching criteria

associated with "malicious network traffic" cannot be met by matching criteria to block network

traffic "**for any reason**." *Eon Corp.*, 815 F.3d at 1320.[16]

---

[15] PAN respectfully maintains that its original construction was correct, but the Court need not revisit the "intent to" versus "can" dispute to determine that Dr. Mitzenmacher's construction is inconsistent with the Court's logic in the *Markman* order.

[16] In *Eon Corp.*, after determining that the district court erred by leaving the "question of claim scope … for the jury to decide," the Federal Circuit then evaluated whether remand for a new trial was necessary in view of the record already developed. 815 F.3d at 1320. The Court determined remand was not "necessary because, when the claim terms are properly construed, no reasonable jury could have found" infringement. *Id.* As explained in PAN's Rule 50(b) Motion, the same result is proper here. Specifically, Dr. Mitzenmacher originally mapped "one or more" rules to the rules within a "security policy," and relied on his improper claim construction to justify including rules such as a rule blocking Disney.com. Trial Tr. 921:14-21, 994:17-23. Under a correct claim construction, Dr. Mitzenmacher's mapping of "one or more" rules fails to meet the criteria that "**each** packet filtering rule" in the one or more rules "comprises at least one packet matching criterion associated with malicious network traffic." JX-2 at Cl. 8. Dr. Mitzenmacher also attempted to shift and argue that at least **some** of the rules in the security policy "block[] things that are known threats." Trial Tr. 997:3-9; 998:2-11, 1011:6-1012:6. But as the Court's summary judgment order expressed, Centripetal's justification for the separate "all network traffic" requirement rested upon defining the "one or more" rules as the entire security policy. ECF No. 702 at 5. Re-defining the "one or more" rules as only a subset of the security policy can no longer support infringement of the "all network traffic element." Thus, PAN is both entitled to a new trial on the '437 Patent and entitled to judgment because no reasonable jury could have found infringement under the proper construction.

Dated: February 28, 2024                Respectfully submitted,


                                        By:  /s/ Robert W. McFarland
                                        Robert W. McFarland (VSB No. 24021)
                                        **MCGUIREWOODS LLP**
                                        World Trade Center
                                        101 W. Main Street, Suite 9000
                                        Norfolk, Virginia 23510-1655
                                        Telephone: (757) 640-3716
                                        Facsimile: (757) 640-3966
                                        E-mail: rmcfarland@mcguirewoods.com

                                        Jonathan P. Harmon (VSB No. 39081)
                                        David E. Finkelson (VSB No. 44059)
                                        **MCGUIREWOODS LLP**
                                        Gateway Plaza
                                        800 East Canal Street
                                        Richmond, VA 23219-3916
                                        Telephone: (804) 775-1000
                                        Facsimile: (804) 775-1061
                                        E-mail: jharmon@mcguirewoods.com
                                        E-mail: dfinkelson@mcguirewoods.com

                                        Brett C. Govett (Admitted *Pro Hac Vice*)
                                        James S. Renard (Admitted *Pro Hac Vice*)
                                        **NORTON ROSE FULBRIGHT US LLP**
                                        2200 Ross Avenue, Suite 3600
                                        Dallas, Texas 75201
                                        Telephone: (214) 855-8000
                                        brett.govett@nortonrosefulbright.com
                                        james.renard@nortonrosefulbright.com

                                        Richard S. Zembek (Admitted *Pro Hac Vice*)
                                        Daniel S. Leventhal (Admitted *Pro Hac Vice*)
                                        Daniel A. Prati (Admitted *Pro Hac Vice*)
                                        **NORTON ROSE FULBRIGHT US LLP**
                                        1301 McKinney Street, Suite 5100
                                        Houston, Texas 77010
                                        Telephone: (713) 651-5151
                                        richard.zembek@nortonrosefulbright.com
                                        daniel.leventhal@nortonrosefulbright.com
                                        daniel.prati@nortonrosefulbright.com

                                        Stephanie N. DeBrow (Admitted *Pro Hac Vice*)
                                        Talbot R. Hansum (Admitted *Pro Hac Vice*)

**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
stephanie.debrow@nortonrosefulbright.com
talbot.hansum@nortonrosefulbright.com

Nathan Mannebach (Admitted Pro Hac Vice)
**NORTON ROSE FULBRIGHT US LLP**
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402-1114
Telephone: (612) 321-2800
nathan.mannebach@nortonrosefulbright.com

James R. Batchelder (Admitted *Pro Hac Vice*)
Andrew T. Radsch (Admitted *Pro Hac Vice*)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor East
Palo Alto, CA 94303
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com

Josef B. Schenker (Admitted *Pro Hac Vice*)
**ROPES & GRAY LLP**
1211 Avenue of the Americas
New York, NY 10036-8704
Telephone: (212) 596-9000
josef.schenker@ropesgray.com

***COUNSEL FOR PALO ALTO NETWORKS, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 28, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

By: */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
**MCGUIREWOODS LLP**
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com