**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-00137-EWH- LRL |
| | ) | |
| vs. | ) | |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**<u>DEFENDANT PALO ALTO NETWORKS, INC.'S OPPOSITION TO PLAINTIFF'S</u>**
**<u>MOTION FOR JUDGMENT AS A MATTER OF LAW</u>**
**<u>PURSUANT TO FED. R. CIV. P. 50(a)</u>**

**TABLE OF CONTENTS**

**Page**

I.   BACKGROUND ........................................................................................................ 1

II.  ARGUMENT ........................................................................................................... 3

    A.   Centripetal Waived any Challenge to the Jury's Verdict ........................................ 3

    B.   Substantial Evidence Supports the Jury's Verdict of No Willful Infringement for All Asserted Patents ........................................................................ 3

    C.   The Jury's Damages Award Is Not Supported by Legally Sufficient Evidence ....... 7

    D.   Substantial Evidence Supports the Jury's Finding that a Lump Sum Is the Appropriate Form of Any Royalty in This Case ........................................................ 8

    E.   Centripetal's Remaining Arguments Should Be Rejected for the Reasons Set Forth in PAN's Motions for JMOL .......................................................................... 9

III. CONCLUSION ........................................................................................................ 10

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**Cases**

*A Helping Hand, LLC v. Baltimore County, Md.*,
  515 F.3d 356 (4th Cir. 2008) ................................................................................................. 1, 3

*Adidas America, Inc., v. Skechers USA, Inc.*,
  No. 3:16-CV-1400, 2017 WL 2543811 (D. Or. June 12, 2017) ............................................ 6

*Alcon Research Ltd. v. Barr Laboratories, Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014) ............................................................................................ 10

*Gustafson, Inc. v. Intersys. Indus. Prods., Inc.*,
  897 F.2d 508 (Fed. Cir. 1990) ............................................................................................ 4, 6

*Moss v. Princip*,
  913 F.3d 508 (5th Cir. 2019) ................................................................................................. 3

*Nike, Inc. v. Wal-Mart Stores, Inc.*,
  138 F.3d 1437 (Fed. Cir. 1998) ............................................................................................. 4

*Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*,
  996 F.3d 354 (7th Cir. 2021) ................................................................................................. 3

*Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*,
  756 F. Supp. 2d 598 (D. Del. 2010) ..................................................................................... 10

*SRI Int'l, Inc. v. Cisco Sys., Inc.*,
  14 F.4th 1323 (Fed. Cir. 2021) .............................................................................................. 7

*State Indus., Inc. v. A.O. Smith Corp.*,
  751 F.2d 1226 (Fed. Cir. 1985) ............................................................................................. 4

*TecSec, Inc. v. Adobe Inc.*,
  No. 1:10-CV-115, 2019 WL 1233882 (E.D. Va. Mar. 14, 2019) .......................................... 6

*Triangle Software, LLC v. Garmin Int'l, Inc.*,
  No. 1:10-CV-1457, 2012 WL 527223 (E.D. Va. Feb. 14, 2012) ......................................... 10

*Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*,
  546 U.S. 394 (2006) ............................................................................................................... 3

*WBIP, LLC v. Kohler Co.*,
  829 F.3d 1317 (Fed. Cir. 2016) ............................................................................................. 4

**Statutes**

35 U.S.C. § 112......................................................................................................9, 10

**Other Authorities**

Fed. R. Civ. P. 50.........................................................................................................9

Fed. R. Civ. P. 50(a).....................................................................................................1

Fed. R. Civ. P. 50(b).....................................................................................................1

