**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

CENTRIPETAL NETWORKS, LLC,    )
    )
          Plaintiff,    )  No. 2:21-cv-00137-EWH-LRL
    )
        v.    )
    )
PALO ALTO NETWORKS, INC.,    )
    )
          Defendant.    )
_____  )

**PLAINTIFF CENTRIPETAL NETWORKS, LLC'S
MEMORANDUM IN SUPPORT OF ITS MOTION FOR
<u>ATTORNEYS' FEES AND NONTAXABLE COSTS</u>**

## TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................. 1

II.   BACKGROUND ................................................................................. 2

    A.   PAN's Conduct Relating to its Anticipation, Obviousness, and Eligibility Defenses Justifies a Limited Fee Award ................................................. 2

    B.   PAN's Conduct Justifying Deeming This Case Exceptional Permeated the Litigation ............................................................................................. 5

III.  ARGUMENT ...................................................................................... 6

    A.   PAN Deployed a Strategy of Gamesmanship Regarding Validity Following Its Unsuccessful IPRs and PGR, Continuing to Advance Knowingly Weak Positions ............................................................................................. 7

        1.   PAN Withdrew Its Baseless Prior Anticipation and Obviousness Defenses Regarding the Correlation Patents Just Before Trial, after Wasting the Court's Time and Centripetal's Resources .................. 7

        2.   PAN's Prior Art Invalidity Positions Were Baseless, Particularly Given the PTAB Rejected Such Position Under a Lower Burden of Proof ............................................................................................ 9

            a)   PAN's prior art challenges to the '903 Patent were egregious. .... 11

            b)   PAN's continued reliance on the same art and arguments rejected by the PTAB to challenge the '573 and '797 Patents was an objectively weak position and without merit. .................. 12

        3.   PAN Repackaged the Same Meritless Prior Art to Present as a Section 101 Defense to the Jury .............................................................. 16

        4.   PAN's Post-Trial Motions Regarding Its Section 101 Defense Were Baseless and Contradicted Its Pre-Trial Positions .................................... 17

    B.   PAN Unreasonably Obstructed Centripetal's Efforts to Obtain Discovery Regarding Infringement and Damages .............................................. 20

    C.   PAN's Trial Misconduct Needlessly Wasted the Time of the Jury, the Court and Centripetal ............................................................................. 22

    D.   PAN's Rehashing of Decided Issues Regarding Damages Further Renders this Case Exceptional ................................................................. 23

i

IV.     CENTRIPETAL'S REQUESTED FEES ARE REASONABLE ..................................... 25

V.      CONCLUSION ............................................................................................................ 27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice. Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    134 S.Ct. 2347 (2014)..........................................................................16

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
    573 U.S. 208 (2014).........................................................................4, 5

*Bayer Cropscience AG v. Dow Agrosciences LLC*,
    No. 12-256 (RMB/JS), 2015 WL 1197436 (D. Del. Mar. 13, 2015)....................25

*Cal. Inst. of Tech. v. Broadcom Ltd.*,
    25 F.4th 976 (Fed. Cir. 2022), *cert. denied sub nom. Apple Inc. v. Cal. Inst. of Tech.*, 143 S. Ct. 2658 (2023)..............................................................12

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
    No. 2:15cv21, 2017 WL 2605977 (E.D. Va. June 5, 2017).......................11

*Cognex Corp. v. Microscan Sys., Inc.*,
    No. 13-CV-2027 JSR, 2014 WL 2989975 (S.D.N.Y. June 30, 2014).........15, 20, 25

*Dolby Labs., Inc. v. Lucent Techs., Inc.*,
    No. C 01-20709 JF, 2006 WL 1320475 (N.D. Cal. May 15, 2006) .....................26

*Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*,
    279 F.3d 1022 (Fed. Cir. 2002)...............................................................6

*Fleming v. Escort, Inc.*,
    No. 1:09-cv-105-BLW, 2014 WL 713532 (D. Idaho Feb. 21, 2014)....................22

*Goodyear Tire & Rubber Co. v. Haeger*,
    581 U.S. 101 (2017)..........................................................................26

*Intex Recreation Corp. v. Team Worldwide Corp.*,
    77 F. Supp. 3d 212 (D.C. 2015)..............................................................25

*MarcTec, LLC v. Johnson & Johnson*,
    664 F.3d 907 (Fed. Cir. 2012).................................................................6

*Mathis v. Spears*,
    857 F.2d 749 (Fed. Cir. 1988)............................................................16, 26

*Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*,
    132 S.Ct. 1289 (2012).........................................................................16

*Microsoft Corp. v. i4i Ltd. P'ship*,
    564 U.S. 91 (2011)...................................................................................................11

*Milwaukee Elec. Tool Corp. v. Snap-On, Inc.*,
    271 F. Supp. 3d 990 (E.D. Wis. 2017)...................................................................12

*NTP Inc.* v. *Rsch. in Motion, Ltd.*,
    270 F. Supp. 2d 751 (E.D. Va. 2003),
    *amended*, 2003 WL 22746080 (E.D. Va. Aug. 5, 2003) ........................................22

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014).........................................................................................6, 7

*Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*,
    No. 13-2072 (KAJ), 2017 WL 1045912 (D. Del. Feb. 22, 2017)...........................12

*Procter & Gamble Co. v. Team Techs., Inc.*,
    No. 1:12-cv-552, 2014 WL 12656554 (S.D. Ohio July 3, 2014) ...........................13

*In re Rembrandt Techs. LP Pat. Litig.*,
    899 F.3d 1254 (Fed. Cir. 2018)..........................................................................6, 26

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
    707 F. Supp. 2d 737 (N.D. Ohio 2010)......................................................8, 15, 19

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996)....................................................................................7

*Shipping & Transit, LLC* v. *Hall Enters., Inc.*,
    No. 16-06535-AG-AFM, 2017 WL 3485782 (C.D. Cal. July 5, 2017).................25

*Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*,
    549 F.3d 1381 (Fed. Cir. 2008)...............................................................................26

*Tinnus Enters., LLC v. Telebrands Corp.*,
    369 F. Supp. 3d 704 (E.D. Tex. 2019)..............................................................22, 24

*Trs. of Columbia Univ. in City of New York v. Gen Digit. Inc.*,
    No. 3:13-cv-808, 2023 WL 8698906 (E.D. Va. Sept. 30, 2023) ............................23

*Trs. of Columbia Univ. in City of New York v. Gen Digital Inc.*,
    No. 3:13cv808, 2023 WL 8699435 (E.D. Va. Sept. 30, 2023).........................20, 24

*Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*,
    No. 3:13cv808, Dkt. No. 1238, Order (E.D. Va. June 3, 2022).............................25

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
    432 F. Supp. 3d 448 (D. Del. 2020).....................................................................9, 12

**Statutes**

35 U.S.C. § 101 ................................................................................................ *passim*

35 U.S.C. § 102 ....................................................................................................1, 8

35 U.S.C. § 103 ....................................................................................................1, 8

35 U.S.C. § 285 ..................................................................................................6, 25

35 U.S.C. § 315(e)(2) .........................................................................................9, 11

**Other Authorities**

37 C.F.R. § 42.15(a) ..............................................................................................11

Fed. R. Civ . P. Rule 12(c) .....................................................................................19

Fed. R. Civ . P. Rule 26(a)(1) .................................................................................20

Fed. R. Civ . P. Rule 50(a) .....................................................................................24

Fed. R. Civ . P. Rule 50(b) .....................................................................................24

Fed. R. Civ . P. 54(d)(2)(B) ...................................................................................26

