**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-00137-EWH-LRL |
| | ) | |
| vs. | ) | |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

## DEFENDANT PALO ALTO NETWORKS, INC.'S OPPOSITION TO PLAINTIFF CENTRIPETAL NETWORKS, LLC'S MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..............................................................................................ii

I.   PAN's Reasonable, Good-Faith Litigation Of Its Anticipation And Obviousness Defenses Does Not Render The Case Exceptional...........................................................................3

    A.   PAN's Anticipation And Obviousness Defenses Were Reasonable And Advanced In Good Faith.......................................................................................3

        1.   PAN's Anticipation And Obviousness Defenses Concerning The '903 Patent Were Reasonable And Proper......................................................3

        2.   PAN's Anticipation And Obviousness Defenses Concerning The '573 And '797 Patents Were Not Previously Considered By The PTAB.......................8

    B.   PAN's Withdrawal Of Its Anticipation and Obviousness Defenses Was A Reasonable, Good-Faith Effort To Narrow The Issues For Trial...........................10

II.   PAN's Patent-Ineligibility Defenses Were Reasonable and Well-Founded......................12

III.   PAN Acted Reasonably And In Good Faith In Objecting To Centripetal's Efforts To Seek Duplicative Depositions...............................................................................................17

IV.   Centripetal's Motion Falls Far Short Of Demonstrating The Type Of Egregious Trial Conduct That Would Support An Exceptional-Case Finding..........................................19

V.   PAN Acted Reasonably In Raising Its Objections To Centripetal's Damages Evidence And Taking The Steps Necessary To Preserve Those Issues For Appeal. .......................21

VI.   PAN Reserves The Right To Respond As To The Reasonableness Of Centripetal's Requested Fees.............................................................................................................23

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Art+Com Innovationpool GmbH v. Google LLC*,
  712 F. App'x 976 (Fed. Cir. 2017) ........................................................................4

*Beckman Instruments, Inc. v. LKB Produkter AB*,
  892 F.2d 1547 (Fed. Cir. 1989)............................................................................11

*Bruckelmyer v. Ground Heaters, Inc.*,
  445 F.3d 1374 (Fed. Cir. 2006)...........................................................................4, 5

*CEATS, Inc. v. Continental Airlines, Inc.*,
  526 F. App'x 966 (Fed. Cir. 2013) ........................................................................4

*In re Certain Comput. Network Sec. Equip. & Sys., Related Software,
  Components Thereof, & Prods. Containing Same*,
  USITC Inv. No. 337-TA-1314, 2023 WL 5744218 (Aug. 8, 2023)...................12, 13

*In re Certain Computer Network Security Equipment And Systems, Related
  Software, Components Thereof, and Products Containing Same*,
  No. 337-TA-1314, 2023 WL 8520578 (Dec. 5, 2023) .........................................13

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
  No. 17-1612, 2022 WL 2643517 (D. Del. July 8, 2022) .......................................8

*Chrimar Holding Co., LLC v. ALE USA Inc.*,
  732 Fed. Appx. 876 (Fed. Cir. 2018)................................................................11, 12

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
  No. 2:15-CV-21-HCM, 2017 2605977 (E.D. Va. June 5, 2017)...........................6, 7

*Cognex Corp. v. Microscan Systems, Inc.*,
  No. 13-CV-2027, 2014 WL 2989975 (S.D. N.Y. June 30, 2014) .........................23

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  No. 2:14-CV-912, 2020 WL 1478396 (E.D. Tex. Mar. 26, 2020) ..............18, 20, 21

*Daedalus Blue, LLC v. MicroStrategy Inc.*,
  No. 2:20-CV-551-RCY, 2023 WL 5941736 (E.D. Va. Sept. 12, 2023)................4

*DietGoal Innovations, LLC v. Wegmans Food Markets, Inc.*,
  126 F. Supp. 3d 680 (E.D. Va. 2015) ..................................................................14

*Droplets, Inc. v. Yahoo! Inc.*,
  658 F. Supp. 3d 754 (N.D. Cal. 2023) ..................................................................2

*EIS, Inc. v. IntiHealth Ger GmbH*,
  No. 19-1227, 2023 WL 6797905 (D. Del. Aug. 30, 2023)......................................8

*Finjan, Inc. v. Symantec Corp.*,
No. 10-CV-593, 2013 WL 5302560 (D. Del. Spt. 19, 2013), *aff'd*, 557 F. App'x 999 (Fed. Cir. 2014) ...................................................................................4

*Fleming v. Escort, Inc.*,
No. 1:09-CV-105-BLW, 2014 WL 713532 (D. Idaho Feb. 21, 2014) ................................19

*Fujifilm Corp. v. Motorola Mobility LLC*,
182 F. Supp. 3d 1014 (N.D. Cal. 2016) ..........................................................................4

*Gaymar Indus. V. Cincinnati Sub-Zero Prods., Inc.*,
790 F.3d 1369 (Fed. Cir. 2015)......................................................................................12

*Geoscope Techs. PTE. Ltd. v. Google LLC*,
No. 1:22-CV-1331, 2023 WL 6120603 (E.D. Va. Sept. 18, 2023), *appeal pending* No. 24-1003 (Fed Cir. Oct. 2, 2023)...................................................................16

*Intellectual Ventures I LLC v. Trend Micro*,
944 F.3d 1380 (Fed. Cir. 2019).........................................................................................1

*Ironburg Inventions Ltd. v. Valve Corp.*,
64 F.4th 1274 (Fed. Cir. 2023)..........................................................................................5

*Milwaukee Electric Tool Corp. v. Snap-On Inc.*,
271 F. Supp. 3d 990 (E.D. Wis. 2017).............................................................................6

*Nicholas v. Wyndham Int'l, Inc.*,
373 F.3d 537 (4th Cir. 2004) ...........................................................................................17

*NTP Inc. v. Research in Motion, Ltd.*,
270 F. Supp. 2d 751 (E.D. Va. 2003) .............................................................................20

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
572 U.S. 545 (2014)............................................................................................1, 2, 24

*Packet Intelligence LLC v. NetScout Systems, Inc.*,
No. 2:16-CV-230, 2019 WL 1642714 (E.D. Tex. Apr. 15, 2019)...................................14

*Parallel Networks Licensing, LLC v. International Business Machines Corp.*,
No. 13-2072 (KAJ), 2017 WL 1045912 (D. Del. Feb. 22, 2017)....................................7

*Power Mosfet Techs., LLC v. Siemens AG*,
378 F.3d 1396 (Fed. Cir. 2004) ......................................................................................12

*Procter & Gamble Co. v. Team Techs., Inc.*,
No. 1:12-CV-552, 2014 WL 12656554 (S.D. Ohio July 3, 2014)....................................9

*Prolitec Inc. v. Scentair Techs, Inc.*,
No. 20-984, 2023 WL 8697973 (D. Del. Dec. 13, 2023) ................................................8

*Rasmussen Instruments, LLC v. DePuy Synthes Products, Inc.*,
CV 20-11807-TSH, 2023 WL 2711072 (D. Mass. 2023)..................................................2

*Romag Fasteners, Inc. v. Fossil, Inc.*,
866 F.3d 1330 (Fed. Cir. 2017)......................................................................................12

*Saint-Gobain Autover U.S.A., Inc. v. Xinyi Glass N. Am., Inc.,*
   707 F. Supp. 2d 737 (N.D. Ohio 2010) .................................................................. 11

*SAP Am. Inc. v. Investpic, LLC,*
   898 F.3d 1161 (Fed. Cir. 2018) ............................................................................... 16

