**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | | |
|---|---|---|
| CENTRIPETAL NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-00137-EWH-LRL |
| | ) | |
| v. | ) | |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF CENTRIPETAL NETWORKS, LLC'S REPLY IN**
**SUPPORT OF ITS MOTION FOR PRE- AND POST-JUDGMENT INTEREST**

# **TABLE OF CONTENTS**

I.      INTRODUCTION ......................................................................................................... 1

II.     ARGUMENT .................................................................................................................. 2

        A.      Centripetal Should Be Awarded Prejudgment Interest As It Reasonably
                Brought This Lawsuit Once the Majority of Its Asserted Patents Issued ............... 2

                1.      Centripetal Diligently Pursued Its Patents Against PAN ............................ 2

                2.      In Successfully Obtaining a Stay of the Case that Delayed
                        Entering a Scheduling Order for Over Two Years, PAN
                        Represented That There Would Not Be Any Prejudice and That
                        the Stay Would Not Impact Centripetal's Damages ................................... 4

                3.      PAN Relies Upon Inapposite Case Law with Respect to
                        Prejudgment Interest ................................................................................. 8

        B.      Centripetal Should Be Awarded Prejudgment Interest as of the Date of
                First Infringement ................................................................................................. 9

        C.      The Court Should Award Pre-Judgment Interest at the Prime Rate .................... 12

        D.      Prejudgment Interest Should Not Be Prorated ..................................................... 14

        E.      Centripetal is Entitled to Post-Judgment Interest ................................................ 17

III.    CONCLUSION ............................................................................................................. 17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
  No. 2:10-cv-248, 2011 WL 4899922 (E.D. Va. Oct. 14, 2011),
  *aff'd*, 694 F.3d 1312 (Fed. Cir. 2012) ..................................................................7, 13

*Amgen Inc. v. Hospira, Inc.*,
  336 F. Supp. 3d 333 (D. Del. 2018), *aff'd*, 944 F.3d 1327 (Fed. Cir. 2019) ...........................10

*Bd. of Regents v. Boston Sci. Corp.*,
  No. 18-cv-392-GBW, 2024 WL 2848471 (D. Del. June 5, 2024)......................................7, 13

*Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*,
  No. 2:18-cv-585, 2023 WL 2329746 (E.D. Va. Jan. 27, 2023).........................................12, 14

*Bio-Rad Lab'ys, Inc. v. Nicolet Instrument Corp.*,
  807 F.2d 964 (Fed. Cir. 1986).................................................................................14

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
  492 F. Supp. 3d 495 (E.D. Va. 2020), *vacated and remanded on other
  grounds*, 38 F.4th 1025 (Fed. Cir. June 23, 2022) ....................................................16

*Cobalt Boats, LLC v. Brunswick Corp.*,
  296 F. Supp. 3d 791 (E.D. Va. 2017),
  *rev'd on other grounds*, 773 F. App'x 611 (Fed. Cir. 2019) .....................................16

*Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*,
  850 F.3d 1302 (Fed. Cir. 2017) ...............................................................................9

*Crystal Semiconductor. Corp. v. TriTech Microelecs. Int'l, Inc.*,
  246 F.3d 1336 (Fed. Cir. 2001).................................................................................8

*Energy Transp. Grp., Inc. v. William Demant Holding A/S*,
  697 F.3d 1342 (Fed. Cir. 2012)........................................................................1, 7, 8

*Finesse Wireless LLC v. AT&T Mobility LLC*,
  No. 2:21-cv-00316-JRG, 2023 WL 5613262 (E.D. Tex. Aug. 30, 2023) ..............................10

*GoTV Streaming, LLC v. Netflix, Inc.*,
  No. 2:22-cv-07556-RGK-SHK, 2024 WL 1832392 (C.D. Cal. Jan. 16, 2024)......................11

*Humanscale Corp. v. CompX Int'l Inc.*,
  No. 3:09-cv-86, 2010 WL 3397455 (E.D. Va. Aug. 23, 2010) ..........................................8

*JTH Tax LLC v. Caswell*,
    No. 2:21-cv-339, 2022 WL 3580747 (E.D. Va. Aug. 19, 2022) ...............................................8

*Kaufman v. Microsoft Corp.*,
    34 F.4th 1360 (Fed. Cir. 2022) .................................................................................................7

*Laitram Corp. v. NEC Corp.*,
    115 F.3d 947 (Fed. Cir. 1997)..................................................................................................12

*Lam, Inc. v. JohnsManville Corp.*,
    718 F.2d 1056 (Fed. Cir. 1983)................................................................................................12

*Morpho Detection, Inc. v. Smiths Detection, Inc.*,
    No. 2:11cv498, 2013 WL 5701522 (E.D. Va. Oct. 17, 2013) ................................................13

*NTP Inc. v. Research in Mot., Ltd.*,
    270 F. Supp. 2d 751 (E.D. Va. 2003),
    *amended*, No. 3:01-cv-767, 2003 WL 22746080 (E.D. Va. Aug. 5, 2003)............................13

*Opticurrent, LLC v. Power Integrations, Inc.*,
    No. 17-cv-03597-EMC, 2019 WL 2389150 (N.D. Cal. June 5, 2019)...................................11

