**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

|  |  |  |
|---|---|---|
| CENTRIPETAL NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | No. 2:21-cv-00137-EWH-LRL |
| | ) | |
| v. | ) | |
| | ) | |
| PALO ALTO NETWORKS, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF CENTRIPETAL NETWORKS, LLC'S REPLY IN
<u>SUPPORT OF ITS MOTION FOR ATTORNEYS' FEES AND NONTAXABLE COSTS</u>**

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION ........................................................................................................... 1

II. ARGUMENT .................................................................................................................. 1

A.  PAN Pursued Objectively Unreasonable Invalidity Defenses Throughout
the Litigation Only to Drop Them on the Eve of Trial and to Then Seek to
Revive Them in Another Forum .......................................................................... 1

1.  PAN's Prior Art Challenge to the '903 Patent Was Baseless .................... 3

2.  PAN's Prior Art Challenges to the '573 and '797 Patents Were
Objectively Weak and Unreasonable ......................................................... 8

B.  PAN's Litigation Tactics Regarding Its Section 101 Defense Were
Objectively Weak and Unreasonable ................................................................. 10

C.  PAN Unreasonably Obstructed Centripetal's Efforts to Depose Individuals
with Knowledge on Infringement and Damages ............................................... 12

D.  PAN's Trial Misconduct Wasted Time and Evidences PAN's Overall
Vexatious Litigation Strategy ........................................................................... 15

E.  PAN's Repetitive Attempts to Exclude the Keysight License and Mr.
Malackowski's Testimony Were Not Necessary to Preserve Issues for
Appeal ............................................................................................................... 17

III. CONCLUSION .............................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Chemours Co. FC, LLC v. Daikin Indus., Ltd.*,
  No. 17-1612, 2022 WL 2643517 (D. Del. July 8, 2022) ............................................7

*Cobalt Boats, LLC v. Sea Ray Boats, Inc.*,
  No. 2:15cv21, 2017 WL 2605977 (E.D. Va. June 5, 2017) ...................................6, 8

*Cognex Corp. v. Microscan Sys., Inc.*,
  No. 13-cv-2027 (JSR), 2014 WL 2989975 (S.D.N.Y. June 30, 2014) .............................16, 17

*Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
  No. 2:14-CV-00912-JRG, 2020 WL 1478396 (E.D. Tex. Mar. 26, 2020) ............................17

*Daedalus Blue, LLC v. MicroStrategy Inc.*,
  No. 2:20cv551 (RCY), 2023 WL 5941736 (E.D. Va. Sept. 12, 2023) ................................6, 7

*DietGoal Innovations, LLC v. Wegmans Food Markets, Inc.*,
  126 F. Supp. 3d 680 (E.D. Va. 2015) .......................................................11

*EIS, Inc. v. IntiHealth Ger GmbH*,
  No. 19-1227, 2023 WL 6797905 (D. Del. Aug. 30, 2023) ........................................7

*Hilgraeve, Inc. v. Symantec Corp.*,
  271 F. Supp. 2d 964 (E.D. Mich. 2003) .....................................................3

*Milwaukee Elec. Tool Corp. v. Snap-On Inc.*,
  271 F. Supp. 3d 990 (E.D. Wis. 2017) ..................................................6, 7, 8

*Nicholas v. Wyndham Int'l, Inc.*,
  373 F.3d 537 (4th Cir. 2004) ...............................................................13

*NTP Inc. v. Rsch. in Motion, Ltd.*,
  270 F. Supp. 2d 751 (E.D. Va. 2003) ....................................................16, 17

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
  572 U.S. 545 (2014).....................................................................1, 13, 15

*Packet Intel. LLC v. NetScout Sys., Inc.*,
  No. 2:16-CV-00230-JRG, 2019 WL 1642714 (E.D. Tex. Apr. 15, 2019) ............................12

*Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*,
  No. 13-2072 (KAJ), 2017 WL 1045912 (D. Del. Feb. 22, 2017)...............................8

*Peavy v. Angle*,
　826 F.2d 1060 (4th Cir. 1987) ...................................................................20

*Prolitec Inc. v. ScentAir Techs, Inc.*,
　No. 20-984, 2023 WL 8697973 (D. Del. Dec. 13, 2023) ...........................7

*Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*,
　707 F. Supp. 2d 737 (N.D. Ohio 2010) ......................................................3

*Singular Computing LLC v. Google LLC*,
　668 F. Supp. 3d 64 (D. Mass. 2023) ..........................................................7

*SiOnyx, LLC v. Hamamatsu Photonics K.K.*,
　330 F. Supp. 3d 574 (D. Mass. 2018) .........................................................7

*SPEX Techs. Inc. v. Kingston Tech. Corp.*,
　No. SACV 16-01790 JVS (AGRx), 2020 WL 4342254 (C.D. Cal. June 16,
　2020) ...........................................................................................................7

*Stragent, LLC v. Intel Corp.*,
　No. 6:11-cv-421, 2014 WL 6756304 (E.D. Tex. Aug. 6, 2014)................17

*Tinnus Enters., LLC v. Telebrands Corp.*,
　369 F. Supp. 3d 704 (E.D. Tex. 2019) ......................................16, 17, 20

*Trs. of Columbia Univ. in City of New York v. Gen Digit. Inc.*,
　No. 3:13cv808, 2023 WL 8698906 (E.D. Va. Sept. 30, 2023)..........16, 17, 20

*United States v. Brownlee*,
　454 F.3d 131 (3d Cir. 2006).......................................................................18

*United States v. Williams*,
　81 F.3d 1321 (4th Cir. 1996) .....................................................................18

*Wasica Fin. GmbH v. Schrader Int'l, Inc.*,
　432 F. Supp. 3d 448 (D. Del. 2020)............................................................8

*Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*,
　649 F. Supp. 3d 780 (D. Minn. 2023) ........................................................7

*Zenith Elecs. Corp. v. PDI Commc'ns Sys., Inc.*,
　522 F.3d 1348 (Fed. Cir. 2008).............................................................6, 7

