IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CENTRIPETAL NETWORKS, LLC,

    Plaintiff,

v.                                                                                                  Civil Action No. 2:21-cv-00137

PALO ALTO NETWORKS, INC.,

    Defendant.

**MEMORANDUM ORDER**

This matter is before the Court on Centripetal Networks, LLC's ("Centripetal") Motion for Attorneys' Fees and Nontaxable Costs ("Motion for Attorneys' Fees"), Dkt. No. 983, and Motion for Pre- and Postjudgment Interest, Dkt. No. 978. Centripetal contends that Palo Alto Networks, Inc.'s ("PAN") conduct while litigating this case was exceptional under 35 U.S.C. § 285, thus warranting payment of a portion of Centripetal's attorneys' fees. Centripetal also seeks payment of pre- and postjudgment interest under 35 U.S.C. § 284 and 28 U.S.C. § 1961(a). Because the Court finds that, viewed in its totality, PAN's conduct does not rise to the level of exceptional, the Court DENIES Centripetal's Motion for Attorneys' Fees. The Court finds that pre- and postjudgment interest are appropriate, and therefore GRANTS Centripetal's Motion for Pre- and Postjudgment Interest.

## I. BACKGROUND

In its Amended Complaint, Centripetal accused PAN of infringing thirteen of its patents. Am. Compl. at 165, Dkt. No. 65. Three years of contentious litigation followed, including a lengthy stay during which PAN petitioned the Patent Trial and Appeal Board ("PTAB") for *inter partes* review and post grant review for all thirteen patents. The PTAB invalidated six patents, which the Court dismissed from the case. Dkt. No. 969. Of the remaining patents, the PTAB either declined to review or found valid upon review. *See* Dkt. No. 336. The parties subsequently dismissed another two patents through joint stipulation. Dkt. No. 1012. Upon lifting the stay, the parties engaged in extensive motions practice. The Court granted PAN's motion for summary judgement of no direct infringement as to one patent, leaving four remaining patents to proceed to trial. Dkt. No. 742.

The jury returned a verdict of infringement, finding that PAN had infringed each of the four patents presented at trial. The Court subsequently found sufficient evidence to support the jury's finding of infringement on three of the four patents, dismissed U.S. Patent No. 10,567,437, and awarded Centripetal a lump sum royalty of $113,625,000 for U.S. Patent Nos. 10,530,903 (the "'903 Patent"), 10,659,573 (the "'573 Patent"), and 10,931,797 (the "'797 Patent") (identified by the parties throughout this litigation as, collectively, the "Correlation Patents"). Dkt. Nos. 970, 972. After the Court entered final judgment in favor of Centripetal, Centripetal filed its Motion for Attorneys' Fees, arguing that PAN adopted unreasonable litigation positions throughout the action, and its Motion for Pre- and Postjudgment Interest, requesting prejudgment interest at the prime rate and postjudgment interest at the statutory rate.

Centripetal's motions are ripe for adjudication and the Court has determined that a hearing is unnecessary. E.D. Va. Loc. Civ. R. 7(J).

## II.   ANALYSIS

1. <u>**Motion for Attorneys' Fees**</u>

In patent cases, 35 U.S.C. § 285 authorizes district courts to award reasonable attorney fees to the prevailing party when a case is exceptional. An exceptional case is "one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014). The Supreme Court has directed lower courts to consider the totality of the circumstances when determining whether a case is exceptional, identifying a non-exhaustive list of factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 554 n.6. Additionally, the court should consider whether there has been litigation misconduct or unprofessional behavior on the part of the nonmoving party, either of which by themselves can make a case exceptional. *Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.*, 279 F.3d 1022, 1034 (Fed. Cir. 2002). A party seeking attorney fees under § 285 must prove the case is exceptional by a preponderance of the evidence. *Octane Fitness*, 572 U.S. at 557.