Plaintiff Centripetal Networks, LLC ("Centripetal") was required to file or renew any motions, including a Rule 50(b) motion for judgment as a matter of law, by February 28, 2024 in order to preserve any challenge to the jury's verdict. *See* ECF No. 858; *see also* Trial Tr. at 1989:3-4 (setting the deadline for "any motions to be filed or renewed"). Centripetal did not do so and thus, has waived the right to challenge any aspect of the verdict. *See, e.g.*, *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 369 (4th Cir. 2008) (a party that does not file a post-trial motion under Rule 50(b) cannot challenge any aspect of the verdict on appeal). As discussed below, however, Defendant Palo Alto Networks, Inc. ("PAN") learned in subsequent discussions with Centripetal that Centripetal believes that its pre-verdict Rule 50(a) motion is still pending. Therefore, out of an abundance of caution, PAN respectfully submits this opposition to Centripetal's Rule 50(a) motion. *See* ECF Nos. 841, 843. As explained below, to the extent that it is still pending, Centripetal's Rule 50(a) motion should be denied in its entirety, because PAN is entitled to judgment as a matter of law ("JMOL") of no infringement and no damages and because all asserted claims of the '903, '573, and '797 Patents (collectively, "Correlation Patents") are invalid, for at least the reasons set forth in PAN's motions for JMOL under Fed. R. Civ. P. 50(a) and 50(b) (*see* ECF Nos. 818, 820, 847, 849, 900, 902). Additionally, because substantial evidence supports the jury's verdict of no willfulness and the jury's determination that a lump sum is the appropriate form of any royalty, Centripetal's motion for JMOL as to those jury findings should be denied.

## I.     BACKGROUND

On January 27, 2024, at the close of Centripetal's case-in-chief, PAN moved for JMOL pursuant to Fed. R. Civ. P. 50(a). *See* ECF Nos. 818, 820. On January 31, 2024, after the close of evidence, PAN filed a renewed and additional motion for JMOL, and Centripetal filed its only motion for JMOL under Rule 50(a). *See* ECF Nos. 841, 843, 847, 849. The case was then submitted

to the jury, and the jury returned its verdict.

After the verdict, the Court ordered that "[t]he parties SHALL file all post-trial motions no later than February 28, 2024" and "SHALL file oppositions no later than March 27, 2024." ECF No. 858 (February 7, 2024) (emphasis in original).[1] As stated in its February 14, 2024 filing, PAN "understood the Court's Order, ECF No. 858, to supersede all deadlines regarding post-trial briefing, including any deadline to respond to JMOLs filed by the parties on January 31, 2024." ECF No. 885. Out of an abundance of caution, PAN also stated therein its opposition to Centripetal's Rule 50(a) motion "for at least the reasons stated in [PAN's] Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(a) (ECF 818) and [PAN's] Renewed and Additional Motion for Judgment as a Matter of Law Pursuant to Fed. R. Civ. P. 50(a) (ECF 847)" as well as in PAN's then-forthcoming Rule 50(b) motion.[2] *Id.*

On February 28, 2024, PAN filed a renewed motion for JMOL under Rule 50(b). *See* ECF Nos. 900-901. Centripetal, however, did not renew its motion for JMOL under Rule 50(b). In response, PAN asked Centripetal for its position on the arguments that it raised in its Rule 50(a) motion in two conferences on March 5, 2024 and on March 11, 2024. Centripetal indicated that it was not withdrawing any of the issues raised in its Rule 50(a) motion and that Centripetal believed that its Rule 50(a) motion was still pending. Therefore, out of an abundance of caution, PAN respectfully submits this opposition on the date for post-trial opposition briefs in the Court's February 7, 2024 Order.

---

[1] All emphasis added unless otherwise stated.
[2] To the extent that the Court decides that Centripetal's Rule 50(a) motion is still pending and is not subject to the Court's March 27, 2024 deadline for oppositions, PAN respectfully requests the Court's leave to file this opposition so that the Court may have a complete record in deciding the motion.

## II.    ARGUMENT

### A.    Centripetal Waived any Challenge to the Jury's Verdict

Pursuant to the Court's February 7, 2024 Order, the parties were required to file or renew all post-trial motions no later than February 28, 2024. *See* ECF No. 858. The Court stated that this deadline applied to all new and pending motions, including motions for judgment as a matter of law.[3] Trial Tr. at 1989:3-6 ("We'll set a schedule of 28 days for any motions to be filed or renewed."). Centripetal's failure to renew its motion for JMOL prior to this deadline precludes any challenge to the jury's verdict. *Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc.*, 546 U.S. 394, 404 (2006) ("Accordingly, these outcomes merely underscore our holding today—a party is not entitled to pursue a new trial on appeal unless that party makes an appropriate postverdict motion in the district court."); *A Helping Hand, LLC v. Baltimore County, Md.*, 515 F.3d 356, 369 (4th Cir. 2008) ("The Supreme Court has held time and again that 'a party's failure to file a post-verdict motion under Rule 50(b)' leaves an appellate court 'without power to direct the District Court to enter judgment contrary to the one it had permitted to stand.'").[4]