Fed. R. Civ. P. 54(d)(2)(C) ...................................................................................26

MPEP § 2128 (Rev.07.2022, Feb. 2023) .............................................................9, 10

## I.      INTRODUCTION

Centripetal Networks, LLC ("Centripetal") respectfully requests that the Court award fees and costs that Centripetal incurred in defending against Palo Alto Network's ("PAN's") unreasonable invalidity and eligibility challenges to U.S. Patent No. 10,530,903 ("the '903 Patent"), U.S. Patent No. 10,659,573 ("the '573 Patent"), and U.S. Patent No. 10,931,797 ("the '797 Patent") (collectively, the "Correlation Patents"), that the jury determined PAN infringed. PAN's strategic deployment of gamesmanship throughout the case, particularly as to its invalidity and patent eligibility defenses, and discovery and trial conduct make this an exceptional case for which PAN should be ordered to pay a portion of Centripetal's attorneys fees and costs.  PAN persisted in knowingly advancing weak invalidity defenses based on the same prior art or arguments that the Patent Trial and Appeal Board ("PTAB") rejected for all three Correlation Patents, forcing Centripetal to incur unnecessary attorneys' fees and expert costs throughout the case, including expert reports, depositions and motion practice. Furthermore, PAN pursued an invalidity defense based on references that PAN admits were not prior art and to which estoppel applied.  Ultimately, PAN dropped these prior art defenses just before trial and instead turned to an unsupportable patent eligibility defense in an attempt to escape liability for its infringement.

Separately, PAN also unjustifiably obstructed discovery infringement and damages, continuously recycled unsuccessful arguments that were already ruled upon before and during trial, and presented a completely irrelevant witness at trial that wasted the Court's and jury's time.  While PAN's conduct at issue throughout the case justifies the request for deeming this case exceptional, Centripetal only seeks a portion of its fees and costs focused on litigating PAN's unreasonable anticipation, obviousness, and patent eligibility challenges pursuant to 35 U.S.C. §§ 102, 103, and 101, respectively, to the Correlation Patents.

1

## II.     BACKGROUND

More than two and a half years after Centripetal filed this lawsuit against PAN on March

12, 2021, a jury determined that PAN infringed four Centripetal patents.  Dkt. No. 851 (jury

verdict).  The jury also found that the three Correlation Patents were patent eligible.  *Id*.  The

Court ultimately confirmed infringement of the Correlation Patents, and reduced the damages

award to $113,625,000.  Dkt. No. 972 (Final Judgment).

### A.     PAN's Conduct Relating to its Anticipation, Obviousness, and Eligibility Defenses Justifies a Limited Fee Award

Within five months after Centripetal brought this case, PAN submitted requests to the

PTAB to review all three Correlation Patents, among others, and sought to stay the litigation

while its requests were pending.  Dkt. No. 68 (PAN's Motion to Stay Pending IPR) at 1 (PAN

"plans to file petitions on all claims of [all Asserted Patents]"); Dkt. No. 90 (PAN's Reply in

Support of Motion to Stay Pending IPR) at 7-8.  The Court granted PAN's request for a stay of

the litigation on March 1, 2022, pending *inter partes* review ("IPR") of Centripetal's '903 and

'573 Patents and post-grant review ("PGR") of the '797 Patent.  Dkt. No. 285.

PAN's requests for PTAB review of the Correlation Patents were based on the alleged

prior art references of Paxton, Sutton, Ivershen, Deschenes and/or McDonald.  Dkt. No. 464

(Centripetal's Summary Judgment Motion) at Undisputed Facts 4, 27, 38; Dkt. No. 523 (PAN's

Summary Judgment Opposition) at 3-5 (identifying those facts as undisputed).  During the 14

month stay of the litigation, the PTAB reconfirmed the validity of Centripetal's Correlation

Patents.  In particular, after instituting an IPR on the '903 Patent, the PTAB ultimately

determined that it was valid over the asserted prior art, which included the Paxton, Sutton, and

Ivershen references.  Dkt. No. 464 at Undisputed Facts 6, 7; Dkt. No. 523 at 3 (PAN's Summary

Judgment Opposition identifying those facts as undisputed).  The PTAB found that the

"responsive to the correlating: generate an indication of the first host; and transmit the indication of the first host" element of Claim 10 of the '903 Patent was not disclosed in Paxton, Sutton, and Ivershen. *See* Dkt. No. 464 at 41; Dkt. No. 465-5 ('903 Final Written Decision) at 23-27.

For the '573 and '797 Patents, the PTAB denied PAN's requests for IPR or PGR, determining that PAN failed to demonstrate a reasonable likelihood of successfully invalidating the patent claims.[1] Dkt. No. 464 at Undisputed Facts 28, 39; Dkt. No. 523 at 4-5 (PAN's Summary Judgment Opposition identifying those facts as undisputed); Dkt. No. 465-13 (Decision Denying IPR Institution of '573 Patent) at 22-27; Dkt. No. 465-11 (Decision Denying IPR Institution of '797 Patent) at 14-19. Specifically, the PTAB found the combination of Paxton and Sutton in view of Deschenes failed to teach the "responsive to the correlating . . . generate . . . one or more rules" element of Claims 1 and 9 of the '573 Patent under the PTAB's reasonable likelihood of success burden of proof. *See* Dkt. No. 464 at 41; Dkt. No. 465-13 (Decision Denying IPR Institution of '573 Patent) at 22-27. Similarly, for the '797 Patent, the PTAB found that Paxton in view of Sutton failed to disclose the requirement to "generate, based on the determined correlation, one or more rules configured to identify packets received from the first host; and provision a packet-filtering device with the one or more rules" of Claim 12 of the '797 Patent. *See* Dkt. No. 464 at 41; Dkt. No. 465-11 (Decision Denying IPR Institution of '797 Patent) at 14-19.

Notwithstanding these PTAB determinations and PAN's promises that the stay pending the PTAB proceedings would "prevent duplicative litigation of the invalidity issues raised in the IPR petitions," PAN still asserted in the litigation up until trial, albeit in different combinations,

---

[1] PAN also attempted to reverse the PTAB's findings by seeking mandamus relief, which was unsuccessful. *See* Dkt. No. 311 (PAN's Opp. to First Motion to Lift Stay) at 2 n.1; Dkt. No. 329 (PAN's Opp. to Second Motion to Lift Stay) at 3-10.

the Paxton and Sutton references against the '797 and '573 Patents, along with other references, including Deschenes.  Dkt. No. 90 (PAN's Reply to its Motion to Stay) at 15.  As Centripetal predicted in opposing PAN's request to stay the litigation, the absence of a stipulation from PAN agreeing that all anticipation and obviousness claims would be resolved by the PTAB proceedings resulted in PAN launching additional and duplicative anticipation and obviousness challenges.  Dkt. No. 84 (Centripetal's Opposition to Motion to Stay) at 14.  As a result, Centripetal had to spend significant resources in defending against PAN's assertions of anticipation and obviousness based on alleged prior art that it knew was not meritorious up until pretrial, thereby eliminating any purported streamlining with respect to the Collaboration Patents resulting from the 14-month stay.

After forcing Centripetal to defend against PAN's numerous anticipation and obviousness claims for the Correlation Patents, PAN elected to only present at trial its flawed patent eligibility defense, which was a fragmented and repackaged version of its meritless anticipation and obviousness claims.  PAN dropped these anticipation and obviousness claims less than a week before trial began, but only after forcing Centripetal to engage in expert reports, expert depositions, summary judgment briefing and a hearing.