*Singular Computing LLC v. Google LLC,*
   No. 19-12551, 2023 WL 2839282 (D. Mass. Apr. 6, 2023) .................................... 8

*SiOnyx, LLC v. Hamamatsu Photonics K.K.,*
   330 F. Supp. 3d 574 (D. Mass. 2018) ...................................................................... 6

*SPEX Techs. Inc. v. Kingston Tech. Corp.,*
   No. 16-CV-1790, 2020 WL 4342254 (C.D. Cal. June 16, 2020) ............................ 6

*Stragent, LLC v. Intel Corp.,*
   No. 6:11-CV-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014) ............... 1, 18, 20

*Tinnus Enterprises, LLC v. Telebrands Corp.,*
   369 F. Supp. 3d 704 (E.D. Tex. 2019) .............................................................20, 21

*Trivascular, Inc. v. Samuels,*
   812 F.3d 1056 (Fed. Cir. 2016) ............................................................................... 9

*Trustees of Columbia University v. Gen Digital Inc.,*
   No. 3:13-CV-808, 2023 WL 8699435 (E.D. Va. Sept. 30, 2023) .......................... 23

*Wasica Financial GmbH v. Schrader International, Inc.,*
   432 F. Supp. 3d 448 (D. Del. 2020) .....................................................................7, 8

*Willis Elec. Co. v. Polygroup Macau Ltd.,*
   649 F. Supp. 3d 780 (D. Minn. 2023) ..................................................................... 8

*In re Wyer,*
   655 F.2d 221 (C.C.P.A. 1981) .............................................................................4, 5

*Zenith Elecs. Corp. v. PDI Comm'ncs Sys., Inc.,*
   522 F.3d 1348 (Fed. Cir. 2008) ...........................................................................3, 4

**Rules and Statutes**

35 U.S.C. § 101 ...................................................................................... 12, 13, 14, 15, 16

35 U.S.C. § 314(a) .............................................................................................................. 9

Fed. R. Civ. P. 50(a) ........................................................................................................ 23

Fed. R. Civ. P. 50(b) ................................................................................................. 22. 23

Fed. R. Civ. P. 59 ...................................................................................................... 22, 23

Fed. R. Civ. P. 72(a) ................................................................................................. 22, 23

Centripetal's Motion for Attorneys' Fees and Nontaxable Costs should be denied because the litigation positions and conduct on which Centripetal's motion is premised do not render this case "exceptional" as compared to other cases. Awards of attorneys' fees in patent cases are reserved for "rare" and "uncommon" cases in which the losing party's litigation positions are objectively baseless or advanced in bad faith and/or its litigation tactics are objectively unreasonable. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553–54, 554 n.6 (2014). This is ***not*** such a case, as the record reflects that PAN's defenses and litigation tactics were reasonable and in good faith.

In an attempt to demonstrate exceptionality, Centripetal's motion improperly focuses on a handful of PAN's litigation positions, while ignoring the broader context of the litigation. That approach is improper, as § 285 is not aimed at "[i]ndividual actions or arguments in the course of litigation." *Stragent, LLC v. Intel Corp.*, No. 6:11-CV-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) (Circuit Judge Dyk, sitting by designation). Rather, "[t]he determination of whether attorneys fees are warranted under § 285 should be a determination of whether in light of the totality of the circumstances the case ***as a whole*** is exceptional." *Id.* (emphasis in original); *see Octane*, 572 U.S. at 554 (requiring consideration of "the totality of the circumstances" in the case); *Intellectual Ventures I LLC v. Trend Micro*, 944 F.3d 1380, 1383 (Fed. Cir. 2019) (reversing exceptional case finding where analysis improperly focused on "discrete portion[s] of the case").

Here, the totality of the circumstances includes the fact that Centripetal ultimately prevailed on only three of the thirteen (13) patents it asserted against PAN. *See* Dkt. 65 at ¶¶13–39 (Amended Complaint identifying 13 asserted patents). The other ten (10) patents were found invalid through

IPR/PGR proceedings[1] or not infringed.[2] And, even as to the patents on which Centripetal succeeded, the jury rejected Centripetal's willfulness claims and its request for running royalty damages. *See* Dkt. 851 (Jury Verdict) at 5, 7. That outcome demonstrates that PAN's defense of this suit was neither frivolous nor baseless. *See, e.g.*, *Rasmussen Instruments, LLC v. DePuy Synthes Products, Inc.*, CV 20-11807-TSH, 2023 WL 2711072, *2 (D. Mass. 2023) (that the plaintiff "did not prevail on all of its claims" suggests the "defense of the suit was [not] frivolous"); *Droplets, Inc. v. Yahoo! Inc.*, 658 F. Supp. 3d 754, 767 (N.D. Cal. 2023) (finding fact that plaintiff ultimately prevailed as to only one asserted claim indicates "neither party's position was objectively unreasonable").

Even when considered in isolation, however, the record reflects that the litigation positions and trial conduct on which Centripetal's motion is premised were ***not*** baseless, frivolous, or unreasonable. To the contrary, as explained below, they were justified as part of a good-faith, vigorous defense effort. Such conduct cannot serve as the basis for a fee award under § 285. *Octane*, 572 U.S. at 554 (a case is not "exceptional" unless it "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated").

---

[1] Dkt. 969 (noting PTAB invalidation of U.S. Patent Nos. 10,542,028; 10,757,126; 10,567,413; 10,091,246; 10,749,906; and 10,503,899 and dismissing those patents from the case); Dkt. 405 (staying the case with respect to U.S. Patent Nos. 10,785,266 and 10,567,343 in light of instituted IPR proceedings); Exs. 1–2 (PTAB decisions finding all asserted claims of U.S. Patent Nos. 10,785,266 and 10,567,343 invalid).

[2] Dkt. 742 (granting PAN's motion for summary judgment of no infringement of U.S. Patent No. 10,735,380, as "no reasonable juror could find" that the accused products infringe the asserted claims of that patent); Dkt. 970 at 21–28 (granting PAN's motion for JMOL of no infringement of U.S. Patent No. 10,567,437, as "there was insufficient evidence" that the accused products met the requirements of the asserted claim).

## I.   PAN's Reasonable, Good-Faith Litigation Of Its Anticipation And Obviousness Defenses Does Not Render The Case Exceptional.

Centripetal's challenge to PAN's litigation of its anticipation and obviousness defenses is unavailing for two reasons. First, PAN's anticipation and obviousness defenses were reasonable and advanced in good faith. Second, PAN's decision to withdraw its anticipation and obviousness defenses shortly before trial was also a reasonable, good-faith decision made in light of the need to narrow the issues for trial.

### A.   PAN's Anticipation And Obviousness Defenses Were Reasonable And Advanced In Good Faith.

#### 1.   PAN's Anticipation And Obviousness Defenses Concerning The '903 Patent Were Reasonable And Proper.

Centripetal challenges the merit of PAN's invalidity defenses concerning the '903 patent on the ground that the documents and videos PAN relied on to demonstrate the functionality of the prior-art ManageEngine System purportedly "do not qualify as prior art." Dkt. 984 at 8. Centripetal's argument wrongly assumes that the evidence relied upon to demonstrate the functionality of a prior-art system must independently qualify as prior art. That is not the law.