*SB IP Holdings LLC v. Vivint, Inc.*,
    No. 4:20-cv-00886, 2024 WL 3939545 (E.D. Tex. Aug. 26, 2024)........................................13

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    959 F.3d 1065 (Fed. Cir. 2020)........................................................................ *passim*

*Schwendimann v. Arkwright Advanced Coating, Inc.*,
    No. 11-820 (JRT/HB), 2018 WL 3621206 (D. Minn. July 30, 2018) .....................................9

*Sensonics, Inc. v. Aerosonic Corp.*,
    81 F.3d 1566 (Fed. Cir. 1996)................................................................................................10

*Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*,
    862 F.2d 1564 (Fed. Cir. 1988).........................................................................................12, 13

*Telecomm. Sys., Inc. v. Mobile 365, Inc.*,
    No. 3:06-cv-485, 2007 WL 7070336 .....................................................................................13

*Texas Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*,
    No. 4:08-cv-451, 2016 WL 1659926 (E.D. Tex. Apr. 26, 2016) ...........................................10

*Trustees of Boston Univ. v. Everlight Elecs. Co.*,
    187 F. Supp. 3d 306 (D. Mass. 2016)................................................................................11, 12

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
    939 F.2d 1540 (Fed. Cir. 1991).........................................................................................12, 14

*Wirtgen Am., Inc. v. Caterpillar, Inc.*,
    No. 1:17-cv-00770-JDW, 2024 WL 4216057 (D. Del. Sept. 17, 2024)....................................6

**Statutes**

35 U.S.C. § 286.............................................................................................................................11, 12

35 U.S.C. §287......................................................................................................................................12

## I.       INTRODUCTION

Because an "award of pre-judgment interest is 'the rule, not the exception,'" PAN cannot sidestep its liabilities with a flurry of unfounded, inaccurate claims given the undisputed facts of the case. *Energy Transp. Grp., Inc. v. William Demant Holding A/S*, 697 F.3d 1342, 1358 (Fed. Cir. 2012) (citation omitted).  First, Centripetal timely and diligently filed this case against PAN on March 12, 2021, after eleven (11) of the thirteen (13) Asserted Patents in the case issued between January 2020 and February 2021.  The earliest issued patent of the three (3) Correlation Patents[1] asserted at trial was January 7, 2020, just thirteen (13) months before Centripetal initiated this case.[2]  The remaining two other Correlation Patents issued thereafter in May of 2020 and February of 2021.[3]  Thus, there was a reasonable amount of time between the issuance of the bulk of Centripetal's thirteen Asserted Patents until the filing of this case for Centripetal to complete its investigation to assert specific allegations of patent infringement against PAN.

Second, the amount of time it took to get to trial was a result of PAN's own making, who successfully obtained a stay of the litigation such that a scheduling order setting a trial date was not entered until more than two years after Centripetal filed its complaint.  Dkt. Nos. 67, 286, 311, 317, 329, 336, 353.  Thus, PAN should not be complaining about prejudgment interest being applied to a judgment that issued some three years and seven months after the lawsuit was brought when it sought to delay trial in this case.  *Id*.  Third, PAN not only fought against every request to lift the stay of the case, it also argued that there would not be any prejudice or

---

[1] The Correlation Patents are U.S. Patent Nos. 10,530,903 ("the '903 Patent"), 10,659,573 ("the '573 Patent") and 10,931,797 ("the '797 Patent).
[2] The '903 Patent issued on January 7, 2020.
[3] The '573 Patent issued on May 19, 2020 and the '797 Patent issued on February 23, 2021.

reduction in damages for Centripetal if a stay was granted.  Dkt. Nos. 67, 68, 311, 329.  Thus, the equitable considerations weigh in favor granting Centripetal prejudgment interest.

Fourth, Centripetal is entitled to full compensation for its lost revenues, which the jury determined were in the form of a lump sum that the parties would have agreed to in January 2020, the agreed-upon hypothetical negotiation date.  The alleged "start" date of the damages period that PAN now attempts to point to does not apply because that would only be used for a running royalty rate applied to ongoing revenues, which was not the basis for the jury's lump sum royalty.  Finally, pursuant to the law of this District and the Federal Circuit, Centripetal is appropriately awarded prejudgment interest at the prime rate that is compounded quarterly and accruing from the day of first infringement, as well as post-interest judgment.

## II.     ARGUMENT

### A.     Centripetal Should Be Awarded Prejudgment Interest As It Reasonably Brought This Lawsuit Once the Majority of Its Asserted Patents Issued

#### 1.     Centripetal Diligently Pursued Its Patents Against PAN

Centripetal diligently filed its Complaint against PAN in March 2021, which is a reasonable timeframe given all but two of Centripetal's Asserted Patents issued in 2020 and 2021.  Dkt. No. 65 at ¶¶ 13-40.  After completing its extensive due diligence to support the specific infringement allegations contained in its 145-page initial complaint asserting infringement of twelve (12) patents that had issued through 2020, Centripetal brought the lawsuit in March 2021.  Dkt. No. 1.  Centripetal thereafter diligently prosecuted this case, only amending its Complaint once to assert the '797 Patent.  Dkt. No. 65.