**Statutes**

35 U.S.C. § 102(a) ...............................................................................................3

35 U.S.C. § 102(b) ...............................................................................................3

35 U.S.C. § 285 ..................................................................................................20

35 U.S.C. § 315(e)(1) ............................................................................................9

35 U.S.C. § 315(e)(2) ............................................................................................5

**Other Authorities**

Fed. R. Evid. 103 ...............................................................................................18

Charles Alan Wright & Kenneth W. Graham, Jr.,
    Federal Practice and Procedure § 5037 (1977) ......................................18

## I.     INTRODUCTION

PAN cannot escape the consequences of its failure to implement a reasonable litigation strategy.  While PAN attempts to look at each event in isolation, an exceptional case analysis is based on an evaluation of case conduct as a whole, where "a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 555 (2014). As set forth in Centripetal's Motion, PAN's litigation strategy and conduct was so unreasonable, before, during and after trial, that it unnecessarily burdened the Court and Centripetal with needless motion practice and objections, and forced Centripetal to expend significant resources defending PAN's baseless invalidity challenges.  Accordingly, Centripetal respectfully requests that the Court enter an Order deeming this case exceptional and awarding Centripetal its fees and nontaxable costs for defending against PAN's unreasonable and objectively weak invalidity defenses for the Correlation Patents.

## II.     ARGUMENT

### A.     PAN Pursued Objectively Unreasonable Invalidity Defenses Throughout the Litigation Only to Drop Them on the Eve of Trial and to Then Seek to Revive Them in Another Forum

Following PAN's losses at the Patent Trial and Appeal Board ("PTAB") regarding the Correlation Patents, PAN's options for its anticipation and obviousness defenses were significantly narrowed and substantially weakened.  Specifically, after the PTAB affirmed the patentability of the '903 Patent in a Final Written Decision, PAN knew it had to find either a physical system or confidential documents on which to base any anticipation or obviousness defense because it was statutorily estopped from relying on anything else it could have raised in the IPR.  PAN failed to find either type of evidence to rely on for the '903 Patent.  As for the '573 and '797 Patents, PAN faced a particularly steep uphill battle because the PTAB's decisions

1

declining to institute IPR or PGR review, respectively, pointed out gaping holes in the arguments PAN presented regarding its best prior art. Further, during discovery, Centripetal had put PAN on notice of these major deficiencies with its theories. Despite being fully aware of these deficiencies, PAN decided to press on with its anticipation and obviousness defenses through the resource-intensive phases of the case, including expert reports and depositions, summary judgment briefing and summary judgment argument.

Then, just four days prior to trial, after oral argument but before the Court ruled on Centripetal's motion for summary judgment, PAN dropped all of its prior art defenses. Dkt. No. 763 at 1. PAN's withdrawal of such weak and legally deficient defenses was not a good faith effort to "narrow issues" for trial, as PAN had the time to raise these defenses at trial—it had more than three hours of unused time remaining at the end of trial. Rather, PAN seized on the moment when PAN realized it could no longer pursue such facially deficient claims any longer and had caused Centripetal to spend as much resources as it could on defending against those claims. Thus, the only conclusion to be drawn in light of all the circumstances is that PAN pursued its anticipation and obviousness defenses in this case in bad faith. If PAN had been pursuing its defenses in good faith, PAN would not have dropped them at the eleventh hour, just before the Court had a chance to rule on them. Wreaking of gamesmanship is the fact that PAN removed the Court's ability to decide the issue, only for PAN to renew these very same defenses before the United States Patent and Trademark Office ("PTO") in reexamination requests, where it asked the PTO to yet again examine the '573 and '797 Patents on the same invalidity arguments it had, only five months prior, withdrawn from the litigation. Declaration of Christina Finn in Support of Centripetal's Reply ("Finn Decl.") filed herewith, Exs. 1, 2. When considered in light of the totality of PAN's conduct, PAN's repeated assertion (and then sudden withdrawal

in this Court) of the same art and arguments supports finding this case exceptional.  *Saint-Gobain Autover USA, Inc. v. Xinyi Glass N. Am., Inc.*, 707 F. Supp. 2d 737, 751-52, 757 (N.D. Ohio 2010), as corrected (Apr. 13, 2010) (finding exceptionality based in part on defendant's strategy "of advancing and then withdrawing untenable defenses").

### 1.    PAN's Prior Art Challenge to the '903 Patent Was Baseless

PAN knew it needed either an actual physical system or confidential printed materials to pursue an anticipation or obviousness challenge against the '903 Patent.  Having neither, PAN cobbled together a collection of non-confidential printed materials, such as manuals and datasheets available on the Internet, and labeled it a system.  Indeed, PAN admitted it could not find and was unable to verify that a version of the "system" it was relying on actually existed before the priority date.  *See* Dkt. No. 712 (Jan. 4, 2024 Hrg. Tr.) at 124:12-25.  PAN knew (or at least should have known) based on all of these problems that its "system-based" prior art strategy was doomed from the start.

In its Opposition, PAN refers to its "system" as "ManageEngine System," but "ManageEngine System" is a misnomer.  "ManageEngine" is the name of a company which sold multiple products; it is not the name of the particular asserted prior art product.  Dkt. No. 464 at 11, n.4 (Centripetal MSJ).  In its election of prior art, PAN elected EventLog Analyzer, one product sold by ManageEngine.  Dkt. No. 465-19 (Defendant's Amended Narrowed List of Prior Art) at 2.  In order to assert an alleged prior art system (here, EventLog Analyzer) in good faith, PAN knew it needed to demonstrate by clear and convincing evidence that the claimed functionality existed in a system prior to the '903 Patent's priority date.  35 U.S.C. § 102(a), (b); *see also Hilgraeve, Inc. v. Symantec Corp.*, 271 F. Supp. 2d 964, 972-77 (E.D. Mich. 2003) (defendant must prove by clear and convincing evidence that the alleged prior art system version qualifies as prior art with corroborating evidence, such as sales receipts for the version sold).