Here, Centripetal raises several arguments in support of its Motion for Attorneys' Fees, some of which relate to a series of defenses PAN asserted against the Correlation Patents, and unrelated discovery and trial conduct spanning from the end of the stay to the parties' post-trial motions. The Court deals with the defense-related arguments first.

    a. *Centripetal's Defense-Based Arguments*

PAN asserted a number of patent defenses to the claims of infringement of the Correlation Patents. Centripetal argues that, following the litigation before the PTAB, PAN's anticipation and

3

obviousness defenses were objectively weak and should not have been asserted by PAN. Dkt. No. 984 at 9–16. Centripetal also complains that PAN engaged in gamesmanship by maintaining the defenses through summary judgment and related oral argument, only to withdraw them right before trial and after substantial effort was spent litigating the defenses. *Id*. at 7–9. Finally, Centripetal alleges that PAN repackaged the previously withdrawn arguments and evidence by then asserting a weak patent eligibility defense at trial. *Id*. at 16–19. Centripetal contends that this conduct was without justification, was vexatious, and therefore warrants an exceptional case finding.

Centripetal's arguments differ by patent. As to the '573 and '797 Patents, Centripetal believes PAN's anticipation and obviousness defenses were objectively baseless because those defenses relied on the same prior art and argument that had previously been unsuccessfully presented to the PTAB. The PTAB declined to institute *inter partes* review for those patents. Because the PTAB's decision was made under a lower burden of proof than the patents were subject to in the infringement action, Centripetal argues that PAN should have known that its defenses could not succeed in this case. *Id*. at 11–13 ("PAN knew after the PTAB's decisions that PAN's positions could not carry the clear and convincing burden of proof, given that they had not met the lower 'reasonable likelihood of success' needed for institution at the PTAB.").

Centripetal's argument gives undue weight to the PTAB's decision. When deciding whether to institute *inter partes* review, the PTAB "is considering [invalidity] preliminarily without the benefit of a full record." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1068 (Fed. Cir. 2016). Indeed, the PTAB may "change its view of the merits after further development of the record," and its findings are not binding on the PTAB's final decision on the merits. *See id*. More importantly, PTAB's institution decision is also not binding on the district court; courts have

4

consistently held that "[t]he validity of claims for which the Board did not institute *inter partes* review can still be litigated in district court." *Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1316 (Fed. Cir. 2016); *see also Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1052 (Fed. Cir. 2017) (noting the same). Given the truncated record upon which the PTAB made its institution decision, the differing standards that apply at institution and at trial, and that PAN was entitled to challenge the validity of claims at trial, this Court finds it was not unreasonable for PAN to attempt to fully litigate, on the merits, the validity of the '573 and '797 Patents.

Centripetal also contends that the anticipation and obviousness defenses asserted by PAN as to the '903 Patent were objectively unreasonable. Unlike the '573 and '797 Patents, though, the PTAB instituted review of the '903 Patent and concluded that the prior art asserted against Centripetal failed to show that the claims for the '903 Patent were unpatentable. PTAB J. at 28, Dkt. No. 465-5. Centripetal argues that PAN's prior-art system, the ManageEngine System, which PAN raised after the stay to defeat the '903 Patent, was essentially a collection of printed publications that could not constitute prior art. Dkt. No. 984 at 9–12. Additionally, because the ManageEngine System relied on printed publications that could have been raised before the PTAB, Centripetal maintains that PAN was estopped from raising these references in this action. *Id*.