### B.    Substantial Evidence Supports the Jury's Verdict of No Willful Infringement for All Asserted Patents

Centripetal has identified no basis for overturning the jury's finding of no willful

---

[3] Although Federal Rule of Civil Procedure 50(b) sets the deadline as 28 days from entry of judgment, the Court's Order modified that deadline. ECF No. 858 ("Dates that may be set by the Local Rules for the Eastern District of Virginia or the Federal Rules of Civil Procedure are superseded by this Order.").

[4] *See also, e.g.*, *Rexing Quality Eggs v. Rembrandt Enterprises, Inc.*, 996 F.3d 354, 369 (7th Cir. 2021) ("Rexing made a Rule 50(a) motion challenging the sufficiency of the evidence on the ground that there was 'no credible evidence' that the eggs resold by Rembrandt met the case-weight requirement set forth in the Purchase Agreement. However, it did not file a postverdict motion challenging the jury's verdict on this or any other basis. Its failure to do so is fatal to its argument concerning the case-weight challenge."); *Moss v. Princip*, 913 F.3d 508, 522 (5th Cir. 2019) (holding that a party waives the right to challenge sufficiency of evidence on appeal when it fails to file a post-verdict Rule 50(b) motion in district court).

infringement. Centripetal, instead, erroneously contends that "[k]nowledge of the specific asserted patent is not require[d] to support a finding of willful infringement." ECF No. 843 at 12. But Centripetal cites only a single, non-binding decision as support for that assertion. *Id.* at 12-13. All binding precedent hold that willfulness required knowledge ***of the patents-in-suit***. *See, e.g.*, *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016) ("Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages."); *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe a patent, the patent must exist and one must have knowledge of it."); *Gustafson, Inc. v. Intersys. Indus. Prods., Inc.*, 897 F.2d 508, 511 (Fed. Cir. 1990) ("[A] party cannot be found to have 'willfully' infringed a patent of which the party had no knowledge."). Centripetal's motion thus fails because it is based on a faulty legal premise.

Centripetal's evidentiary arguments are without merit. ***First***, Centripetal asserts it "showed that it marks its products upon issuance of the patents." ECF No. 843 at 13. But evidence of marking is legally insufficient to overturn a jury finding of no willfulness. *Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998) (explaining "the issue of willfulness turns on the actual knowledge of the infringer, and is unrelated to the adequacy of constructive notice by the patentee" via product marking). Notably, Centripetal presented ***no evidence*** that any PAN employee visited the portion of Centripetal's website listing its patents.[5] In addition, the first Asserted Patent did not issue until January 2020, and Centripetal provided no evidence that the Asserted Patents were listed on Centripetal's website before the March 2021 Complaint. Trial Tr. at 341:2-20 (Jonathan Rogers testifying merely that the website is updated "after . . . patents

---

[5] And as J. Rogers further acknowledged, getting to the patent listing on Centripetal's website is not intuitive or straightforward. Trial Tr. at 402:2-15.

issue"). Moreover, Centripetal was unable to provide any specific timeframe in which the label on Centripetal's products was updated to include the Asserted Patents. Trial Tr. at 339:18-341:20, 398:23-401:15. Further, Centripetal presented no evidence to suggest that PAN ever saw or had access to a Centripetal product that was marked with the Asserted Patents. Thus, Centripetal's purported marking evidence is insufficient to overturn the jury's finding of no willfulness.