With respect to PAN's patent eligibility defense, the jury was asked to decide the factual question underlying Step Two of the two-step inquiry for evaluating 35 U.S.C. § 101 patent eligibility set forth in *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 217-18 (2014) and found that PAN failed to demonstrate that the asserted claims of the Correlation Patents were well-understood, routine and conventional pursuant to Step Two.  Dkt. No. 851 at 7.  Further, following trial, the Court specifically held that the Correlation Patents are not directed to an

abstract idea at Step One of *Alice* either, and that they are thus, patent eligible.  Dkt. No. 972;

Dkt. No. 970 (Order on JMOL) at 6-9.

**B.      PAN's Conduct Justifying Deeming This Case Exceptional Permeated the Litigation**

There are five categories of conduct that render this case exceptional:

1.      After the PTAB found that PAN's best prior art either did not invalidate the Correlation Patents or warrant institution of an IPR or PGR, PAN thereafter knowingly continued to assert the same or cumulative prior art which it knew was weak for its anticipation and obviousness defenses, forcing Centripetal to unnecessarily spend significant resources defending against them.  Section III.A.1-2, *infra*.

2.      At trial, PAN's only attempt to knock out the Correlation Patents entirely was its Section 101 patent eligibility defense, which relied exclusively on the "word-matching" testimony of its expert witness and alleged prior art references already rejected by the PTAB. Further, after the jury decided against PAN with respect to patent eligibility, PAN contradicted its pretrial position regarding trying Step Two to the jury in trying to get a new bench trial, forcing the Court to decide settled issues in the case multiple times.  Section III.A.3-4, *infra*.

3.      PAN refused to put seven of its employee fact witnesses up for deposition during the discovery period without justification, forcing Centripetal into motion practice to get discovery into PAN's infringement and damages. Once the Court ordered the depositions, PAN refused to extend discovery to complete them despite only five business days remaining in discovery and five other depositions scheduled to occur during that time.  PAN further forced Centripetal into expedited motion practice to secure an extension of less than a week for opening expert reports to accommodate the late depositions in the week before opening reports were due.  Section III.C, *infra*.

4.      During trial, PAN's counsel wasted the jurors' and Court's time presenting a PAN witness whose testimony admittedly had no relevance to any issues in the case.  Section III.D, *infra*.

5.      PAN also wasted the Court's time as it continuously rehashed issues that were already settled, forcing the Court to decide the same damages-related issues multiple times.  Section III.E, *infra*.

While no single category of conduct may amount to an exceptional case or sanctionable

conduct on its own, the totality of the circumstances leads to the conclusion that this case stands

out from the rest due to the games PAN played throughout the litigation, particularly when viewed in light of PAN's trial presentation.  Notwithstanding PAN's discovery obstruction and trial presentation discussed in further detail in this Motion to demonstrate the overall exceptional nature of this case, Centripetal only seeks attorneys' fees and costs focused on defending against PAN's anticipation, obviousness, and patent eligibility defenses as to the Correlation Patents.  *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1279 (Fed. Cir. 2018) ("the amount of the award must bear some relation to the extent of the misconduct") (citation omitted).

## III.    ARGUMENT

As the prevailing party, Centripetal is entitled to attorneys' fees because this case is exceptional under 35 U.S.C. § 285.  This case stands out from others as exceptional given the unreasonable manner in which PAN litigated the case and the substantive strength of PAN's litigating position as to the validity of the infringed Correlation Patents, for which Centripetal was awarded $113,625,000 in a final judgment entered against PAN.  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).  While there is "no precise rule or formula" for making an exceptional case determination, courts may look to a "nonexclusive" list of factors, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 1756, n.6.  In addition, "[l]itigation misconduct and unprofessional behavior are relevant to the award of attorney fees, and may suffice, by themselves, to make a case exceptional."  *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002) (citation omitted); *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 919 (Fed. Cir. 2012) ("Indeed, it is well-established that litigation misconduct and unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285.") (citation and internal quotations omitted).

Considering the totality of the circumstances, PAN pursued objectively unreasonable invalidity and patent eligibility positions regarding the Correlation Patents and engaged in obstructionist litigation misconduct intended to prevent Centripetal from obtaining relevant discovery regarding infringement, both of which increased associated burdens to both Centripetal and the Court, as well as increased costs to Centripetal.  *See Octane*, 134 S. Ct. at 1756 n.6.  "It is the judicial duty to refuse to condone behavior that exceeds reasonable litigation tactics." *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1575 (Fed. Cir. 1996).  Further, PAN's conduct at trial was improper, wasting the Court's and jury's time, which further supports an exceptionality finding.  Thus, Centripetal seeks its attorneys' fees and nontaxable costs focused on defending against PAN's unreasonable positions and tactics as to the alleged anticipation, obviousness, and patent ineligibility of the Correlation Patents.

### A. PAN Deployed a Strategy of Gamesmanship Regarding Validity Following Its Unsuccessful IPRs and PGR, Continuing to Advance Knowingly Weak Positions

#### 1. PAN Withdrew Its Baseless Prior Art Anticipation and Obviousness Defenses Regarding the Correlation Patents Just Before Trial, after Wasting the Court's Time and Centripetal's Resources

PAN withdrew its anticipation and obviousness defenses after forcing Centripetal to brief the issues on summary judgment and after the Court heard the parties' respective arguments on PAN's anticipation, obviousness, and patent eligibility defenses.  Thus, PAN forced Centripetal to expend substantial resources addressing these defenses during fact and expert discovery and to brief the issues.  Further, PAN wasted the Court's resources in having to review and hold a hearing on these defenses, only for PAN to withdraw the defenses that it knew were weak less than two weeks later, before the Court issued an Order on Centripetal's summary judgment motion.  Dkt. No. 792 (January 19, 2024 Order on Centripetal's Motion for Summary Judgment) at n.2 (denying as moot Centripetal's summary judgment motion that the Correlation Patents "are

not invalid as obvious or anticipated" since PAN did not intend to proceed on them at trial).
PAN's gamesmanship in pursuing prior art defenses that were objectively weak after the stay
was lifted and right up until the eve of trial amounts to the type of egregious behavior that
warrants deeming a case exceptional.  *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am.,
Inc.*, 707 F. Supp. 2d 737, 751-52, 757 (N.D. Ohio 2010), *as corrected* (Apr. 13, 2010) (finding
exceptionality where defendant "dropped its invalidity defense . . . immediately prior to trial"
and "utilized a trial strategy of advancing and then withdrawing untenable defenses").

At the summary judgment hearing, PAN's counsel made several notable admissions that
demonstrate the exceptional nature of PAN's anticipation and obviousness arguments.  First,
PAN's counsel admitted that the documents its expert, Dr. Nielson, was relying on for its
anticipation and obviousness challenges to the '903 Patent and which were the subject of
Centripetal's summary judgment motion **were not prior art**, and thus could not invalidate the
'903 Patent.  Dkt. No. 712 (Jan. 4, 2024 Hrg. Tr.) at 124:21-125:3 (admitting that "Firewall
Analyzer Document" that Dr. Nielson was relying on "is not prior art. We concede that is not
prior art. It could not have been brought to the Patent Office.").  References that do not qualify as
prior art cannot invalidate patent claims under 35 U.S.C. § 102 (anticipation) or § 103
(obviousness).  PAN's admission demonstrates the egregiousness of advancing such references
at all, requiring Centripetal to expend resources to defeat them when PAN did not have a
colorable basis to assert them in the first instance and likely, were assertions that PAN never
intended to present at trial in any event.  Such bad faith litigation should not be countenanced.