Centripetal does not dispute that the ManageEngine System is prior art to the '903 patent. *See* Dkt. 523 (PAN Opp. to Centripetal MSJ) at 11–12. The features and operation of a prior-art system may be established by the system itself (if available) or—as PAN did[3]—by other relevant evidence, such as the testimony of witnesses, documents, and/or videos. *See Zenith Elecs. Corp. v. PDI Comm'ncs Sys., Inc.*, 522 F.3d 1348, 1358–59 (Fed. Cir. 2008) (holding that a combination of documents and witness testimony concerning a product is "permissible and indeed sufficient to

---

[3] Dkt. 523 (PAN Opp. to Centripetal MSJ) at 7–9 (describing the categories of evidence PAN's expert relied on to establish the functionality of the ManageEngine System, including manuals, websites, videos, and "materials produced by Zoho Corporation (ManageEngine's parent company)").

- 3 -

prove anticipation"); *Daedalus Blue, LLC v. MicroStrategy Inc.*, No. 2:20-CV-551-RCY, 2023 WL 5941736, at *9 (E.D. Va. Sept. 12, 2023) (holding that, "for product-based anticipation . . . secondary materials about a product may be relied upon as evidence of how the prior art product works") (citing *Zenith*, 522 F.3d at 1358–59).[4] Despite Centripetal's contrary assertion, there is no requirement that such evidence ***independently*** qualify as prior art. *Daedalus*, 2023 WL 5941736, at *10 (holding that a party may "properly rel[y] on confidential source code" and other "non-public" documents to demonstrate the functionality of a prior-art system).

Indeed, it is commonplace for defendants to rely on ***non-public*** documents obtained through discovery from the developer of a prior-art system, as PAN did here with respect to documents from Zoho Corporation.[5] And though such documents would not themselves qualify as prior art—because they were not publicly available during the relevant timeframe[6]—they may nonetheless be relied upon to demonstrate the functionality of a prior-art system. *See*, *e.g.*, *Daedalus*, 2023 WL 5941736, at *10 (noting numerous decisions holding that parties may properly rely on "non-public" or "otherwise confidential information" to demonstrate how a prior-art

---

[4] *See also Art+Com Innovationpool GmbH v. Google LLC*, 712 F. App'x 976, 981 (Fed. Cir. 2017) (finding testimony about a prior art system based on video and documentary evidence sufficient to prove invalidity); *CEATS, Inc. v. Continental Airlines, Inc.*, 526 F. App'x 966, 969–72 (Fed. Cir. 2013) (similar); *Fujifilm Corp. v. Motorola Mobility LLC*, 182 F. Supp. 3d 1014, 1028 (N.D. Cal. 2016) ("Materials other than the invalidating device itself may provide substantial evidence of the device's functionality for the purposes of proving invalidity."); *Finjan, Inc. v. Symantec Corp.*, No. 10-CV-593, 2013 WL 5302560, at *12 (D. Del. Spt. 19, 2013), *aff'd*, 557 F. App'x 999 (Fed. Cir. 2014) (when relying on system prior art, the operation of the system "may be established by any relevant evidence, such as memoranda, drawings, correspondence, and testimony of witnesses").

[5] *See* Dkt. 523 at 7–9 (explaining the types of materials on which PAN relied to demonstrate the functionality of the prior-art ManageEngine System).

[6] *See Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006) (whether a given document qualifies as a prior art "'printed publication' depends on whether it was 'publicly accessible'" during the relevant timeframe) (quoting *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)).

system operates). Accordingly, Centripetal's argument concerning the purported inadequacy of the documents PAN relied on to demonstrate the functionality of the prior-art ManageEngine System fails.[7]

Centripetal next argues that to the extent the documents concerning the prior-art ManageEngine System do qualify as prior art "printed publications," PAN was estopped from using them in its invalidity defenses concerning the '903 patent. Dkt. 984 at 8–9; *see also id.* at 11–12. That argument is wrong on both the facts and the relevant legal standard. Centripetal incorrectly implies that any material that has been memorialized in a document, website, or video qualifies as a "printed publication." *See* Dkt. 984 at 8–9 (conclusorily alleging that the materials PAN relied on are "printed publications"). Again, that is not the law. Whether a reference qualifies as a prior art "printed publication" turns primarily on "whether it was 'publicly accessible'" during the relevant timeframe. *See Bruckelmyer v. Ground Heaters, Inc.*, 445 F.3d 1374, 1378 (Fed. Cir. 2006) (quoting *In re Wyer*, 655 F.2d 221, 226 (C.C.P.A. 1981)). Here, Centripetal has the burden of proving that statutory estoppel applies, and it has not met that burden because it has not established that the materials on which PAN relied qualified as "printed publications" under the law. *See Ironburg Inventions Ltd. v. Valve Corp.*, 64 F.4th 1274, 1299 (Fed. Cir. 2023) ("the party asserting and seeking to benefit from . . . IPR estoppel" bears the burden of proving that it applies).

Regardless, "reliance on some printed publications in an overall collection of documents used to describe a system invalidity theory" does ***not*** give rise to "estoppel of the system invalidity theory itself," nor does it warrant "the piecemeal exclusion of the printed publications underlying

---

[7] Centripetal also conclusorily asserts that PAN's invalidity defenses concerning the ManageEngine System are baseless because if PAN viewed documents relating to that system as "viable," "PAN would have raised [them] at the PTAB under a lower standard." Dkt. 984 at 11. Notably, however, Centripetal does not cite any authority to support that assertion.

the system invalidity theory." *SPEX Techs. Inc. v. Kingston Tech. Corp.*, No. 16-CV-1790, 2020 WL 4342254, at *15 (C.D. Cal. June 16, 2020); *see also SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 604 (D. Mass. 2018) (declining to apply estoppel to defendant's system invalidity theory where defendant relied on documentation describing the system rather than a physical embodiment of the system). Put another way, reliance on documentary evidence of a prior-art system's functionality does not transform the invalidity theory into one premised on printed-publication prior art and thus cause that system-based theory to be subject to estoppel. *See* Dkt. 523 at 7–11 (PAN Opp. to Centripetal MSJ).

The cases Centripetal cites are not to the contrary. *See* Dkt. 984 at 11–12.  In *Milwaukee Electric Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990 (E.D. Wis. 2017), the court did not—as Centripetal contends—hold that statutory estoppel bars a defendant who has filed an IPR petition from relying on documentary evidence, rather than a physical sample, to demonstrate the functionality of a prior-art system. *See* Dkt. 984 at 12. Rather, the court simply held that a defendant "cannot skirt" estoppel by repackaging references that legally qualify as prior-art printed publications as part of a system-based invalidity theory. *Milwaukee Elec.*, 271 F. Supp. 3d at 1031–32. But that was not PAN's invalidity theory. *See* Dkt. Dkt. 523 at 7-9 (explaining that PAN relied on witness testimony, documents, and videos to demonstrate the functionality of the prior-art ManageEngine System). Further, the *Milwaukee Electric* court held that the defendant was ***not*** estopped from relying on materials not shown to be "printed publications," either because they were not publicly available or not locatable through a reasonably diligent search. *Milwaukee Elec.*, 271 F. Supp. 3d at 1031–32. Thus, *Milwaukee Electric* does not support Centripetal's argument.