PAN's claim that Centripetal somehow delayed filing the lawsuit is utterly nonsensical and simply contrary to how complex patent litigation works.  If, for example, Centripetal had filed the case in 2018 just after U.S. Patent No. 10,091,246 (the "'246 Patent") issued on

October 2, 2018, as PAN attempts to argue should have happened (Opp. at 3-4), Centripetal would have only been able to assert one patent at that time.  It then would have sought to amend its complaint in late 2019 after the U.S. Patent No. 10,503,899 ("'899 Patent") issued on December 10, 2019, and then serially seek to amend the complaint again and again (or file different lawsuits) as the remaining eleven Asserted Patents issued in 2020 and 2021.[4]  Courts and parties to a complex patent litigation would frown upon such an inefficient use of judicial resources, necessitating excessive motion practice, when a single complaint could be filed asserting multiple recently issued patents.

Furthermore, the '903 Patent, the earliest issuing patent of the three Correlation Patents that PAN was found to infringe, issued on January 7, 2020, which was just a little over a year before the complaint was filed.  Dkt. No. 65 at ¶¶ 17, 19, 37.  Thus, given that earliest issuance date of the three patents found to infringe, the parties agreed that January 7, 2020 is the right date when the parties would have negotiated a license and is the earliest date that infringement could have occurred for those patents.  Specifically, PAN's damages expert agreed that the first date of infringement was January 7, 2020, both in his expert damages report and at trial.  Dkt. No. 647 (Bakewell Reb. Report) at 52-53; Trial Tr. 1654:24-1655:20 (Mr. Bakewell testifying that he and Mr. Malackowski agree on the January 2020 date of the hypothetical negotiation).  Notably, shortly after the '903 Patent issued, the COVID pandemic hit and lock downs were implemented.

---

[4] The Asserted Patents issued on the following dates:
- The '246 Patent issued on **October 2, 2018**;
- The '899 Patent issued on **December 10, 2019**;
- The '903 Patent and U.S. Patent No. 10,542,028 issued in **January 2020**;
- U.S. Patent Nos. 10,567,437, 10,567,343 and 10,567,413 issued in **February 2020**;
- The '573 Patent issued on **May 19, 2020**;
- U.S. Patent Nos. 10,735,380, 10,749,906 and 10,757,126 issued in **August 2020**;
- U.S. Patent No. 10,785,266 issued on **September 22, 2020**; and
- The '797 Patent issued on **February 23, 2021**.

The Courts at that time were struggling through how to handle their dockets during this time, such that it was completely reasonable for Centripetal to bring its complaint when more certainty existed with respect to the pandemic.

PAN's remaining arguments run afoul of the undisputed facts. For example, irrespective of whether Centripetal knew of PAN in 2016 and 2017, none of the Asserted Patents had issued at that time and Centripetal could not have brought a patent infringement case at that time. Opp. at 3. Further, the timeline undercuts PAN's attempts to suggest that the timing of this lawsuit was somehow tied to Centripetal's litigation with Keysight and Cisco. *Id*. The Keysight litigation that PAN references ended in October of 2018. Dkt. No. 517 at 35. Thus, the Keysight case predated PAN's first date of infringement of Centripetal's Asserted Patents by over a year. Further, the Cisco judgment issued in October of 2020 during the pandemic, when many of the Courts were struggling to address their dockets. Nonetheless, Centripetal filed this case once a sufficient number of its Asserted Patents had issued, so it would not piecemeal its allegations against PAN.

Given PAN's agreement that January 7, 2020 is the first date of infringement, and PAN's numerous representations during the motion to stay briefing (discussed below), there cannot be any controversy that this is the right date to consider for purposes of the appropriate timing for bringing a lawsuit against PAN and for determining the start date of prejudgment interest on a lump sum reasonable royalty.

> **2.    In Successfully Obtaining a Stay of the Case that Delayed Entering a Scheduling Order for Over Two Years, PAN Represented That There Would Not Be Any Prejudice and That the Stay Would Not Impact Centripetal's Damages**

PAN's arguments that Centripetal somehow caused delay and PAN was prejudiced ignore the procedural posture of this case. First, PAN successfully obtained a lengthy stay of the

litigation.  Dkt. No. 286 (March 2022 Order Granting July 2021 Motion to Stay); Dkt. No. 317 (November 7, 2022 Order Denying Centripetal's Mot. to Lift Stay); *see also* Dkt. No. 336 (May 17, 2023 Order Lifting Stay).  In obtaining that stay, PAN can only point to itself for why it took nearly three years after this case was filed before there was a trial on infringement.

Second, PAN made a number of arguments and representations to the Court that are entirely contrary to the arguments in its Opposition brief.  For example, when the Court granted the stay, it credited PAN's representation that the "delay associated with the IPRs is statutorily limited and cannot itself constitute a basis for undue prejudice" to Centripetal.  Dkt. No. 285 at 9 (citing Dkt. No. 68 (PAN's Memo. ISO Mot. to Stay)).  PAN cannot now be heard to claim that the time it took before Centripetal was able to prove infringement at trial was somehow prejudicial to PAN after making such representations.  Indeed, PAN's arguments that there was no prejudice to Centripetal if the case is stayed pending the IPRs must equally apply to PAN, the party who sought and obtained the stay.