Here, PAN's purported system-based prior art was fundamentally flawed from the outset because it was based on a version of the EventLog Analyzer that required functionality of a different system altogether, the Firewall Analyzer, that only existed after the priority date of the '903 Patent.  Dkt. No. 465-7 (press release discussing adding the Firewall Analyzer functionality into EventLog Analyzer beginning on April 21, 2015); *see also* Dkt. No. 571 (Centripetal Reply to MSJ) at 5-7 (explaining that system combining EventLog Analyzer and Firewall Analyzer did not exist until after the priority date).  PAN repeatedly admitted that the version of EventLog Analyzer on which its invalidity theories were based required the Firewall Analyzer functionality.  Dkt. No. 524 (PAN Opp. to Centripetal MSJ) at 3 (Fact No. 11) (admitting that PAN was relying of "documentation discussing ManageEngine's Firewall Analyzer"); Dkt. No. 712 (Jan. 4, 2024 Hrg. Tr.) at 124:12-125:3, 126:11-20 (PAN's counsel admitting it is relying on EventLog Analyzer version with Firewall Analyzer functionality); *see also* Dkt. No. 464 (Centripetal MSJ) at 12-13 (citing PAN's expert report reliance on Firewall Analyzer functionality).  Thus, it is undisputed that PAN knew of this fundamental flaw in its defense as early as August 2023, when Centripetal explained that EventLog Analyzer was not prior art to the '903 Patent and that PAN was statutorily estopped as well.  Dkt. No. 985-1 (Ex. 1 (Centripetal's Response to Rog. 25)) at 9, 14-15.  Nonetheless, PAN persisted in pursuing it anyway for months, up to and including allowing it to go before the Court in summary judgment briefing and argument, wasting Centripetal's and the Court's resources.

PAN's Opposition devotes significant time claiming that even though it did not have a physical system, it had the right to use secondary printed materials, including non-public documents, in a system-based prior art defense without being estopped.  Opp. at 3-8.  PAN's argument, however, misses the point.  The issue is not how a defense can be proven, but rather

4

the fact that PAN did not even have a colorable alleged prior art system to assert in the first place.  Consequently, PAN's Opposition and the case law it cites regarding its ability to use printed materials do not address PAN's bad faith invalidity assertion based on a system (which was made up of printed publications) that it knew did not exist until after the priority date.

As Centripetal's Motion explains, all the evidence PAN relied on for EventLog Analyzer was publicly available on the Internet.  Further, this evidence was not a "system", but rather manuals available on the Internet, marketing publications, and YouTube videos.  Mot. at 8-12; Dkt. No. 464 at 10-12; Dkt. No. 571 at 1-5; Dkt. No. 465-2 (Nielson Rpt.) at Appendix 3-1 (identifying the webpages where PAN downloaded EventLog Analyzer and Firewall Analyzer documents).  PAN fails to identify any EventLog Analyzer document it ***could not have raised*** at the PTAB because each document it relied on can be found using a simple Internet search.  *See e.g.*, Dkt. No. 571 (Centripetal Reply to MSJ) at 3-4; Dkt. No. 465-2 (Nielson Rpt.) at Appendix 3-1 (showing each piece of evidence available on the Internet).  Thus, all these documents were available for PAN to use at the PTAB and PAN was estopped here.  35 U.S.C. § 315(e)(2).

Further, PAN's blatant misrepresentation of the allegedly "non-public" documents it obtained from the Zoho Corporation ("Zoho") further evidences the egregiousness of PAN's position.  Opp. at 4 (stating PAN obtained non-public documents from Zoho).  Every document Zoho produced is a public marketing document that is available on the Internet, as is readily apparent from the documents themselves.  *See* Dkt. No. 465-7 (a publicly available press release produced by Zoho); Dkt. No. 571 (Centripetal Reply to MSJ) at 3-4 (identifying the remaining three Zoho documents as publicly available).

PAN's suggestion that Centripetal is required meet some elevated burden now to show that PAN was estopped is unavailing.  Opp. at 5.  Centripetal did so in its summary judgment

5

motion, showing that the plainly public documents were publicly accessible on the Internet.  Dkt.

No. 571 (Centripetal Reply to MSJ) at 3-4; Dkt. No. 465-2 (Nielson Rpt.) at Appendix 3-1

(showing all evidence available on the Internet).  It is hard to imagine what more Centripetal was

required to do in order to show that the documents, readily identifiable using search terms for the

EventLog Analyzer product, were publicly accessible.  Dkt. No. 464 at 2 (UF10) (identifying

PAN knew of EventLog Analyzer at least as of October 2021); *Cobalt Boats, LLC v. Sea Ray*

*Boats, Inc.*, No. 2:15cv21, 2017 WL 2605977, at *4 (E.D. Va. June 5, 2017) (court finding it

unbelievable that manuals of known products were not reasonably discoverable or available).

Accordingly, PAN's labeling of its evidence as a "system" does not change the fact that

all of the references could have raised before the PTAB, such that PAN was estopped from

asserting them in this litigation.  Mot. at 11-12; *see also* Dkt. No. 571 (Centripetal Reply to MSJ)

at 1-5; *Milwaukee Elec. Tool Corp. v. Snap-On Inc.*, 271 F. Supp. 3d 990, 1032 (E.D. Wis. 2017)

("[Defendant] cannot skirt [IPR estoppel] by purporting to rely on a device without actually

relying on the device itself.").

Additionally, none of the cases PAN cited relate to what PAN did in this case, which is to

rely **solely** on printed publications to describe a system.  For example, in both *Zenith Electronics*

and *Daedalus Blue, LLC*, there was no dispute that the defendants' respective elected systems for

invalidity actually existed before the relevant priority dates—the parties only disputed what those

systems did, such that those defendants were permitted to rely on secondary materials to describe

the respective systems.  *Zenith Elecs. Corp. v. PDI Commc'ns Sys., Inc.*, 522 F.3d 1348, 1357-58

(Fed. Cir. 2008) (no dispute that two prior art systems were combined before the priority date);

*Daedalus Blue, LLC v. MicroStrategy Inc.*, No. 2:20cv551 (RCY), 2023 WL 5941736, at *7-10

(E.D. Va. Sept. 12, 2023) (reliance on manuals and source code allowed as support for the

elected prior art product that existed before priority date).  Neither *Zenith* nor *Daedalus Blue* relieve PAN of its burden to show that the alleged prior art system itself (as opposed to documents describing disparate systems) actually existed before the '903 Patent's priority date.