The Court finds that PAN's asserted defenses were not baseless. Having reviewed the summary judgment briefing (which was subsequently withdrawn by PAN prior to the Court's ruling), the Court finds the arguments were indeed weak. However, simply because a party loses an argument does not make the argument frivolous or a case exceptional. *See Stragent, LLC v. Intel Corp.*, No. 11-cv-421, 2014 WL 6756304, at *4 (E.D. Tex. Aug. 6, 2014) ("[T]he mere fact that the losing party made a losing argument is not a relevant consideration; rather, the focus must be on arguments that were frivolous or made in bad faith."). The Court cannot conclude that PAN's

5

arguments were made in bad faith or were frivolous, even if they were ultimately found to be lacking. For example, PAN argued at summary judgment (and in its briefing for the instant motion) that estoppel does not bar the use of documents that could have been raised before the PTAB when they are used as part of a system invalidity theory. *See* Dkt. No. 523 at 7–11; Dkt. No. 992 at 3–6 (quoting in support of its argument, for example, *SPEX Techs. Inc. v. Kingston Tech. Corp.*, No. 16-cv-1790, 2020 WL 4342254, at *15 (C.D. Cal. June 16, 2020)). Even though estoppel likely barred the use of the ManageEngine System because PAN could reasonably have raised the product manuals before the PTAB and was aware of the manuals prior to the initiation of litigation before the PTAB, the Court cannot say that PAN's position to the contrary was meritless such that it was exceptional litigation behavior to at least pursue the argument. *See Barry v. Medtronic, Inc.*, 250 F. Supp. 3d 107, 122 (E.D. Tex. 2017) ("Even if a party's position is ultimately meritless, the question is whether it was so meritless as to stand out from the norm and, thus, be exceptional.") (citation modified).

The Court likewise rejects Centripetal's argument regarding PAN's maintenance and withdrawal of the anticipation and obviousness defenses. Centripetal argues that PAN engaged in "gamesmanship" by pursuing its anticipation and obviousness defenses "after the stay was lifted and right up until the eve of trial[,]" behavior Centripetal deems sufficient to make a case exceptional. Dkt. No. 984 at 7–9. Although PAN maintained its anticipation and obviousness defenses through summary judgment briefing and related oral argument, it withdrew those arguments before the Court ruled on the motions and in advance of trial. Dkt. No. 763. That PAN was willing to discard the defenses before trial and conserve both the Court and the parties' resources suggests PAN was continually evaluating the strengths and weakness of its positions in the litigation. The Court contrasts this case with *EagleView Technologies., Inc. v. Xactware*

*Solutions, Inc.*, where the defendants, among other egregious behavior, maintained defenses that were rejected by the PTAB or strongly criticized by the court at summary judgment all the way through trial. 522 F. Supp. 3d 40, 59 (D.N.J. 2021). Here, after the benefit of full briefing on the anticipation and obviousness defenses, PAN recognized the defenses were not trial worthy and did not require the Court to rule on the related summary judgment briefing.

      Regarding Centripetal's last defense-related argument, PAN's conduct regarding its patent eligibility defense was not of the kind that would support finding this case exceptional. Centripetal argues that PAN's patent eligibility defense amounted to faulty word-matching testimony from Dr. Nielson and failed to properly address all of the claim elements. Additionally, Centripetal contends that Dr. Nielsen's arguments simply relied on the same evidence that previously supported the withdrawn anticipation and obviousness defenses. Dkt. No. 984 at 16. Centripetal also complains about the timing of PAN's Motion for Judgment on the Pleadings, claiming that PAN filed the motion at the deadline for dispositive motions to effectively garner additional pages for their summary judgment briefing. *Id*. at 18–19. The Court does not agree with Centripetal that PAN asserted its patent eligibility defense in bad faith. Dr. Nielson, one of PAN's expert witnesses, testified at trial to the claim elements at some length, *see* Trial Tr. at 1580–93, Dkt. No. 870, and his testimony was neither without reason nor baseless. And while the Court shared Centripetal's frustration with the timing of PAN's Motion for Judgment on the Pleadings, the motion was nonetheless filed before the relevant deadline and was an appropriate vehicle for PAN's patent eligibility challenge. *See SAP Am. Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) (noting that a patent eligibility defense "may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion"). Given PAN's then pending decision to drop the anticipation and

obviousness defenses, the sudden primacy of the patent eligibility defense to PAN's strategy was reasonable.