**Second,** Centripetal contends that PAN "knew of the assertion of infringement" based on the parties' pre-suit interactions. *See* ECF No. 843 at 13. But there is no evidence in the trial record that the parties' limited 2016-2017 interactions included any reference to any Centripetal patent or "patented technology," much less any of the Asserted Patents, nor could they have given such communications took place **more than two years before** any Asserted Patent issued. *See* ECF No. 820 at 1-2; *see also* Trial Tr. at 356:1-5 (Centripetal "provided material that was given to Palo Alto, and [then] scheduled a meeting that occurred between a member of [Centripetal's] team and Palo Alto"); *id.* at 353:22-354:2 ("Centripetal [met] with Palo Alto"); *id.* at 357:19-21 (material purportedly given to PAN was "[a] teaser document and a technical presentation," neither of which was introduced into evidence); *id.* at 357:25-360:20, 1212:14-16 (testimony as to an email exchange between Centripetal and PAN during 2017 (PX-944) in which the parties discussed a PAN product that is not accused in this case, called MineMeld).[6] To the contrary, the testimony of Mr. Steven Rogers—the only witness with personal knowledge of those interactions—confirms that the pre-trial communications **did not** relate to any Centripetal patents or patented technology. *See* Trial Tr. at 1566:8-11 (referencing Steven Rogers deposition testimony played to the jury); ECF No. 860-1 at 74 (transcript of Steven Rogers' deposition testimony played to the jury); *see*

---

[6] *See also* Trial Tr. at 381:20-388:17 (Mr. Rogers conceding that the parties 2016-2017 interactions were limited to two phone calls and some emails, the substance of which Mr. Rogers had no personal knowledge).

*also* Trial Tr. at 1270:6-10 (Nir Zuk testifying that PAN had no pre-suit knowledge of the Asserted Patents). Thus, this evidence has no connection to the Asserted Patents—or any Centripetal patent, for that matter—and the fact that these interactions occurred before the issuance of any Asserted Patent renders them legally insufficient to support a finding that PAN had pre-suit knowledge of any Asserted Patent. *See, e.g., Adidas America, Inc., v. Skechers USA, Inc.*, No. 3:16-CV-1400, 2017 WL 2543811, *4 (D. Or. June 12, 2017) (alleged infringer could not, "[a]s a matter of law" acquire knowledge of the patents before their issuance).

**Third**, Centripetal asserts that it presented several other categories of purported evidence, but the cited testimony and exhibits fail to show any connection between PAN and the Asserted Patents. For example, Centripetal asserts that Jonathan Rogers "testified about [PAN's] knowledge of Centripetal's related patents" and "prior litigation against PAN's competitor." ECF No. 843 at 13. But Mr. Rogers's testimony did not address "related patents," and the Court has already held that, "without some connection to PAN and the Asserted Patents," the existence of prior litigation against another company is "too speculative to permit an inference of knowledge." *See* ECF No. 702 at 19. Similarly, Centripetal points to Jonathan Rogers' testimony concerning "Centripetal's licensing policies" and "Centripetal's competition," none of which bears any connection to PAN or the Asserted Patents. ECF No. 843 at 13.

**Lastly**, Centripetal presented no evidence or testimony suggesting that PAN acted with a specific intent to infringe, either pre- or post-suit. Rather, the intent element of Centripetal's willfulness claim appears to rest on the fact that PAN did not alter the Accused Products after this suit was filed. But "a party may continue to manufacture and may present what in good faith it believes to be a legitimate defense without risk of being found on that basis alone a willful infringer." *Gustafson*, 897 F.2d at 511; *see also TecSec, Inc. v. Adobe Inc.*, No. 1:10-CV-115, 2019

WL 1233882, at *2 (E.D. Va. Mar. 14, 2019) ("[C]ontinued sale of the infringing product without removing its infringing capability is merely typical infringement behavior that is not a proper basis for enhanced damages."). As Mr. Zuk testified, Mr. Zuk and PAN engineers reviewed the Asserted Patents after the lawsuit was filed and determined that PAN did not infringe any claim of the Asserted Patents. Trial Tr. at 1270:11-19. Accordingly, Centripetal's motion for JMOL as to willfulness should be denied. *See SRI Int'l, Inc. v. Cisco Sys., Inc.*, 14 F.4th 1323, 1330 (Fed. Cir. 2021) (willfulness requires evidence of "deliberate or intentional infringement").