Second, PAN's counsel admitted that even if the material that PAN admitted was not
prior art did somehow qualify as prior art to the '903 Patent, Dr. Nielson was relying solely on
**printed publications** for its '903 Patent "system" defense, such that PAN was estopped by statute

from pursuing its defense.  Dkt. No. 712 (Jan. 4, 2024 Hrg. Tr.) at 124:19-21 (PAN's counsel

explaining that Dr. Nielson "relied upon manuals that describe the operation of the product,

YouTube videos that show people using that product and how it operates."), 125:5-14 (the Court

questioning PAN's position that Dr. Nielson was relying on a system); *Wasica Fin. GmbH v.

Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454-55 (D. Del. 2020) (noting that statutory estoppel

applies to manuals describing a system).  As Centripetal pointed out in its summary judgment

reply, YouTube videos are printed publications per the Patent Office.  Dkt. No. 571

(Centripetal's Reply in Support of Motion for Summary Judgment) at 2-4 (citing MPEP § 2128

(Rev.07.2022, Feb. 2023) at 2-3).  Thus, they could have been presented to the PTAB and PAN

was thus estopped from pursuing them in the litigation.  35 U.S.C. § 315(e)(2) (petitioner in the

IPR "may not assert . . . in a civil action" that "the claim is invalid on any ground that [it]

reasonably could have raised during the [IPR]" after a final written decision).  PAN had no

chance of succeeding on its anticipation and obviousness defenses to the '903 Patent presented in

Dr. Nielson's expert report, such that PAN's pursuit of them supports a finding of exceptionality.

### 2. PAN's Prior Art Invalidity Positions Were Baseless, Particularly Given the PTAB Rejected Such Positions Under a Lower Burden of Proof

PAN's invalidity positions throughout the pendency of the litigation were frivolous,

including PAN's pursuit of anticipation and obviousness based on references that PAN was

estopped from relying on based on the PTAB's final written decision for the '903 Patent.

Further, PAN cannot dispute that it knowingly pursued a facially defective invalidity defense

based on the invalidity arguments and prior art that the PTAB had already rejected for each of

the Correlation Patents.  In August 2023, prior to the deadline for serving opening expert reports,

Centripetal put PAN on notice of its defective invalidity defenses in response to PAN's

interrogatory on validity.  Ex. 1 (Centripetal's Response to Rog. 25) at 9, 14-15.  Specifically,

Centripetal identified that PAN's elected prior art was defective because PAN had asserted the

same prior art in its unsuccessful IPRs and PGRs "under a lower burden of proof" and that the

PTAB agreed that the references did not "teach the claim elements, including but not limiting to

performing an action in response to correlating." *Id.* Moreover, for the '903 Patent, Centripetal

explained that EventLog Analyzer was "not prior art" and that PAN was "statutorily estopped

from challenging the claims of the '903 Patent" based on references relying on printed

publications. *Id.* PAN nonetheless continued to pursue these defenses in its opening expert

report, forcing Centripetal's expert, Dr. Goodrich, to prepare a rebuttal, in which he too pointed

out the same issues in his September 22, 2023 rebuttal report. *See e.g.*, Dkt. No. 465-1

(Goodrich Rebuttal Report) at ¶¶ 434-435, 560-562.

In response to Centripetal's summary judgment motion on the issue when PAN did not

withdraw it after receiving Dr. Goodrich's rebuttal report, , PAN made arguments that it was not

statutorily estopped from relying upon a system made up of printed publications following a final

written decision because PAN relied on documents, websites, and YouTube videos not presented

to the PTAB, which it knew was meritless because all of the documents, websites, and YouTube

videos PAN relied on are admissible as printed publications in IPRs and could have reasonably

been raised, but PAN chose not to. Dkt. No. 517 (PAN's Opposition to Centripetal's Motion for

Partial Summary Judgement) at 9; Dkt. No. 571 (Centripetal's Reply in Support of Partial

Summary Judgement) at 1-5; Dkt. No. 572-3 (MPEP § 2128 (Rev.07.2022, Feb. 2023) at 2-3)

(USPTO stating that websites and YouTube videos are printed publications); Dkt. No. 572-4

(IPR2023-00901, Paper 14 (P.T.A.B. Nov. 13, 2023)) at 5-6, 27 (showing an IPR Institution

Decision based on a YouTube video); Dkt. No. 523 (PAN's Opposition to Centripetal's Motion

for Summary Judgement of No Invalidity) at 9 (PAN incorrectly arguing to the Court that

YouTube videos cannot "form the basis of an IPR challenge").  Further, asserting the same prior

art or arguments in this litigation that the PTAB rejected under a lower burned of proof, which,

given the cost of filing PTAB proceedings[2] coupled with risks of estoppel, should have been

PAN's strongest invalidity arguments, also demonstrates the objective weakness of PAN's

invalidity positions when PAN had a higher clear and convincing burden of proof.  Dkt. No. 523

at 7-12, 15-21; *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (invalidity must be

proven by clear and convincing evidence).  PAN's actions were objectively unreasonable

because 1) they were admittedly relying on documents that were not prior art, 2) they were aware

they were statutorily barred from relying on printed publications and chose to do so anyways,

and 3) if PAN thought EventLog Analyzer was a viable reference, PAN would have raised it at

the PTAB under the lower standard.

> a) **PAN's prior art challenges to the '903 Patent were egregious.**

PAN's admissions at the summary judgment hearing confirmed the frivolous nature of

PAN's anticipation and obviousness defenses, discussed above.  Its purported EventLog

Analyzer v10 "system" was actually just a collection of printed publications that were not

actually prior art.  Dkt. No. 712 (Jan. 4, 2024 Hrg. Tr.) at 124:21-125:3; 124:19-21.  Those

admitted characteristics of the printed publications that were the basis of PAN's '903 Patent

arguments in this litigation meant that PAN was estopped from asserting them.  *See* 35 U.S.C. §

315(e)(2) (petitioner in the IPR "may not assert . . . in a civil action" that "the claim is invalid on

any ground that [it] raised or reasonably could have raised during the [IPR]" that resulted in a

final written decision); *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15cv21, 2017 WL

2605977, at *4 (E.D. Va. June 5, 2017) (estopping alleged infringer from relying on prior art

---

[2] The cost to file an instituted IPR is at least $41,500.  37 CFR § 42.15(a).

product manuals that reasonably could have been raised in IPR); *Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, No. 13-2072 (KAJ), 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017) (references that could have been reasonably raised include "any references that were known to the petitioner or that could reasonably have been discovered by a skilled searcher conducting a diligent search.") (citation and internal quotations omitted).

Further, combining product manuals together and renaming them a "ManageEngine *System*" does not transform it into a system that would somehow permit PAN to do an end run around statutory estoppel.  *Milwaukee Elec. Tool Corp. v. Snap-On, Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017) (defendant "cannot skirt [IPR estoppel] by purporting to rely on a device without actually relying on the device itself."); *see also Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 454-55 (D. Del. 2020) (after final written decision, finding defendant estopped from raising obviousness combination utilizing a system "materially identical (i.e., discloses the same claim elements) to" a printed publication describing that system); *Cal. Inst. of Tech. v. Broadcom Ltd.*, 25 F.4th 976, 991 (Fed. Cir. 2022), *cert. denied sub nom. Apple Inc. v. Cal. Inst. of Tech.*, 143 S. Ct. 2658 (2023) ("estoppel applies not just to claims and grounds asserted in the petition and instituted for consideration by the Board, but to all grounds not stated in the petition but which reasonably could have been asserted against the claims included in the petition.").