In *Cobalt Boats, LLC v. Sea Ray Boats, Inc.*, No. 2:15-CV-21-HCM, 2017 2605977 (E.D. Va. June 5, 2017), contrary to Centripetal's implication, the court did ***not*** hold that estoppel barred

the defendant from relying on product manuals as part of a system-based invalidity theory. *See* Dkt. 984 at 11–12. Though the court addressed whether the product manuals at issue were reasonably available to the interested public, and thus would qualify as "printed publications," it expressly deferred ruling on whether estoppel applies to such documents as part of a system-based invalidity theory. *Cobalt*, 2017 2605977, at *3–4 ("the Court DEFERS RULING on the admissibility of references involving prior art products"). The court explained that, while there may be circumstances where estoppel applies to product manuals that qualify as printed publications—such as when a defendant is "using a tenuous connection to a product to avoid estoppel"—there are other circumstances when a defendant will "have valid arguments for admissibility" of such documents. *Id.* at *3.

In *Parallel Networks Licensing, LLC v. International Business Machines Corp.*, No. 13-2072 (KAJ), 2017 WL 1045912, at * 11 (D. Del. Feb. 22, 2017), the court did not address whether estoppel bars the use of product documentation to demonstrate the functionality of a prior-art system as part of a system-based invalidity defense. Rather, the issue before the court was whether the defendant was estopped from relying on publicly available documents as part of a printed-publication-based invalidity theory. *Id.* Unremarkably, the court held that the defendant was estopped from presenting printed-publication-based invalidity theories, because it could have raised those in its IPR petition. *Id.* Thus, contrary to Centripetal's assertion, Dkt. 984 at 12, *Parallel Networks* is inapplicable because it does not address whether estoppel has any role in a system-based invalidity theory.

Finally, the decision in *Wasica Financial GmbH v. Schrader International, Inc.*, 432 F. Supp. 3d 448 (D. Del. 2020) is also inapposite. There, the court found that estoppel barred the defendant from presenting a system-based invalidity theory because that theory was "entirely

cumulative" of a printed publication that the parties agreed "discloses all the relevant features of the [prior-art system]." *Id.* at 453. As that article "reasonably could have been raised during the IPR," the court found that defendant was estopped from relying on the "materially identical" system in the district court. *Id.* at 454. Here, the circumstances are markedly different from *Wasica*, as PAN's system-based invalidity theory was not premised on a single document, and there is no single document that Centripetal agrees discloses all the relevant features of the ManageEngine System. *See* Dkt. 523 (PAN Opp. to Centripetal MSJ) at 10–11. Moreoover, subsequent decisions from the District of Delaware and other courts have rejected *Wasica*'s reasoning. *See*, *e.g.*, *Prolitec Inc. v. Scentair Techs, Inc.*, No. 20-984, 2023 WL 8697973, at *22–23 (D. Del. Dec. 13, 2023) (Circuit Judge Bryson, sitting by designation) (holding that "IPR estoppel does not apply to device art, even when that device art is cumulative of patents and printed publications that were or could have been asserted in a prior IPR").[8]

Therefore, Centripetal has failed to identify any basis to find that PAN's anticipation and obviousness defenses concerning the '903 patent were anything but reasonable.

### 2. PAN's Anticipation And Obviousness Defenses Concerning The '573 And '797 Patents Were Not Previously Considered By The PTAB.

As to the '573 and '797 patents, Centripetal argues that PAN's invalidity defenses had already been "rejected" by the PTAB. Dkt. 984 at 12–16. That argument fails for several reasons. First, Centripetal overstates the import of a denial of institution by the PTAB. It is **not** a determination that the challenged patent is valid in light of the asserted prior art, as Centripetal

---

[8] *See also EIS, Inc. v. IntiHealth Ger GmbH*, No. 19-1227, 2023 WL 6797905, at *5–6 (D. Del. Aug. 30, 2023) (rejecting the reasoning in *Wasica* and holding that IPR estoppel does not apply to such device art); *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, No. 17-1612, 2022 WL 2643517, at *2 (D. Del. July 8, 2022) (same); *Singular Computing LLC v. Google LLC*, No. 19-12551, 2023 WL 2839282 (D. Mass. Apr. 6, 2023) (same); *Willis Elec. Co. v. Polygroup Macau Ltd.*, 649 F. Supp. 3d 780, 813–15 (D. Minn. 2023) (same)

incorrectly asserts. *See* Dkt. 984 at 12 n.3. Rather, it is a preliminary determination[9] that the specific arguments and evidence presented in the IPR petition are insufficient to persuade the PTAB that there is a "reasonable likelihood that the petitioner would prevail" on the arguments presented in the petition. 35 U.S.C. § 314(a); *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016) ("At [institution], the Board is considering the matter preliminarily without the benefit of a full record."). Thus, the PTAB's decision to deny institution of an IPR does not preclude a defendant from successfully invalidating a patent using the same prior art in district court litigation, and Centripetal cites no case law to the contrary.[10]

Second, PAN's anticipation and obviousness defenses concerning the '573 and '797 patents are ***not***, as Centripetal contends, premised on "the same art and arguments" considered by the PTAB. *See* Dkt. 984 at 12. Rather, PAN asserted additional references and combinations beyond those asserted in the IPR/PGR petitions. *See* Dkt. 523 at 24. In addition, for the prior art combinations that were asserted in the IPR/PGR petitions, PAN adduced evidence not presented to the PTAB, including the opinions of Dr. Nielson (PAN's expert) and the admissions of Dr. Goodrich (Centripetal's expert). *See* Dkt. 523 (PAN's Opp. to Centripetal MSJ) at 17–18, 20–21. In particular, Dr. Nielson addressed the alleged deficiencies in PAN's IPR arguments that the

---

[9] Such decisions are made without the benefit of full briefing and a hearing on the merits. *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016) ("At [institution], the Board is considering the matter preliminarily without the benefit of a full record.").

[10] In the single case cited to support this argument, Centripetal mischaracterizes the holding. *See* Dkt. 984 at 13 (citing *Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2014 WL 12656554, at *10–11 (S.D. Ohio July 3, 2014)). The court's decision to grant plaintiff's partial motion for judgment of no invalidity was not premised on the PTAB's decision not to institute IPR, as Centripetal incorrectly contends. Instead, it was premised on the court's independent, detailed analysis of defendant's evidence that the prior art inherently disclosed certain claim elements. *Procter & Gamble*, 2014 WL 12656554, at *6–10 (independently analyzing the evidence and concluding that each of the asserted references failed to inherently disclose the relevant claim elements). The court then observed that the PTAB had declined to institute IPR based on the same evidentiary deficiencies that the court independently identified. *Id.* at *10–11.

PTAB noted in its decisions declining to institute, including explaining "how the relationship between Paxton's asserted correlation and Sutton's asserted rule generation would have been the same as the relationship contemplated by the claims." Dkt. 984 at 14; *see*, *e.g.*, Ex. 3 at ¶¶ 1101–1108. That additional explanation was not considered by the PTAB.[11]

Third, in its MSJ of no invalidity, Centripetal did not dispute that PAN's asserted prior art taught or suggested each element of the asserted claims of the '573 and '797 Patents. Dkt. 523 at 16–17. That alone demonstrates that PAN's invalidity defenses for those patents are not baseless. Further evidencing the merit of PAN's invalidity defenses, the USPTO has granted *ex parte* reexaminations on both the '573 and '797 patents, finding that the combination of McDonald and Wicherski[12]—which PAN asserted in this litigation—presents a Substantial New Question of Patentability. Exs. 4–5.

In sum, Centripetal has not identified any basis to find that PAN's anticipation and obviousness defenses concerning the '573 and '797 patents were baseless or unreasonable.

### B.    PAN's Withdrawal Of Its Anticipation and Obviousness Defenses Was A Reasonable, Good-Faith Effort To Narrow The Issues For Trial.