Third, despite representing in its motion to the Court that a stay would not limit Centripetal's damages (Dkt. No. 68 at 14), PAN is now trying to do just that.  PAN explicitly argued that "to the extent Centripetal's claims remain after the IPRs are resolved, a stay will not limit its ability to recover damages, provided it can prove infringement." *Id.* (PAN also representing that "a stay would not diminish the amount of monetary damages recoverable by the plaintiff") (citations omitted); Dkt. No. 90 at 6-7 (PAN repeats the same representations).  It cannot now seek to prevent Centripetal from being made whole for the delays that PAN successfully had in the case in claiming that prejudgment interest should not be awarded at all.

To put a finer point on the issue, PAN cannot be heard to complain now about prejudgment interest being applied to a judgment that issued some three years and seven months

after the lawsuit was brought when it obtained a stay and fought against every request to lift the

stay of the case with representations that a stay was appropriate and would not cause prejudice to

Centripetal.  *See, e.g.*, Dkt No. 68 at 14 (PAN's Memo. ISO Mot. to Stay); Dkt. No. 311 (PAN's

May 2022 Opposition to Centripetal's Mot. to Lift the Stay); Dkt. No. 329 at 1 (PAN's March

2023 Opposition to Centripetal's Second Mot. to Lift the Stay, claiming that Centripetal had no

"valid justifications to lift the stay").  Given PAN's representations, the equities weigh strongly

in favor of granting Centripetal's request for prejudgment interest and PAN claims and

complaints that Centripetal's "alleged damages continued to accumulate" rings hollow.  Opp. at

3-4.  Indeed, Courts have rejected similar arguments made by defendants.  For instance, in

*Wirtgen America, Inc.*, the Court rejected the demand to deny prejudgment interest from a

defendant who was attributing delays to "the stay pending the ITC proceedings and [plaintiff's]

'aggressive litigation style.'"  *Wirtgen Am., Inc. v. Caterpillar, Inc.*, No. 1:17-cv-00770-JDW,

2024 WL 4216057, at *26 (D. Del. Sept. 17, 2024).  The Court held that defendant's "argument

boil[ed] down to frustration that after a lengthy proceeding, [defendant's] damages [we]re

higher."  *Id.*  And, "[t]hat[] [was] insufficient prejudice to avoid paying prejudgment interest."

*Id.* (citation omitted).

Fourth, PAN's remaining arguments about the number of patents asserted and the IPR

results of those patents should not have any place in assessing prejudgment interest on the

infringed patents.  Notably, PAN does not cite any case law for the proposition that prejudgment

interest should be denied when a number of other asserted patents has been later found to be

invalid or not infringed.  Opp. at 3-4.  Moreover, PAN argued for and received a jury verdict of a

lump sum reasonable royalty, which would have been agreed upon at the hypothetical negation

of January 7, 2020.  Trial Tr. 1654:24-1655:20 (Mr. Bakewell testifying that he and Mr.

Malackowski agree on the January 2020 date of the hypothetical negotiation); *id*. at 1068:5-23

(Mr. Malackowski testifying to January 2020 hypothetical negotiation date based on earliest date

"the patents have been issued and the products that are accused of infringing are in the market, so

that's that intersection point"). The damages were assessed on a patent by patent basis. Dkt.

Nos. 851,970. Thus, the damages are limited to precisely what was at issue at trial and based on

the jury verdict, such that there was no escalation of damages. The only evidence in the record is

that when Centripetal filed its Complaint in March 2021, it asserted those patents in good faith,

setting forth in great detail its basis for infringement that began in January 2020.

Finally, wholly apart from the fact that there was no delay or prejudice to PAN, the case

law permits prejudgment interest, even in cases where there was delay or no meaningful showing

of prejudice. For instance, in *ActiveVideo Networks, Inc.*, the Court awarded prejudgment

interest, even though there was some delay. *ActiveVideo Networks, Inc. v. Verizon Commc'ns,*

*Inc.*, No. 2:10-cv-248, 2011 WL 4899922, at *5 (E.D. Va. Oct. 14, 2011), *aff'd*, 694 F.3d 1312

(Fed. Cir. 2012). Similarly, in *Kaufman v. Microsoft Corporation*, the Federal Circuit reversed a

denial of prejudgment interest because plaintiff's five-year delay in bringing suit did not support

denying prejudgment interest. 34 F.4th 1360, 1373-75 (Fed. Cir. 2022); *see also Energy Transp.*

*Grp.*, 697 F.3d at 1358 (affirming award of prejudgment interest despite patentee's alleged delay

in bringing the suit); *Bd. of Regents v. Boston Sci. Corp.*, No. 18-cv-392-GBW, 2024 WL

2848471, at *15-16 (D. Del. June 5, 2024) (rejecting defendant's request to reduce prejudgment

interest because "[d]efendant fail[ed] to prove that [p]laintiffs' two-year delay resulted in any

prejudice"). Thus, PAN's conclusory claims of prejudice that are contrary to the facts and the

representations it made to the Court in connection with the stay do not change the rule of

awarding prejudgment interest.