The other cases that PAN cites fail to address the circumstances of this case.  *See* Opp. at 4, n.4 (citing cases that involved actual physical systems (*e.g.*, copies of software) and considered whether secondary materials were sufficient to corroborate the date of the physical system); *SPEX Techs. Inc. v. Kingston Tech. Corp.*, No. SACV 16-01790 JVS (AGRx), 2020 WL 4342254, at *15 (C.D. Cal. June 16, 2020) (favorably citing *Milwaukee Electric* but declining to find estoppel because defense based on physical product in additional to printed materials); *SiOnyx, LLC v. Hamamatsu Photonics K.K.*, 330 F. Supp. 3d 574, 603-04 (D. Mass. 2018) (citing *Milwaukee Elec.*, 271 F. Supp. 3d at 1032) (declining to impose estoppel because the defense relied on non-public printed documents as well as public datasheets and a physical product).[1]  In other words, each of the accused infringers in the cases PAN cited had a physical system in ***addition*** to printed publications as the basis for their defenses.  Here, PAN did not have any a physical product or any non-public printed materials to rely on, so the circumstances of those cases simply do not apply to PAN's decision to continue to pursue its defenses where PAN had no physical system.

---

[1] None of the cases PAN cites at footnote 8 support its position.  Opp. at 8, n.8.  In *Singular Computing LLC v. Google LLC*, 668 F. Supp. 3d 64, 73-75 (D. Mass. 2023), the Court excluded printed publications that the defendant could have raised in the IPR, even if it described a system.  Each of the remaining cases involved an actual physical device, not solely printed publications like PAN attempted to use here, since it had no physical system to rely upon.  *Prolitec Inc. v. ScentAir Techs, Inc.*, No. 20-984, 2023 WL 8697973, at *2 (D. Del. Dec. 13, 2023) (defendant relying on a physical device); *EIS, Inc. v. IntiHealth Ger GmbH*, No. 19-1227, 2023 WL 6797905, at *5 (D. Del. Aug. 30, 2023) (same); *Chemours Co. FC, LLC v. Daikin Indus., Ltd.*, No. 17-1612, 2022 WL 2643517, at *1 (D. Del. July 8, 2022) (same); *Willis Elec. Co. v. Polygroup Macau Ltd. (BVI)*, 649 F. Supp. 3d 780, 794-95, 811 (D. Minn. 2023) (same).

PAN makes minor factual distinctions regarding *Milwaukee Elec.*, *Cobalt Boats*, *Parallel Networks*, and *Wasica*. Opp. at 6-8. Those minor distinctions, however, do not change the law and facts at issue, namely that the public documents PAN relied upon are from the Internet, such that they could have been asserted as "printed publications" in the IPR and PAN is estopped from asserting them. *Milwaukee Elec.*, 271 F. Supp. 3d at 1032 (allowing certain documents to describe actual physical system on which defense was based, which PAN did not have here); *Cobalt Boats*, 2017 WL 2605977, at *3-4 (finding that manuals were printed publications that reasonably could have been asserted in IPR and deferring estoppel rulings on physical products); *Parallel Networks Licensing, LLC v. Int'l Bus. Machines Corp.*, No. 13-2072 (KAJ), 2017 WL 1045912, at *11 (D. Del. Feb. 22, 2017) (finding estoppel based on printed publication references); *Wasica Fin. GmbH v. Schrader Int'l, Inc.*, 432 F. Supp. 3d 448, 453-55 (D. Del. 2020) (finding estoppel on printed publications describing a physical product).

PAN knew that it did not have evidence that the alleged EventLog Analyzer system containing the relied upon Firewall Analyzer functionality existed as of the legally critical date. Accordingly, PAN acted unreasonably by asserting invalidity of the '903 Patent based on printed publications and did so without obtaining the underlying system, after being informed during fact discovery of the deficiencies and that estoppel applied. Dkt. No. 985-1 (Ex. 1 (Centripetal's Response to Rog. 25)) at 9, 14-15. But rather than dropping the defense at a reasonable time during the litigation, PAN persisted with convoluted and non-defensible arguments, demonstrating the exceptional nature of this case.

### 2. PAN's Prior Art Challenges to the '573 and '797 Patents Were Objectively Weak and Unreasonable

PAN acted in bad faith in pursuing objectively weak defenses to the '573 and '797 Patents, only to drop those defenses four days before trial. PAN knew it was objectively

unreasonable given its unsuccessful pursuit of the same invalidity challenges before the PTAB, where PAN had lower burden of proof for invalidity.  *See* Mot. 12-16.  Thus, PAN could not have reasonably believed it could use the ***same*** evidence and repeat the ***same*** arguments and yet somehow demonstrate invalidity under the higher burden of proof of "clear and convincing evidence."  Further demonstrating PAN's unreasonable conduct is the fact that it dropped this alleged prior art days before trial to avoid an adverse finding under the high clear and convincing evidence standard, so that it could recycle the art for yet ***another*** round of post-issuance proceedings, namely *ex parte* reexaminations.  After losing at the PTAB, and losing at trial on infringement, PAN filed *ex parte* reexaminations against the '573 and '797 Patents[2] on July 1, 2024, relying on the same combination of the McDonald and Wicherski references that it dropped just prior to trial, including with a declaration from Dr. Nielson.  Finn Decl., Exs. 1, 2. This is the third time PAN raised this invalidity challenge of the '573 and '797 Patents based on the same alleged prior art and arguments.  By continuing to repeat the same argument over and over again in different forums, PAN's actions are categorically vexatious and meant to force Centripetal to repeatedly defend itself at significant expense.