      b. *Centripetal's Other Arguments*

Centripetal raises several other arguments, which the Court also rejects. Centripetal contends that PAN "unjustifiably obstructed discovery [on] infringement and damages, continuously recycled unsuccessful arguments that were already ruled upon before and during trial, and presented a completely irrelevant witness at trial that wasted the Court's and jury's time." Dkt. No. 984 at 1. The Court rejects each of these arguments, both individually and when combined with each other and the defense-related arguments, as being insufficient to support an exceptional case finding. As to the discovery issues—related to PAN's objection to the depositions of numerous employees just before the close of discovery—PAN's conduct was not unreasonable. Importantly, as is usually the case in the Eastern District of Virginia, this matter proceeded on an expedited basis once the stay was lifted. Dkt. No. 353 (setting trial 8 months after the stay was lifted and closing discovery in 3 months). As PAN points out, it objected to the depositions within days of receiving the deposition notices from Centripetal. Although the Court ultimately agreed with Centripetal that PAN failed to demonstrate good cause to quash the deposition notices, Dkt. No. 384, PAN's arguments were grounded in law and rational. *See* Dkt. No. 380 at 3–5 (arguing depositions were duplicative and burdensome). Regarding the related scheduling issues that subsequently arose, the Court finds the parties' inability to work together disappointing but insufficient to support finding the case exceptional.

Centripetal also contends that PAN's trial conduct—specifically the rehashing of issues and presentation of an irrelevant witness—also render the case exceptional. Centripetal argues that PAN attempted to "exclude the same Centripetal damages evidence by filing various different

types of repetitive motions advancing the same arguments that ultimately sought the same outcome—exclusion of the Keysight license and Mr. Malackowski's opinions based on it." Dkt. No. 984 at 23–24. Centripetal correctly notes that the license and expert testimony were central to the issue of damages and were litigated extensively throughout the case through motions to exclude, motions in limine, and post-trial motions. But in many instances, PAN's filings were entirely appropriate (although not successful). For example, PAN sought the exclusion of Mr. Malackowski's expert opinion, the Magistrate Judge denied the motion, and PAN sought the Court's review of that Report and Recommendation. Dkt. Nos. 477, 714, 754. In other instances, PAN's subsequent arguments were necessary to preserve factual rulings made at trial; once a case is tried, the jury's determinations and the Court's rulings supplant pretrial factual determinations. *See Dupree v. Younger*, 598 U.S. 729, 735 (2023) (noting that because "[t]rials wholly supplant pretrial factual rulings" "factual issues addressed in summary-judgment denials are unreviewable on appeal").

Finally, Centripetal claims PAN presented General John Davis, whose testimony focused primarily on his military career and only secondarily on relevant topics related to PAN's history and operations, to garner support for PAN; accordingly, Centripetal argues, his testimony wasted the time of the parties and the Court. Dkt. No. 984 at 22–23. Having admonished PAN at the time, the Court agrees that some of General Davis' testimony was irrelevant and presented for an improper purpose. However, when challenged, PAN identified what testimony it sought to elicit from General Davis and the relevancy of that testimony. Trial Tr. at 1519:12–1521:9, Dkt. No. 869. PAN then elicited the testimony from General Davis without objection. *Id*. at 1521:16–1529:7. On these facts, PAN's conduct does not warrant a finding of exceptionality.

This was a hard-fought case spanning several years with well-resourced firms representing both sides. What initially began as a case with claims against thirteen patents against PAN concluded trial with a modest three patents surviving, with many of the patent claims defeated by PAN at the PTAB or by pre- and post-trial motions. While Centripetal certainly won a considerable judgment at trial, PAN succeeded in substantially narrowing the claims at issue. PAN ultimately lost before the jury, but that is because Centripetal was able to persuade a jury to credit its evidence of infringement over the evidence presented by PAN. *Medtronic, Inc.*, 250 F. Supp. 3d at 122 (declining to find a case exceptional where "[t]he parties went head-to-head and the determination ultimately turned on the jury's assessment of the evidence and the credibility of witnesses"). For these reasons, the Court concludes that, considering the litigation as a whole, PAN's conduct was not exceptional, and this is not a case that merits an award of attorneys' fees.