### C.     The Jury's Damages Award Is Not Supported by Legally Sufficient Evidence

As explained in PAN's renewed motion for JMOL, PAN is entitled to judgment as a matter of law of no damages because the jury's $151.5 million damages award is not supported by substantial evidence. *See* ECF No. 902 at 26-30. Centripetal failed to carry its burden of establishing a reasonable royalty in at least two ways, each of which independently warrants JMOL of no damages. *First*, Centripetal's damages model rests on a single prior agreement—Centripetal's 2018 settlement agreement with Keysight Technologies, Inc. ("Keysight Settlement") resolving infringement claims for patents not asserted here[7]—and Centripetal failed to demonstrate that agreement is sufficiently comparable to serve as the sole support for a reasonable royalty in this case. *See id.* at 27-28. *Second*, Centripetal failed to present legally sufficient evidence apportioning value of the patented inventions from the numerous unpatented features of the Accused Products. *See id.* at 28-30. The Court therefore should deny Centripetal's motion for JMOL for at least the reasons set forth in PAN's renewed JMOL pursuant to Fed. R. Civ. P. 50(b). *See id.* at 26-30.

---

[7] Trial Tr. at 1167:18-21 (Malackowski agreeing that Centripetal's damages model rests on the Keysight Settlement).

**D. Substantial Evidence Supports the Jury's Finding that a Lump Sum Is the Appropriate Form of Any Royalty in This Case**

To the extent Centripetal's JMOL can be read as separately challenging the jury's finding that a lump sum is the appropriate form of royalty, if any, that finding is supported by substantial evidence.

PAN's damages expert, Christopher Bakewell, testified that the appropriate form of any royalty in this case would be a lump sum. Trial Tr. at 1692:5-8 ("Well, we know, from looking at everything now, the lump sum is the form that applies in this case, that's what the evidence shows."). Mr. Bakewell identified numerous facts supporting his opinion. For example, Mr. Bakewell testified that each Centripetal and PAN patent purchase or license agreement that the parties relied on for comparability involved lump sum payments. *Id.* at 1680:7-1681:5; 1693:3-16; 1694:1-8 (explaining that the Keysight License was a bounded royalty, the Great Wall agreement was a capped lump sum, and the PAN patent purchase agreements were all lump sum agreements); *see also* Trial Exs. DX288, DX289, DX290, DX291, DX393, DX394, PX589. Mr. Bakewell also testified that a lump sum is the preferred form of royalty in the cybersecurity field and like industries. Trial Tr. at 1695:1-6. He explained that in such industries, parties enter lump sum agreements because the technology changes rapidly, the products are complicated, and it is often difficult for parties to determine whether or not they use the technology. *Id.* at 1695:2-6. Finally, Mr. Bakewell testified as to conversations he had with PAN's founder, Nir Zuk, and PAN's former in-house counsel, Michael Ritter, who confirmed that the cybersecurity industry favors lump sum agreements to limit ongoing disputes with patent licensors. *Id.* at 1690:18-21.

The jury's finding is also supported by Mr. Ritter's testimony that the inclusion of a running royalty was a deal breaker for PAN in patent license negotiations. Trial Tr. at 1636:1-5 (referencing Mr. Ritter's testimony played to the jury); *id.* at 1695:14-22 (Mr. Bakewell testifying

as to his reliance on Mr. Ritter's testimony); ECF No. 860-1 at 98-99 (transcript of Mr. Ritter's testimony). Mr. Ritter explained that PAN had not entered into a single patent purchase or patent license agreement during his tenure for which the payment term was a running royalty. Trial Tr. at 1636:1-5; ECF No. 860-1 at 99.

Centripetal's only apparent challenge to the form of royalty is that Mr. Ritter purportedly was "not knowledgeable regarding PAN's licensing preferences at the hypothetical negotiation." ECF No. 843 at 17-18. But Centripetal offers no evidence in support of this contention, much less even addresses the other record evidence supporting a lump sum, noting only that Mr. Ritter left PAN in 2017. *Id.* There is zero evidence of record that PAN's licensing practices changed in the less than three years between Mr. Ritter's retirement and the date of the hypothetical negotiation. And Centripetal offered no evidence that PAN had ever entered into an uncapped running royalty patent license or assignment agreement. Trial Tr. at 1694:15-21 (Mr. Bakewell testifying that he had not seen any instance of PAN agreeing to a running royalty); *id.* at 1199:20-23 (Mr. Malackowski testifying that he had not seen any PAN licenses in which PAN agreed to a running royalty).