> **b)** **PAN's continued reliance on the same art and arguments rejected by the PTAB to challenge the '573 and '797 Patents was an objectively weak position and without merit.**

PAN's alleged obviousness grounds for the '573 and '797 Patents relied on the same or cumulative alleged art that PAN had already asserted in its unsuccessful requests for PTAB review.  Given the cost of filing IPR and PGR requests at the PTAB, as well as the potential estoppel consequences, PAN would have presented its strongest art in its requests for PTAB

review.  Thus, PAN's re-do of the same rejected references and invalidity arguments in this Court after failing to succeed before the PTAB under a lower burden of proof was objectively weak.  PAN knew after the PTAB's decisions that PAN's positions could not carry the clear and convincing burden of proof, given that they had not met the lower "reasonable likelihood of success" needed for institution at the PTAB.  *See, e.g.*, Dkt. No. 465-2 (Nielson Opening Report) at ¶¶ 56-57 (identifying obviousness by 1) Paxton in view of Deschenes and Sutton, 2) Paxton in view of Deschenes and Wicherski, 3) McDonald in view of Deschenes and Sutton, and 4) McDonald in view of Deschenes and Wicherski); *see also Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-cv-552, 2014 WL 12656554, at *10-11 (S.D. Ohio July 3, 2014) (granting plaintiff's motion for partial summary judgment of no invalidity because the PTAB rejected defendant's arguments under a lower standard of proof).

In addition to relying on the same references, PAN recycled the same invalidity arguments that the PTAB had already expressly rejected.[3]  In particular, the reliance of PAN's expert, Dr. Nielson, on Sutton for the claim elements "responsive to correlating . . ." and "based on the determined correlation" was the same argument PAN's expert, Dr. Akl, made before the PTAB.  *Compare* Dkt. No. 465-2 (Nielson Opening Report) at ¶¶ 1101-1108 with Dkt. No. 465-23 (IPR2021-01151, Ex. 1003 (Akl Declaration)) at ¶¶ 116-123; *see also* Dkt. No. 465-1 (Goodrich Rebuttal Report) at ¶¶ 559-561.  The PTAB explicitly rejected Dr. Akl and PAN's argument that Sutton renders obvious those very claim elements, stating "[PAN]'s arguments []

---

[3] The PTAB affirmed the validity of the '573 and '797 Patents over the combination of Paxton, Deschenes, and Sutton based on the claim elements "responsive to correlating . . ." and "based on the determined correlation" found in the asserted claims of '573 and '797 Patents, respectively.  *See* Dkt. No. 465-13 (Decision Denying Institution of '573 Patent) at 22-27 (explaining that PAN's arguments regarding the combination, and particularly the Sutton reference does not render obvious the claim element); Dkt. No. 465-11 (Decision Denying Institution of '797 Patent) at 14-19 (same).

do not persuade us that the proposed combination [including Sutton] would have this relationship or any other relationship in which the ***rules would be generated responsive to and based on the correlation***." Dkt. No. 465-13 (Decision Denying Institution of '573 Patent) at 25-26; *see also* Dkt. No. 465-11 (Decision Denying Institution of '797 Patent) at 17-18 (stating nearly the same). The PTAB elaborated, explaining in detail the problems with PAN's reliance on Sutton to meet these claim limitations:

> [PAN] argues that Sutton describes "filtering or blocking further communications from the host" is done "based on communications to a darknet address and identifying potential malicious code." Pet. 34. What is missing from [PAN]'s argument and evidence is how the relationship between Paxton's asserted correlation and Sutton's asserted rule generation would have been the same as the relationship contemplated by the claims. Sutton describes implementing rules to prevent certain malicious devices from communicating within a network ([Sutton], 11:1–3) and it discusses "filter[ing] based on predefined rules" (id. at 13:5–9). It is unclear why one of ordinary skill in the art would have based such rules on Paxton's correlation rather than on Sutton's list of darknet addresses.

Dkt. No. 465-13 (Decision Denying Institution of '573 Patent) at 25-26; *see also* Dkt. No. 465-11 (Decision Denying Institution of '797 Patent) at 17-18 (stating nearly the same); Dkt. No. 465-2 (Nielson Opening Report) at ¶¶ 1104-1105, 1155-1156 (relying on the same Sutton filtering the PTAB determined would not motivate a person of ordinary skill in the art to render obvious the claim elements). Despite this rejection, PAN nonetheless continued to assert the rejected art and the same unsuccessful arguments, forcing Centripetal to expend significant resources defending against PAN's baseless defenses.

Further, Dr. Nielson's substitution of Wicherski for Sutton to allegedly teaching the claim elements "responsive to correlating . . ." and "based on the determined correlation" found in the asserted claims of '573 and '797 Patents, respectively, was also objectively weak and not colorable because it failed to solve the problems the PTAB identified with Sutton. *See* Dkt. No.

465-2 (Nielson Opening Report) at ¶¶ 1125-1131, 1175-1180; Dkt. No. 465-13 (Decision

Denying Institution of '573 Patent) at 25-26; Dkt. No. 465-11 (Decision Denying Institution of

'797 Patent) at 17-18.  Wicherski suffers from the same shortcomings as Sutton, as evidenced by

Dr. Nielson's failure to show or state that Wicherski discloses generating rules in response to

correlating.  *See* Dkt. No. 465-2 (Nielson Opening Report) at ¶¶ 1125-1131, 1175-1180; *see also*

Dkt. No. 465-22 (Nielson Tr.) at 195:9-19 (admitting that Wicherski does not disclose

"responsive to correlating."); Dkt. No. 465-8 (Nielson Rebuttal Report) at ¶ 71 ("I proposed a

combination where a POSITA would combine this part of Wicherski's teachings (e.g., blocking a

particular machine once identified) with alternate forms of identification (e.g., from Paxton or

McDonald).").

Thus, despite multiple clear indications from the PTAB as well as Centripetal's expert

that PAN's prior art-based challenges to the Correlation Patents were weak and could not carry

PAN's clear and convincing burden, PAN persisted in advancing them resulting in Centripetal

expending significant time and money to defend against them, rendering this case exceptional.

*Cognex Corp. v. Microscan Sys., Inc.*, No. 13-CV-2027 JSR, 2014 WL 2989975, at *4 (S.D.N.Y.

June 30, 2014) (finding exceptionality where "the defenses that were offered at trial were

particularly weak and lacked support in the evidence presented to the jury and to the Court" and

finding defendants liable for "at least the portion of plaintiffs' attorneys' fees related to litigation

tactics taken by defendants that have contributed unnecessarily to plaintiffs' expenses in

defending its patent."); *Saint-Gobain Autover USA*, 707 F. Supp. 2d at 751-53 (finding

exceptionality where defendant "dropped its invalidity defense . . . immediately prior to trial"

and "utilized a trial strategy of advancing and then withdrawing untenable defenses").  PAN

should not be permitted to shield itself from its objectively weak positions and vexatious strategy

just because its positions were not statutorily barred.  The Court should award Centripetal its attorneys' fees and expert costs in defending against such positions.  *Mathis v. Spears*, 857 F.2d 749, 758-59 (Fed. Cir. 1988) (noting that "full expert witness fees have been awarded, without specific statutory authorization, upon a finding of bad faith") (citations omitted).