Centripetal's efforts to recast PAN's reasonable decision to withdraw its anticipation and obviousness defenses in order to narrow the issues do not hold water. Dkt. 984 at 7. Centripetal's argument that PAN's conduct was somehow "egregious" rests primarily on its assertion that PAN's anticipation and obviousness defenses were baseless—a contention refuted above. *See supra* Section I.A.

---

[11] Dr. Nielson did not submit an expert declaration in support of any of PAN's IPR petitions.

[12] Centripetal argues that the addition of Wicherski—which was not presented in the IPR/PTAB petitions—was "objectively weak and not colorable." Dkt. 984 at 14. The institution of *ex parte* reexamination on the basis of that reference demonstrates otherwise.

Centripetal also attacks the timing of PAN's decision to withdraw its defenses. Dkt. 984 at 7–8. It is well-settled, however, that a litigant's decision to drop a claim or defense is not itself "evidence of vexatious activity" that warrants an exceptional case finding. *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547, 1551 (Fed. Cir. 1989); *see also Chrimar Holding Co., LLC v. ALE USA Inc.*, 732 Fed. Appx. 876, (Fed. Cir. 2018) (affirming district court finding that defendant's pursuit of "a large number of defenses and counterclaims for years, only to drop most of them . . . late in the litigation, even during trial," did not render the case exceptional, but instead "fell within the range of ordinary practices involving the narrowing of claims for trial"). Indeed, the single case Centripetal cites to support its argument acknowledges that dropping a claim or defense is not itself "evidence of vexatious activity," though "a pattern of raising and discarding claims or defenses" may rise to that level. *Saint-Gobain Autover U.S.A., Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 752 n.9 (N.D. Ohio 2010).

Centripetal incorrectly implies that the exceptional-case finding in *Saint-Gobain* was premised on the fact that the defendant withdrew its invalidity defense "immediately prior to trial." Dkt. 984 at 8. To the contrary, the court explained that its exceptional-case finding was premised on "both the jury's finding of willfulness and Defendant's litigation misconduct," which included a pattern of raising and discarding defenses. *Saint-Gobain*, 707 F. Supp. 2d at 757. In particular, the court cited the defendant's repeated efforts to pursue an obviousness defense after failing to respond to discovery requests on that defense, attempting to raise in a summary judgment motion a non-enablement defense it had not properly pled, and dropping its anticipation and indefiniteness defenses "immediately prior to trial." *Id.* at 751–752.

Unlike in *Saint-Gobain*, here the jury did not find willfulness, and PAN did ***not*** engage in a pattern of raising and discarding defenses. Rather, PAN timely pled its invalidity defenses,

developed them as the case progressed, and then elected in good faith to withdraw them in an effort to narrow the issues for trial. As the Court is no doubt aware, the anticipated constraints of trial frequently cause parties to narrow their claims and defenses shortly before trial. Notably, not just PAN engaged in pre-trial narrowing. Centripetal significantly narrowed its infringement claims the night before trial and further narrowed them during trial.[13] *See* DeBrow Decl. at ¶¶10–15; Dkt. 686 (Joint Proposed Final Pretrial Order ) at 20–22 (listing accused products and product combinations for the Correlation Patents); Ex. 6 (Centripetal's Opening Demonstratives) at 14-16, 17-18 (narrowed listing of accused products and product combinations); Dkt. 851 (Jury Verdict) at 2–3 (further narrowed listing of accused products and product combinations). PAN's decision to withdraw its anticipation and obviousness defenses and narrow the issues for trial was typical trial conduct, not exceptional. *Chrimar*, 732 Fed. Appx. at 891 (affirming district court finding that dropping claims and defenses "late in the litigation, even during trial" does not render a case exceptional, as it "[falls] within the range of ordinary practices involving the narrowing of claims for trial").

## II.     PAN's Patent-Ineligibility Defenses Were Reasonable and Well-Founded.

Centripetal's arguments regarding PAN's § 101 patent-ineligibility defenses are without merit. Centripetal overlooks the critical fact that the ITC previously found the claims of the related '370 patent ineligible under § 101. *See In re Certain Comput. Network Sec. Equip. & Sys., Related Software, Components Thereof, & Prods. Containing Same* ("*Certain Computer Network Security*

---

[13] To the extent Centripetal argues that its conduct is not relevant, the Federal Circuit has held otherwise. *Romag Fasteners, Inc. v. Fossil, Inc.*, 866 F.3d 1330, 1340 (Fed. Cir. 2017) (holding that "the totality of the circumstances" "includes the conduct of the prevailing party that is seeking attorney's fees") (citing *Gaymar Indus. V. Cincinnati Sub-Zero Prods., Inc.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015); *Power Mosfet Techs., LLC v. Siemens AG*, 378 F.3d 1396, 1415 (Fed. Cir. 2004).

*Equipment*"), USITC Inv. No. 337-TA-1314, 2023 WL 5744218, at *66–80 (Aug. 8, 2023).[14] As PAN explained in its Rule 12(c) Motion—and Centripetal did not dispute—the claims of the Correlation Patents are materially the same as the claims of the '370 patent that the ITC found ineligible. Dkt. 456 at 3–4, 11–24; Dkt. 560 at 1. Consistent with PAN's § 101 defenses, the ALJ found that the claims of the '370 patent are directed to the abstract idea of collecting information, analyzing information (through correlation), and communicating the results. *Certain Computer Network Security Equipment*, 2023 WL 5744218, at *75 (Aug. 8, 2023). Also consistent with PAN's § 101 defenses, the ALJ found that the claims of the '370 patent lack an "inventive concept" sufficient to transform the claims into patent eligible subject matter. *Id.* at 76–80. The ITC decision alone demonstrates that PAN's § 101 defenses were reasonable and well-founded. That conclusion is bolstered by the fact that the Court denied Centripetal's motion for summary judgment of no-ineligibility under § 101. Dkt. 792 at 1 n.2 ("Centripetal moved for summary judgment of no invalidity under 35 U.S.C. § 101 related to the [Correlation Patents]," and that motion was denied on the basis that "the Court found genuine issues of material fact existed").

Centripetal attacks PAN's § 101 defenses by arguing that PAN's expert, Dr. Nielson, failed to "address[ ] each claim element individually and as an ordered combination" and identify "[a] reference that taught an action taken 'responsive to' or 'based on' the claimed correlation." Dkt. 984 at 16–17. To the contrary, Dr. Nielson testified that "the claim elements of the correlation patents involve only technology which a person of ordinary skill in the art would have understood as well-understood, routine, and conventional" and specifically affirmed that his testimony was

---

[14] *See* Dkt. 642 (PAN's Notice of Supplemental Authority explaining that the ALJ's Initial Determination (cited above) was affirmed by the ITC on Dec. 5, 2023) (citing *In re Certain Computer Network Security Equipment And Systems, Related Software, Components Thereof, and Products Containing Same*, No. 337-TA-1314, 2023 WL 8520578 (ITC. Dec. 5, 2023)).

premised on consideration of the claim elements "both individually and within each claim as an ordered combination." Trial Tr. at 1573:2–18, 1575:22–1576:20.[15] Regardless, merely identifying purported weaknesses in PAN's § 101 defenses is not sufficient to demonstrate that they were baseless. *See*, *e.g.*, *DietGoal Innovations, LLC v. Wegmans Food Markets, Inc.*, 126 F. Supp. 3d 680, 687 (E.D. Va. 2015) (rejecting argument that case should be found exceptional based on alleged defects in expert's opinions); *Packet Intelligence LLC v. NetScout Systems, Inc.*, No. 2:16-CV-230, 2019 WL 1642714, *2–3 (E.D. Tex. Apr. 15, 2019) (rejecting argument that case should be found exceptional based on allegedly weak evidence for certain defenses).