### 3.      PAN Relies Upon Inapposite Case Law with Respect to Prejudgment Interest

As explained above, PAN has not identified any basis for departing from the rule granting prejudgment interest and PAN's case law simply does not apply here.  In *Humanscale Corporation*, the plaintiff "unreasonably delayed bringing th[e] suit for nine years."  *Humanscale Corp. v. CompX Int'l Inc.*, No. 3:09-cv-86, 2010 WL 3397455, at *2 (E.D. Va. Aug. 23, 2010) (finding plaintiff's patent infringement claim asserted as a ***counterclaim*** to other party's infringement suit after ***nine***-year delay was an undue delay justifying denial of pre-judgment interest).  And, in *Crystal Semiconductor*, plaintiff's two-year delay in bringing the lawsuit was found to be "self-serving and resulted in prejudice to the defendants."  *Crystal Semiconductor. Corp. v. TriTech Microelecs. Int'l, Inc.*, 246 F.3d 1336, 1362 (Fed. Cir. 2001).  There, "[plaintiff] sent letters to 30 or 40 companies . . . informing the companies of [plaintiff's patents," but it "did not send any such letter to [defendants], even though [plaintiff] had already determined that [defendants] were infringing [plaintiff's] patents."  *Id.*  No such evidence of a nine-year delay or sending letters to dozens of companies except the infringer exist here.

Further, PAN cites to *JTH Tax LLC*, which is nothing like the present facts.  In that case, the Court denied prejudgment interest because "[p]laintiff did not clearly specify the requested damages and the calculation thereof when they first moved for default judgment."  *JTH Tax LLC v. Caswell*, No. 2:21-cv-339, 2022 WL 3580747, at *6 (E.D. Va. Aug. 19, 2022).

Given the foregoing, PAN does not have any grounds or law to support its opposition to prejudgment interest, which is the rule.  *Energy Transp. Grp.*, 697 F.3d at 1358 (affirming award of prejudgment interest, despite patentee's alleged delay in bringing the suit because the award of prejudgment interest is the rule, not the exception).

**B.     Centripetal Should Be Awarded Prejudgment Interest as of the Date of First Infringement**

There is no dispute that the jury's lump sum award, based on the evidence at trial, including the testimony of PAN's witnesses regarding PAN's licensing preference for a lump sum, would have been paid at the time of the hypothetical negotiation on January 7, 2020. PAN's expert, Mr. Bakewell, testified that a one-time, lump sum payment would have been paid as a result of the negotiation that took place on January 7, 2020.  Trial Tr. 1653:22-1654:5, 1654:24-1655:11.  The only evidence at trial (and what makes logical sense) is that the lump sum that was negotiated in January 2020 would have been paid at that time.  This is not a situation where the damages award was based on a series of payments tied to revenue, which is what would be considered if a running royalty rate was applied to sales revenues.  Given that the payment was a lump sum that was negotiated in January 2020, the payment covers PAN's infringement from the issuance of the '903 Patent through the expiration of the infringed patents for the products at issue at trial.

The law unequivocally covers prejudgment interest from the date of the hypothetical negotiation when the reasonable royalty is a one-time lump sum payment.  For example, in *Schwendimann v. Arkwright Advanced Coating, Inc.*, 959 F.3d 1065 (Fed. Cir. 2020), the Federal Circuit confirmed that prejudgment interest is properly applied on the entire lump sum amount as of the date of first infringement, July 6, 2010, (as opposed to the filing date of the complaint, which was April 1st, 2011) when there is a lump-sum reasonable royalty for patent infringement. *Id.* at 1076[5] (citing *Comcast IP Holdings I LLC v. Sprint Commc'ns Co.*, 850 F.3d 1302, 1315

---

[5] The lower court identified the date of first infringement as the date the asserted patent was reissued (*Schwendimann v. Arkwright Advanced Coating, Inc.*, No. CV 11-820 (JRT/HB), 2017 WL 4277142, at *3 (D. Minn. Sept. 25, 2017)) and started prejudgment interest on the same date (*Schwendimann v. Arkwright Advanced Coating, Inc.*, No. 11-820 (JRT/HB), 2018 WL 3621206, at *2 (D. Minn. July 30, 2018))).

(Fed. Cir. 2017), which affirmed the "district court's assessment of prejudgment interest against [an infringer] based on the entire royalty award" where the jury awarded a lump-sum amount").  The Federal Circuit explained that "[p]rejudgment interest is not a penalty, but instead 'serves to make the patent owner *whole*, for damages properly *include* the foregone use of money of which the patentee was wrongly deprived.'"  *Schwendimann*, 959 F.3d at 1076 (quoting *Sensonics, Inc. v. Aerosonic Corp.*, 81 F.3d 1566, 1574 (Fed. Cir. 1996) (emphasis added).