Even more concerning is the fact that PAN is well aware that its invalidity expert, Dr. Nielson, admitted that the combination of Wicherski and McDonald do not teach the "responsive to correlation" claim element.  Nonetheless, PAN intentionally and in bad faith, plowed forward with its *ex parte* reexamination requests, withholding this material, adverse evidence from the PTO.  Such conduct reveals the depths of PAN's knowledge that its defenses were baseless. Withholding such material evidence to make the same objectively weak invalidity defense cannot be condoned, particularly after Centripetal's summary judgment motion highlighted this

---

[2] PAN is estopped from filing an '903 Patent *ex parte* reexamination.  35 U.S.C. § 315(e)(1).

evidence to prove the validity of '573 and '797 Patents over McDonald and Wicherski.  Dkt. No. 465-22 at 195:9-19 (Dr. Nielson admitting that Wicherski does not disclose "responsive to correlating"); *see also* Dkt. No. 464 at 23-24; Dkt. No. 571 at 13-14.  If PAN truly had a good faith basis to assert this alleged prior art combination before the PTO, it would have informed the PTO that it had just asserted the same art and arguments in this case.  But, PAN did not disclose either the material testimony of its invalidity expert or the fact that it had already asserted the same the art and arguments before this Court.

Further, PAN's exaggeration of the significance of the PTO's institution of an *ex parte* reexamination as to the question of whether its defenses had merit can be dispelled easily with the PTO's statistics on institutions of reexaminations.  While around 90% of *ex parte* reexamination requests are instituted, ultimately the PTO cancels all challenged claims in only 10-15% of all instituted reexaminations.  Finn Decl., Ex. 3 at 2; *id.*, Ex. 4 at 3.

Additionally, contrary to PAN's contentions, Dr. Nielson's bald opinions cannot somehow transform PAN's unreasonable post-IPR theories based on the Sutton reference into theories that are strong enough to meet the clear and convincing evidentiary burden, because the Sutton reference is fundamentally problematic.  *See* Mot. at 12-16; Opp. at 8-10.  As explained in Centripetal's Reply to its Motion for Summary Judgment, no amount of argument from PAN's expert could manufacture the missing "responsive to correlation" claim limitation that is missing from the Sutton disclosure.  Dkt. No. 571 at 12-13.  Accordingly, PAN's conduct with respect to its challenges to the '573 and '797 Patents before this Court, are vexatious and unreasonable and warrant a finding of exceptionality.

### B.   PAN's Litigation Tactics Regarding Its Section 101 Defense Were Objectively Weak and Unreasonable

The unreasonable manner in which PAN litigated its Section 101 defense—from the

gamesmanship exhibited with the filing of its Rule 12(c) Motion to its post-trial briefing contradicting its prior Section 101 positions—is yet another example of PAN's tactics deployed throughout this case that wasted the Court's and Centripetal's resources, warranting an exceptional case finding.  First, PAN inundated Centripetal with extra briefing during the already-compressed summary judgment and *Daubert* briefing period, filing a separate 30-page Rule 12(c) Motion on its Section 101 defense very late in the case on the same day opening summary judgment motions were filed.  Dkt. No. 456.  After that motion was denied and the defense headed to trial, PAN never bothered to come forth with evidence needed to meet its clear and convincing evidentiary burden, offering instead only insufficient and conclusory expert testimony at Step Two.  When the jury found in favor of Centripetal, PAN reversed its positions on Section 101 in two respects.  First, PAN claimed without support that it had objected to the Section 101 defense going to the jury at all and launched an ill-fated attempt to get a new bench trial based on those non-existent objections.  Dkt. No. 941 at 23-24.  Second, PAN changed its previous formulation of the purported abstract idea at Step One after the Court had that PAN had not met its burden on PAN's initial formulation.  Dkt. No. 712 (Jan. 4, 2024 Hrg. Tr.) at 63:6-10; *see* Dkt. No. 940 at 9-10.  Thus, it is not the fact that the jury ultimately disagreed with PAN on Section 101 that makes the defense egregious—it is the way in which PAN litigated the defense from the dispositive motion stage through post-trial briefing that sets this case apart.  And PAN cannot defend its egregious pursuit of its 101 strategy by ignoring PAN's overall unnecessary multiplication of the proceedings that wasted the Court's and Centripetal's resources.

Neither of PAN's cited cases save it from the totality of its unsupportable litigation tactics.  In *DietGoal*, the defendant's basis for requesting fees was the allegation that plaintiff's damages expert lacked an admissible damages theory under *Daubert*.  *DietGoal Innovations,*

*LLC v. Wegmans Food Markets, Inc.*, 126 F. Supp. 3d 680, 682, 687 (E.D. Va. 2015) (considering exceptionality after the parties had moved for judgment on the pleadings and then stipulated a final judgment).  The court noted that no cases exist "which predicate[] an exceptional case determination on the question of expert's estimation of damages" and declined to find exceptionality on that basis.  *Id.*  In contrast, Centripetal's Motion is based not only on Dr. Nielson's legally deficient expert testimony, but also on PAN's other unreasonable tactics employed with this defense and numerous additional examples of misconduct and unreasonable positions independent of PAN's presentation of its defenses.  Mot. at 16-20.  Similarly, in *Packet Intelligence*, the winning plaintiff sought an exceptional case finding based on a list of all the defenses and discovery disputes the defendant lost throughout the litigation, which the court found insufficient for such a finding.  *Packet Intel. LLC v. NetScout Sys., Inc.*, No. 2:16-CV-00230-JRG, 2019 WL 1642714, at *2-3 (E.D. Tex. Apr. 15, 2019).  Here, Centripetal is not requesting that the Court find this case exceptional simply because PAN lost, but rather based on the unreasonable and bad faith tactics PAN employed along the way to its loss before jury, as well as after, all of which support an exceptional case finding.

Finally, PAN's reliance on the Administrative Law Judge's decision in Centripetal's ITC case against Keysight on Keysight's Section 101 defense regarding a different patent in a non-binding ITC proceeding does not absolve PAN of its decisions and actions taken in pursuit of its Section 101 defense in this case, which amount to unreasonable conduct warranting an exceptional case finding.  Opp. at 12-13.