### 2. Motion for Pre- and Postjudgment Interest

Centripetal also moves the Court for pre- and postjudgment interest on the jury's damages award. Centripetal seeks prejudgment interest at the prime rate compounded quarterly from the start of infringement through the date the judgment was entered and postjudgment interest after the judgment was entered through the date upon which payment of the judgment is made. Dkt. No. 979 at 1. PAN contests the award of prejudgment interest but does not oppose Centripetal's request for postjudgment interest. Dkt. No. 997 at 1–2, 11–12. In light of PAN's agreement, and finding it appropriate, the Court will grant Centripetal's request for postjudgment interest. *See* 28 U.S.C. § 1961(a) (providing for post judgment interest "on any money judgment in a civil case"). The Court will address Centripetal's request for prejudgment interest below.

Section 284 of Title 35 of the U.S. Code provides that courts "shall award the claimant damages adequate to compensate for the infringement . . . with interest and costs as fixed by the

court." 35 U.S.C. § 284. As a rule, "prejudgment interest should be awarded . . . absent some justification for withholding such an award." *Whitserve, LLC v. Comput. Packages, Inc.*, 694 F.3d 10, 36 (Fed. Cir. 2012) (citation modified). Prejudgment interest should place the patent owner "in as good a position as [it] would have been in had the infringer entered into a reasonable royalty agreement." *Devex*, 461 U.S. at 655. The patent owner is made whole by awarding them "interest from the time that the royalty payments would have been received" because "damages consist not only of the value of the royalty payments but also of the forgone use of the money between the time of infringement and the date of the judgment." *Id*. at 656.

Centripetal requests the Court award prejudgment interest at the prime rate compounded quarterly starting from January 7, 2020, the date of first infringement, through the date of final judgment. PAN opposes, arguing that Centripetal is not entitled to prejudgment interest because Centripetal delayed in filing suit, thereby driving up the expected interest, and because Centripetal "overreach[ed] in its selection of asserted patents" such that only three of the thirteen asserted patents were successfully litigated at trial. Dkt. No. 997 at 2–5. The Court concludes that prejudgment interest is appropriate and rejects PAN's arguments regarding delay and patent selection. Centripetal filed this action on March 12, 2021. Dkt. No. 1. Of the thirteen patents ultimately asserted, the earliest was issued in October 2018 and the latest in February 2021. Am. Compl. at ¶¶ 13–40. Although the earliest-issued patent was issued more than two years prior to the initiation of the suit, Centripetal correctly notes that all but two of the asserted patents were issued in 2020 and 2021. The Court finds this delay to be reasonable given the complexities of the case and the number of patents asserted. As to any delay between filing and trial, the Court agrees that much of this delay was attributable to the stay of litigation sought by PAN, which lasted approximately fourteen months. *See* Dkt. No. 67 (PAN requesting stay of entire case pending

11

resolution of *inter partes* review proceedings before PTAB), Dkt. No. 286 (granting stay), Dkt. No. 311 (PAN opposing Centripetal's motion to lift stay as to six patents not subject to PTAB review), Dkt. No. 317 (denying motion to lift stay), Dkt. No. 329 (PAN opposing Centripetal's motion to lift stay), Dkt. No. 336 (lifting stay). PAN also claims that Centripetal unreasonably lengthened the interest period by asserting thirteen patents, only three of which were asserted successfully, but fails to identify which claims Centripetal should not have brought and why. That Centripetal lost on several patents does not justify withholding prejudgment interest.