Thus, the jury's finding that any royalty should take the form of a lump sum is supported by substantial evidence.

### E.    Centripetal's Remaining Arguments Should Be Rejected for the Reasons Set Forth in PAN's Motions for JMOL

Centripetal contends that it is entitled to JMOL as to validity of the Correlation Patents and as to infringement of all Asserted Patents. ECF No. 843 at 2-12. The jury found in Centripetal's favor on these issues, mooting Centripetal's motion.[8] *See* Fed. R. Civ. P. 50 Advisory Committee's

---

[8] Centripetal also moves for judgment as a matter of law that the '437 Patent is valid. ECF No. 843 at 1-2. Because PAN withdrew its challenge to the validity of the '437 Patent under 35 U.S.C.

Note (1991) ("[A] jury verdict for the moving party 'moots the issue'" raised in a motion for judgment as a matter of law); *see also Triangle Software, LLC v. Garmin Int'l, Inc.*, No. 1:10-CV-1457, 2012 WL 527223, at *3 (E.D. Va. Feb. 14, 2012) (finding that a party's motion for judgment as a matter of law of no damages was "mooted by the fact of the jury's non-infringement findings"); *Roche Diagnostics Operations, Inc. v. Abbott Diabetes Care*, 756 F. Supp. 2d 598, 600 (D. Del. 2010) ("The jury has returned a verdict in favor of [plaintiff], and therefore, as [plaintiff] acknowledges, its Motion for Judgment As A Matter Of Law is moot."). Moreover, as explained in PAN's renewed JMOL motion, which is incorporated herein by reference, the jury's findings on these issues are not supported by substantial evidence. *See* ECF No. 901 at 10-26. Centripetal's motion for JMOL should thus be denied as to these issues.

## III.   CONCLUSION

For the foregoing reasons, PAN respectfully requests that the Court deny Centripetal's Rule 50(a) Motion for Judgment as a Matter of Law.

---

§ 112 to streamline issues for trial, however, the issue of the validity of the '437 Patent under 35 U.S.C. § 112, much less any other section of the Patent Act, was not an open issue for the Court or jury to decide. Centripetal's motion, therefore, should be denied with respect to this issue. *Alcon Research Ltd. v. Barr Laboratories, Inc.*, 745 F.3d 1180, 1193 (Fed. Cir. 2014) (judgment as a matter of law should be limited to issues that were "litigated, or fairly placed in issue, during the trial").

Dated: March 27, 2024            Respectfully submitted,

By: */s/ Robert W. McFarland*

Robert W. McFarland (VSB No. 24021)
**MCGUIREWOODS LLP**
World Trade Center
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com

Jonathan P. Harmon (VSB No. 39081)
David E. Finkelson (VSB No. 44059)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
E-mail: jharmon@mcguirewoods.com
E-mail: dfinkelson@mcguirewoods.com

Brett C. Govett (Admitted *Pro Hac Vice*)
James S. Renard (Admitted *Pro Hac Vice*)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
james.renard@nortonrosefulbright.com

Richard S. Zembek (Admitted *Pro Hac Vice*)
Daniel S. Leventhal (Admitted *Pro Hac Vice*)
Daniel A. Prati (Admitted *Pro Hac Vice*)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
richard.zembek@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
daniel.prati@nortonrosefulbright.com

Stephanie N. DeBrow (Admitted *Pro Hac Vice*)
Talbot R. Hansum (Admitted *Pro Hac Vice*)

- 11 -

**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
stephanie.debrow@nortonrosefulbright.com
talbot.hansum@nortonrosefulbright.com

Nathan Mannebach (Admitted Pro Hac Vice)
**NORTON ROSE FULBRIGHT US LLP**
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402-1114
Telephone: (612) 321-2800
nathan.mannebach@nortonrosefulbright.com

James R. Batchelder (Admitted *Pro Hac Vice*)
Andrew T. Radsch (Admitted *Pro Hac Vice*)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor East
Palo Alto, CA 94303
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com

***COUNSEL FOR PALO ALTO NETWORKS, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 27, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

By: */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
**MCGUIREWOODS LLP**
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com