> ### 3.    PAN Repackaged the Same Meritless Prior Art to Present as a Section 101 Patent Eligibility Defense to the Jury

After dropping its anticipation and obviousness prior art defenses the week before trial, PAN refused to drop the corresponding prior art references from its exhibit list and indicated that it intended to use the same references for its patent eligibility defense at trial.  *See* Dkt. No. 764 (Centripetal's Notice of Unresolved Issues) at 1-2.  Ultimately, during PAN's case-in-chief, PAN's entire Section 101 patent eligibility defense relied upon Dr. Nielson's unsupported, conclusory word-matching testimony.  For example, for the '903 Patent, he pointed to words such as "timestamp" in Deschenes (DX-579), but failed to address the specific claim language, which requires different timestamps, calculating the differences, log entries, and correlating the data.  Trial Tr. 1587:18-1588:18.  Similarly, he relied on quotations from McDonald (DX-552) and Ivershen (DX-542) for the word "correlation," but failed to address actual claim requirements for the Correlation Patents.  Trial Tr. 1588:19-1591:10.

Dr. Nielson failed to do a proper Section 101 patent eligibility analysis by addressing each claim element individually and as an ordered combination of elements.  Trial Tr. 1580:15-1593:17.  Analyzing bits and pieces of individual claim elements, as Dr. Nielsen did, is insufficient to prove Step Two of *Alice*.  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S.Ct. 2347, 2355 (2014) (Step Two requires "consider[ing] the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application") (*quoting Mayo Collaborative Servs. v.*

*Prometheus Lab'ys, Inc.*, 132 S.Ct. 1289, 1291, 1297-98 (2012)).  Dr. Nielson did not even address whether the claims, as an ordered combination, are "conventional, routine, and well-understood" other than in summary and conclusory fashion without reliance on evidence.  Trial Tr. 1591:23-1593:9.  Indeed, he failed to identify any reference that taught an action taken "responsive to" or "based on" the claimed correlation.  Trial Tr. 1767:17-1768:20.  The failure to address the requisite elements of proof demonstrates the lack of good faith that PAN had in insisting on presenting such a defense at trial.

It is not surprising that Dr. Nielson was unable to point to any reference that taught an action taken "responsive to" or "based on" the claimed correlation or that addressed the elements of the claim as an ordered combination because PAN had already unsuccessfully tried to use Deschenes, McDonald, and/or Ivershen to invalidate the claims of the Correlation Patents both at the PTAB and in its opposition to Centripetal's motion for summary judgment which was only denied as moot due to PAN's withdrawal of those defenses, as explained above.  Indeed, Centripetal pointed out in its motion for summary judgment and opposition to PAN's motion for judgment on the pleadings that PAN would be unable to demonstrate that all of the elements of the Correlation Patents were routine, conventional and well-known because PAN was unable to identify in the very references it relied on at trial that the elements were understood, let alone *well*-understood, routine, and conventional at the time of the inventions.  *See*, *e.g.*, Dkt. No. 464 at 34-36.  PAN's patent eligibility presentation at trial confirmed that PAN's defense was as flimsy as what Centripetal had described in the dispositive motion briefing.

### 4.  PAN's Post-Trial Motions Regarding Its Section 101 Defense Were Baseless and Contradicted Its Pre-trial Positions

After the jury verdict, PAN filed two post-trial motions directed at its Section 101 defense, a motion for judgment as a matter of law ("JMOL") and a motion for new trial.  In its

October 3, 2024 Memorandum Opinion, the Court spelled out why it rejected each of the grounds PAN argued regarding Section 101 patent eligibility, even though most of PAN's arguments were moot after the Court determined that the Correlation Patents are not directed to an abstract idea at Step One.  Dkt. No. 970 at 6-13.  The Court also pointed out that many of PAN's arguments lacked support in the law or the record.  *See*, *e.g.*, Dkt. No. 970 at 12-13 (noting that PAN failed to provide a rule or binding precedent to support its argument that the Court should not have sent Step Two to the jury and that PAN's proposed alternative jury instruction would not have remedied the language from the instruction it challenged post-trial).

Further, PAN's motion for a new trial contended that it objected to send the Step Two inquiry to the jury, when in fact PAN's submissions and the parties' disputes in the weeks leading up to trial clearly treated Step Two as being tried to the jury without objection from PAN.  *See* Dkt. No. 941 at 23-24; *see also* Dkt. No. 733 at 11 (PAN's proposed verdict form); Dkt. No. 741 at 102, 124.  For example, when PAN objected to Centripetal's jury instructions on January 16, 2024, PAN did not object to Centripetal's proposed instruction for Step Two on the basis that the jury should not be instructed on the issue. Dkt. No. 749 at 19-20.  And PAN's trial brief indicated that if the Court did not deny its dispositive motion on its Section 101 defense as a matter of law, any remaining "factual issues . . . must go to the jury." Dkt. No. 734 at 5 n.1 (citation omitted).

Indeed, PAN's motion for judgment on the pleadings regarding its patent eligibility defense, filed on October 26, 2023, is further evidence of the gamesmanship it employed regarding its invalidity defenses.  PAN filed its Rule 12(c) motion as to the Correlation Patents on the deadline for filing dispositive motions, and the Court ultimately converted it to a motion for summary judgment based on the fact that both parties' experts had provided opinions as to

the factual issue at Step Two by that point.  Dkt. No. 712 (Jan. 4, 2024 Summary Judgment

Hearing Transcript) at 60:19-66:1.  Rather than file its Rule 12(c) motion early in the case, PAN

waited until the last possible moment and filed it on the same day it filed its separate 40-page

summary judgment motion.  In doing so, PAN was able to do an end run around the local rules

and scheduling order limiting parties to a single, 40-page summary judgment motion.  Such a

strategic decision grounded in gamesmanship, particularly when viewed in light of the totality of

the circumstances, should not be countenanced.[4]  *See* Dkt. 526 at 9-10.

Further, PAN continually shifted its articulation of the alleged abstract idea as the case

progressed, attempting to adjust its arguments to Centripetal's arguments and the Court's

criticisms.  *See, e.g.*, Dkt. No. 940 at 9-10.  And, as the Court noted in denying PAN's post-trial

motions, PAN again tried to "recast the abstract idea" in its Step Two arguments post-trial to

~~overturn escape~~ the jury's verdict, but in doing so ran into its own inconsistent arguments at Step

One.  Dkt. No. 970 at 10 n.8.

* * *

PAN's litigation strategy regarding its challenges to the patentability of the Correlation

Patents, as outlined above, demonstrates a vexatious approach warranting an exceptional case

finding.  *Saint-Gobain Autover USA*, 707 F. Supp. 2d at 757 ("pattern of raising and discarding []

defenses may constitute a strategy of vexatious activity") (citation omitted). Accordingly,

---

[4] Additionally, PAN could have, but chose not to, ask the PTAB to review the '797 Patent on
patent eligibility grounds in its PGR petition under a much lower standard than the clear and
convincing burden it was required to prove at trial.  If PAN actually thought its Section 101
claim had merit, it would reason that PAN would have pursued such an argument when given the
opportunity to have it decided under a lower standard.  The fact that PAN did not raise any §101
arguments in its PGR petition under the lower standard suggests that PAN did not objectively
think it could meet the "more likely than not" standard at the PTAB, let alone the "clear and
convincing" standard required at trial.

Centripetal is entitled to recover its attorneys' fees and costs as a result of having to defend against PAN's baseless anticipation, obviousness, and ineligibility defenses, throughout the litigation, trial, and post-trial briefing.  *Cognex*, 2014 WL 2989975, at *4 (awarding attorney fees because the losing party advanced arguments that were "particularly weak and lacked support in the evidence presented to the jury and to the Court."); *Trs. of Columbia Univ. in City of New York v. Gen Digital Inc.*, No. 3:13cv808, 2023 WL 8699435, at *12-13, 19 (E.D. Va. Sept. 30, 2023) (awarding attorneys' fees where defendant's conduct included continually rehashing and relitigating issues it already lost).