Centripetal next argues that PAN's litigation of its § 101 defenses was unreasonable in light of (i) a purported lack of support for certain arguments in PAN's post-trial motions, (ii) purported inconsistencies between PAN's pre- and post-trial positions, and (iii) the timing of PAN's Rule 12(c) motion. Dkt. 984 at 17–18. Each of these arguments is unavailing. As to (i), Centripetal's assertion that the Court "pointed out that many of PAN's arguments lacked support in the law or record" is an exaggeration. *See* Dkt. 984 at 18. Centripetal identifies a single instance in which the Court stated that PAN "provided no rule or binding precedent" to support an argument relating to its § 101 defenses. *Id.* at 18 (citing Dkt. 970 at 12). That the Court was not persuaded by the authority PAN cited to support that argument[16] does not render PAN's position unreasonable, nor is it a basis to find the case exceptional.

---

[15] *See also* Trial Tr. at 1576:21–1580:10 (Dr. Nielson explaining his analysis and opinions concerning hardware elements of the claims); Trial Tr. at 1580:11–1591:15 (Dr. Nielson explaining his analysis and opinions concerning the functional elements of the claims, including the "based on" and "responsive to" elements); Trial Tr. at 1591:16–1593:19 (Dr. Nielson explaining his analysis and opinions concerning the claim elements as ordered combinations).

[16] *See* Dkt. 907 at 20–21 (citing Supreme Court and Federal Circuit decisions supportive of PAN's argument that the court can resolve questions of § 101 patent-eligibility as a matter of law).

As to (ii), Centripetal argues that PAN took inconsistent positions by objecting to sending § 101 patent-eligibility issues to the jury,[17] while also proposing jury instructions and verdict form questions on those issues. Dkt. 984 at 18. But there is nothing inconsistent or unreasonable about arguing alternative positions. It was proper for PAN to propose jury instructions and verdict form questions regarding the § 101 determination to present its position and preserve its rights in the event those issues were sent to the jury over PAN's objection, as ultimately occurred.

As to the articulation of the abstract idea to which the Correlation Patents are directed (Dkt. 984 at 18–19), PAN's arguments have remained consistent throughout the case. In its Rule 12(c) motion, PAN argued that the claims "are directed to the abstract idea of collecting and analyzing information ('correlating' data) and presenting the results" of that analysis. Dkt. 456 at 2. Though PAN's post-trial motion for JMOL used slightly different phrasing—describing the abstract idea as "collecting and correlating (*i.e.*, analyzing) information and generating a result based on the correlation"—the substance remained the same. Dkt. 901 at 2.

The same is true for the portion of PAN's motion for JMOL characterizing the claimed abstract ideas as "collecting packet-related information, correlating it to identify the source of the packets, and generating rules based on the correlation." Dkt. 901 at 6. Describing the final step as "generating rules" rather than "generating a result" does not reflect a shift in PAN's § 101 arguments. PAN has consistently acknowledged that certain claims recite generating rules as a result of correlation and argued that those claim elements are abstract because "[t]he claims provide no technical or programming detail for how the claimed 'correlation' . . . results in [generating] rules for identifying packets." *See* Dkt. 456 at 14–15; Dkt. 901 at 3–4. The fact that

---

[17] *See* Dkt. 862 (Hearing Tr. Jan. 16, 2024) at 25:4–28:22 (PAN's counsel stating its position "that the best way to handle [the § 101 issues] would be to have the 101 factual issues tried to the Court as opposed to the jury").

PAN's briefing on the § 101 issues has focused on different aspects of the abstract ideas as the case has progressed does not reflect gamesmanship, but rather a reasonable effort to rebut Centripetal's arguments in favor of patent eligibility.

As to (iii), Centripetal argues that PAN acted unreasonably by filing its Rule 12(c) motion on the deadline for filing dispositive motions.[18] Dkt. 984 at 18–19. Centripetal raised the same argument in opposition to PAN's Rule 12(c) motion, requesting that the Court deny PAN's motion based on a purported violation of the Local Rules. Dkt. 526 at 9–10. The Court made no such finding; instead, the Court considered and orally ruled on the motion. Dkt. 712 (Hearing Tr. Jan. 4, 2024) at 60:20–66:1. As PAN's counsel explained during the January 4, 2024 hearing, the timing of PAN's filing was not driven by gamesmanship, but rather a desire to wait for claim construction, which often bears on patent-eligibility determinations, and for Centripetal to sufficiently narrow its claims so that PAN was not "trying to hit a moving target." *Id.* at 59:10–24; *see also* Dkt. 560 at 2–3. Further, Rule 12(c) provides that a party may move for judgment on the pleadings "[a]fter the pleadings are closed," but must do so "early enough not to delay trial." Fed. R. Civ. P. 12(c). Centripetal's motion does not deny that PAN complied with that requirement, nor that PAN's filing complied with the Court's timetable for dispositive motions. *See* Dkt. 560 at 2–3. PAN's decision to file its motion once Centripetal narrowed the asserted claims was reasonable and in compliance with the Court's scheduling order.

---

[18] To the extent Centripetal contends that a Rule 12(c) motion was an improper vehicle to pursue PAN's § 101 defenses, that argument fails. Patentability under 35 U.S.C. § 101 "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion." *SAP Am. Inc. v. Investpic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018); *see also*, *e.g.*, *Geoscope Techs. PTE. Ltd. v. Google LLC*, No. 1:22-CV-1331, 2023 WL 6120603, at *5 (E.D. Va. Sept. 18, 2023), *appeal pending* No. 24-1003 (Fed Cir. Oct. 2, 2023) (granting Rule 12(c) motion and invalidating as ineligible claims directed to "providing a database, collecting data, modifying the collected data, and comparing the modified data against the database to determine a location of a mobile device").

### III. PAN Acted Reasonably And In Good Faith In Objecting To Centripetal's Efforts To Seek Duplicative Depositions.

Centripetal first attacks the timing of PAN's objections to the noticed depositions as allegedly being too near the close of fact discovery. Centripetal omits the fact that, with one exception,[19] the deposition notices to which PAN objected were not served until mid-July 2023,[20] and Centripetal did not request deposition dates before serving those notices, Dkt. 380 at 2–3. PAN notified Centripetal of its objections within days of the mid-July service of Centripetal's deposition notices. Dkt. 380-17 (July 20, 2023 letter objecting to noticed depositions). Thus, the timing of PAN's objections, its subsequent motion for protective order, and the Court's decision thereon, all resulted from the timing by which Centripetal noticed the depositions, not any "dilatory conduct" on PAN's part. Dkt. 984 at 21.

Centripetal next argues that it was unreasonable for PAN to object at all because "PAN did not dispute that the witnesses had relevant knowledge." Dkt. 984 at 20. Centripetal again omits key facts. Centripetal sought 30(b)(1) depositions from eighteen (18) current or former PAN employees. Dkt. 380 at 2. PAN objected to a subset of those depositions as unduly burdensome, as they were duplicative of and covered by Centripetal's noticed 30(b)(6) deposition topics and other noticed 30(b)(1) depositions. *Id.* at 3–4. Those objections were reasonable in light of the factual, procedural and financial aspects of this case, as well as the relevant authority. *Id.* (citing *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543–44 (4th Cir. 2004) (affirming entry of a protective order denying a deposition deemed to be "cumulative and duplicative, unduly burdensome, and harassing")).