Other cases also awarded prejudgment interest as of the date of first infringement when the reasonable royalty award was a lump sum, even when the date of first infringement predated the filing of the complaint.  *See Amgen Inc. v. Hospira, Inc.*, 336 F. Supp. 3d 333, 363-64 (D. Del. 2018), *aff'd*, 944 F.3d 1327 (Fed. Cir. 2019) (awarding prejudgment interest on a $70 million lump-sum damage award on the entire award as of the date of first infringement or the date of manufacture of the first infringing batch at the prime rate compounded quarterly); *Finesse Wireless LLC v. AT&T Mobility LLC*, No. 2:21-cv-00316-JRG, 2023 WL 5613262, at *1, *2-3 (E.D. Tex. Aug. 30, 2023) (granting prejudgment interest on the $166 million lump sum award beginning on the first date of infringement because "[t]he jury awarded a lump sum in the amount that [d]efendants should have paid *at the time infringement began*—here, March 15, 2018," which is three years before the filing of the complaint on August 23, 2021) (citing *Schwendimann*, 959 F.3d 1076) (emphasis added); *Texas Advanced Optoelectronic Sols., Inc. v. Intersil Corp.*, No. 4:08-cv-451, 2016 WL 1659926, at *5 (E.D. Tex. Apr. 26, 2016) (awarding prejudgment interest on the lump sum award starting from the hypothetical negotiation date). Thus, it is entirely appropriate to award prejudgment interest as of January 7, 2020.

PAN's cases are inapposite because they involve situations "where the date of first infringement predates the filing of a complaint by more than six years," pursuant to 35 U.S.C. § 286, which is inapplicable here.[6]  Opp. at 5-6, n.2.  For example, in *GoTV Streaming, LLC*, the Court rejected plaintiff's argument that prejudgment interest should accrue on the date of infringement where plaintiff sought interest from the date of first infringement, which fell ***outside*** the six-year limitation period imposed by 35 U.S.C. § 286.  *GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-07556-RGK-SHK, 2024 WL 1832392, at *1-2 (C.D. Cal. Jan. 16, 2024).  Therefore, the Court concluded that "[t]o award interest ***more than seven years*** before [p]laintiff could recover damages 'would make little sense.'"  *Id.* at *2 (acknowledging that "*Schwendimann* states that pre-judgment interest 'typically' accrues on the first date of infringement") (emphasis added).

For the same reason, the *Opticurrent, LLC* Court denied pre-judgment interest starting more than "six years ***before*** Opticurrent's complaint was filed."  *Opticurrent, LLC v. Power Integrations, Inc.*, No. 17-cv-03597-EMC, 2019 WL 2389150, at *20 (N.D. Cal. June 5, 2019) (emphasis added).  And, in *Trustees of Boston University*, the Court awarded prejudgment interest accruing on the dates each of defendants "ha[d] both infringed and been notified of the alleged infringement of the [asserted patent at issue]," the earliest date (December 14, 2006) being six years prior to the filing of the complaint (December 14, 2012).  *Trustees of Boston Univ. v. Everlight Elecs. Co.*, 187 F. Supp. 3d 306, 320-23 (D. Mass. 2016).  In that decision, the Court rejected pre-judgment interest on any damages that was unavailable because it did not fall

---

[6] The six-year limitation on damages set forth in 35 U.S.C. § 286 does not apply here because Centripetal is not seeking to obtain damages more than six years prior to filing of the complaint.

within the six years prior to the filing of the complaint and plaintiff failed to give notice of infringement, as required under 35 U.S.C. § 287.  *Id.* at 321-22.

Given that PAN's cases involve the law surrounding notice, and a damages period that extended beyond the six-year limitation of 35 U.S.C. § 286, they simply do not apply to the facts here.

### C.      The Court Should Award Pre-Judgment Interest at the Prime Rate

PAN does not dispute that the Eastern District of Virginia regularly awards prejudgment interest at the prime rate, compounded quarterly, which follows the Federal Circuit's decision in *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (holding that a "trial court is afforded wide latitude in the selection of interest rates, and may award interest at or above the prime rate") (citing *Studiengesellschaft Kohle, m.b.H. v. Dart Indus., Inc.*, 862 F.2d 1564, 1579-80 (Fed. Cir. 1988)) (further citations omitted); *Lam, Inc. v. JohnsManville Corp.*, 718 F.2d 1056, 1066 (Fed. Cir. 1983) (affirming district court's decision to award prejudgment interest at the prime rate).[7]

For example, a recent Eastern District of Virginia case awarded pre-judgment interest for a patent case at the prime rate, compounded quarterly, stating that: "[a]s other district courts have recognized, the prime rate best compensates a patentee for lost revenues during the period of infringement because the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time."  *Biedermann Techs. GmbH & Co. KG v. K2M, Inc.*, No. 2:18-cv-585, 2023 WL 2329746, at *4 (E.D. Va. Jan.

---

[7] Other district courts have applied their discretion to utilize rates other than the prime rate.  *See Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (Federal Circuit approving the District of Louisiana's discretionary decision based on the facts of that case to apply prejudgment interest set at the U.S. Treasury bill rate, compounded annually, and require "a causal connection between any borrowing and the loss of the use of the money awarded" as a result of the infringement).

27, 2023), quoting *Morpho Detection, Inc. v. Smiths Detection, Inc.*, No. 2:11cv498, 2013 WL 5701522, at *1 (E.D. Va. Oct. 17, 2013).