### C.     PAN Unreasonably Obstructed Centripetal's Efforts to Depose Individuals with Knowledge on Infringement and Damages

PAN refused to produce seven employee witnesses with indisputably relevant knowledge regarding infringement and damages for deposition during the ordinary course of discovery for

no good reason.  Dkt. No. 384 at 3-4.  PAN itself identified four of the witnesses during discovery as having relevant information.  *Id.* at 1-2 (noting where PAN had identified these witnesses), 3-4 (noting PAN did not dispute witnesses had relevant knowledge).  PAN's obstinate refusal sets this case apart from all other patent cases because of the complete lack of substantive support for PAN's position, considering both the governing law and the facts regarding discovery.  *See Octane Fitness*, 572 U.S. at 554 (an exceptional case "stands out" from others based on the substantive strength of a party's position in light of the law and facts). Indeed, PAN does not cite to a single case—let alone a patent case—to suggest that a party can legitimately block a deposition of a fact witness with indisputably relevant knowledge solely because that party vaguely alleges the deposition would be duplicative.  *See* Opp. at 17-19; Dkt. No. 380 at 3-5.  PAN's sole case providing a purportedly reasonable basis for its obstructive conduct involved a protective order shielding a ***non-party corporation*** owned by a minor plaintiff's parents from being forced to sit for a Rule 30(b)(6) deposition in a case involving molestation allegations, because the plaintiffs were actively participating in discovery.  *Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543-44 (4th Cir. 2004).  It had no reasonable basis under the law for its obstruction of Centripetal's noticed depositions.  Indeed, even after the Court ordered the depositions to take place, PAN drug its feet and tried to get Centripetal to agree to drop its request to depose Dany Cohen, a witness that Centripetal noticed before the stay, renewed its notice after the stay was lifted, and played his testimony at trial to prove infringement.  *See* Mot. at 20-21; Dkt. No. 384 at 3-4.

Doubling down on the prejudicial and bad faith manner in which PAN objected to these depositions, PAN refused to agree to a short extension for serving opening expert reports, despite that the Court's order requiring PAN to produce its withheld witnesses for deposition occurred

only 11 days before opening reports were due (four calendar days after the close of fact

discovery).  *See* Mot. at 21.  PAN does not even mention or attempt to defend its unreasonable

refusal in its Opposition, because there is no reasonable excuse.  *See id.*; *see also, generally*,

Opp. at 17-19 (completely silent in response to Centripetal's explanation of how PAN forced it

to burden the Court with an expedited motion following PAN's deposition gamesmanship).

Knowing that its refusal to allow the type of basic discovery regularly conducted in every

patent infringement case—depositions of PAN's engineers and others that ***PAN identified*** as

having relevant, discoverable information—was objectively unreasonable, PAN attempts to

defend its bad faith conduct by nit-picking details, none of which change the reality that PAN

obstructed Centripetal's discovery efforts without any reasonable justification to prevent

Centripetal from getting evidence to prove its case.  PAN's position was not unreasonable solely

because PAN lost, contrary to PAN's suggestions (Opp. at 18)—its position was unreasonable

because it is legally unsupportable and screams of gamesmanship.  PAN hand-waves but does

not explain whatsoever its claim that its "objections were reasonable in light of the factual,

procedural and financial aspects of this case, as well as the relevant authority."  *Id*. at 17.  PAN

has offered the Court no such authority, nor does it explain exactly what "aspects" of the case

justified its objections.  *Id.*

Additionally, that PAN supposedly made its unreasonable objections promptly and

complied with meeting and conferring requirements before seeking a protective order does not

somehow create a valid or reasonable objection where one does not exist.  Moreover, PAN

claims that because the Court did not *sua sponte* sanction PAN in the moment (in the course of

deciding PAN's motion for protective order), somehow its position could be considered

reasonable.  *Id*. at 18.  Sanctions at the time of the misconduct are not a prerequisite for finding

14

exceptionality—indeed, conduct supporting a finding of exceptionality need not be "independently sanctionable." *Octane Fitness*, 572 U.S. at 555.

### D. PAN's Trial Misconduct Wasted Time and Evidences PAN's Overall Vexatious Litigation Strategy

Another example of PAN's litigation misconduct, which PAN fails to squarely address, is its presentation of General Davis as a trial witness. PAN's Opposition does not point to ***any*** testimony from ***its direct examination*** of General Davis that was arguably relevant to any of the issues in the case. Opp. at 19-20. No such testimony exists because PAN did not actually elicit any relevant testimony from General Davis, as General Davis himself conceded that his testimony was irrelevant to the issues to be decided by the jury. Mot. at 22-23 (citing Trial Tr. at 1529:22-1530:6, 1530:24-1531:4). PAN offers the thinnest of veneers as an allegedly proper purpose for General Davis' testimony by relying only on ***five lines from his cross-examination*** where he characterized the purpose of his testimony: "To provide my -- based on my experience, both, in the military and for the past almost eight and a half years with Palo Alto Networks, my perspective about what kind of company this is, and what we do." Opp. at 19-20, citing Trial Tr. 1530:24-1531:4. But PAN was unable to identify a single line of ***what*** the purportedly proper testimony about its business that General Davis provided actually was. The answer is none.

General Davis' role was to tell the jury personal stories regarding his military service, including deployments and medals and honors of distinction, all of which occurred well before PAN's infringement of the Correlation Patents. Trial Tr. at 1512:2-1526:2. For example, PAN's counsel asked General Davis to "describe for the members of the jury the non-classified combat zones that you served in and what you did," and General Davis began with his deployment to Grenada in 1983. *Id*. at 1512:2-1513:3. The Court *sua sponte* admonished PAN's counsel on the record for lingering on such matters. *See, e.g.*, *id*. at 1515:4-6; *see also* Mot. at 23 (citing

additional admonitions).  His testimony thus added no relevant information to the case.

PAN's Opposition points in every direction but that of General Davis' actual testimony to distract from its trial misconduct.  First, it points to the testimony of Centripetal's employee witnesses, but the contrast between General Davis' stories and Messrs. Steven and Jonathan Rogers' details about Centripetal's business and technology only reinforces that General Davis provided nothing relevant to the jury.  Opp. at 19.  As it must, PAN acknowledges that Steven Rogers testified about founding Centripetal and its early research and development efforts, while Jonathan Rogers testified about Centripetal's licensing, technology, industry recognition, customers, and market.  *Id.* (citing Trial Tr. at 176:8-183:1, 338:8-339:9, 341:21-352:19).  PAN identifies no analogous material in General Davis' testimony, as there is none.