The parties also contest the appropriate interest rate, with Centripetal seeking prejudgment interest at the prime rate while PAN advocates for the one-year Treasury bill ("T-Bill") rate. The Court will award prejudgment interest at the prime rate. When awarding prejudgment interest, district courts "have wide latitude in the selection of interest rates." *Verinata Health, Inc. v. Ariosa Diagnostics, Inc.*, 809 F. App'x 965, 977 (Fed. Cir. 2020) (citing *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 939 F.2d 1540, 1545 (Fed. Cir. 1991)). In patent cases, the rate "most often award[ed is] either the prime rate or the U.S. Treasury rate." *Morpho Detection, Inc. v. Smiths Detection Inc.*, No. 2:11-cv-498, 2013 WL 5701522, at *1 (E.D. Va. Oct. 17, 2013). This Court finds, as others in this district have found, that "[t]he prime rate, compounded quarterly, is a conservative, middle-of-the road approach that takes into account normal market fluctuations" and thus "more adequately places [a patent holder] in as good a position as it would have been in had" the infringer received a license for the patent. *NTP, Inc. v. Rsch. in Motion, Ltd.*, 270 F. Supp. 2d 751, 763 (E.D. Va. 2003); *see also Morpho Detection, Inc.*, 2013 WL 5701522 at *1 (noting that "the prime rate represents the cost of borrowing money, which is a better measure of the harm suffered as a result of the loss of the use of money over time" whereas the T-Bill rate is "the cost of raising funds by the Government, and thus does not generally reflect a corporation's loss of use of money over

time") (citation modified). While PAN argues that the prime rate is not appropriate because Centripetal has not provided evidence that it borrowed at the prime rate, the Court notes that "it is not necessary that a patentee demonstrate that it borrowed at the prime rate in order to be entitled to prejudgment interest at that rate." *Uniroyal, Inc.*, 939 F.2d at 1545.

Finally, the parties disagree as to the appropriate date to begin prejudgment interest. Centripetal requests that prejudgment interest be awarded as of January 7, 2020, the date of first infringement and the date the parties agree a hypothetical negotiation would have occurred. PAN, on the other hand, advocates that prejudgment interest should begin, if at all, on March 12, 2021, the beginning of the damages period. The Court concludes that prejudgment interest should begin from the start of the damages period, rather than the date of first infringement. While prejudgment interest is typically awarded from the date of infringement, courts have selected other start dates where damages were not recoverable from that date, such as where the parties agree to limit the period through which the plaintiff could recover for infringement. *See Nickson Indus., Inc. v. Rol Mfg. Co.*, 847 F.2d 795, 800 (Fed. Cir. 1988) ("Generally, prejudgment interest should be awarded from the date of infringement to the date of judgment."); *see GoTV Streaming, LLC v. Netflix, Inc.*, No. 2:22-cv-7556, 2024 WL 1832392, at *2 (C.D. Cal. Jan. 16, 2024) (awarding prejudgment interest from the beginning of the damages period where "[p]laintiff stipulated that it would not seek pre-suit damages"). Here, the damages period began March 12, 2021 for the '903 and '573 Patents, and July 9, 2021 for the '797 Patent. Dkt. No. 485-1 at 37 (Centripetal's expert noting that the damages period for the '903 and '573 Patents began March 12, 2021, and July 9, 2021 for the '797 Patent); Dkt. No. 853 at 30 (jury instructions noting the same). The Court concludes that interest should not begin accruing before the underlying damages were available.

The Court will award prejudgment interest at the prime rate, compounded quarterly, from March 12, 2021 for the '903 and '573 Patents and July 9, 2021 for the '797 Patent to October 3, 2024, and postjudgment interest pursuant to 28 U.S.C. § 1961(a) from October 4, 2024 through the date upon which payment of the judgment is made.

### III.   CONCLUSION

For the reasons stated above, Centripetal's Motion for Attorneys' Fees, Dkt. No. 983, is DENIED. Centripetal's Motion for Pre- and Postjudgment Interest, Dkt. No. 978, is GRANTED.

It is so ORDERED.

/s/
_____
Elizabeth W. Hanes
United States District Judge

Norfolk, Virginia
Date: <u>December 19, 2025</u>