**B.    PAN Unreasonably Obstructed Centripetal's Efforts to Obtain Discovery Regarding Infringement and Damages**

After the Court lifted the stay, the parties faced a compressed window to complete discovery, including all fact depositions that took place over just two months.  However, rather than cooperate in providing dates for its witnesses that Centripetal properly noticed, PAN decided to play games with the discovery process and rules and refused to provide dates for PAN witnesses possessing information relevant to infringement and damages.  PAN's games amounted to conduct that "stands out from the rest," supporting an exceptional case finding.

Less than a month before the close of fact discovery, PAN informed Centripetal that it objected to nine noticed depositions of individuals that PAN either listed in its Rule 26(a)(1) Initial Disclosures or identified in interrogatory responses, or were identified in PAN's document production.  Dkt. No. 384 at 1-2 (Order denying PAN's motion for a protective order regarding the objected to depositions).  PAN did not dispute that the witnesses had relevant knowledge regarding infringement and damages, yet continued to refuse to provide dates for their depositions without any legitimate basis and forced Centripetal to get an order from the Court to

proceed.  *Id*. at 3-4 (noting PAN did not dispute that the witnesses had relevant information and that PAN instead desired different designees to address particular subjects).

The Court sided with Centripetal and ordered PAN to make the deponents available, but due to PAN's dilatory conduct and gamesmanship in an attempt to run out the discovery clock on Centripetal's discovery efforts, by the time the Court issued its order, there were only five business days left in the discovery period.  Dkt. No. 384 (order issued Thursday afternoon, August 10, 2023); Dkt. No. 353 (scheduling order setting Thursday, August 17, 2023 deadline for close of fact discovery).  PAN then refused to agree to an extension of the discovery period to complete the seven additional depositions *see* Dkt. No. 395 (PAN's August 16, 2023 Opposition to Centripetal's Motion for Extension to File Opening Expert Reports), forcing Centripetal to prepare for and take seven additional depositions over a four-day period, one of which was required to take place on Israeli time, in addition to the five depositions already scheduled to take place over those four days.  PAN then compounded the prejudice and gamesmanship by refusing to agree to an extension of time for opening expert reports which were to be served four calendar days after the close of fact discovery.  Its refusal to work in good faith with Centripetal smacked of gamesmanship because at that point (August 14, 2023), PAN had yet to provide a date for one of the depositions, with less than four full days of fact discovery remaining.  Dkt. No. 385 (Centripetal's expedited motion for an extension of opening expert reports to accommodate the prejudice PAN created); Dkt. No. 353 (Scheduling & Pretrial Order) at ¶¶ 2, 13.  Centripetal was forced to burden the Court again with having to decide yet another motion, this time on an expedited basis, on an extension that the parties should have been able to agree upon without the Court's intervention.  Dkt. No. 393 (order granting motion to expedite); Dkt. No. 398 (order granting motion to extend opening expert report deadline).

PAN's gamesmanship and obstructionist discovery tactics with respect to these depositions are further grounds for finding this case exceptional, particularly when viewed in the context of PAN's other litigation misconduct discussed herein. *Fleming v. Escort, Inc.*, No. 1:09-cv-105-BLW, 2014 WL 713532, at *2 (D. Idaho Feb. 21, 2014) (deeming case exceptional based in part on "discovery disputes caused by [defendant's] meritless refusals to turn over discoverable information.").

### C.    PAN's Trial Misconduct Needlessly Wasted the Time of the Jury, the Court and Centripetal

Trial misconduct can render a case exceptional, and here, PAN's trial misconduct demonstrates PAN's overall vexatious litigation strategy.  Courts have found cases to be exceptional based on trial misconduct, including questioning that violated already settled disputes such as motions *in limine* and sustained objections, questioning that required admonishment by the Court on the record, and trial presentations designed to confuse the issues and mislead the jury. *See, e.g., Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 745 (E.D. Tex. 2019) (finding case exceptional based in part on trial misconduct including improper cross-examination in violation of motions *in limine* and sustained objections); *NTP Inc. v. Rsch. in Motion, Ltd.*, 270 F. Supp. 2d 751, 758, 761 (E.D. Va. 2003) (awarding attorneys' fees where defendant's "questionable litigation tactics" included an attempt to "confuse and mislead the jury" through an improper prior art demonstration), *amended*, 2003 WL 22746080 (E.D. Va. Aug. 5, 2003).

One example of PAN's trial misconduct supporting an exceptional case finding relates to its decision to present General John Davis as a witness during its case-in-chief.  PAN's counsel wasted the Court's and jury's time by presenting a PAN witness, General Davis, whose testimony admittedly had no relevance to any issue in the case. Trial Tr. at 1529:22-1530:6

(agreeing that he provided no testimony regarding infringement, validity, or damages), 1530:24-1531:4 (stating that the purpose of his testimony was to provide his "perspective about kind of company [PAN] is, and what [PAN] does").  Prior to General Davis' admission regarding his irrelevance to the issues to be decided, the Court admonished PAN's counsel on the record to move on, after it became clear that PAN's only purpose in presenting him was for storytelling regarding his military missions to garner favor and sympathy with the jurors.  Trial Tr. at 1515:4-6 ("Mr. Harmon – I'm sorry to interrupt, General Davis. Are you going to get to -- I think we need to move along somewhat from this topic.").  PAN's counsel continued his irrelevant line of questioning, such that the Court reprimanded PAN's counsel during a sidebar, telling him that his questioning was "over the line."  Trial Tr. 1521:10-12 ("You can get into the testimony, but what you've just done, over the line. Rein it in, get to the point, and then let's move on."); *see also*, Trial Tr. 1519:17-19 ("Mr. Harmon, I think you're going too far. There is -- the vast majority of this testimony is not relevant.").

### D.      PAN's Rehashing of Decided Issues Regarding Damages Further Renders this Case Exceptional

As the Court noted in its October 3, 2024 Memorandum Opinion on PAN's Motions for Judgment as a Matter of Law and for a New Trial ("JMOL Opinion"), PAN repeatedly raised the same objections and issues that had already been decided both before, during and after trial.  For example, regarding Centripetal's damages case, PAN forced Centripetal to brief and the Court to decide the issue again and again.  Dkt. No. 970 at 36, citing *Trs. of Columbia Univ. in City of New York v. Gen Digit. Inc.*, No. 3:13-cv-808, 2023 WL 8698906, at *2 (E.D. Va. Sept. 30, 2023) (denying PAN's motion for a new trial, noting that "[t]he Court has previously considered (prior to and during trial) the bulk of these issues and rejected the same arguments currently made by PAN. That alone supports denial of the motion for a new trial.").  PAN attempted to

exclude the same Centripetal damages evidence by filing various different types of repetitive motions advancing the same arguments that ultimately sought the same outcome – exclusion of the Keysight license and Mr. Malackowski's opinions based on it.  *See* Dkt. No. 485 (PAN's Motion to Exclude Malackowski) at 7-23, Dkt. No. 754 (PAN's Objection to Magistrate's Order Denying-in-Part Motion to Exclude Malackowski) at 6-13, Dkt. No. 631-1 (PAN's Motion *in limine* No. 3) at 4-9; Dkt. No. 820 (PAN's Rule 50(a) JMOL) at 16-18; Dkt. No. 849 (PAN's Renewed Rule 50(a) JMOL) at 16-18; Dkt. No. 862 (Jan. 16, 2024 Hrg. Tr.) at 65:25-66:21; Dkt. No. 902 (PAN's Rule 50(b) JMOL) at 27-30; Dkt. No. 908 (PAN's Motion for New Trial) at 3-15.