---

[19] Centripetal served a deposition notice for Danny Cohen before the stay and requested deposition dates for Mr. Cohen shortly after the stay was lifted on June 2, 2023.
[20] *See* Dkt. 380-10; Dkt. 380-11; Dkt. 380-12; Dkt. 380-13; Dkt. 380-14; Dkt. 380-15; Dkt. 380-16.

The fact that the Court ultimately sided with Centripetal and permitted the depositions does not make PAN's position unreasonable. *See*, *e.g.*, *Stragent*, 2014 WL 6756304, at *4 (Circuit Judge Dyk, sitting by designation) ("the mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-912, 2020 WL 1478396, at *4 (E.D. Tex. Mar. 26, 2020) (rejecting argument that losing an objection indicates that its pursuit was "vexatious and improper"). Notably, the Court did not award costs and fees against PAN, as Federal Rule 37 permits.

Further, at trial Centripetal presented testimony from only one of the seven depositions that were the subject of the Court's order—the deposition of Mr. Danny Cohen. Centripetal presented less than 8 minutes of Mr. Cohen's deposition testimony, which related to functionality of certain features of the accused Cortex products. Trial Tr. at 468:5-10; Dkt. 860-1 at 25-30. The functionality of the Cortex products was also covered by Mr. Nir Zuk, who was PAN's 30(b)(6) witness on topics concerning the functionality of those products. *See* Dkt. 860-1 at 8-24. This limited use of testimony demonstrates the reasonableness of PAN's position that those seven depositions were cumulative.

Finally, Centripetal complains that PAN objected without "providing dates for the witnesses." Dkt. 984 at 20. That argument falls flat, as Centripetal effectively asserts that the only reasonable course of action would have been for PAN to waive its objections and agree to the depositions. PAN's conduct with respect to its objections was entirely reasonable. PAN complied with the Federal and Local Rules in conveying its objections and meeting and conferring extensively with Centripetal in an effort to resolve things before seeking relief from the Court. *See* Dkt. 380 at 2–3.

The single case cited by Centripetal involved significantly different circumstances. In *Fleming v. Escort, Inc.*, No. 1:09-CV-105-BLW, 2014 WL 713532, at *2 (D. Idaho Feb. 21, 2014), the court found the case exceptional based on (i) "numerous discovery disputes caused by [defendant's] meritless refusals to turn over discoverable information," (ii) defendant's repeated "attempts to add 286 new patent invalidity contentions [to the case] over 18 months after the deadline for those to be exchanged," (iii) defendant "vehement[ly] object[ing] to turning over sensitive trade secrets in discovery," but "later allow[ing] those same 'secrets' to be public[ly] disclosed at trial." Here, in contrast, Centripetal points to one discovery dispute in which PAN took a reasonable and legally supported position. That does not support finding this case exceptional, particularly when considered within the broader context of the litigation.

## IV.    Centripetal's Motion Falls Far Short Of Demonstrating The Type Of Egregious Trial Conduct That Would Support An Exceptional-Case Finding.

The two instances of trial conduct on which Centripetal relies are not misconduct at all, and do not remotely approach the type of egregious behavior that would support an exceptional-case finding. First, Centripetal contends that PAN's "decision to present General John Davis as a witness during its case-in-chief" "wasted . . . time" and "had no relevance to any issue in the case." Dkt. 984 at 22–23. But As Centripetal acknowledges in its motion, PAN presented General Davis in its case-in-chief to provide context for the "kind of company [PAN] is, and what [PAN] does," which is an entirely proper purpose. Dkt. 984 at 22–23 (citing Trial Tr. 1530:24–1531:4). Indeed, Centripetal presented witnesses in its case-in-chief that offered similar context as to Centripetal's history and operation. *See*, *e.g.*, Trial Tr. at 176:8-183:1 (testimony of Steven Rogers); *id.* at 338:8-339:9, 341:21-352:19 (testimony of Jonathan Rogers). When considered in light of the totality of the circumstances of this litigation, the testimony of a single witness that accounted for less than

thirty (30) minutes of trial time (including direct, cross, and objections) across an eight (8) day trial falls far short of the type of pervasive misconduct that warrants finding a case exceptional.

Centripetal's cited cases involve very different circumstances. In *Tinnus Enterprises, LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704, 745–46 (E.D. Tex. 2019), the court found the case exceptional based on a willfulness finding in conjunction with a laundry-list of bad behavior, including "flagrantly and continuously violating motions *in limine* and sustained objections." Centripetal makes no allegation that General Davis's direct examination violated motions *in limine* or sustained objections, nor was it objectively unreasonable conduct.

In *NTP Inc. v. Research in Motion, Ltd.*, 270 F. Supp. 2d 751, 758, 761 (E.D. Va. 2003), the court found the case exceptional based on "a variety of questionable litigation tactics throughout the course of the action," including dilatory production of documents, improperly challenging claim construction rulings through motions for summary judgment and expert testimony, and "attempt[ing] to confuse and mislead the jury" by demonstrating a prior art system, but with updated software that "did not exist at the time the system was used." Centripetal makes no allegation that General Davis's direct examination risked confusing and misleading the jury or that it was inconsistent with the Court's claim construction rulings.

That Centripetal successfully objected to certain aspects of General Davis's testimony does not carry the day, as there is no indication PAN acted in bad faith by presenting General Davis. *See*, *e.g.*, *Stragent*, 2014 WL 6756304, at *4 (Circuit Judge Dyk, sitting by designation) ("the mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith"); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-912, 2020 WL 1478396, at *4 (E.D. Tex. Mar. 26, 2020) (rejecting argument that losing an objection indicates that its pursuit was "vexatious and improper").

Second, Centripetal argues that PAN engaged in misconduct by "attempt[ing] to improperly cross-examine Mr. Malackowski . . . in violation of a motion *in limine*." Dkt. 984 at 24 (citing Dkt. 970 at 39–40). But Centripetal cites no authority that supports finding this case exceptional on the basis of that limited aspect of PAN's cross-examination of Mr. Malackowski. Unlike the defendant in *Tinnus*, PAN did not "flagrantly and continuously violat[e] motions *in limine* and sustained objections." 369 F. Supp. 3d at 745–46. Rather, as occurs in hard fought trials, PAN reasonably sought to challenge aspects of Mr. Malackowski's testimony, Centripetal objected, and the Court ruled in Centripetal's favor. *See Core Wireless*, 2020 WL 1478396, at *4 (rejecting argument that losing an objection indicates that its pursuit was "vexatious and improper").

The trial-conduct grounds of Centripetal's motion fall far short of proving the type of egregious or sustained misconduct that would support an exceptional-case finding.

## V.    PAN Acted Reasonably In Raising Its Objections To Centripetal's Damages Evidence And Taking The Steps Necessary To Preserve Those Issues For Appeal.