Historically, Courts in the Eastern District of Virginia have consistently applied the prime rate. *See NTP Inc. v. Research in Mot., Ltd.*, 270 F. Supp. 2d 751, 763 (E.D. Va. 2003), *amended*, No. 3:01-cv-767, 2003 WL 22746080 (E.D. Va. Aug. 5, 2003) (holding that "[t]he prime rate, compounded quarterly, is a conservative, middle-of-the road approach that takes into account normal market fluctuations"); *Telecomm. Sys., Inc. v. Mobile 365, Inc.*, No. 3:06-cv-485, 2007 WL 7070336, at 2007 U.S. Dist. LEXIS 99156, at *1 (E.D. Va. Sept. 4, 2007) (awarding the patent owner "prejudgment interest at the prime rate plus 1.00% compounded quarterly"); *ActiveVideo Networks*, 2011 WL 4899922, at *6 (awarding prejudgment interest at the prime rate, compounded quarterly on plaintiff's damages award from the date of first infringement); *Morpho Detection*, 2013 WL 5701522, at *1 (awarding prejudgment interest at "the prime rate, compounded quarterly"). As a Court in the Eastern District of Texas noted, application of the prime rate more adequately places the patentee in as good a position as it would have been if the infringer had taken a license. *SB IP Holdings LLC v. Vivint, Inc.*, No. 4:20-cv-00886, 2024 WL 3939545, at *2 (E.D. Tex. Aug. 26, 2024) (awarding prejudgment interest at the prime rate compounded quarterly).

Further, there is no requirement of proving that plaintiff borrowed money at or above the prime interest rate. *See Studiengesellschaft Kohle*, 862 F.2d at 1579-80 (rejecting defendant's argument that there is a "rule" or an "affirmative demonstration" requiring "proof of borrowing at or above [the] prime [interest rate], for a plaintiff to be entitled to an award of prejudgment interest at the prime rate."); *Boston Sci.*, 2024 WL 2848471, at *16 (awarding prejudgment interest at the prime rate and rejecting defendant's argument that evidence of borrowing money

13

is required); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991) (same). Following this line of cases, the Eastern District of Virginia has not required any proof of borrowing money at the prime rate to justify use of that rate. *See Biedermann*, 2023 WL 2329746, at *4.

PAN has not provided any reason why this Court should deviate from how courts in this District have handled prejudgment interest in patent cases. For example, PAN contends that "[t]he use of the prime rate is rooted in the risk of default incurred by a plaintiff that is forced to borrow funds." Opp. at 8. PAN's contention, however, contradicts Federal Circuit precedent in which the Court stated that "the district court must be guided by the purpose of prejudgment interest, which is 'to ensure that the patent owner is placed in as good a position as he would have been had the infringer entered into a reasonable royalty agreement.'" *Bio-Rad Lab'ys, Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 969 (Fed. Cir. 1986) (citations omitted).

Accordingly, the Court should award Centripetal prejudgment interest at the prime rate, compounded quarterly to best compensate Centripetal for its lost revenues due to PAN's infringement, from January 7, 2020 through October 3, 2024, in accordance with this District's precedent.

### D.    Prejudgment Interest Should Not Be Prorated

PAN's contention that the lump sum damages should be arbitrarily prorated over the course of the accrual period has no support in the trial record or in the law. Opp. at 11. Here, PAN simply attempts to artificially lower the amount of prejudgment interest it owes by trying to convert the jury's lump sum damages award into a running royalty award. *Id.* However, such request contradicts PAN's position throughout this litigation that a lump sum, and not a running royalty, was the appropriate form of damages for specific reasons that contradict PAN's current prorated calculations. Trial Tr. 1653-22-1654:5, 1654:24-1655:11 (Mr. Bakewell testifying to a

14

jury regarding a one-time, lump sum payment and hypothetical negotiation in January 2020). Moreover, as explained below, PAN has no legal basis or evidence to support its attempts to prorate prejudgment interest.

*First*, PAN's request for prorated prejudgment interest flies in the face of the jury's award, which explicitly selected the lump sum option and ***not*** a running royalty.  Dkt. No. 851 at 5 (jury selected option that damages are "[a] lump sum royalty for the life of the [] Patents").

*Second*, prorating the jury's lump sum award contradicts PAN's trial evidence, in which it claimed that the result of the hypothetical negotiation would have been a lump sum.  For example, PAN's former Director of Intellectual Property, Mr. Michael Ritter, testified that PAN preferred lump sum patent agreements to avoid entanglements going forward and for certainty, and suggested that a different form would be a "deal breaker."  Dkt. No. 860-1, Ex. 1 (Ritter Depo. Clip) at 49:7-49:20, 75:7-17 (ECF PDF pages 98-99).

In addition, Mr. Bakewell, unequivocally testified at trial that the form of the royalty would have been a lump sum payment for the life of the patents.  Trial Tr. 1653:22-1654:5 ("But my opinion is that a reasonable royalty, number one, ***would be in the form of a lump-sum, one-time payment*** . . .); (emphasis added); *id.* at 1680:21-1681:5.  Mr. Bakewell testified that he spoke to two PAN witnesses, namely Messrs. Ritter and Zuk, both of whom agreed that "the industry is one where patents are acquired on a lump-sum basis, one-time payments, for freedom."  *Id* at. 1690:5-23.  He further testified that at the hypothetical negotiation, PAN would further point to its patent agreements, all of which are lump sums, and would interpret Centripetal's relevant agreements as "effectively lump sums."  *Id.* at 1693:3-1695:25.