Second, PAN points to the length of General Davis' testimony, claiming that it did not commit misconduct because it only wasted a little bit of everyone's time at trial.  *Id*. at 19-20.  That PAN contends the testimony was relatively short is no defense to presenting an irrelevant witness for an improper purpose.  And PAN cites no cases suggesting there is some threshold for an allowable amount of time that a party can waste before it amounts to misconduct.

Third, PAN points to lists of facts from Centripetal's cited case law in an attempt to distinguish it, which is unavailing because PAN ignores the remainder of the issues identified in Centripetal's Motion, focusing instead on single described instances of misconduct.  *See, e.g.*, *id*. at 20-22.  PAN compares lengthy summaries of the "totality of the circumstances" of *Tinnus*, *NTP*, *Trustees of Columbia*, and *Cognex*—which included misconduct like PAN's—to only General Davis' testimony in this case in a misleading attempt to distinguish its own misconduct.

*Id*. at 20, 23.[3]  But Centripetal's Motion is not limited to this single instance—or any other isolated instances—of misconduct or unreasonable tactics.  PAN's litigation strategy was vexatious and improper before, during, ***and*** after trial, such that the totality of the circumstances here, just as in *Tinnus*, *NTP*, *Trustees of Columbia*, and *Cognex*, render this case exceptional.

Finally, PAN points to case law that did not address an instance where the Court admonished counsel for presentation of irrelevant material during trial.  *See* Opp. at 20-21 (citing *Stragent* and *Core Wireless*).  In fact, the *Stragent* case did not deal with trial conduct at all, while *Core Wireless* involved an allegation that one party committed misconduct by objecting too voluminously to demonstrative slides that the court found was reasonable given the volume of objectionable material in the slides.  *See Stragent, LLC v. Intel Corp.*, No. 6:11-cv-421, 2014 WL 6756304, at *5 (E.D. Tex. Aug. 6, 2014); *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*, No. 2:14-CV-00912-JRG, 2020 WL 1478396, at *4 (E.D. Tex. Mar. 26, 2020).  Neither of these justifies PAN's pursuit of irrelevant testimony that crossed "over the line" and wasted the jury's and the Court's time.  Trial Tr. at 1521:10-12.

## E.   PAN's Repetitive Attempts to Exclude the Keysight License and Mr. Malackowski's Testimony Were Not Necessary to Preserve Issues for Appeal

PAN forced Centripetal to respond to and the Court to decide an egregious and voluminous amount of unnecessary briefing and objections regarding Mr. Malackowski's testimony and the Keysight License, supporting a finding that this case is exceptional.  PAN's unnecessary motions and objections were not required to preserve those issues for appeal and PAN cites no authority to the contrary.  *See generally* Opp. at 21-23.  Instead, PAN's Opposition

---

[3] *Tinnus Enters., LLC v. Telebrands Corp.*, 369 F. Supp. 3d 704 (E.D. Tex. 2019); *NTP Inc. v. Rsch. in Motion, Ltd.*, 270 F. Supp. 2d 751 (E.D. Va. 2003); *Trs. of Columbia Univ. in City of New York v. Gen Digit. Inc.*, No. 3:13cv808, 2023 WL 8698906 (E.D. Va. Sept. 30, 2023); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-cv-2027 (JSR), 2014 WL 2989975 (S.D.N.Y. June 30, 2014).

identifies each individual motion and attempts to justify its necessity for appeal by citing to the Federal Rule of Civil Procedure covering it. *Id.* But PAN's citations to the Federal Rules fail to excuse its unnecessarily duplicative motion practice. The fact that the Federal Rules authorize particular procedures for filing different motions does not mean the Rules somehow authorize vexatious filings in order to multiply the proceedings.

Indeed, PAN's "preservation" argument is specious because once PAN raised its objections to the admission of the Keysight License and Mr. Malackowski's opinions in its *Daubert* briefing and during oral argument and objected to the Magistrate Judge's partial denial of it, it is blackletter law that the issues were preserved for appeal without further briefing or argument. *See United States v. Brownlee*, 454 F.3d 131, 140 (3d Cir. 2006) (quoting Fed. R. Evid. 103); Fed. R. Evid. 103(b) ("Once the court rules definitively on the record – either before or at trial – a party need not renew an objection or offer of proof to preserve a claim of error for appeal."); *see also* Dkt. No. 802 (Order Affirming Magistrate's Ruling) at 1-2; *United States v. Williams*, 81 F.3d 1321, 1325 (4th Cir. 1996) ("If a ruling is made at the pretrial stage, it is 'timely' and there is no need to renew the objection at trial." (quoting Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice and Procedure § 5037, at 195 (1977))). Nevertheless, as detailed below, PAN required Centripetal to respond to and the Court to rule on three motions *in limine* seeking the same relief sought in its *Daubert* motion; continued to object to the admission of the Keysight License; attempted to cross-examine Mr. Malackowski in violation of a Court Order; and, filed a Rule 59 Motion for New Trial based on Mr. Malackowski's testimony, which is undisputedly an improper basis on which to request a new trial.