The Court is already familiar with PAN's improper attempts to cross-examine Mr. Malackowski after it was faced with actually having to deal with Mr. Malackowki's opinions regarding the admissible Keysight License at trial.  Dkt. No. 970 at 39-40, n.20.  Rather than follow the Court's prior rulings, PAN resorted to attempts to improperly cross-examine Mr. Malackowski regarding products no longer in the case in violation of a motion *in limine* PAN itself had requested and regarding prior testimony at the ITC by way of someone else's statement.  *Id.*; *see also Tinnus*, 369 F. Supp. 3d at 745 (finding case exceptional based in part on trial misconduct including improper cross-examination in violation of motions *in limine* and sustained objections).

The examples of PAN's trial misconduct discussed herein, examined as part of the totality of the circumstances, support a finding of exceptionality and award of Centripetal's attorneys' fees focused on defending against PAN's allegations of anticipation, obviousness and patent ineligibility.  *See*, *e.g.*, *Trs. of Columbia Univ.*, 2023 WL 8699435, at *19 (finding case exceptional where defendant engaged in misconduct during trial, including "consistently

rehashing settled issues, and improperly cross-examining witnesses on numerous occasions"); *Cognex*, 2014 WL 2989975, at *4 (finding exceptionality where "defendants have engaged in unreasonable litigation tactics that have wasted the Court's time and have required plaintiffs to expend significant resources" such as filing "post-trial motions [which] simply re-litigate issues that had already been decided by this Court during trial.").

## IV.    CENTRIPETAL'S REQUESTED FEES ARE REASONABLE

Centripetal and its counsel from Kramer Levin Naftalis & Frankel ("Kramer Levin") incurred a substantial amount of attorney and expert fees and expenses in defending against PAN's shifting gamesmanship and vexatious litigation strategy regarding validity and eligibility of the Correlation Patents throughout the case and at trial.  Centripetal estimates the fees and nontaxable expenses that can be calculated that it incurred regarding PAN's challenges to the Correlation Patents to be approximately $1 million in fees and at least $136,000 in expenses to defend against PAN's meritless anticipation, obviousness and patent ineligibility defenses.

For the sake of efficiency, the parties have agreed to bifurcate the issue of whether the case is exceptional, and then if so, an accounting to determine the amount of fees warranted. Dkt. No. 976.  Sequencing the determination of whether fees are warranted before an accounting is common in patent cases, and in this district.  *See, e.g., Bayer Cropscience AG v. Dow Agrosciences LLC*, No. 12-256 (RMB/JS), 2015 WL 1197436, at *1 (D. Del. Mar. 13, 2015) (awarding fees but reserving on amount); *see also Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217-18 (D.C. 2015) (finding case exceptional and ordering briefing on amounts); *Cognex*, 2014 WL 2989975, at *4; *Shipping & Transit, LLC* v. *Hall Enters., Inc.*, No. 16-06535-AG-AFM, 2017 WL 3485782, at *2, 8 (C.D. Cal. July 5, 2017) (finding entitlement to attorneys' fees under § 285 and directing party to identify amount requested in a

subsequent submission); Dkt. No. 977-1 (*Trs. of Columbia Univ. in City of New York v. NortonLifeLock, Inc.*, No. 3:13cv808, Dkt. No. 1238, Order (E.D. Va. June 3, 2022))

Consistent with Fed. R. Civ . P. 54(d)(2)(B), Centripetal provided herein a "fair estimate" of the amount of attorneys' fees sought.  A fair estimate is sufficient, as "[t]he court may decide issues of liability for fees before receiving submissions on the value of services."  Fed. R. Civ. P. 54(d)(2)(C); *see also Dolby Labs., Inc. v. Lucent Techs., Inc.*, No. C 01-20709 JF, 2006 WL 1320475, at *5 (N.D. Cal. May 15, 2006).  Further, the amount of fees sought and estimation of fees "does not require a tedious, line-by-line investigation of the hours [] expended. As the Supreme Court recently explained in *Goodyear*, " '[t]he essential goal' in shifting fees' is 'to do rough justice, not to achieve auditing perfection.'"  *In re Rembrandt Techs. LP Pat. Litig.*, 899 F.3d 1254, 1280 (Fed. Cir. 2018), quoting *Goodyear Tire & Rubber Co. v. Haeger,* 581 U.S. 101, 110 (2017).

In addition to attorneys' fees, this Court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute.  *See Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (affirming district court's award of expert fees); *see also Mathis*, 857 F.2d at 758-59 (noting that "full expert witness fees have been awarded, without specific statutory authorization, upon a finding of bad faith") (citations omitted).  Here, Centripetal seeks reimbursement for its expert fees for Dr. Michael Goodrich regarding the Correlation Patents due to PAN's vexatious pursuit of its invalidity and ineligibility defenses as to the Correlation Patents.  PAN intentionally continued to pursue frivolous anticipation and obviousness defenses, even after being told by the PTAB that it did not have a reasonable likelihood of success as to the '573 and '797 Patents and that the claims of the '903 Patent were patentable.

26

As set forth in the accompanying declaration and exhibits, Centripetal's estimated attorney and expert fees is a conservative figure of the hours that Centripetal's team at Kramer Levin spent focused on PAN's anticipation, obviousness and patent ineligibility challenges to the Correlation Patents after the stay was lifted.  Ms. Kobialka's declaration describes the background and experience of each timekeeper and expert.  Further, the number of hours that Centripetal's timekeepers and experts spent was appropriate given the complexity of the issues involved in the anticipation, obviousness and patent ineligibility challenges to the Correlation Patents.  Centripetal thus seeks an estimated $1.1 million with this motion for the fees and costs incurred to date focused on PAN's anticipation, obviousness and patent eligibility defenses for the Correlation Patents.

## V.      CONCLUSION

Centripetal respectfully requests that the Court exercise its discretion to deem this case exceptional under 35 U.S.C. § 285 upon consideration of the totality of the circumstances of the case, finding that PAN's litigation strategy and conduct stands out from others.  Centripetal further requests that the Court award Centripetal the portion of its fees and costs focused on litigating PAN's unreasonable anticipation, obviousness, and patent eligibility challenges pursuant to 35 U.S.C. §§ 102, 103, and 101, respectively, to the Correlation Patents, such amount to be determined upon further submissions by the parties.

Respectfully submitted,

Dated:  October 17, 2024                     By: */s/ Stephen E. Noona*_____
                                            Stephen E. Noona
                                            Virginia State Bar No. 25367
                                            Clark J. Belote
                                            Virginia State Bar No. 87310
                                            KAUFMAN & CANOLES, P.C.
                                            150 W. Main St., Suite 2100
                                            Norfolk, VA 23510

Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
cjbelote@kaufcan.com

Paul J. Andre (*pro hac vice*)
Lisa Kobialka (*pro hac vice*)
James Hannah (*pro hac vice*)
Kristopher Kastens (*pro hac vice*)
Christina Finn (*pro hac vice*)
Aakash B. Jariwala (*pro hac vice*)
Linjun Xu (*pro hac vice*)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA 94065
Telephone: (650) 752-1700
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com
cfinn@kramerlevin.com
ajariwala@kramerlevin.com
lxu@kramerlevin.com

Cristina L. Martinez (*pro hac vice*)
KRAMER LEVIN NAFTALIS
& FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9000
Facsimile: (212) 715-8000
cmartinez@kramerlevin.com

*Attorneys for Plaintiff*
Centripetal Networks, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 17, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send notification of

electronic filing to all counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