Centripetal argues that this case should be found exceptional because PAN purportedly "attempted to exclude the same Centripetal damages evidence by filing various different types of repetitive motions that ultimately sought the same outcome." Dkt. 984 at 23–24. Yet PAN filed only those motions necessary to preserve PAN's objections for this Court's post-trial consideration and for appellate review.[21]

---

[21] It bears mention that Centripetal's damages theories and amounts were a moving target throughout the litigation. For example, Centripetal's damages expert offered four iterations of damages calculations. Mr. Malackowski first opined that Centripetal was entitled to a reasonable royalty calculation up to $534 million. Dkt. 485-1 at 9. To arrive at this amount, Mr. Malackowski applied various undisclosed filters to PAN's sales data. *Id*. at 60. Mr. Malackowski then submitted a commercial success report in which he purportedly applied different filters and offered a different calculation of PAN's Accused Product revenue. Dkt. 485-23 at 4–5. Mr. Malackowski offered yet another Accused Product revenue calculation in his reply damages report, reducing his reasonable

PAN's motion to exclude with respect to the opinions of Mr. Malackowski (Dkt. 485) was referred to and decided by Magistrate Judge Leonard, who noted legitimate issues with Mr. Malackowski's opinions, but recommended he be permitted to testify. *See* Dkt. 714 at 7–8, 10, 14–16, 17–18. Federal Rule 72(a) required PAN to file objections to Magistrate Judge Leonard's order (Dkt. 754). *See* Fed. R. Civ. P. 72(a). Post-trial, Federal Rule 59 required PAN to again contend that Mr. Malackowski's opinions should have been excluded in its Motion For New Trial (Dkt. 908). *See* Fed. R. Civ. P. 59.

As to PAN's motions for JMOL, in order to preserve its arguments as to the evidentiary deficiencies in Centripetal's damages case, PAN was required under Federal Rule 50(a) to file a motion for JMOL before the case was submitted to the jury (Dkt. 820; Dkt. 849) and, if not granted, renew the motion under Rule 50(b) after the jury verdict (Dkt. 902).

The other filing Centripetal alleges was "repetitive" is PAN's motion *in limine* No. 3 (Dkt. 631-1 at 4–9). But Centripetal's assertion that this motion was unnecessarily duplicative of PAN's motion to exclude the opinions of Mr. Malackowski is unavailing, as PAN's motion *in limine* was directed not just to the testimony of Mr. Malackowski concerning the Keysight Term Sheet, but to any testimony or evidence concerning the Keysight or Cisco litigations. Dkt. 631-1 at 4–9. Centripetal suggests it was unreasonable for PAN to again object to the admission of the Keysight Term Sheet as an exhibit, *see* Dkt. 862 (Jan. 16, 2024 Hrg. Tr.) at 65:25–66:21, but this is another instance in which PAN made its objections on the record in order to ensure their preservation.

---

royalty calculation to $471 million. Dkt. 485-2 at 3; *id*. at Ex. 3.1-R. Finally, because Mr. Malackowski did not at any point provide a reasonable royalty calculation on a patent-by-patent basis, he offered an entirely new reasonable royalty calculation at trial, after the Court granted PAN summary judgment of no infringement as to the '380 patent. *See* Trial Tr. at 1141:12-20.

Centripetal cites no authority to support an exceptional case finding based on efforts to preserve positions for further review. In *Trustees of Columbia University v. Gen Digital Inc.*, No. 3:13-CV-808, 2023 WL 8699435 (E.D. Va. Sept. 30, 2023), the alleged "relitigation of settled issues" was far different than the circumstances here. As opposed to properly preserving its objections, the defendant in *Trustees of Columbia* improperly "attempted to insert a back-door claim construction argument into its *Daubert* motion" and its opposition to plaintiff's *Daubert* motion. *Id.* at *12–13, *19. In addition, the defendant engaged in a host of other egregious behavior, such as "badly mischaracteriz[ing] the pertinent events" in briefing concerning a discovery dispute, and repeatedly "present[ing] witnesses with factually incorrect predicates when cross-examining [them]." *Id.*

The only other case Centripetal cites—*Cognex Corp. v. Microscan Systems, Inc.*, No. 13-CV-2027, 2014 WL 2989975, at *4 (S.D. N.Y. June 30, 2014)—fails to provide any context as to why the court viewed defendant's post-trial motions as an improper attempt to "re-litigate issues that had already been decided by [the] Court during trial." As explained above, the Federal Rules demand a certain amount of repetition in order for a party to preserve arguments and objections for review. *See, e.g.*, Fed. R. Civ. P. 50(a), 50(b), 59, 72(a). That necessary repetition does not render a case exceptional.

## VI.    PAN Reserves The Right To Respond As To The Reasonableness Of Centripetal's Requested Fees.

Consistent with Court's Order (Dkt. 990), PAN defers addressing the reasonableness of Centripetal's requested attorney and expert fees until after the Court decides whether a fee award is warranted.

Centripetal's motion should be denied, as the purportedly "exceptional" aspects of the case Centripetal identifies are just the opposite—they represent a good-faith, vigorous defense effort

against disputed claims of patent infringement. Such conduct cannot, as a matter of law, serve as the basis for a fee award under § 285. *Octane*, 572 U.S. at 554 (a case is not "exceptional" unless it "stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated").

Dated: October 31, 2024             Respectfully submitted,


By:  */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
**MCGUIREWOODS LLP**
World Trade Center
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510-1655
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com

Jonathan P. Harmon (VSB No. 39081)
David E. Finkelson (VSB No. 44059)
**MCGUIREWOODS LLP**
Gateway Plaza
800 East Canal Street
Richmond, VA 23219-3916
Telephone: (804) 775-1000
Facsimile: (804) 775-1061
E-mail: jharmon@mcguirewoods.com
E-mail: dfinkelson@mcguirewoods.com

Brett C. Govett (Admitted *Pro Hac Vice*)
James S. Renard (Admitted *Pro Hac Vice*)
**NORTON ROSE FULBRIGHT US LLP**
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201
Telephone: (214) 855-8000
brett.govett@nortonrosefulbright.com
james.renard@nortonrosefulbright.com

- 24 -

Richard S. Zembek (Admitted *Pro Hac Vice*)
Daniel S. Leventhal (Admitted *Pro Hac Vice*)
Daniel A. Prati (Admitted *Pro Hac Vice*)
**NORTON ROSE FULBRIGHT US LLP**
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
richard.zembek@nortonrosefulbright.com
daniel.leventhal@nortonrosefulbright.com
daniel.prati@nortonrosefulbright.com

Stephanie N. DeBrow (Admitted *Pro Hac Vice*)
Talbot R. Hansum (Admitted *Pro Hac Vice*)
**NORTON ROSE FULBRIGHT US LLP**
98 San Jacinto Boulevard, Suite 1100
Austin, Texas 78701
Telephone: (512) 474-5201
stephanie.debrow@nortonrosefulbright.com
talbot.hansum@nortonrosefulbright.com

Nathan Mannebach (Admitted Pro Hac Vice)
**NORTON ROSE FULBRIGHT US LLP**
60 South Sixth Street, Suite 3100
Minneapolis, MN 55402-1114
Telephone: (612) 321-2800
nathan.mannebach@nortonrosefulbright.com

James R. Batchelder (Admitted *Pro Hac Vice*)
Andrew T. Radsch (Admitted *Pro Hac Vice*)
**ROPES & GRAY LLP**
1900 University Avenue, 6th Floor East
Palo Alto, CA 94303
Telephone: (650) 617-4000
james.batchelder@ropesgray.com
andrew.radsch@ropesgray.com

***COUNSEL FOR PALO ALTO NETWORKS, INC.***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 31, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send notification of electronic filing to all counsel of record.

By:  */s/ Robert W. McFarland*
Robert W. McFarland (VSB No. 24021)
**MCGUIREWOODS LLP**
101 W. Main Street, Suite 9000
Norfolk, Virginia 23510
Telephone: (757) 640-3716
Facsimile: (757) 640-3966
E-mail: rmcfarland@mcguirewoods.com