Yet, in its post-trial motion, PAN and Mr. Bakewell completely reverse course and now argue that the jury's lump sum damages award should be treated as a running royalty solely for

the purpose of lowering the amount of prejudgment interest PAN owes. Specifically, Mr. Bakewell submitted a declaration that purports to calculate prejudgment interest by prorating the jury's lump sum damages award over the course of the time period between the filing of the complaint and/or amended complaint and the judgment date (i.e., Mr. Bakewell's "accrual period"). Dkt. No. 998 (Bakewell Decl.) at ¶ 7. His prorated calculation results in a reduction of the prejudgment interest amount that is 75% less than Centripetal's calculation. *Id.*

To perform this proration, Mr. Bakewell performs a complex calculation wherein he uses PAN's estimated accused billings during the accrual period as an "assumption for prorating." *Id.* at ¶ 7, Exs. 1.0, 3.0. Mr. Bakewell's calculation includes a web of estimations, calculations, data points, and conclusions that were not presented at trial or in his prior expert reports, including PAN's estimated accused billings and estimated revenue growth rates after the trial date. *Id.* at Ex. 3.0 n.10, Ex. 5.0 n.2. Evidence of such revenues is the type of information that is used when a running royalty is the form of the reasonable royalty, and as such, it is not appropriate here.

Further, PAN failed to provide any legal basis for its request for prorated prejudgment interest, as both cases it relies upon involve damages awards of a running royalty, ***not*** a lump sum. *Cobalt Boats, LLC v. Brunswick Corp.*, 296 F. Supp. 3d 791, 797-99 (E.D. Va. 2017), *rev'd on other grounds*, 773 F. App'x 611 (Fed. Cir. 2019) (damages award based on a per unit royalty calculation, and infringing sales occurred over time); *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 492 F. Supp. 3d 495, 597-98, 606-07 (E.D. Va. 2020), *vacated and remanded on other grounds*, 38 F.4th 1025 (Fed. Cir. June 23, 2022) (awarding past and ongoing damages based on a 10% royalty rate applied to revenues from sales of the infringing products). Unlike these cases, because the jury awarded Centripetal a lump sum, the entirety of the damages award would be paid at one time, as opposed to over the course of Mr. Bakewell's incorrect "accrual period" that

16

he is attempting to create for prejudgment purposes.  Thus, PAN's belated attempts to apply running royalty concepts for prejudgment purposes should be rejected because they are not appropriate given the lump sum award.

PAN cannot now, in post-trial briefing, request prorated prejudgment interest based on evidence of a running-royalty that PAN did not present at trial and, even worse, that contradicts the evidence and expert opinion PAN did present at trial and with which the jury agreed.

Lastly, PAN's citation to Centripetal's explanation that the jury's damages award accounted for proper apportionment of PAN's revenues (Opp. at 11, citing Dkt. No. 940 at 29) does not require that prejudgment interest accrue as infringing sales were made because that is not how the jury awarded damages and lump sum damages awards are not exempted from apportionment requirements.  Accordingly, PAN's unreasonable request should be denied.

### E.  Centripetal is Entitled to Post-Judgment Interest

PAN does not contest that Centripetal is entitled to post-judgment interest at a rate equal to the weekly average 1-year constant maturity Treasury yield from October 3, 2024 for the jury's award of damages plus prejudgment interest.  Opp. at 11-12.  Thus, the Court should enter an Order directing that PAN must post-judgment interest accordingly.

There is no basis, however, to use post-judgment interest as a means to reduce prejudgment interest, as PAN attempts to suggest.  Indeed, PAN has no legal basis to support such an unreasonable request.  The reasonable royalty PAN owes should account for both prejudgment and post-judgment interest.

## III.  CONCLUSION

For the foregoing reasons, Centripetal respectfully requests that the Court grant Centripetal's Motion.

Respectfully submitted,

Dated:  November 6, 2024

By: */s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
Clark J. Belote
Virginia State Bar No. 87310
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone: (757) 624-3239
Facsimile: (888) 360-9092
senoona@kaufcan.com
cjbelote@kaufcan.com

Paul J. Andre (*pro hac vice*)
Lisa Kobialka (*pro hac vice*)
James Hannah (*pro hac vice*)
Kristopher Kastens (*pro hac vice*)
Christina M. Finn (*pro hac vice*)
Aakash B. Jariwala (*pro hac vice*)
Linjun Xu (*pro hac vice*)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
333 Twin Dolphin Drive, Suite 700
Redwood Shores, CA  94065
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
pandre@kramerlevin.com
lkobialka@kramerlevin.com
jhannah@kramerlevin.com
kkastens@kramerlevin.com
cfinn@kramerlevin.com
ajariwala@kramerlevin.com
lxu@kramerlevin.com

Cristina L. Martinez (*pro hac vice*)
KRAMER LEVIN NAFTALIS
  & FRANKEL LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9000
Facsimile: (212) 715-8000
cmartinez@kramerlevin.com

*Attorneys for Plaintiff,*
Centripetal Networks, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send notification of

filing electronic to all counsel of record.

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com