Ten days after the parties completed all briefing regarding PAN's *Daubert* motion, PAN filed three motions *in limine* ("MILs") seeking the same relief sought in its *Daubert* motion. *See,*

*e.g.*, Dkt. No. 631-1 (PAN's MIL Nos. 3, 4, 14) at 4-8, 9-11, 27-29. Despite agreeing that the issues addressed in its MILs were duplicative of its *Daubert* motion, PAN did not withdraw the MILs following the *Daubert* hearing, and instead forced needless additional MIL briefing and argument. *See, e.g.*, Dkt. No. 728 (Jan. 5, 2024 MIL Hrg. Tr.) at 62:12-63:3 (regarding MIL 3, pending *Daubert* motion "will bear on this motion as relates to Mr. Malackowski's ability to give expert testimony with respect to the *Keysight* term sheet"), 66:7-67:5 ("MIL 4 is subsumed . . . in our [Malackowski\ *Daubert* motion."). Further, PAN's argument that its MIL No. 3 regarding exclusion of evidence regarding other litigations was not duplicative of its *Daubert* motion because it purportedly sought to exclude ***all*** evidence concerning the Keysight or Cisco litigations is misleading. Opp. at 22. Centripetal had already agreed that the parties would not present evidence relating to the Cisco litigation, and the remaining evidence subject to PAN's MIL No. 3 was entirely addressed in PAN's *Daubert* regarding Mr. Malackowski's testimony about the facts surrounding the Keysight License. Dkt. No. 659 (Centripetal's Opp. to MIL No. 3) at 5 (noting narrow disagreement due to Centripetal's agreement regarding Cisco litigation).

Following the Court's consideration of and rulings on the parties' MILs and PAN's *Daubert* motion, PAN's issues with Mr. Malackowski's testimony were preserved, once again, for appeal. *See* Dkt. No. 715 (Order on MILs) at 4. Nevertheless, PAN continued to object to the admission of the Keysight License as an exhibit. *See* Dkt. No. 862 (Jan 16, 2024 Hrg. Tr.) at 65:25-66:21 ("we are preserving and retaining our objection on relevance and prejudice grounds to any Keysight-related information"). After its admission, PAN attempted to improperly cross-examine Mr. Malackowski regarding his reliance on the Keysight License in violation of the Court's ruling on PAN's own MIL excluding evidence regarding products no longer at issue and the Court's admonition to PAN not to improperly utilize a statement of someone other than Mr.

Malackowski to attempt to impeach him.  Dkt. No. 715 at 9; *see also* Dkt. No. 862 (Jan. 16, 2024 Hrg. Tr.) at 5:18-8:21.  PAN's improper cross-examination of Mr. Malackowski further adds to the impropriety of PAN's tactics regarding the Keysight License and Mr. Malackowski's admissible opinions.  *See* Mot. at 23-24 (citing *Tinnus Enters.*, 369 F. Supp. 3d at 745 (finding exceptional defendant's "flagrant[]" and "continuous[]" conduct despite admonitions)).

Further, PAN's naked claim that its post-trial Rule 59 motion purportedly preserves these issues for appeal is completely contrary to authority.  As explained in Centripetal's Rule 59 opposition, PAN's challenge to the admission of the Keysight License and Mr. Malackowski's testimony was not a valid basis to move for a new trial, such that it cannot have been necessary to preserve the issue for appeal.  Mot. at 23-24; Dkt. No. 941 (Opp. to PAN's Motion for New Trial) at 1-2.  The Court agreed, noting that "[t]he Court has previously considered (prior to and during trial) the bulk of these issues and rejected the same arguments currently made by PAN. That alone supports denial of the motion for a new trial."  Dkt. No. 970 at 36 (citing *Trustees of Columbia*, 2023 WL 8698906, at *2); *Peavy v. Angle*, 826 F.2d 1060 (4th Cir. 1987) ("A motion for new trial is not essential to preserve objections made prior to and during the trial for appellate review, and is not a prerequisite for an appeal from the judgment.") (citation omitted).

PAN's unnecessary, duplicative motions to exclude and objections to the admissibility of the Keysight License and Mr. Malackowski's damages testimony is yet another circumstance in this case supporting a finding of exceptionality, particularly when considered in light of the totality of PAN's conduct that repeatedly multiplied proceedings and costs.

## III.    CONCLUSION

For the foregoing reasons, Centripetal respectfully requests that the Court grant Centripetal's Motion and find this case exceptional pursuant to 35 U.S.C. § 285.

Respectfully submitted,

Dated:  November 6, 2024                 By:  */s/ Stephen E. Noona*
                                             Stephen E. Noona
                                             Virginia State Bar No. 25367
                                             Clark J. Belote
                                             Virginia State Bar No. 87310
                                             KAUFMAN & CANOLES, P.C.
                                             150 West Main Street, Suite 2100
                                             Norfolk, VA 23510
                                             Telephone: (757) 624-3239
                                             Facsimile: (888) 360-9092
                                             senoona@kaufcan.com
                                             cjbelote@kaufcan.com

                                             Paul J. Andre (*pro hac vice*)
                                             Lisa Kobialka (*pro hac vice*)
                                             James Hannah (*pro hac vice*)
                                             Kristopher Kastens (*pro hac vice*)
                                             Christina M. Finn (*pro hac vice*)
                                             Aakash B. Jariwala (*pro hac vice*)
                                             Linjun Xu (*pro hac vice*)
                                             KRAMER LEVIN NAFTALIS
                                               & FRANKEL LLP
                                             333 Twin Dolphin Drive, Suite 700
                                             Redwood Shores, CA  94065
                                             Telephone: (650) 752-1700
                                             Facsimile: (650) 752-1800
                                             pandre@kramerlevin.com
                                             lkobialka@kramerlevin.com
                                             jhannah@kramerlevin.com
                                             kkastens@kramerlevin.com
                                             cfinn@kramerlevin.com
                                             ajariwala@kramerlevin.com
                                             lxu@kramerlevin.com

                                             Cristina L. Martinez (*pro hac vice*)
                                             KRAMER LEVIN NAFTALIS
                                               & FRANKEL LLP
                                             1177 Avenue of the Americas
                                             New York, NY 10036
                                             Telephone: (212) 715-9000
                                             Facsimile: (212) 715-8000
                                             cmartinez@kramerlevin.com

                                             *Attorneys for Plaintiff,*
                                             Centripetal Networks, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 6, 2024, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will automatically send notification of

filing electronic to all counsel of record.

<div style="margin-left:50%;">

*/s/ Stephen E. Noona*
Stephen E. Noona
Virginia State Bar No. 25367
KAUFMAN & CANOLES, P.C.
150 West Main Street, Suite 2100
Norfolk, VA 23510
Telephone:  (757) 624-3239
Facsimile:  (888) 360-9092
senoona@kaufcan.com

</div>